UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTINE GIORDANO HANLON, in her capacity as Monmouth County Clerk, et al.,<br><br>Defendants. | Civil Action No. _____ |

**EMERGENCY APPLICATION FOR ENTRY OF ORDER TO SHOW CAUSE ESTABLISHING BRIEFING SCHEDULE AND HEARING DATES FOR MOTION FOR PRELIMINARY INJUNCTION**

To the Clerk of Court and all parties and their counsel (each of which has been served via email with this and the accompanying papers):

PLEASE TAKE NOTICE that Plaintiffs, through undersigned counsel, on a date and at a time to be set by the Court, respectfully move for the entry of a preliminary injunction, and, on an emergency basis, for the entry of the proposed Order To Show Cause submitted herewith, establishing a briefing schedule and a hearing/return date on Plaintiffs' contemporaneous Motion for Preliminary Injunction. As grounds therefor, Plaintiffs state as follows:

1. In this case, Plaintiffs Andy Kim ("Congressman Kim") and his campaign committee, Andy Kim for New Jersey ("AK4NJ"); Sarah Schoengood, and her campaign committee, Sarah for New Jersey; and Carolyn Rush and her campaign committee, Carolyn Rush for Congress (collectively, the "Plaintiffs"), have filed a Verified Complaint and a contemporaneous Motion for Preliminary Injunction to enjoin the defendant County Clerks from preparing and using an unconstitutional ballot design in New Jersey's upcoming 2024 primary

election. In short, they seek nothing more than to compete fairly for the nomination that each Plaintiff is seeking, an opportunity that is not available under current ballot design practices employed by the county clerks in 19 of New Jersey's 21 counties.

2. In their Verified Complaint and supporting papers, including four expert reports, Plaintiffs demonstrate that the State's laws and practices on the design of primary election ballots unconstitutionally and substantially favor a slate of candidates preferred by a faction of political party leadership in a given county, known colloquially as the "county line." The result is that the non-favored candidates who are not awarded the "county line" face a slew of quantitative and qualitative obstacles to competing fairly in their primary races: irrespective of the merits of the candidates; the receipt of the "county line" and other ballot design features lead to a substantial advantage between the favored candidates on the "county line" and the disfavored ones who are not so listed, and even further disadvantages for candidates who do not run with for other offices on a "bracketed" slate. This primary election ballot system also forces candidates to engage in gamesmanship further implicating important constitutional rights, such as the right of association and equal protection. These ballot design laws are enforced and implemented by state actors (namely, the defendant county clerks in the 19 counties that opt to use the gridded ballot design that undergirds the county line), and the harm to Plaintiffs comes from the acts and omissions of the Defendants acting under state law.

3. In the upcoming primary election, each Plaintiff will be **imminently** harmed by these ballot design laws and practices, based on a combination of the following reasons: (a) the "county line" has already been and/or is virtually certain to be awarded to one of their opponents in various counties where Plaintiffs are running, and (b) Plaintiffs will be forced to either (1) bracket with candidates running for other offices on the ballot to protect their ballot position and

mitigate against the substantial advantages their opponents on the county line will receive; or (2) be punished for exercising their right to not associate with such other candidates, in which instance they will be precluded from first ballot position and suffer an array of harms stemming from New Jersey's ballot placement rules and practices. Voters are demonstrably influenced by the biased ballot design laws in place in 19 of the state's 21 counties, and the candidates are harmed by having their opponents effectively gain a head start which skews election results and sometimes outcomes due to the widely recognized and now expert-proven ballot design advantages that Defendants enable. The beginning date for mail voting is **April 20, 2024**, with the last day for in-person voting being on Primary Election Day, **June 4, 2024**.  *See* Verified Complaint, ¶¶ 164-67. The harm to be experienced by Plaintiffs is also **irreparable**, in that the Defendants' plans to design the ballots in an unconstitutional manner deprives Plaintiffs and the voters of a fair election, a deprivation that cannot be addressed by money damages.

4. While no temporary restraints are sought,[1] the Court and the litigants nevertheless face a statutory deadline of **April 6, 2024**, which is the date by which the respective county clerks must have their ballots ready for printing. N.J. Secretary of State, *Official 2024 Primary Election Timeline*, p. 4. (citing *N.J.S.A.* 19:14-1), *available at* https://nj.gov/state/elections/assets/pdf/chrons/2024-chron-primary-election.pdf.

5. Should this Court, as requested by Plaintiffs, determine that New Jersey's primary ballot laws and practices must be enjoined to eliminate the unconstitutional features identified in the Verified Complaint, such a ruling, as a general matter, should issue by **April 6, 2024**, so that the clerks can design their ballots to be compliant with the Court's order.

---

[1] This distinction may simply be a semantic one, as "[t]he standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

3

6. As a practical matter, State law gives candidates a few additional days to litigate and resolve controversies about matters relating to ballot content and design. This is because clerks must begin to send mail ballots by **April 20, 2024**. *Id.* at p. 4 (citing *N.J.S.A.* 19:63-5 and -9). Effectively, this date is the practical final date for a ruling from this Court on Plaintiffs' challenge and for any appellate review that aggrieved parties may seek. Courts have traditionally and routinely postponed the prior April 6 deadline if necessary to implement court orders, and particularly where ballot placement designs have been successfully challenged.

