CARBONE AND FAASSE
ATTORNEYS AT LAW
32 Pleasant View Drive
North Haledon, NJ 07508

JOHN M. CARBONE  201-394-7888
RALPH E. FAASSE

February 28, 2024

Honorable Zahid N Quraishi,
U.S.D.C. of New Jersey
MLK Jr Federal Building
50 Walnut Street Newark, NJ 07101

Re:  **Kim, et al v. Hanlon, et al**
     **U.S.D.C. NJ  Docket No. 3-24-cv-01098**

Dear Judge Quraishi:

This office represents the following county clerks as named defendants in the within action: Mary H. Melfi, in her capacity as Hunterdon County Clerk; Rita M. Rothberg, in her official capacity as Cape May County Clerk; Celeste M. Riley, in her official capacity as Cumberland County Clerk; and James N. Hogan, in his official capacity as Gloucester County Clerk. New Jersy County Clerks are not statutory officers but serve and derive their powers as Constitutional Officers, under the New Jersey Constitution, and for terms of five years. In their administration of the election laws, a County Clerk serves and functions as an umpire and not a player in the political process.

This submission is in anticipation of issues and concerns which we believe will arise in the scheduled conference for tomorrow, February 29, 2024 and thereafter,

As the Court is well aware, an election merely culminates on a specific day but commenced many months before and is a process and series of processes not one singular event,

1

Long before the "day of the election" election officials and specifically the actions of the Clerks are to conduct, coordinate, communicate, and collaborate in actions and activities which become a confluence culminating in the election. Election officials, and addressing specifically the County Clerks address and receive nominating petitions, bracketing requests, ballot slogan designations, lists of party county committee persons, drawing for party and candidate ballot positions. Simultaneously they design, designate, print, and distribute the "ballots" for use in Vote By Mail, Emergency ballots, Sample ballots, etc.  The Clerks solicit specific types and sizes of paper for the machines and ballots, and. engage specialized printers to print the paper ballots. These are but some but not all actions in which the Clerk engages for an election.

The most demanding and detailed actions the Clerk is charged with the layout, design, candidate placement, public questions placement, candidate lines and bracketing to fit into the face and limited ballot geography of the various voting machines.

Similarly, political entities and candidates engage in activities from fund raising, party building, membership retention and recruitment, issue review, voter registration drives, candidate recruitment,  issue and opposition research, candidate screening and selection federal, state, county and municipal nominating conventions and meeting.

Thus at this late date in the process, any actions sought by the Plaintiff Kim, considered by this Court or orders entered will have cascading and rippling effects on the election, officials, candidates and voters. Thus, we raise concerns about timing of actions, disruption of the ongoing election process and ultimately effect and impact on  the voters.

The statutes and case law of New Jersey make clear that the ballot is drawn and designed to assist the voters first and foremost, and not afford advantage or preference to candidates and political parties. New Jersey courts have repeatedly identified the legislative policy in ballot design, layout and candidate  bracketing and affiliation is the voter: "…to permit voters to record their will, the ballot being so arranged that all voters may find their candidates with the least

difficulty the total content of the ballot will permit." Farrington v. Falcey, 96 N.J. Super. 409, 414 (App. Div. 1967);

**POINT I:   ARE ALL THE NECESSARY AND INDISPENSABLE PARTIES AWARE OF THIS PROCEEDING AND NAMED TO PROTECT THEIR INTERESTS?**

Plaintiff Kim in this long-delayed application has not presented to this Court, acquired jurisdiction, or afforded notice upon all those persons and entities who have an interest effected and who have a right to be heard on this relief. Whether the political parties, other candidates up and down the ballot, or voter interest groups Plaintiff Kim has but singularly and solely sought his own political concerns and benefits. Thus there has been a failure to join many indispensable parties pursuant to FRCP Rule 19. "Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory." Gen. Refractories Co. v. First State Ins. Co., 500 F. 3d 306, 312 (3d Cir. 2007). Tullett Prebon PLC v. BGC Partners, Inc., 427 F. App'x 236, 239 (3d Cir. 2011) The Plaintiff, parties and the Court must address this issue.

**POINT II:   JUDICIAL INTERVENTION AND DISRUPTION OF THE ONGOING ELECTORAL PROCESS IS TO BE AVOIDED**

The focus of the law in elections and this Court should be "[P]reserving the integrity" of elections is "indisputably . . . a compelling interest." Eu v. San Francisco Cty. Dem. Cent. Comm., 489 U.S. 214, 231 (1989). Maintaining "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." Purcell v. Gonzalez, 549 U.S. 1, 4 (2006). While counterintuitive, the function of an election is not to choose a winner, but to assure the voters and other candidates that the loser lost fair and square.

Judicial intervention into an election process close to the final day of the elections is not encouraged and is eschewed. This is ensured by courts denying disruptive and untimely applications for judicial intervention into an election process which is underway.

