**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor, Camden County Democratic Committee*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br><br>  Defendants. | Case No.: 3:24-cv-01098-ZNQ-TJB |

---

**BRIEF ON BEHALF OF INTERVENOR, CAMDEN COUNTY DEMOCRATIC COMMITTEE, IN SUPPORT OF MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24. AND IN OPPOSITION TO REQUEST FOR INJUNCTIVE RELIEF**

---

**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor, Camden County Democratic Committee*

7O26047.DOCX

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ........................................................................................1

STATEMENT OF FACTS .............................................................................2

LEGAL ARGUMENT ...................................................................................4

    I.    THE STANDARD FOR INTERVENTION .........................................4

    II.    CCDC SHOULD BE PERMITTED TO INTERVENE AS A
            MATTER OF RIGHT PURSUANT TO FED.R.CIV.P. 24(a)(2) ........5

    III.    ALTERNATIVELY, CCDC SHOULD BE PERMITTED
            TO INTERVENE PERMISSIVELY PURSUANT TO
            FED.R.CIV.P. 24 (b)(1)(B) ...............................................................15

    IV.    PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE
            RELIEF ...........................................................................................17

CONCLUSION ...........................................................................................19

# TABLE OF AUTHORITIES

## Federal Cases

*Brody v. Spang*,
957 F.2d 1108 (3d Cir. 1992)....................................................................5, 16

*Cal. Democratic Party v. Jones*,
530 U.S. 567 (2000)...................................................................................14, 19

*Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley*,
454 U.S. 290 (1981).........................................................................................9

*Donaldson v. U.S.*,
400 U.S. 517 (1971).........................................................................................7

*Eu v. S.F. Cty. Democratic Cent. Comm.*,
489 U.S. 214 (1989)............................................... 8, 9, 10, 12, 14, 19

*Harris v. Pernsley*,
820 F.2d 592 (3d Cir. 1987)............................................................................7

*Holland v. Rosen*,
277 F.Supp.3d 707 (D.N.J. 2017) .................................................................17

*In re Fine Paper Antitrust Litig.*,
695 F.2d 494 (3d Cir. 1982).............................................................................6

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998).............................................................................5

*Kusper v. Pontikes,*
414 U.S. 51 (1973) ........................................................................................7, 8

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
419 F.3d 216 (3d Cir. 2005).............................................................................5

*Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995)....................................................5, 6, 7, 13, 14, 15

*NAACP v. New York*,
413 U.S. 345 (1973).................................................................................6

*NLRB v. Frazier*,
144 F.R.D. 650 (D.N.J. 1992)..................................................................7

*Quaremba v. Allan,*
67 N.J. 1 (1975).....................................................................................10

*Tashjian v. Republican Party of Connecticut,*
479 U.S. 208 (1986).................................................................................9

*Trbovich v. United Mine Workers*,
404 U.S. 528 n.10 (1972)......................................................................14

*United States v. Alcan Aluminum*,
25 F.3d 1174 (1994).........................................................................13, 15

## State Cases

*Schundler v. Donovan,*
377 N.J. Super. 339 (App. Div. 2005) ...................................................11

## Rules

Fed.R.Civ.P. 24(a)..........................................................................4, 7, 16

Fed.R.Civ.P. 24(a)(2).........................................................................5, 13

Fed.R.Civ.P. 24(b) ............................................................................5, 16

Fed.R.Civ.P. 24(b)(1)(B) ..................................................................5, 16

Fed.R.Civ.P. 24(b)(3)........................................................................5, 16

**Statutes**

N.J.S.A. 19:23-24 ................................................................................10

N.J.S.A. 19:49-1 ................................................................................10

N.J.S.A. 19:49-2 ............................................................................10, 11

**Other**

Cal.Elec.Code Ann. § 11702 (West 1977) ...........................................8, 9

7C Wright, Miller & Kane, *Federal Practice & Procedure* § 1909 (1986)............15

**INTRODUCTION**

This case involves constitutional challenges to New Jersey's primary election bracketing system, and ballot position and placement system. Plaintiffs Andy Kim, in his personal capacity as candidate for U.S. Senate, Andy Kim for New Jersey, Sarah Schoengood, Sarah for New Jersey, Carolyn Rush, and Carolyn Rush for Congress (collectively "Plaintiffs"), instituted this action seeking a declaration that New Jersey's primary election bracketing and ballot position placement system is unconstitutional. Plaintiffs seek injunctive relief to ensure that the purported primacy effect and positional bias do not advantage bracketed candidates over other candidates running for the same office.

