CARBONE AND FAASSE
ATTORNEYS AT LAW
32 Pleasant View Drive
North Haledon, NJ 07508

JOHN M. CARBONE                                                                                                  201-394-7888
RALPH E. FAASSE (Dec'd)

March 5, 2024

Honorable Zahid N Quraishi,
U.S.D.C. of New Jersey
MLK Jr Federal Building
50 Walnut Street Newark, NJ 07101

Re:   **Kim, et al v. Hanlon, et al**
      **U.S.D.C. NJ  Docket No. 3-24-cv-01098**

Dear Judge Quraishi:

     This office represents Defendants Joseph Gerolo, in his official capacity as Atlantic County Clerk; Rita M. Rothberg, in her official capacity as Cape May County Clerk; Celeste M. Riley, in her official capacity as Cumberland County Clerk; James N. Hogan, in his official capacity as Gloucester County Clerk; Mary H. Melfi,, in her official capacity as Hunterdon County Clerk; and, Dale Cross, in his official capacity of Salem County Clerk.

     This letter brief and filed exhibits are submitted in opposition to the Preliminary Injunction being sought by Plaintiff Kim and others in this matter.

1

There are two (2) factual certifications being submitted in support of this opposition:

1. Hunterdon County Clerk Mary H. Melfi stating the inability to make changes at this late date and its deleterious effect if so ordered, together with two (2) Exhibits reflecting examples of prior election ballots;

2. Benjamin R. Swartz, the Principal State Certification Manager for Election Systems and Software, LLC ("ES&S) regarding the status and limitations of New Jersey's current election systems and the inability and preclusion to alter the current and traditional approved ballot layout of the ES&S machines and software to accommodate the relief being sought by Plaintiffs.

**Precis and Factual Statement**

Our clients will join in and adopt the factual statements, procedural histories, positions, and legal arguments before the Court as submitted on behalf of all other County Clerks.

Plaintiff Kim has known about these issues since September of 2023 and as found in his experts' reports, these experts were engaged, retained and opined as early as December of 2023.

Yet during all this time, endeavors and actions, Plaintiff Kim took no actions to advise, communicate, or raise these issues with the County Clerks or other election officials such that these matters may have been timely addressed.

Rather, Plaintiff Kim's public and political actions were to seek from all over the state endorsements, support, and bracketing with the democrat state, county and municipal political organizations and candidates which he continues to do even until this date.

Thus, Plaintiff Kim publicly created the appearance and perception that he was "playing by the rules" to use the historic and traditional placement and bracketing on the primary ballot with all the other democrat senate primary candidates.

Then, in February Plaintiff Kim surprisingly and without any expectation by the County Clerks, other election officials, other candidates, and both political parties, unleashes his silent secret scheme arriving at the Court house door seeking to have this Court compel all other U.S. Senate candidates and political entities to be ordered to "use" his ballot layout and arrangement.

If so ordered, it would resultantly compromise, forfeit, and foreclose all others to their statutory rights to the provisions of N.J.S.A. 19:49-2 and N.J.S.A. 19:23-26.1 for which most have planned and conducted their campaigns and alignments.

If this application were successful, it has the potential and possibility of disrupting the ongoing current election process, confuse voters late in this process and potentially ending up disenfranchising voters. The likelihood of confusion and disenfranchisement is very high. (Certification of Mary Melfi March 2, 2024 at para 9)

Moreover, the Certification of Benjamin R. Swartz, the Principle State Certification Manger of ES&S the provider and maintainer of State of New Jersey Secretary of State approved and certified voting machines used in 15 counties of New Jersey offers that these machines cannot be changed or modified as being sought.

> … were certified and tested using the current traditional ballot layout style. Any deviations from that style would need to be evaluated … any changes would require development, testing., and certification of a new/or updated version of the software. Such deviations could not be made and implemented prior to New Jersey's 2024 primary elections. (Certification of Benjamin R. Swartz March 4, 2024 at para. 8)

**POINT I: NEW JERSEY COUNTY CLERKS AND BALLOT DESIGN**

New Jersy County Clerks are not statutory officers but serve and derive their powers as Constitutional Officers, under the New Jersey Constitution, and for terms of five years. In their administration of the election laws, a County Clerk serves and functions as an umpire and not a player in the political process.

