Paul Kaufman, Esq. (Id No. 003011974)
Jaime R. Placek, Esq. (Id No. 041071996)
Jason S. Nunnermacker, Esq. (Id No. 034212003)
**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
61 South Paramus Rd., Suite 250
Paramus, New Jersey 07652
T: (201) 928-1100
jnunnermacker@decotiislaw.com
*Attorneys for Defendant John S. Hogan, Bergen County Clerk*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| ANDY KIM, et al., | : UNITED STATES DISTRICT COURT FOR : THE DISTRICT OF NEW JERSEY |
| Plaintiffs, | : CIVIL ACTION NO.: 3:24-cv-01098-ZNQ- : TJB |
| v. | : |
| | : CIVIL ACTION |
| CHRISTINE GIORDANO HANLON, et. al.., | : : |
| | : |
| Defendants. | : |
| and | : : |
| DALE A. CROSS, et. al. | : : |
| As interested parties, | : : |

---

**BERGEN COUNTY CLERK JOHN HOGAN'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S EMERGENCY APPLICATION FOR INJUNCTIVE RELIEF**

---

**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
*Attorneys for Defendant John S. Hogan in his official capacity as Bergen County Clerk*

On the brief:  Paul Kaufman, Esq.
              Jaime R. Placek, Esq.
              Jason S. Nunnermacker, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................................1

PROCEDURAL HISTORY ............................................................................................................2

LEGAL ARGUMENT ....................................................................................................................2

I.    ALL LOCAL AND STATE-WIDE POLITICAL ORGANIZATIONS AND "DOWN THE
      BALLOT" CANDIDATES ARE CLEARLY EFFECTED BY ANY RULING BY THE
      COURT AND THEREFORE MUST BE JOINED AS PARTIES.............................................2

II.   PLAINTIFFS OUTRIGHT FAIL TO SATISFY THE LOFTY INJUNCTIVE STANDARD
      OF FED. R. CIV. P 65 ........................................................................................................6

      A.   PLAINTIFFS CANNOT ESTABLISH REASONABLE PROBABILITY OF......................8

      SUCCESS ON THE MERITS ..............................................................................................8

      B.   PLAINTIFFS HAVE NOT ESTATBLISHED IMMINENT IRREPERABLE ..................12

      HARM................................................................................................................................12

      C.   PLAINTIFFS ALSO FAIL TO SATISFY THE TWO REMAINING
      ELEMENTS FOR THEIR INSTANT EXTRAORDINARY REQUEST FOR RELIEF ..........17

III.  PLAINTIFFS PREFERRED BALLOT MAY VIOLATE THE FIRST AMENDMENT OF
      OTHER CANDIDATES .....................................................................................................19

IV.   THE CLERKS' DUTIES OF THE CLERKS AS TO BALLOT DESIGN ARE PURELY
      MINISTERIAL ..................................................................................................................21

CONCLUSION .............................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

<u>Acierno v. New Castle Cty.,</u>
   40 F. 3d 645 (3rd Cir. 1994) ........................................................................................ 6

<u>Adams v. Freedom Forge Corp.,</u>
   204 F. 3d. 475, 488 (3rd Cir. 2000) ........................................................................ 7, 15

<u>Allegheny Energy, Inc. v. DQE, Inc.,</u>
   171 F.3d 153 (3d Cir.1999) ......................................................................................... 7

<u>Am. Express Travel Related Servs. v. Sidamon–Eristoff,</u>
   669 F.3d 359 (3d Cir.2012) ......................................................................................... 7

<u>Ammond v. McGahn,</u>
   <u>532 F.2d 325 (3d Cir. 1976)</u> ...................................................................................... 12

<u>Anderson v. Celebrezze,</u>
   460 U.S. 780 (1983) .................................................................................................. 16

<u>Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP,</u>
   528 F.3d 176 (3d Cir. 2008) ........................................................................................ 8

<u>Burdick v. Takushi,</u>
   504 U.S. 428 (1992) .................................................................................................. 16

<u>Cohen v. UMDNJ,</u>
   240 NJ Super 188 (Ch. Div. 1989) ........................................................................... 22

<u>Cont'l Grp., Inc. v. Amoco Chems. Corp.,</u>
   614 F.2d 351 (3d Cir. 1980) ...................................................................................... 15

Democratic-Republican Org. of N.J v. Guadagno,
　900 F. Supp. 2d 447 (DNJ 2012) ................................................................. 17

Doe v. Matthews,
　420 F. Supp. 865 (1976) ............................................................................... 3

Doe v. Reed,
　561 U.S. 186 (2010) ..................................................................................... 18

EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.,
　2006 WL 892718 (2006) .............................................................................. 12

Eu v. San Francisco Democratic Central Committee,
　489 U.S. 214 (1989) ..................................................................................... 19

Freixenet, S.A. v. Admiral Wine & Liquor Co.,
　731 F.2d 148 (3d Cir.1984) ........................................................................... 7

Gen. Refractories Co. v. First State Ins. Co.,
　500 F. 3d 306 (3rd Cir. 2007) ....................................................................... 3

Gillen v. Sheil,
　174 N.J. Super. 386 (Law Div., 1980) ......................................................... 19

Hawkes v. Gates,
　129 N.J.L. 5 (1942) ....................................................................................... 9

Holiday Inns of America, Inc. v. B & B Corporation,
　409 F.2d 614 (3d Cir. 1969) ......................................................................... 12

Hoxworth v. Blinder, Robinson & Co.,
　903 F.2d 186 (3d Cir. 1990) ........................................................................... 7

In re Arthur Treacher's Franchisee Litigation,
　689 F.2d 1137 (3d Cir.1982) ......................................................................... 7