7. It is an article of faith among candidates and political operatives that securing the "county line," i.e., the favored ballot position is a *sine qua non* of electoral success in the primary. Even though New Jersey expressly did away with the practice of selecting party nominees in the proverbial smoke-filled back room over a century ago, in the 1911 Geran Act, the state of democracy in primary elections today has regressed to the abysmal, pre-Geran Act levels. Voters, presented with gridded ballots including "county line" candidates, are steered through an unmistakable series of visual and psychological cues to prefer those candidates favored by party leadership.

8. Science has now proven that this article of faith is spot-on: in studies spanning over 20 election cycles, Plaintiffs' experts decisively show, among other things, being awarded the "county line" presents an almost insuperable advantage to the candidates who have secured it, giving such candidates an approximately 38 percent advantage based on data from prior New Jersey elections. (Ver. Compl., ¶¶ 105-06). A test study designed to approximate the potential presentation of ballots in the 2024 cycle likewise reveals governmentally-created favoritism for the candidate awarded the county line. *Id.* at ¶¶ 118-27. These advantages "stack" or further combine with other poor ballot design features entitling such candidates to better position, and

leaving their unbracketed opponents in obscure portions of the ballot. *Id.* at ¶ 124. It's no wonder, then, that candidates who are not awarded the line either withdraw their candidacies or are regularly trounced at the polls. It's not impossible, but a study of 209 state legislative candidates in contested primaries shows that only 3 won without the electoral, visual, and psychological cues that are part of New Jersey's primary ballot design laws, with features that are unique and unknown to any other State. *Id.* at ¶ 107. A governmentally-conferred advantage to a candidate at any level above a *de minimis* one is difficult to justify; and here, where such advantages provide an "enormous handicap," *id.* ¶ 127, are "consistent," *id.* at ¶¶ 108, 111; "substantial," *id.* at ¶ 114, "substantively large," *id.* at ¶ 120; and alter election results including the potential to be outcome determinative in various instances – i.e., "electorally consequential, and strongly statistically significant," *id.*, it is clearly unconstitutional. *See also id. at* ¶ 127.

9. Plaintiffs' expert, Dr. Andrew Appel, shows in his report that all voting machinery in New Jersey is fully capable of accommodating alternatives to the current primary ballot design, including the obvious alternative of an office-bloc ballot design for all contested races. He affirms that in terms of the preparatory work required to properly design and code ballots before every election, preparing office-bloc ballots entails no more work, effort, or expense to county clerks than the present, unconstitutional methods of ballot design. (*Id.* at ¶¶ 128-33).

10. Similarly, this case in no way affects or alters rights of county political parties' leadership factions to endorse candidates. They will be able to continue to do so, whether it is a matter of a single party boss making the decision, or a broader group of party leaders that still constitute a tiny fraction of all Democratic-affiliated voters, and an even tinier fraction of all voters eligible to vote in the primary elections (which include all unaffiliated voters). Nothing in the relief sought in this case affects or alters these rights to endorse, spend money on, or otherwise support

the candidates endorsed by county parties' individual leaders or leadership factions. Nor does it in any way prevent any party or other group of candidates to affiliate on the ballot itself via a shared slogan in accordance with *N.J.S.A.* 19:23-17, which goes even above and beyond what many other states permit candidates to feature on the ballot itself.

11. This case has been brought approximately 100 days before this year's Primary Election Day, leaving ample time for adjudication. Even considering the ballot-preparation deadlines mentioned above, there are just under two months from the date that this action has been filed until the application for *pendente lite* relief needs to be resolved. In addition, given that the facts and legal arguments substantially overlap those already before the Court in *Conforti v. Hanlon*, Civ. A. No. 20-08267-ZNQ-TJB and *Mazo v. Durkin*, Civ. A. No. 20-08336-ZNQ-TJB, and that many of the same parties in this case are also litigants in those cases, many defendants and potentially interested parties, and the Court as well, are reasonably well versed in the applicable legal arguments.

12. This Court is readily capable of addressing challenges to state laws that abridge important rights, constitutional or otherwise, on a highly accelerated basis. *See, e.g.*, *Siegel v. Platkin*, Civ. A. No. 22-7463-RMB-AMD (Second Amendment rights); *Koons v. Reynolds*, Civ. A. No. 22-7464-RMB-EAP (same); *Williams v. NCAA*, Civ. A. No. 24-624-614-ZNQ-JBD (Sherman Act); *Trump for President v. Way*, Civ. A. No. 20-10753-MAS-ZNQ (voting rights). There is every reason to believe the Court can do the same here.

13. Plaintiffs respectfully suggest the following as a briefing schedule:

   a. Defendants' opposition papers due by March 6, 2024;

   b. Applications for intervention, with supporting papers, due by March 6, 2024;

   c. Plaintiffs' reply papers due March 12, 2024

    d.   Oral argument: March 15, 2024.

Dated: February 26, 2024　　　　　　　　　Respectfully submitted,

                                                */s/ Flavio L. Komuves*
                                               Flavio L. Komuves
                                               Brett M. Pugach
                                               WEISSMAN & MINTZ
                                               220 Davidson Ave., Suite 410
                                               Somerset, NJ 08873
                                               Phone: (732) 563-4565
                                               fkomuves@weissmanmintz.com

                                               -and-

                                               */s/ Yael Bromberg*
                                               Yael Bromberg, Esq.
                                               BROMBERG LAW, LLC
                                               43 West 43rd Street, Suite 32
                                               New York, NY 10036
                                               Phone: (212) 859-5083
                                               *Attorneys for Plaintiffs*