As enunciated by the U.S. Supreme Court, the "Purcell Principle" holds that courts should not change election rules during the period of time just prior to an election because doing so could confuse voters and create problems for officials administering the election. The principle takes its name from Purcell v. Gonzalez, in which the Supreme Court reversed an October 2006 decision of the U.S. Court of Appeals for the 9th Circuit blocking an Arizona voter ID law during that year's midterm election, seeking to protect the public and their expectations enshrined in what they have done or been told previously. ("Court orders affecting elections ... can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase.") Purcell, supra. pp. 4-5 The dangers and disruption of judicial intervention have been well identified by the Court.

Thereafter U.S. Supreme Court in Republican National Committee, et al. v. Democratic National Committee, et al. , 140 S. Ct. 1205, 1207 (2020) ) re-asserted and re-affirmed the "Purcell Principle." The "Purcell Principle" which looks to protect the rights of the voter, where there is held to be a presumption against last-minute changes to election procedures. The issue was that one day prior to Wisconsin's April primary election, the Supreme Court blocked a district court ruling issued five days before the election that extended the deadline for submitting absentee ballots. The district court based its decision on an immense backlog of absentee ballot requests due to concerns about voting in person during the coronavirus pandemic. Local election officials were unable to process the unprecedented volume of requests that were timely under state law. Citing Purcell, the Supreme Court found that the district court should not have changed the election rules in the specific way that it did so close to the election. see also Democratic Nat'l Comm. v. Wis. State Legislature, 141 S. Ct. 28, 28 (2020) (mem.) (Roberts, C.J., concurring) (staying judicial intervention "in the thick of election season").

And as found by our court in this district in Democratic-Republican Org. of N.J. v. Guadagno, 900 F. Supp. 2d 447, 461 n.8 (D.N.J. 2012) "As in many election related cases, timing is critical.... At this late state in the election process, any injunctive remedy ordered by this Court would dramatically upset ongoing ballot printing and distribution." (see also Tex. Democratic Party v. Abbott, 961 F.3d 389 (5th Cir. 2020); Public Interest Legal Foundation v. Boockvar, 495

4

F. Supp. 3d. 354, 356 (M.D. Pa. 2020) denying relief sought two- and one-half weeks before a national election "…because Plaintiff waited until the eleventh hour to file this suit."

In a matter similar to this pending application is one reported in the Third Circuit and should be the guidance for the Count in this matter. The Honorable Gerald John Pappert, USDC E.D. Pa characterized a similar disruptive judicial application for last minute changes to the election process. As found by Judge Pappert, "Here the Plaintiff elected to file its suit on the eve of the national election. **There was no need for this judicial fire drill** and Plaintiffs offer no reasonable explanation or justification for the harried process they created." Republican Party of Pa. v. Cortes , 218 F.Supp. 3d 396, 405 (E.D. Pa. 2016)p. 405 (emphasis added)

The holding of Judge Pappert is most applicable here and in support of denial of this pending application:

> There is good reason to avoid last-minute intervention in a state's election process. Any intervention at this point risks practical concerns including disruption, confusion or other unforeseen deleterious effects. See City of Philadelphia, 2006 WL 3922115, at *2 (citing Purcell, 549 U.S. at 5, 127 S.Ct. 5). Comity between the state and federal governments also counsels against last-minute meddling. Federal intervention at this late hour risks "a disruption in the state electoral process [which] is not to be taken lightly." Id. (quoting Page v. Bartels, 248 F.3d 175, 195-96 (3d Cir. 2001)). "This important equitable consideration goes to the heart of our notions of federalism." Id. Pp. 404-405

Plaintiff Kim by his own pleadings before the Court has for months been engaged in his re-election effort seeking endorsements, support of local and county political organizations, and bracketing with their county lines. Yet now after those efforts and the entry of other candidates into the process, he seeks not to tinker and tweak the process but tear and tumble down the process he participated in and sought the benefits for his candidacy. Perhaps whimsey or waiver of any right to relief?

When is an application under Purcell too late? The Supreme Court has refused to bless and

give approbation for judicial intervention as follows:

- 21 days before the general election <u>Veasey v. Perry, 574 U.S. 951</u> (2014)

- 34 days before the general election <u>Merrill v. People First of Alabama</u>, 141 S. Ct. 25 (2020)

- 46 days before the general election <u>Andino v. Middleton,</u> 141 S. Ct. 9 (2020)

- 48 days before the primary election <u>Raysor v. DeSantis</u>, 140 S. Ct. 2600 (2020)

- 92 days before the primary election <u>Moore v. Harper</u>, 142 S. Ct. 1089 (2022)

- 120 days before the primary election <u>Merrill v. Milligan</u>, 142 S. Ct. 879, 879 (2022)

## **CONCLUSION**

Our concerns as have been addressed above, do not necessarily oppose the ultimate relief but to ensure the protection of the election process and the interests of the voter.

Respectfully submitted,

*/s/John M. Carbone*

John M. Carbone

CC:   All Counsel of record (PACER) and E-mail/