The central dispute concerns the organization, configuration, and design of ballots utilized in New Jersey's primary elections. Plaintiff Andy Kim is a U.S. Senate Candidate in the upcoming 2024 Democratic Party primary election. Plaintiff Sarah Schoengood is a candidate for United States House of Representatives for New Jersey's Third Congressional District in the 2024 Democratic Primary Election. Plaintiff Carolyn Rush is a candidate for United States House of Representatives for New Jersey's Second Congressional District in the 2024 Democratic Primary Election. Plaintiffs contend that New Jersey's bracketing and ballot position and placement system violates their First and Fourteenth Amendment rights as well as the Elections Clause because the structure fails to treat similarly situated persons—

that is, candidates pursuing the same office in the same political party—the same with respect to ballot order and placement. According to Plaintiffs, New Jersey's laws and practices on primary election ballot design confer specific advantages to candidates who have received an endorsement from county party leadership, which "nudges" voters toward selecting county line candidates.

Plaintiffs' lawsuit directly implicates the constitutional rights of political party organizations such as the Camden County Democratic Committee ("CCDC")— specifically, the interests of CCDC in endorsing and supporting Democratic candidates for elections in Camden County as protected by the First Amendment. CCDC now seeks to intervene in this case as a matter of right pursuant to Federal Rule of Civil Procedure Rule 24 to protect its legal interests which are not currently represented by any of the existing parties to this litigation and will be directly impacted by any disposition in this matter. Because the Court's resolution of this case may hinder CCDC's ability to protect its interests and this Motion is timely made, CCDC respectfully submits that its Motion to Intervene should be granted and the request for injunctive relief denied.

## STATEMENT OF FACTS

On February 26, 2024, Plaintiffs filed a Verified Complaint against Defendants, the county clerks, in their official capacities, in 19 of the 21 counties in New Jersey, excluding Salem and Sussex Counties. *See* ECF No. 1. Plaintiffs'

Verified Complaint asserts various claims challenging the constitutionality of New Jersey's primary election bracketing system and ballot position and placement system. *Id.* Plaintiffs claim, among other things, that New Jersey's ballot designs "stack the deck for certain candidates at the expense of others, thereby undermining the integrity of elections, hindering democracy, and confusing voters." *See* ECF No. 1, ¶ 1. Plaintiffs seek a judgment that New Jersey's primary election bracketing and ballot placement system is unconstitutional, and seek injunctive relief "to ensure that the primacy effect/positional bias and the weight of the line do not continue to advantage county line and certain bracketed candidates over other unbracketed and off-line candidates running for the same office . . . ." *See* ECF No. 1, ¶¶ 16, 17.

Along with the Verified Complaint, on February 26, 2024, Plaintiffs filed a Motion for Preliminary Injunction. *See* ECF No. 5. Plaintiffs seek to enjoin Defendants from preparing or using any ballot design in the upcoming 2024 primary election that, in Plaintiffs' view, is unconstitutional and require Defendants to use for all voters an office-block ballot rather than a ballot that is organized by column or row. *Id.*

In addition to the named Defendants, Plaintiffs served the Verified Complaint and Motion for Preliminary Injunction on the county clerks of Salem County and Sussex County, as well as the Secretary of State (collectively, "Interested Parties"), the Office of the Attorney General, the New Jersey Democratic and Republican State

Committees, and several Democratic and Republican County Political Parties, including the Camden County Democratic Committee.

Camden County Democratic Committee is the statutory non-profit regular Democratic Party Organization for Camden County. The CCDC promotes and endorses Democrat candidates nominated in New Jersey primary elections, and is "committed to serving the community by supporting and electing candidates at every level that will fight to level the playing field for Camden County's working families." On February 27, 2024, this Court entered an order scheduling a case management conference to address the briefing and hearing schedule for Plaintiffs' Motion for Preliminary Injunction. CCDC now moves to intervene to safeguard its rights afforded by the First Amendment and to oppose the request for injunctive relief.