As the Court is well aware, an election merely culminates on a specific day but commenced many months before and is a process and series of processes not one singular event,

Long before the "day of the election" election officials and specifically the actions of the Clerks are to conduct, coordinate, communicate, and collaborate in actions and activities which become a confluence culminating in the election. Election officials and addressing specifically the

County Clerks address and receive nominating petitions, bracketing requests, ballot slogan designations, lists of party county committee persons, drawing for party and candidate ballot positions. Simultaneously they design, designate, print, and distribute the "ballots" for use in Vote By Mail, Emergency ballots, Sample ballots, etc.  The Clerks solicit specific types and sizes of paper for the machines and ballots, and. engage specialized printers to print the paper ballots. These are but some but not all actions in which the Clerk engages for an election.

The most demanding and detailed actions the Clerk is charged with the layout, design, candidate placement, public questions placement, candidate lines and bracketing to fit into the face and limited ballot geography of the various voting machines.

Similarly, political entities and candidates engage in activities from fund raising, party building, membership retention and recruitment, issue review, voter registration drives, candidate recruitment,  issue and opposition research, candidate screening and selection federal, state, county and municipal nominating conventions and meeting.

As we have previously advised this Court and parties, at this late date in the process, any actions sought by the Plaintiff Kim, considered by this Court or orders entered will have cascading and rippling effects on the election, officials, candidates and voters. Thus, we have already raised concerns about timing of actions, disruption of the ongoing election process and ultimately effect and impact on  the voters.

The statutes and case law of New Jersey make clear that the ballot is drawn and designed to assist the voters first and foremost, and not afford advantage or preference to candidates such as Plaintiff Kim. New Jersey courts have repeatedly identified the legislative policy in ballot design, layout and candidate  bracketing and affiliation is the voter: "…to permit voters to record their will, the ballot being so arranged that all voters may find their candidates with the least difficulty the total content of the ballot will permit."  Farrington v. Falcey, 96 N.J. Super. 409, 414 (App. Div. 1967). Thus this Court ultimately must balance the relief sought against the rights and protections afforded the voters and potential confusion, injury and disenfranchisement that granting this relief would place in motion at this late date by the grant of injunctive relief.

**POINT II: PLAINTIFFS SEEK THROUGH THIS PROCEEDING TO IMPOSE AN UNLAWFUL BALLOT DESIGN WHICH VIOLATES THE STATUTORY AND CONSTITUTIONAL RIGHTS OF ALL OTHER CANDIDATES AND POLITICAL ENTITIES.**

Plaintiff Kim, without joinder or notice to these interested and indispensable parties, seeks to violate and take away the U.S. Senate candidates of both political parties, all other candidates up and down the ballot statewide, and the recognized political parties their statutory and constitutional rights under N.J.S.A. 19:49-2 and N.J.S.A. 19:23 26.1. Plaintiff Kim seeks to force and compel these persons, entities, and political parties into his "vision" of a ballot layout and placement, ignoring and taking away their statutory ballot placement and bracketing rights through this application to the Court. Clearly this action and any resultant order would be forcing them into Kim's "procrustean bed."

The layout, design, bracketing and visual geography of elections ballots is controlled generally by N.J.S.A. 19:49-2 ("Official Ballots) and specifically for U.S. Senate Primary elections N.J.S.A. 19:23-26.1 ( "Primary Election for U.S. Senate and Governor")

The machine and election ballot arrangement and layout are centered around the "jointly filed" county wide candidates which are the offices of the County Commissioner, formerly the "Freeholder."

The Statute at N.J.S.A. 19:49-provides "..the jointly filed county wide candidates" speaking through their "campaign manager" approves and establishes who appears and does not appear on the joint count wide line. (Often mislabeled as the "County Line.") This statute provides; " Party nominations shall be arranged on each voting machine, either in columns or horizontal rows." Ibid.

Thus it is not the county political organization, not the county chair, not the county committee, not the municipal chairpersons, not the county political leaders, or candidates themselves who are empowered to set the ballot layout and bracketing.

Under New Jersey law, the County Commissioner candidates are the only defined who are (l) "jointly" (2) "filed candidates" (3) "countywide". The County Surrogate and Sheriff are singular offices and cannot be joint. Thus the "jointly filed candidates are the "hub" of the wheel for line creations, joining, placement and ballot order (more than one). And is clear, Plaintiff Kim is not amongst those empowered to act in these instances.

New Jersey primary candidates for Governor and Senator have a specific statute for their primary ballot placement and candidacy. [1] While not the exclusive manner and method of appearance on the ballot, since they can also bracket with the "party line" , it is mandatory for the County Clerks to apply this statute to the ballot design, placement and arrangement for primary candidates for Governor and U.S. Senate.