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
    882 F.2d 797 (3d Cir.1989) ........................................................ 6


Ivy Hill Park v. PLIGA,
    221 NJ Super 131 (App. Div. 1987)........................................... 22


Leblanc-Sternberg v. Fletcher,
    763 F. Supp. 1246 (S.D.N.Y. 1991)............................................ 4


Mazurek v. Armstrong,
    520 US 968 (1997)...................................................................... 6


Morton v. Beyer,
    822 F.2d 364 (3d Cir.1987) ........................................................ 7


Nader v. Schaffer,
    417 F. Supp. 837 (D. Conn.) ............................................... 18, 20


Pharmacia Corp. v. Alcon Laboratories, Inc.,
    201 F. 2d 335 (DNJ 2002)........................................................ 12


Quaremba v. Allan,
    67 N.J. 1 (1975)........................................................................ 10


Relly v. City of Harrisburg,
    858 F.3d 173 (3d Cir. 2017) ................................................ 7, 17


Republican Party of PA. v. Cortez,
    218 F.Supp. 3d 396 (E.D. Pa. 2016).......................................... 15


Richardson v. Caputo,
    46 N.J. 3 (1965)........................................................................ 10


Saban Entm't,
    60 F. 3d 27 (2nd Cir. 1995) ........................................................ 6

Smith v. Penta,
   85 N.J. 65 (1979) .................................................................................................... 18


Sooy v. Gill,
   340 NJ Super 401 (App. Div. 2001) .................................................................. 1, 22


Talbert v. Corizon Medical,
   605 F. App'x 86 (3d Cir. 2015) .............................................................................. 7


Tomasin v. Quinn,
   150 NJ Super. 593 (Law Div. 1997) .................................................................... 22


United States v. Spectro Foods Corp.,
   544 F.2d 1175 (3d Cir. 1976).................................................................................. 8


Warner Lambert Co. v. McCrory's Corp.,
   718 F. Supp. 389 (D.N.J.1989).............................................................................. 12


Winter v. Natural Res. Def. Council, Inc.,
   555 U.S. 7 (2008) .................................................................................................... 7

Statutes

N.J.S.A 19:49-2 ............................................................................................... passim
N.J.S.A 19: 49 ............................................................................................................ 17

Rules

Fed. R. Civ. P. 4.......................................................................................................... 5
Fed. R. Civ. P. 19............................................................................................... 1, 3, 5
Fed. R. Civ. P. 19(a) ................................................................................................... 3
Fed. R. Civ. P. 19(c).............................................................................................. 3, 5
Fed. R. Civ. P. 65(a) ................................................................................................... 6
FED. R. Civ. P 65................................................................................................... ii, 6

## PRELIMINARY STATEMENT

Plaintiffs Andy Kim, Sarah Schoengood, and Carolyn Rush, together with their corresponding campaign committees (collectively, "Plaintiffs"), have filed a 376-page 11th hour Verified Complaint ("Complaint") and Application for Preliminary Injunction ("Application") against nineteen (19) of the twenty-one (21) County Clerks in the State of New Jersey (collectively, "Clerks"), including Bergen County Clerk John Hogan. The Application aims to prevent the use of a ballot design in New Jersey's June 4, 2024, Primary Election, the same ballot design that has been in use for over eighty (80) years pursuant to N.J.S.A 19:49-2.  Plaintiffs argue that this Primary Election ballot design unconstitutionally favors a slate of candidates preferred by county political party leadership known as the "county line," allegedly resulting in non-favored candidates facing significant obstacles to fair competition in their Primary Election races.

As set forth in detail below, Plaintiffs' Application is not merely one for preliminary restraints (restraining the Clerks from utilizing the Primary Election ballot designed pursuant to N.J.S.A 19:49-2), but one for a mandatory injunction seeking to compel the Clerks to affirmatively take action to design and issue ballots in their respective counties that are Plaintiffs' preferred design.

As such, the Application is subject to a heightened level scrutiny than the widely known Crowe standard.  Regardless of the level scrutiny, the Application should be denied as i) Plaintiffs fail to name indispensable parties in violation of Fed. R. Civ. P. 19; ii) the Clerks have no discretion as to the design of the ballot under N.J.S.A 19:49-2 and Sooy v. Gill, 340 NJ Super 401 (App. Div. 2001); iii) Plaintiffs do not meet the heightened "gateway factors" that this Court must employ in weighing the Application; and iv) if the Application were to be granted, it may result in the

1

violation of other candidates' First Amendment rights of association who choose to be associated ("bracketed") together on the Primary Election ballot.

## **PROCEDURAL HISTORY**

Plaintiffs filed their Complaint on February 26, 2024 (ECF No. 1) with the accompanying Application. (See ECF No. 6). Therein, Plaintiffs suggested a hasty briefing schedule with the Clerk's opposition papers due by March 6, 2024; applications for intervention, with supporting papers, due by March 6, 2024; plaintiffs' reply papers due March 12, 2024; and a return date for the Application on April 1, 2024.

On February 29, 2024, the Court held a telephonic conference addressing the briefing schedule and hearing date for the Application.  The Court adopted Plaintiff's swift briefing schedule, although, as specifically set forth below, Plaintiff Kim announced his candidacy in September 2023 providing him five (5) months to prepare and file the instant suit, the Clerks were provided only six (6) days to a) review the over 350-page Complaint; b) review the over-length submitted in support of the Application and c) file their own briefs in opposition.

A hearing on the Application is scheduled on March 18, 2024.