## LEGAL ARGUMENT

### I.   THE STANDARD FOR INTERVENTION

Federal Rule of Civil Procedure Rule 24(a) governs intervention as of right and provides, in relevant part:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Rule 24 also provides for permissive intervention, which is available upon timely application when a non-party "has a claim or defense that shares with the main action a common question of law or fact."   Fed.R.Civ.P. 24(b)(1)(B). "Whether to grant permissive intervention under Rule 24(b), as the doctrine's name suggests, is within the discretion of the district court."   *Brody v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992).   "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed.R.Civ.P. 24(b)(3).

## II.   CCDC SHOULD BE PERMITTED TO INTERVENE AS A MATTER OF RIGHT PURSUANT TO FED.R.CIV.P. 24(a)(2).

Intervenor CCDC respectfully submits that the interests at stake require its intervention as of right.   The Third Circuit has held that a non-party seeking intervention as of right under Rule 24(a)(2) must establish (1) a timely application for leave to intervene; (2) a sufficient interest in the underlying litigation; (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent the prospective intervenor's interests. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).   "Each of these requirements must be met to intervene as of right." *Id.* (citing *Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)).   Here, CCDC satisfies all of these requirements in

this case.

CCDC's application to intervene as of right is timely. "The timeliness of a motion to intervene is 'determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'" *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)). In determining whether the motion to intervene is timely, courts may consider "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top*, 72 F.3d at 369; *see also In re Fine Paper Antitrust Litig.*, 695 F.2d at 500. "The critical inquiry is: what proceedings of substance on the merits have occurred?" *Mountain Top*, 72 F.3d at 369. "This is because the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." *Id.* at 370.

This matter was instituted just days ago on February 26, 2024, when Plaintiffs filed their Verified Complaint and Motion for Preliminary Injunction. No proceedings of substance on the merits have occurred. No responsive pleadings or dispositive motions have been filed. On February 27, 2024, the Court entered a Text Order scheduling a case management for February 29, 2024 to address the briefing schedule and to set a date for the pending Motion for Preliminary Injunction. *See* ECF No. 9. Thus, given the early stage of this litigation, permitting CCDC to

intervene at this juncture will neither unduly delay the adjudication of this litigation nor prejudice the rights of the existing parties.

CCDC has a sufficient interest in the underlying litigation. "While the precise nature of the interest required to intervene as of right has eluded precise and authoritative definition some general guidelines have emerged." *Mountain Top*, 72 F.3d at 366 (internal citations omitted). The United States Supreme Court has recognized that "an intervenor's interest must be one that is 'significantly protectable.'" *Id.* (citing *Donaldson v. U.S.*, 400 U.S. 517, 531 (1971)). In defining "significantly protectable" interest within the meaning of Rule 24(a)(2), the Third Circuit has held that "'the interest must be a legal interest as distinguished from interests of a general and indefinite character.'" *Mountain Top*, 72 F.3d at 366 (citing *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987)). In other words, "[t]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Id.* Our Courts liberally construed Rule 24(a) "in favor of intervention." *NLRB v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992).

CCDC has an identifiable, significantly protectable legal interest in its freedom to associate with Democratic candidates for office as afforded by the First Amendment. In *Kusper v. Pontikes*, the United States Supreme Court acknowledged, "[t]here can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of orderly

group activity protected by the First and Fourteenth Amendments." *Kusper v. Pontikes,* 414 U.S. 51, 56-57 (1973). Thus, "[t]he right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Id.* at 57. Any disposition by the Court regarding the constitutionality of New Jersey's primary election system or ballot position and placement system will impact and potentially impair CCDC's First Amendment rights—namely, its freedom to associate with Democratic candidates for office.

A declaration that New Jersey's primary election bracketing and ballot position and placement system is unconstitutional would abrogate *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214 (1989). In *Eu*, the Supreme Court reviewed the California Elections Code, which prohibited, among other things, "official governing bodies of political parties from endorsing candidates in party primaries." *Eu*, 489 U.S. 214, 216 (1989). The California Elections Code specifically provided that official governing bodies "shall not endorse, support, or oppose, any candidate for nomination by that party for partisan office in the direct primary election." *Id.* at 217 (citing Cal.Elec.Code Ann. § 11702 (West 1977)). In evaluating the constitutionality of the California Elections Code, the Court stated:

> Barring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association. It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments. Freedom of association means not only that

> an individual voter has the right to associate with the political party of her choice, but also that a political party has a right to identify the people who constitute the association, and to select a standard bearer who best represents the party's ideologies and preferences.