Specifically applicable here are the provisions of is N.J.S.A. 19:23-26.1 "Primary Election for U.S. Senate and Governor " which provides that those candidates are ."printed on the official primary ballot in the first column or horizontal row designated for the party of those candidates."

This statute states and mandates at N.J.S.A. 19:23-26.1 "Primary election for U.S. Senate and Governorship; placement of names of candidates on ballot:

> In the case of a primary election for the nomination of a candidate for the office of United States Senator and in the case of a primary election for the nomination of a candidate for the office of Governor, the names of all candidates for the office of United States Senator or Governor shall be printed on the official primary ballot in the first column or horizontal row designated for the party of those candidates. In the event that the nomination of candidates for both offices shall occur at the same primary election, the names of all candidates for the office of United States Senator shall be printed in the first column or horizontal row designated for the party of those candidates, and the names of all candidates for the office of Governor shall be printed in the second column or horizontal row. No candidate for nomination for any other office shall have his name printed in the same column or horizontal row as the candidates for nomination for the office of United States Senator or Governor

This issue and statute were addressed on an expedited basis by the New Jersey Superior Court, Appellate Division in <u>Andrews v. Rajoppi et al</u>, (New Jersey Superior Court. Appellate Division Doc. A-4005-07 (April 28th 2008) 2008 N.J. Super Unpub. LEXIS 1111,), (cert denied)

---

[1] Neither Plaintiff Kim or his counsels have addressed this issue and its application to these proceedings.

There the Appellate Court on an expedited basis dealt with the application of a Democrat congressional primary campaign candidate and the demands on ballot placement.

 There the court found and reported:

> Plaintiff Robert Andrews, one of three candidates for the Democratic nomination for United States Senator in the June 3, 2008 primary, filed this action seeking relief regarding the design of the ballots to be used for the primary. The dispute at hand arose because the county clerks permitted candidates for other offices to be bracketed with senate candidates and because the county clerks differed in the manner in which they treated senate candidates who requested bracketing and those that did not. P. 3
>
> This portion of the statute requires, as relevant here, that senate candidates be listed either in the left vertical column or the top horizontal row (depending upon the type of ballot used). P. 4
>
> Stated differently, the intent and spirit of the statute require the senate candidates to be listed in the same first column or same first row, but not in the manner adopted by counties such as Somerset. P. 4
>
> The Court in <u>Schundler v . Donovan</u>, articulated that the First Amendment protects the free speech and associational rights of every candidate in a primary election to declare a ballot affiliation with any other candidate or cause, or to designate his or her choice not to affiliate. 377 N.J. Super. 339, 348 (App. Div. 2005).As we held in Schundler, the linchpin of the legislative scheme, to "the extent physical constraints allow," is "equality of treatment among candidates for the same office." 377 N.J. Super. at 348. P.4.

 This case provides guidance and direction for this Court and would support the denial of this application.

**POINT III ARE ALL THE NECESSARY AND INDISPENSABLE PARTIES AWARE OF THIS PROCEEDING AND NAMED TO PROTECT THEIR INTERESTS?**

 Plaintiff Kim and his counsel in this long-delayed application have still not served, named, brought in, or noticed, all those persons and entities who have an interest effected and who have a right to be heard on this relief. Whether the political parties, other candidates up and down the ballot, or voter interest groups Plaintiff Kim has but singularly and solely sought his own political concerns and benefits.

 Thus there has been a failure to join many indispensable parties pursuant to <u>FRCP</u> Rule 19. "Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular

party is compulsory." Gen. Refractories Co. v. First State Ins. Co., 500 F. 3d 306, 312 (3d Cir. 2007). Tullett Prebon PLC v. BGC Partners, Inc., 427 F. App'x 236, 239 (3d Cir. 2011) This alone should cause this Court to deny the injunctive relief.

**POINT IV    JUDICIAL INTERVENTION AND DISRUPTION OF THE ONGOING ELECTORAL PROCESS IS TO BE AVOIDED CLOSE TO AN ELECTION**

The focus of the law in elections and this Court should be "[P]reserving the integrity" of elections is "indisputably . . . a compelling interest." Eu v. San Francisco Cty. Dem. Cent. Comm., 489 U.S. 214, 231 (1989). Maintaining "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." Purcell v. Gonzalez, 549 U.S. 1, 4 (2006).

Judicial intervention into this Senate Primary election process so close to the closing days of the elections is not encouraged and is eschewed. This is ensured by courts denying disruptive and untimely applications for judicial intervention into an election process which is well underway and long known to the dallying Plaintiff Kim.