## **LEGAL ARGUMENT**

### I. **ALL LOCAL AND STATE-WIDE POLITICAL ORGANIZATIONS AND "DOWN THE BALLOT" CANDIDATES ARE CLEARLY EFFECTED BY ANY RULING BY THE COURT AND THEREFORE MUST BE JOINED AS PARTIES**

Every candidate in the State of New Jersey, from Senatorial candidate to county committee, have a state in this case and have a right to be heard and participate as indispensable parties. In Bergen County, alone, there are approximately 2,300 form of ballots each with multiple candidates.

"Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory."  Gen. Refractories Co. v. First State Ins. Co., 500 F. 3d 306, 312 (3rd Cir. 2007).  Fed. R. Civ. P. 19(a) states:

> (1) Required Party.  A party who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i)    as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii)   leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest.
>
> (2) **Joinder by Court Order.**  If a person has not been joined as required, **the court must order** that the person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Additionally, Fed. R. Civ. P. 19(c) requires that Plaintiffs were to state:

> (1) the name, if known, of any person who is required to be joined if feasible but is not joined; and
>
> (2) the reasons for not joining that person.

Moreover, the United States District Court, District of New Jersey, has held that "the failure to join an indispensable party" requires the dismissal of an injunctive application.  Doe v. Matthews, 420 F. Supp. 865, 870 (1976).  Similarly, the Southern District of New York denied a preliminary injunction application to enjoin a local election as "Plaintiffs run into immediate problems because the complaint does not name these people as defendants and they are, therefore,

not before this court…this alone would seem to require that the preliminary injunction be denied." Leblanc-Sternberg v. Fletcher, 763 F. Supp. 1246, 1249 (S.D.N.Y. 1991).

Plaintiff's Application is noteworthy not simply because a) it seeks to invalidate a statute that has been on New Jersey's books since 1940 (previously surviving judicial scrutiny) and b) Plaintiffs clearly waited several months to spring the Application upon the Clerks at the proverbial 11th hour, but it is also notable as to what is absent from the Application: over 1,000 defendants making up the candidates and state/local political organizations who are directly impacted by the June 4, 2024, Primary Election ballot, both Republican and Democrat.

There are several candidates throughout the state on the June 4, 2024, Primary Election ballot who will be directly impacted by this Court's decision as to the instant Application, including but certainly not limited to Plaintiff Kim's primary opponent, Tammy Murphy[1]. Further, while perhaps the office of United States Senator (Plaintiff Kim's sought-after office) or United States House of Representatives are the more-high profile, there are also primary elections for county commissioner, and county sheriff. There are also elections for municipal county committee men and women (the individuals who actually vote at the conventions that Plaintiffs now seek to make superfluous[2]). While Plaintiffs here focus on the Democrat Primary Ballots, Republican candidates are equally impacted.

Each of New Jersey's twenty-one counties have political organizations, Democrat, Republican and perhaps other lesser-known affiliations, who have a stake on the ballot design, especially since Plaintiffs seek to infringe upon their First Amendment rights of association by disallowing them to be "bracketed" together on the June 4, 2024, Primary Election ballot.

---

[1] The United States Senate race is highlighted here simply because it is the only one of Plaintiffs' respective election races that are relevant to Bergen County.
[2] Contrary to Plaintiffs' allegations, most counties have party delegates (themselves up for election every two years) that attend an open convention to vote in secret ballot to determine that County party's endorsed candidate.

Plaintiffs' Complaint violates <u>Fed. R. Civ. P</u>. 19 in two material ways. First, Plaintiffs do not "join" all parties with a true interest in this matter. Second, Plaintiffs fail to comply with <u>Fed R. Civ. P</u>. 19(c) by failing to state the names of all those individuals/ organizations not joined and the reasons for not joining.

Without all the candidates – United States Senate, United States House of Representatives, county sheriff candidates, county commissioner candidates, municipal candidates, and potentially others-who are on the June 4, 2024, Primary Election ballot, this Court cannot enter "complete relief" as to all parties who have an interest in this litigation. These individuals, their respective campaign organizations, local county and municipal political party organizations are all entitled to submit opposition to Plaintiffs' current attempts to invalidate an 80-plus year statute and whose own constitutional rights "hang in the balance."

It is worth repeating and highlighting, Plaintiffs do not seek to limit/deprive the Clerks' respective constitutional rights on June 4, 2024, as set forth in Section III below, they seek to infringe upon the First Amendment rights of every candidate who chooses to be bracketed on the Primary Election ballot.

Briefly, while the Court did provide a short time-period for those candidates and organizations to intervene, there is nothing in Plaintiffs' pleading and/or on the Court's docket reflecting that service of Plaintiffs pleadings and the Application were served on any of these other indispensable parties as required by <u>Fed. R. Civ. P</u>. 4. Certainly, without notice of Plaintiffs' filing and this Court's hearing on March 18, 2024, it is entirely inequitable, unfair and unreasonable to thwart the due process rights of several non-joined defendants.  Plaintiffs and this Court, respectfully, should not assume that everyone with an interest in the outcome of the instant Application has been made aware of it.  Respectfully, the Federal Rules of Civil

Procedure requirements for process, and indeed, the Due Process rights of the United States

Constitution, exist to provide all parties that may be prejudiced by a decision in a Court of Law

with ample and meaningful time to appear and take a position. Here, that has not been done.

Therefore, this Court must either deny the Application out right or adjourn the March 18,

2024 hearing date so that Plaintiffs can properly amend their pleadings to identify all individuals,

campaigns, and party organizations who are directly affected by this Court's decision effecting

the June 4, 2024, Primary Election.