*Id.* at 224 (internal citations omitted).

The Court further recognized that "[d]epriving a political party of the power to endorse suffocates this right." *Id.* The endorsement ban, according to the Court, "prevents parties from promoting candidates 'at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community.'" *Id.* (citing *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 216 (1986)). Accordingly, the Court found that California's ban on endorsements by the political party "is clearly a restraint on the right of association." *Eu*, 489 U.S. at 225 (citing *Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley*, 454 U.S. 290, 296 (1981)). The Court held that because the ban burdened the rights to free speech and free association, it could only survive constitutional scrutiny if it serves a compelling governmental interest. *Eu*, 489 U.S. at 225.

CCDC has a readily identifiable and significantly protectable legal interest in its First and Fourteenth Amendment rights of free association. If the Court were to find that New Jersey's primary election bracketing and ballot position and placement system is unconstitutional, this would effectively abrogate *Eu v. S.F. Cty.*

*Democratic Cent. Comm.*, 489 U.S. 214 (1989), and CCDC's right to "identify the people who constitute the association and to select a standard bearer who best represents the party's ideologies and preferences." *Eu*, 489 U.S. at 224.  A finding in favor of Plaintiffs, in turn, would conflict with the well-established precedent set forth in *Eu* and eviscerate CCDC's right to endorse and freedom to associate with Democratic candidates for office that best represent CCDC's ideologies and preferences.

The legislative framework governing New Jersey's primary elections does not infringe upon any constitutional right asserted by Plaintiffs.  New Jersey courts have reviewed similar challenges to New Jersey's bracketing system and have upheld the constitutionality of the bracketing structure.

In *Quaremba v. Allan*, plaintiffs, unsuccessful candidates at a primary election, challenged New Jersey's bracketing structure.  Plaintiffs advanced three arguments.  First, they challenged as unconstitutional N.J.S.A. 19:49-2, which regulates the positioning on the lines of a voting machine of the names of candidates for nomination at a primary election.  *Quaremba*, 67 N.J. 1, 7 (1975).  Second, they alleged that even though N.J.S.A. 19:23-24 expressly excepts from its provisions counties where section N.J.S.A. 19:49-1 of the Revised Statute applies, the county clerk of such county should and must comply with the provisions of N.J.S.A. 19:23-24 and list all candidates for nomination to any given office, in the order determined

by lot, in a single column or row. *Id.* Lastly, they contended that although the Bergen County Clerk alleges to follow the provisions of N.J.S.A. 19:49-2, he has abused his discretion and discriminated against candidates, such as plaintiffs, who are not affiliated with the Bergen County Republican organization. *Id.* Plaintiffs argued that the bracketing statute "creates preferred classes of primary candidates . . . and imposes an unequal burden on unaffiliated candidates and thus denies them their constitutional rights." *Id.* at 10.

The New Jersey Supreme Court found that there was no merit to any of plaintiffs' constitutional arguments. *Id.* The New Jersey Supreme Court acknowledged that "there can be no doubt about the authority of the Legislature to adopt reasonable regulations for the conduct of primary and general elections [and] [s]uch regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote or any person he chooses." *Id.* at 11. In the Court's view, "[n]othing in the challenged section inhibits any voter from voting for any person he chooses or limits the right of any candidate to run for office." *Id.* Ultimately, the Court found that it is clear that the statute was not invidiously discriminatory. *Id.*

In *Schundler v. Donovan*, the Appellate Division reviewed a summary disposition before the trial court approving the court clerks redrawing for ballot positions. *Schundler v. Donovan*, 377 N.J. Super. 339, 341 (App. Div. 2005).

Plaintiffs were candidates seeking the Republican Party's nomination in the June election for their respective offices. *Id.* at 343. They alleged that the clerks "have made erroneous decisions respecting the positioning of various candidates on the ballot" and sought an order compelling the clerks to redraw for the ballot positions. *Id.*

In interpreting the constitutionality of the statute in light of the Supreme Court's holding in *Eu*, the Appellate Division found that "there is nothing inherent in the first sentence of the statute that conflicts with the overriding principle of *Eu*; and there can be no rights violation where a county clerk makes a fair effort to follow the dictate that all candidates for the highest office, *i.e.*, U.S. Senator or Governor, be treated equally to the extent physical constraints allow, as long as, at the same time, a good faith effort is made to effect the expressive rights of all candidates." *Id.* at 348. In sum, the Appellate Division mandated "an approach which requires all the candidates to begin from the same position, subject to the customary drawing as to relative placement, without so extraneous a consideration as bracketing or non-bracketing as the beginning point, notwithstanding that the right to bracketing is, as a general matter, fundamental as an expressive exercise." *Id.*

It is clear that New Jersey courts have upheld the constitutionality of the bracketing system and that the legislative framework governing primary elections does not impede upon any constitutional rights asserted by Plaintiffs.