As enunciated by the U.S. Supreme Court, the "Purcell Principle" holds that courts should not change election rules during the period of time just prior to an election because doing so could confuse voters and create problems for officials administering the election. The principle takes its name from Purcell v. Gonzalez, in which the Supreme Court reversed an October 2006 decision of the U.S. Court of Appeals for the 9th Circuit blocking an Arizona voter ID law during that year's midterm election, seeking to protect the public and their expectations enshrined in what they have done or been told previously. ("Court orders affecting elections ... can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase.") Purcell, supra. pp. 4-5 The dangers and disruption of judicial intervention have been well identified by the Court.

Thereafter the U.S. Supreme Court in R<u>epublican National Committee, et al. v. Democratic National Committee, et al.</u> , 140 S. Ct. 1205, 1207 (2020) ) re-asserted and re-affirmed the "Purcell Principle." The "Purcell Principle" which looks to protect the rights of the voter, where there is held to be a presumption against last-minute changes to election procedures. The issue was that one day prior to Wisconsin's April primary election, the Supreme Court blocked a district court ruling issued five days before the election that extended the deadline for submitting absentee ballots. The district court based its decision on an immense backlog of absentee ballot requests due to concerns about voting in person during the coronavirus pandemic. Local election officials were unable to process the unprecedented volume of requests that were timely under state law. Citing Purcell, the Supreme Court found that the district court should not have changed the election rules in the specific way that it did so close to the election. see also <u>Democratic Nat'l Comm. v. Wis. State Legislature</u>, 141 S. Ct. 28, 28 (2020) (mem.) (Roberts, C.J., concurring) (staying judicial intervention "in the thick of election season").

And as found by our court in this district in <u>Democratic-Republican Org. of N.J. v. Guadagno</u>, 900 F. Supp. 2d 447, 461 n.8 (D.N.J. 2012) "As in many elections related cases, timing is critical.... At this late state in the election process, any injunctive remedy ordered by this Court would dramatically upset ongoing ballot printing and distribution." (see also <u>Tex. Democratic Party v. Abbott</u>, 961 F.3d 389 (5th Cir. 2020); <u>Public Interest Legal Foundation v. Boockvar</u>, 495 F. Supp. 3d. 354, 356 (M.D. Pa. 2020) denying relief sought two- and one-half weeks before a national election "…because Plaintiff waited until the eleventh hour to file this suit."

As held in this district in a matter similar to this pending application, we are offered a reported case which should be the "pole star" guidance for the Count in this matter. The Honorable Gerald John Pappert, USDC E.D. Pa characterized a similar disruptive judicial application for last minute changes to the election process. As found by Judge Pappert, "Here the Plaintiff elected to file its suit on the eve of the national election. There was no need for this judicial fire drill and Plaintiffs offer no reasonable explanation or justification for the harried process they created." <u>Republican Party of Pa. v. Cortes</u> , 218 F.Supp. 3d 396, 405 (E.D. Pa. 2016)p. 405 .

The holding of Judge Pappert is most applicable here and in support of denial of this

9

pending application:

> There is good reason to avoid last-minute intervention in a state's election process. Any intervention at this point risks practical concerns including disruption, confusion or other unforeseen deleterious effects. See City of Philadelphia, 2006 WL 3922115, at *2 (citing Purcell, 549 U.S. at 5, 127 S.Ct. 5). Comity between the state and federal governments also counsels against last-minute meddling. Federal intervention at this late hour risks "a disruption in the state electoral process [which] is not to be taken lightly." Id. (quoting Page v. Bartels, 248 F.3d 175, 195-96 (3d Cir. 2001)). "This important equitable consideration goes to the heart of our notions of federalism." Id. Pp. 404-405

## **CONCLUSION**

Plaintiff Kim by his own pleadings before the Court has for months been engaged in his re-election effort seeking endorsements, support of local and county political organizations, and bracketing with their county lines. As offered in the factual statement filed by Genova Burn for the Union County Clerk, Plaintiff Kim has dilled and dallied in this filing, having known of this issue in September of 2023, engaged the experts in December of 2024, and only seeks judicial intervention in February 2024. Kim's inaction and should bar any interim relief. Yet now after those efforts and the entry of other candidates into the process, he seeks not to tinker and tweak the process but tear and tumble down the process he participated in and sought the benefits for his candidacy. This hearing mandates the application of the principle of "Petitio Principii" or in colloquial terms "Where has he been?'

Respectfully submitted,

John M. Carbone

CC:   All Counsel of record (PACER) and E-mail/