## II.   PLAINTIFFS OUTRIGHT FAIL TO SATISFY THE LOFTY INJUNCTIVE STANDARD OF FED. R. CIV. P 65

The United States Supreme Court has determined "a preliminary injunction is an

**extraordinary and drastic remedy**, one that should not be granted unless the movant, by a clear

showing, carries the burden of persuasion."   Mazurek v. Armstrong, 520 US 968, 972

(1997)(emphasis added).   There are two types of injunctions.   A "prohibitory injunction," which

is the most common, seeks "the status quo until a decision on the merits of a case is rendered."

Acierno v. New Castle Cty., 40 F. 3d 645, 647 (3rd Cir. 1994).  Conversely,

> An injunction is mandatory if the injunction will either (1) 'alter the status quo by
> commanding some positive act' or (2) provide the moving party with 'substantially
> all the relief sought and that relief cannot be undone even if the defendant prevails
> at a trial on the merits.'
>
> [Coast to Coast Entm't, LLC v. Coastal Amusements, Inc. No. 05-3977
> 2005 WL 7979273, *9, (DNJ 2005) quoting Tom Doherty Assocs v.
> Saban Entm't, 60 F. 3d 27, 33-34 (2nd Cir. 1995)].

Fed. R. Civ. P. R. 65(a) governs a Federal Court litigant's request for preliminary

injunctions, whether "prohibitionary" or "mandatory." Instant Air Freight Co. v. C.F. Air Freight,

Inc., 882 F.2d 797, 799 (3d Cir.1989).   As such, federal courts determine whether a preliminary

injunction is warranted based upon four factors: (1) whether the moving party has a reasonable

6

probability of success on the merits; (2) whether the moving party will suffer irreparable harm in the absence of preliminary relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Am. Express Travel Related Servs. v. Sidamon–Eristoff, 669 F.3d 359, 366 (3d Cir.2012). No one factor will require granting relief. Rather, a district court "should endeavor to balance these four factors to determine if an injunction should issue." Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir.1999).

Although all the factors are relevant, two are critical. A court may not grant injunctive relief, "regardless of what the equities seem to require," unless plaintiffs carry their burden of establishing both a likelihood of success and irreparable harm. Adams, 204 F.3d at 484; accord Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d Cir. 1990) (holding "[w]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." (quoting In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir.1982)); Morton v. Beyer, 822 F.2d 364, 367 (3d Cir.1987); Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148, 151 (3d Cir.1984); American Express, supra, 669 F.3d at 366, 374.

Simply, the likelihood of prevailing on the merits and the potential for serious harm looms large in this analysis and are, in essence, "gateway factors." Relly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017). As such, an applicant's failure to satisfy these two pivotal elements obviates a court's examination of the remaining two factors and results in a summary denial. See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 21 (2008) (holding it was error to hold that the "possibility" of irreparable harm, as opposed to "likelihood," was sufficient, even in conjunction likelihood of success on the merits); Talbert v. Corizon Medical, 605 F. App'x 86, 87-

7

88 (3d Cir. 2015) (summarily affirming denial of preliminary injunction based on lack of irreparable harm).

Notably, as Plaintiffs seek here, "where the relief ordered by the preliminary injunction is mandatory and **will alter** the *status quo*, the party seeking the injunction must meet a **higher standard** of showing irreparable harm in the absence of an injunction." Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP, 528 F.3d 176, 179 (3d Cir. 2008) (internal citation omitted)(emphasis added).

To that end, mandatory preliminary injunctions, such as compelling a new Primary Ballot design **after 80 years**, should be granted most "sparingly." United States v. Spectro Foods Corp., 544 F.2d 1175, 1181 (3d Cir. 1976).

As further set forth below, as Plaintiffs mightily fail to establish the "gateway" factors and in no way present any evidence to justify upheaving the 80-year *status quo*, Plaintiffs' Application must be denied.

## A.   PLAINTIFFS CANNOT ESTABLISH REASONABLE PROBABILITY OF SUCCESS ON THE MERITS

The first "gateway factor" Plaintiffs must satisfy is likely success of the merits. Plaintiffs cannot do so at this matter's infancy as a) they seek to overturn a statute in existence for 80-plus years that has previously survived judicial scrutiny and b) this Court has already held that discovery is needed before it can determine the constitutionality of the current ballot design mechanism of NJSA 19:49-2.

### 1.   NJSA 19:49-2 Has Passed Constitutional Muster for Over 80 Years

N.J.S.A. 19:49-2 provides, in pertinent part:

For the primary election for the general election in all counties where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation

8

or slogan shall be drawn for position on the ballot **as a unit and shall have their names placed on the same line of the voting machine**; and provided further, that all candidates for municipal or party office in municipalities in counties where voting machines are or shall be used who shall file a petition with the clerk of their municipality bearing the same designation or slogan as that of the candidates filing a joint petition with the county clerk as aforesaid, may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, **the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid**; provided, also, that any candidate filing a petition with the Attorney General may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions, and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid.

[emphasis added]

In reviewing this statute, the New Jersey Supreme Court held nearly 80 years ago, the Clerks' discretion is simply to the structure of the ballot placement between bracketed candidates and independent candidates. Hawkes v. Gates, 129 N.J.L. 5 (1942). There is absolutely no discretion to "unbracket" candidates. The New Jersey Supreme Court, over 20 years following its decision in Hawkes, opined that "it is not for a court to choose one of several reasonable courses, for that choice is precisely what the Legislature left to another" – that being the county clerks – and the New Jersey Supreme Court went on to declare that it would only act "if it clearly appears

the course taken [by the county clerk] is not rooted in reason." <u>Richardson v. Caputo</u>, 46 N.J. 3, 9 (1965).