CCDC's interest will be significantly impaired or affected by the disposition of the underlying action. "In order to meet the requirements of Rule 24(a)(2), proposed intervenors must also demonstrate that their interest might become affected or impaired, as a practical matter, by the disposition of the action in their absence." *Mountain Top*, 72 F.3d at 368 (citing *Alcan Aluminum*, 25 F.3d at 1185 n.15)). Plaintiffs bring claims specifically challenging the organization, configuration, and design of ballots used in New Jersey's primary elections. According to Plaintiffs, New Jersey's "laws and practices on primary election ballot design confer specific advantages on candidates who have received an endorsement from county party leadership." *See* ECF No. 1, ¶ 7. Plaintiffs, in turn, seek a declaration that New Jersey's primary election bracketing and ballot placement system is unconstitutional and further request injunctive relief to ensure that the primacy effect/positional bias do not continue to advantage bracketed candidates over other candidates running for the same office. *Id.* ¶¶ 16, 17. Accordingly, the disposition of this matter will directly impact and potentially impair CCDC's associational rights under the First Amendment.

Plaintiff allege that they "do not seek to disrupt the conduct of parties in their right to endorse the standard-bearer of their choice, . . . or to disrupt the ability of parties to signify their endorsements or slogans on the ballot alongside the candidates of their choice." *See* ECF No. 1, ¶ 17. However, a ruling in Plaintiffs' favor will

eviscerate CCDC's freedom to associate with other Democratic candidates that align with CCDC's ideologies and preferences as afforded by the First Amendment and reaffirmed in *Eu*. CCDC is the statutory non-profit regular Democratic Party Organization for Camden County that promotes and endorses Democratic candidates nominated in New Jersey Primary elections. Under *Eu* and other well-established precedent, political party organizations, such as CCDC, have associational rights that cannot be infringed upon. *See Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) ("the First Amendment protects 'the freedom to join together in furtherance of common political beliefs,' . . . which 'necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only."); *Eu*, 489 U.S. at 224 ("Barring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association.").

No current party represents the interests of CCDC. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Mountain Top*, 72 F.3d at 323 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Indeed, it has been noted that,

> The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interest of the present parties. If the interest of the absentee is not represented at all, or if all existing

14

> parties are adverse to him, then he is not adequately
> represented.  If his interest is identical to that of one of the
> present parties, or if there is a party charged by law with
> representing his interest, then a compelling showing
> should be required to demonstrate why this representation
> is not adequate.

*Mountain Top*, 72 F.3d at 323 (citing 7C Wright, Miller & Kane, *Federal Practice & Procedure* § 1909, at 318-19 (1986)); *see generally Alcan Aluminum*, 25 F.3d at 1185-86.

Plaintiffs are seeking a declaration that New Jersey's primary election bracketing structure and ballot position and placement system are unconstitutional in order to increase their chances of succeeding in their respective positions.  The County Clerk Defendants have an interest in the administration and application of New Jersey's election laws and any adverse ruling may impair County Clerk Defendants' practices and procedures in facilitating primary elections.  None of the parties take the position that a finding in favor of Plaintiffs would suffocate a political organization's freedom to associate and endorse political candidates that align with their ideologies and preferences, as provided by the First Amendment.

Based on the foregoing, Intervenor CCDC respectfully submits that it should be permitted to intervene as a matter of right in this litigation.

## III.   ALTERNATIVELY, CCDC SHOULD BE PERMITTED TO INTERVENE PERMISSIVELY PURUSANT TO FED.R.CIV.P. 24(b)(1)(B).

In the alternative, CCDC respectfully requests that it be permitted to intervene

15

in this matter permissively.  Under Rule 24 permissive intervention is available upon timely application when a non-party "has a claim or defense that shares with the main action a common question of law or fact."   Fed.R.Civ.P. 24(b)(1)(B).  "Whether to grant permissive intervention under Rule 24(b) . . .  is within the discretion of the district court."   *Brody*, 957 F.2d at 1124.   "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed.R.Civ.P. 24(b)(3).