Plaintiffs cannot dispute that the Legislature unquestionably has the power to implement sensible rules for managing Primary and General elections. As stated in <u>Quaremba v. Allan</u>, 67 N.J. 1 (1975), "[t]here can be no doubt about the authority of the Legislature to adopt reasonable regulations for the conduct of primary and general elections. Such regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses." <u>Quaremba</u>, p. 11.

Exactly analogous to this Application, the plaintiff in <u>Quaremba</u> sought to the change the procedures required by <u>N.J.S.A.</u> 19:49-2 to the creation of a single column structured ballot where all candidates running for a specific office would be grouped together, regardless of any affiliation with other candidates for other offices (exactly as these Plaintiffs now desire).

The New Jersey Supreme Court, following its review of the proposal of plaintiff in <u>Quaremba</u>, held there was "no merit" to the contention of plaintiff that ballot structure should be changed to that as presented by the plaintiff. Further, a separation on the ballot of names of those candidates who were affiliated would in fact be contrary to the legislative purpose of <u>N.J.S.A.</u> 19:49-2. <u>Id.</u>, p. 6. The New Jersey Supreme Court concluded that "nothing in the challenged section inhibits any voter from voting for any candidate of the voter's choosing or in any way limits the rights of any individual to run as a candidate for public office." <u>Id.</u>, p. 11.

The assertion of Plaintiffs here that ballot position resulting from the procedures followed by the Bergen County Clerk pursuant to <u>N.J.S.A.</u> 19:49-2 somehow treats them unfairly ignores the fact that all candidates for any office appearing on a County of Bergen Primary Election ballot are placed in the same ballot row. All candidates are on the ballot in the same font type and size.

**2.    This Court Has Already Recognized that the Parties are Entitled to Discovery Before any Decision is Made as to the Constitutionality of the Ballot Design Mechanism of <u>NJSA</u> 19:49-2**

As Plaintiffs are very much aware, currently pending before this Court is <u>Conforti, et. al v. Hanlon, et. al</u>., Case No.: 3:20-cv-08267 where those plaintiffs also challenge the constitutionality of NJSA 19:49-2 ("Conforti Case").  The plaintiffs in the Conforti Case sought political office in their respective primaries failing to obtain "the line" on the primary ballot.  The plaintiffs in the Conforti Case cite to the same purported expert opinions advance the same constitutional arguments as now these Plaintiffs.  While addressing a motion to dismiss, this Court determined "[I]n this case, Plaintiffs' burdens and the State's interests are factual and may require discovery. Depending on further factual findings, **the state's interests may be sufficiently compelling to pass muster under the relevant Constitutional tests**."  <u>Conforti, et. al v. Hanlon, et. al</u>., Case No.: 3:20-cv-08267, Court's Motion to Dismiss Written Opinion May 31, 2022, Document 111, Page ID 1292 (emphasis added).

Notably, this Court has already recognized the ballot design procedure "may be sufficiently compelling to pass muster under the relevant Constitutional tests."  This, alone, cripples Plaintiffs' attempt to establish likely success on the merits at the infancy of this matter.  Moreover, the Court recognized that the parties should have the right to discovery before the Court determines constitutional muster. However, the Clerks have not been provided any opportunity for such, including but not limiting to deposing the several experts that it appears Plaintiffs will rely upon at the hearing.

Therefore, Plaintiffs simply cannot establish that they will be successful at the trial of this matter.

**B.     PLAINTIFFS HAVE NOT ESTATBLISHED IMMINENT IRREPERABLE HARM**

The requisite for injunctive relief has been characterized as a "clear showing of immediate irreparable injury," Ammond v. McGahn, 532 F.2d 325, 329 (3d Cir. 1976), or a "presently existing actual threat; (an injunction) may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." Holiday Inns of America, Inc. v. B & B Corporation, 409 F.2d 614, 618 (3d Cir. 1969).

Here, while Plaintiffs ignore their own dilatoriness[3] in filing the instant Application and their sheer speculation that they will in fact be injured as result of the Primary Election ballot design (these Plaintiffs may very well win their respective primaries), as outlined in Section IV, Plaintiffs preferred design ballot infringes upon the First Amendment rights of those candidates who do desire to be bracketed together consistent with 80-year *status quo* governing primary elections in this State.

**1.     This Court Cannot Ignore That it Was Plaintiffs' Own Incredible Delay in Filing This Matter That Has Now Caused Any Sense of Urgency**

"Where a Plaintiff delays in seeking preliminary injunctive relief, such delay is evidence that speedy relief is not needed." EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp., 2006 WL 892718, *12 (2006). *(see also* Warner Lambert Co. v. McCrory's Corp., 718 F. Supp. 389, 395 (D.N.J.1989) a seven month delay from notice of injury to filing suit "is otherwise significant enough to affect plaintiff's demonstration of irreparable harm"; Pharmacia Corp. v. Alcon Laboratories, Inc., 201 F. 2d 335, 382 (DNJ 2002) "Any claim to irreparable injury is undercut by its lengthy and inexcusable delay in bringing this action for preliminary injunctive

---

[3] Plaintiff Kim waited from September 2023 to the last week of February 2024 to file suit.  Why?

relief. This delay is separate but equally dispositive basis, apart from the weakness of Pharmacia's case on the merits, for denying Pharmacia's motion for preliminary injunction.")

Here, Plaintiffs' own verified pleadings belie their request for emergent relief. First, Plaintiff Kim on September 23, 2023, "launched his primary election campaign for nomination to the U.S Senate seat currently held by Senator Menendez for the June 4, 2024, Democratic Primary Election." (See Complaint, ¶144). Plaintiff Kim is no stranger to New Jersey democratic primaries and is not unacquainted with the New Jersey statutory mandated "bracketed line" Primary Election ballot that he now vehemently opposes  as he  was a successful candidate in the 2018, 2020, and 2022 elections for New Jersey's Third Congressional District.  (Id., ¶¶142-143).