CCDC has defenses that share with the main action a common question of law or fact regarding the constitutionality of New Jersey's primary election system and the administration and application of New Jersey's election laws in facilitating primary elections.  These issues of fact and law are identical to those currently before this Court.  Permitting CCDC to intervene in this matter and protect its interest in ensuring that its freedom to associate with political candidates is safeguarded will advance the interests of efficiency and judicial economy.  Intervention by CCDC will not unduly delay or prejudice the adjudication of the original parties' rights as Defendants have not yet filed an Answer to Plaintiffs' Verified Complaint, dispositive motions have not been filed, and there has not yet been any disposition on Plaintiffs' Motion for Preliminary Injunction.  Therefore, it is appropriate for the Court to exercise its broad discretion to permit CCDC to intervene in this matter.

## IV.   PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

To prevail on a motion for a preliminary injunctive relief Plaintiffs must show "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Holland v. Rosen*, 277 F.Supp.3d 707, 724 (D.N.J. 2017).  "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.  The preliminary injunction must be the only way of protecting the plaintiff from harm." *Id.*

Plaintiffs take issue with the placement of candidates in respective columns. Plaintiff allege that New Jersey's "laws and practices on primary election ballot design confer specific advantages on candidates who received an endorsement from county party leadership . . . that nudges voters toward selecting these county line candidates."  *See* ECF No. 1, ¶ 7.  Conversely, Plaintiffs allege that "'off-line and unbracketed candidates who are often featured in a column by themselves or in a column with candidates with whom they did not bracket and with whom they do not share a slogan, are harder to find on the ballot, harder to know who they are running against and/or for what officer, and may otherwise appear less legitimate on the

ballot than the county line candidates." *Id.* ¶ 8.   Plaintiffs are wrong as to manner in which the ballots are struck in Camden County in years when United States Senate and New Jersey Gubernatorial elections are held.

In Camden County in a United States Senatorial or New Jersey Gubernatorial election year, all United States Senate candidates or New Jersey Gubernatorial candidates, regardless of whether they bracket or choose not to bracket with other candidates, are eligible for and have participated in the draw to appear in first position on the ballot.  Regardless of whether Plaintiff Andy Kim chooses to bracket or not, he is entitled to the same advantages as all other United States Senate candidates who choose to bracket in determining ballot position in Camden County.

Plaintiffs' argument that a "visual heuristic" drives voter decisions and choice is equally without merit.  Plaintiffs, relying on "statistical analysis" performed by Dr. Wang and Dr. Pasek, allege that the "display of information on a ballot can provide a visual heuristic which drives voter decisions and choice, 'mak[ing] it easier for a voter to make choices listed first, clustered near one another, and/or arranged in an orderly line." *Id.* ¶ 111.  Plaintiffs' reliance on "reports" that suggest that voters "may tend to rely on heuristics or low-information cues to reach conclusions" *id.* ¶ 116, or that the way information is displayed on a ballot can "tend to nudge voters toward particular choices," *id.* ¶ 112, is theoretical at best.  Plaintiffs' hypothetical conjecture cannot eliminate the constitutionally protected associational

rights afforded to CCDC as provided by the First and Fourteenth Amendments. *See Cal. Democratic Party v. Jones*, 530 U.S. at 574 ("the First Amendment protects 'the freedom to join together in furtherance of common political beliefs,' . . . which 'necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only."); *Eu*, 489 U.S. at 224 ("Barring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association.").

The ballot construct as applied in Camden County in United States Senate election years, which is the issue before this Court in this case, fully protects the Constitutional associational rights of the Camden County Democratic Committee while affording each candidate for the United States Senate the same opportunity to draw for ballot position. As such, the request for injunctive relief must be denied.

## CONCLUSION

For these reasons, Intervenor CCDC respectfully requests that its instant Motion to Intervene be granted and Plaintiffs' request for injunctive relief be denied.

Respectfully submitted,

**BROWN & CONNERY, LLP**
Attorneys for Intervenor, Camden
County Democratic Committee

Dated:  March 4, 2024          /s/ *William M. Tambussi*
William M. Tambussi
Alyssa I. Lott

19