Plaintiff Kim, therefore, was very aware that the primary ballot design would "bracket" candidates together who obtained the endorsement of the respective county Democratic party. He certainly knew in September 2023 that he would have to vie for the county "line" in Bergen County as part of his campaign, and, in fact did (as he had done, and **won**, in other counties).

Consequently, the Complaint and Application should have been filed in September 2023 (five months before he did) if Plaintiff Kim truly believed that the current Primary Election ballot design infringed upon his constitutional rights. He did not.

Additionally, Plaintiff Kim was further aware as of mid-November 2023 that First Lady Murphy was being endorsed by local county party chairs, allegedly, comprising "over 50% of statewide Democratic Party voters."  (Id., ¶13). Specifically, Plaintiff Kim believed that "First Lady Murphy will reap the benefits of a significant advantage **due to her ballot placement on the county line over [him] and the other candidates running for U. S Senator in the upcoming Primary Election**." (Id., ¶147 [emphasis added]). Therefore, while not filing suit in September, October, and/or the first half of November, Plaintiff Kim certainly knew in mid-November 2023

13

that he would have viable competition for the "county line" throughout the State that <u>may</u> jeopardize his chances at the nomination.  While sitting on his hands in the fall of 2023, Plaintiff Kim also should have filed in late November or December 2023.

Plaintiffs however delayed until the last possible moment to when they thought they could still a) gain a decision by the Court and b) meet the ballot printing date of April 6, 2024, for vote by mail ballots. In doing so, Plaintiffs, as intended in seeking to upend an 80-year old statute, have significantly prejudiced the Clerks. While having five months to prepare and file the instant pleadings (over 350 pages) and Application, the Court only provided the Clerks with six days to prepare and file opposition briefs.  While Plaintiffs and their attorneys had five months to line-up purported expert witnesses in support of their Application, including testimony, for the March 18th hearing (even longer when the Court considers Plaintiffs' counsel are attorneys for plaintiffs in the <u>Conforti</u> Case), the Clerks have been provided mere days to do so and have been provided no ability to depose any of the Plaintiffs' purported witnesses upon which Plaintiffs heavily rely. The Clerks will not even get a witness list until March 15th, the Friday before the March 18th hearing.

This is despite this Court finding in its opinion in the Conforti Matter that the parties are entitled to full discovery before any determination as to the constitutionality of the ballot design.

Plaintiffs' own delays establish the lack of imminent irreparable harm that they now allege.

**2.      Plaintiffs' Mere Speculation That They May Lose The Primary Election or That Voters Will Be Confused as to the Ballot Does Not Satisfy the Irreparable Harm Standard**

As opined by the Third Circuit Court of Appeals:

> An important factor animating our holding is our respect for the extraordinary nature of the preliminary injunction power. We have repeatedly insisted that the use of judicial power to arrange relationships prior to a full determination on the merits is a weighty

matter, and the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm.

…

**In this vein, we have also insisted that the risk of irreparable harm must not be speculative**.

[Adams v. Freedom Forge Corp., 204 F. 3d. 475, 488 (3rd Cir. 2000)(emphasis added).

Initially, Plaintiffs may very will win their respective primary elections and therefore would have suffered no harm from which they now allege to be a constitutionally defective ballot design process. Further, Plaintiffs are requesting the Court to speculate on the potential impact of the ballot design on individual voters. Notably, this design has been statutory-mandated since 1940 but other than the Plaintiffs who seek high elective office and their paid purported experts, Plaintiffs do not submit one affidavit from an unbiased voter that they have ever been confused by the ballot design.  Indeed, Plaintiffs have had five months to find **one voter** who has been confused in **80 years** regarding the ballot design. Conversely, this ballot design has been in use for decades. This is the design that the primary voters are familiar with and to now change it at the 11th hour would cause confusion. (Certification of the Hon. Mary Melfi, dated March 4, 2024).

 Rather than deal in absolutes regarding actual imminent harm, Plaintiffs are using the Federal Court to engage in an intellectual debate about what *may* happen in the future. Courts cannot act on such remote harms. Talbert, p. 87; see also Cont'l Grp., Inc. v. Amoco Chems. Corp., 614 F.2d 351, 359 (3d Cir. 1980).

Additionally, Plaintiffs briefly speculate as to a vote dilution claim, but such challenges will only be upheld when the challenged law devalues the votes of an identified community when compared to otherwise similarly situated voters. Plaintiffs' vote dilution claim, based upon nothing more than baseless speculation, cannot be allowed by this Court to continue. Republican Party of PA. v. Cortez, 218 F.Supp. 3d 396, 406-407 (E.D. Pa. 2016).

**3.    The Ballot Design Does <u>Not</u> Infringe Upon Any Candidates' Constitutional Rights**

Plaintiffs allege that the potential violation of their Constitutional rights causes irreparable harm. First, as set forth above, any such harm is purely conjecture.   Next, and substantively, government can impose certain regulations on constitutional protections:

> The rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights…[W]hen a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions.'
>
> [<u>Burdick v. Takushi</u>, 504 U.S. 428, 434 (1992) quoting <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 788 (1983)].

In <u>Anderson v. Celebrezze</u>, 460 U.S. 780 (1983), the United States Supreme Court, in addressing voting rights, found that there must be "order, rather than chaos" and "the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." <u>Id.</u> Consistent with this finding, the United States Supreme Court has "repeatedly upheld reasonable, **politically neutral regulations** that have the effect of channeling expressive activity at the polls." <u>Burdick v. Takushi</u>, 504 U.S. 428 (1992)(emphasis added). The bringing of such order, and avoidance of chaos, is the very goal – and result – of the adoption and continuing application of <u>N.J.S.A</u>. 19:49-2.  Even if the Court believes that <u>N.J.S.A</u> 19:49-2 discriminates between "bracketed" and "unbracketed" candidates such "discrimination" does not rise to a First or Fourteenth Amendment violation.  These Plaintiffs have no constitutional right to preferred ballot placement.

Further, similar to their arguments regarding voter confusion/dilution addressed above, Plaintiffs posit their supporters are somehow disadvantaged by the bracketing and ballot placement system established by New Jersey law.  However, contrary to the plaintiffs' claims, <u>N.J.S.A</u>. 19:49-

16

2 neither limits any candidate's access to the ballot, nor does it deny any voter the right to vote for their chosen candidate for any office on the ballot. Any primary voter will have equal opportunity in every county to vote for Plaintiff Kim. His name will be in the same font, same text, and in the same color as his primary opponent.

Simply stated, the First and Fourteenth Amendment does not protect Plaintiffs' rights to a preferential place on the ballot[4]. It protects their rights, if otherwise eligible, to be placed on the ballot. Plaintiffs will be on the ballot. Plaintiffs' supporters will have the opportunity to vote for them.

### C.   PLAINTIFFS ALSO FAIL TO SATISFY THE TWO REMAINING ELEMENTS FOR THEIR INSTANT EXTRAORDINARY REQUEST FOR RELIEF

As Plaintiffs do not satisfy the "gateway factors," there is no further need to address the remaining elements that Plaintiffs need to satisfy to obtain injunctive relief.  Relly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017).  However, it should be noted that Plaintiff also fails to establish that a) not granting the requested injunction will result in even greater harm to the nonmoving party; and b) an injunction is in the public interest.

As to these elements, Plaintiffs merely boot-strap their argument that N.J.S.A 19: 49-2 is unconstitutional by summarizing, in conclusory fashion, that no harm exists to the non-moving party and the public interest is in favor of the injunction.   Plaintiffs further rely upon purported experts- experts that have not been deposed or qualified by the Court as actual experts essentially to argue that their way of ballot design is better[5].  Further,  Plaintiffs' argument in this regard defeats their Application as they are recognizing that political candidates can use "ballot slogans"

---

[4] This District has determined that position on the ballot is "a less important aspect of voting rights than access." Democratic-Republican Org. of N.J v. Guadagno, 900 F. Supp. 2d 447, 456 (DNJ 2012).
[5] If so, then they can petition their local state legislators to change the ballot design statute.

and that local county political parties may endorse candidates on the ballot (see Page 52 of Plaintiffs' brief).

As to the public interest, the New Jersey Supreme Court, directly contrary to Plaintiffs' position here, has held "…the public interest is **better served** by permitting a grouping of candidates having common aims or principles and authorizing those candidates to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the machine ballot." Quaremba, p. 13 (emphasis added). This is exactly what N.J.S.A 19:49-2 aims to do.

Plaintiffs also cannot credibly deny the compelling interests of Bergen County voters in a properly informed electorate, an intelligible ballot for that properly informed electorate (not one now hastily thrown together at the last minute) and ensuring that political parties, and individual members of those political parties, have a stake in their associations. Nader v. Schaffer, 417 F. Supp. 837, 844 (D. Conn.), aff'd, 429 U.S. 989 (1976). "The State's interest in preserving the integrity of the electoral process is undoubtedly important." Doe v. Reed, 561 U.S. 186, 197 (2010); see also Smith v. Penta, 85 N.J. 65, 71 (1979) (quoting Nader, 417 F. Supp. at 845) ("[A]state has a . . . legitimate interest in protecting the overall integrity of the historic electoral process."). N.J.S.A. 19:49-2, being narrowly tailored to maintain its constitutionality, serves these compelling interests of the State. Nader, 417 F. Supp. at 847; Smith, 85 N.J. at 71.

As to the harm to Bergen County (and its taxpayers) if Plaintiffs are successful on March 18th, Bergen County has 70 municipalities with over 562 voting districts. Those different voting districts have different candidates for different offices for the June 4th Democrat and Republican Primary Election. It is not just one ballot for one race that can be changed with a "snap of the

finger."  There is real danger that new ballots, at this point in the election cycle, cannot be properly generated to ensure a  fair election.

When the Court considers whether the ballots disseminated to over 500 voting districts can be accomplished by April 26, 2024 (the date for vote by mail), the prejudice to the voters of Bergen County certainly outweighs Plaintiffs' 11th hour attempts to create a new Primary Election ballot.

### III.   PLAINTIFFS PREFERRED BALLOT MAY VIOLATE THE FIRST AMENDMENT RIGHSHT OF OTHER CANDIDATES

Plaintiffs' Application does not consider that the current ballot design, as required by New Jersey statute, actually safe-guard political candidates' First Amendment rights of free-speech and association.

Bracketed candidates, and their respective political parties, exercise their right to "'identify the people who constitute the association,' and to select 'a standard bearer who best represents the party's ideologies and preferences.'" Eu v. San Francisco Democratic Central Committee, 489 U.S. 214, 224 (1989). If New Jersey laws were to allow candidates to claim association with other candidates or political parties without the consent of the other candidate or political party, this would without question be the death knell of the constitutional freedom to associate. Id.

Long before the guidance offered by the United States Supreme Court in Eu, New Jersey courts have upheld the freedom of candidates to associate – or to not associate, as the case may be - with other candidates based on shared political or ideological views and positions. There is a "well-established pattern of having candidates for different offices but similar view appear together on the ballot." Gillen v. Sheil, 174 N.J. Super. 386 (Law Div., 1980). As opined by the court in Gillen:

> This pattern is not simply one which benefits the candidates, but one which is essential to an intelligible ballot. Voters have an important interest in finding candidates of similar persuasion grouped together rather than being spread upon the

ballot in random fashion. **Voters are disadvantaged if philosophically affiliated candidates are scattered around the ballot**.

[Id. p. 939 (emphasis added)].

The New Jersey Supreme Court stated in Lesniak v. Budzash that "[o]ne way political parties advance shared beliefs is by selecting candidates representing those shared beliefs to run in the general election." 133 N.J. 1, 15 (1993).

"The right to participate in a party's candidates election process thus vests only in those who are associated together in pursuit of shared political ideals." Id. These undeniable interests equally apply to the right of candidates to determine whether to bracket and associate with one another on a Primary Election ballot. As political parties are empowered with the constitutional right to govern their own internal processes, it is reasonable for candidates appearing on the ballot in a political party's Primary Election to have the right to associate with candidates for other offices through bracketing to clearly convey to voters the sharing of political and ideological beliefs by those candidates choosing to bracket together.

Indeed, the ballot structure used by the Bergen County Clerk, in accordance with N.J.S.A. 19:49-2, benefits the Plaintiffs. It clearly indicates to voters which candidates, including the Plaintiffs, have chosen to exercise their First Amendment right to not affiliate with any other candidate on the primary ballot. Plaintiffs can choose or not choose to be bracketed with others. Notably, Plaintiff Kim chooses to be bracketed with endorsed candidates in the counties of Monmouth, Burlington, and Hunterdon where he won "the line." That is Plaintiff Kim's First Amendment right. Bergen County simply posits that the First Amendment applies to all candidates.

Despite the Plaintiffs' claims, candidates and their affiliated political parties do indeed have the right to exercise their associative rights under the First and Fourteenth Amendments. The bracketing laws, which guide the creation of the Primary Election ballot, uphold these associative

rights. As a result, voters will see that all candidates running for a particular office are listed together in the same designated row or column on the election ballot.

### IV.     THE DUTIES OF THE CLERKS AS TO BALLOT DESIGN ARE PURELY MINISTERIAL

The Clerks' "hands are tied" by when it comes to primary ballot design:

> For the primary election for the general election in all counties where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan **shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine**; and provided further, that all candidates for municipal or party office in municipalities in counties where voting machines are or shall be used who shall file a petition with the clerk of their municipality bearing the same designation or slogan as that of the candidates filing a joint petition with the county clerk as aforesaid, may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, **the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid;** provided, also, that any candidate filing a petition with the Attorney General may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions, and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid.

> [NJSA 19:49-2 (emphasis added)]

Further:

In the context of election laws, county clerks do not have discretion in all matters. '[W]here there is **clear statutory language direction** of a specific procedure to be followed, the county clerk is governed thereby and has **no** discretionary authority.'

Sooy v. Gill, 340 NJ Super 401, 407 (App. Div. 2001) quoting Tomasin v. Quinn, 150 NJ Super. 593, 597 (Law Div. 1997)(emphasis added).

Accordingly, as to the primary ballot design for the upcoming primary election, the Clerk's role is purely "ministerial", he/she simply follows the statutory language NJSA 19:49-2. "Ministerial" duties have been defined as:

"An act or duty is ministerial in nature if: it is absolutely certain and imperative, involving a merely the execution of a set task, and the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion.

[Cohen v. UMDNJ, 240 NJ Super 188 (Ch. Div. 1989) citing Ivy Hill Park v. PLIGA, 221 NJ Super 131 (App. Div. 1987)].

While merely regulated to a foot note in Plaintiffs' pleading, NJSA 19:49-2 actually requires the individual campaign managers (not the candidates or "party bosses") to advise the Clerk if their particular candidate wants to be "bracketed" with other candidates. Once campaign managers (probably the true parties in interest in this case) do so, the Clerks have no choice but to follow that directive.

Accordingly, the Bergen County clerk is simply going to follow New Jersey's statute or this Court's decision as to the June 4, 2024, primary design. He, and the other Clerks, truly have no "skin in the game." This is why it is vital that the true parties in interest here, the actual candidates and campaigns that are effected, have opportunity to be heard.

## <u>CONCLUSION</u>

In conclusion, we believe the Application should be denied for the following reasons:

1.   Plaintiffs delayed over five months before filing this Application considering that Plaintiff Kim certainly knew before his announcement that he was going to be a candidate in the  June primary thereby providing the Clerks a truncated opportunity to adequately oppose the Application, including responding to several "expert reports";

2.   The Clerks' functions are merely ministerial, thereby highlighting the need to have the actual parties in interests appear in this matter;

3.   Plaintiffs' desired ballot may infringe upon other candidate's First Amendment rights of freedom of speech and freedom of association;

4.   The Court has already recognized that discovery is required to adjudicate whether the ballot design statute is constitutional; and

5.   NJSA 19:49-2 has been in effect over 80 years and has survived constitutional review several times, Plaintiffs therefore cannot prove likely success on the merits.

For all of the foregoing reasons, and for those arguments and reasons as presented in

the opposing papers submitted by other defendants, Plaintiffs' Application for injunctive relief

must be denied in its entirety.

Respectfully submitted,
**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
*Attorneys for Defendant John S. Hogan, in his official capacity as Bergen County Clerk*

By: <u>*Jason S. Nunnermacker*</u>
      Jason S. Nunnermacker, Esq.

Dated: March 6, 2024

23