IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, ANDY KIM FOR NEW JERSEY, SARAH SCHOENGOOD, SARAH FOR NEW JERSEY, CAROLYN RUSH and CAROLYN RUSH FOR CONGRESS,<br><br><br>Plaintiffs,<br><br> v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk; SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk; PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk; MARY H. MELFI, in her capacity as Hunterdon County Clerk; STEVE PETER, in his official capacity as Somerset County Clerk; HOLLY MACKEY, in her official capacity as Warren County Clerk; NANCY J. PINKIN, in her official capacity as Middlesex County Clerk; JOSEPH GIRALO, in his official capacity as Atlantic County Clerk; JOHN S. HOGAN, in his official capacity as Bergen County Clerk; JOANNE SCHWARTZ, in her official capacity as Burlington County Clerk; JOSEPH RIPA, in his official capacity as Camden County Clerk; RITA M. ROTHBERG, in her official capacity as Cape May County Clerk; CELESTE M. RILEY, in her official capacity as Cumberland County Clerk; CHRISTOPHER J. DURKIN, in his official capacity as Essex County Clerk; JAMES N. HOGAN, in his official capacity as Gloucester County Clerk; E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk; ANN F. GROSSI, in her official capacity as Morris County Clerk; DANIELLE IRELAND-IMHOF, in her official capacity as | DOCKET NO.:3:24-cv-01098 |

Passaic County Clerk; and JOANNE
RAJOPPI, in her official capacity as
Union County Clerk.

                    *Defendants*,

and

DALE A. CROSS, in his official capacity
as Salem County Clerk; and JEFF
PARROTT, in his official capacity as
Sussex County Clerk; TAHESHA WAY, Esq.,
in her official capacity as Secretary
of State for New Jersey.

                    *As Interested Parties*.

---

**BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

**RAINONE COUGHLIN MINCHELLO, LLC**
555 U.S. Highway 1 South, Suite 440
Iselin, NJ 08830
Tel: (732) 709-4182
Fax: (732) 791-1555
*Attorneys for Defendant, Paula
Sollami Covello, in her official
capacity as the Mercer County Clerk*

*Of Counsel*
Louis N. Rainone, Esq. – (#021791980)
David L. Minchello, Esq. – (#041412003)

*Of Counsel and on the brief*
Matthew R. Tavares, Esq. – (#076972013)
Christopher D. Zingaro, Esq. – (#264412018)

*On the brief*
Michael Wuest, Esq. – (#411312022)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................ii

INTRODUCTORY STATEMENT..........................................1

STATEMENT OF FACTS.............................................2

LEGAL ARGUMENT................................................8

  POINT I.....................................................8

    PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION SHOULD BE
    DENIED AS PLAINTIFFS HAVE FAILED TO ESTABLISH A RIGHT TO
    INJUNCTIVE RELIEF........................................ 8

      A. Plaintiffs Have Failed To Establish That They Will
         Suffer Irreparable Harm. . . . . . . . . . . . . .  10

      B. Plaintiffs Have Failed To Establish A Likelihood Of
         Success On The Merits . . . . . . . . . . . . . . . 17

         i.   Plaintiffs Have Failed to Join Indispensable
            Parties . . . . . . . . . . . . . . . . . . 17

         ii.  Framework for Review of an Election Law
            Challenge . . . . . . . . . . . . . . . . . 23

         iii.  New Jersey's Bracketing and Ballot Placement
            Statutes Do Not Violate the First and Fourteenth
            Amendments . . . . . . . . . . . . . . . . 24

         iv.  New Jersey's Bracketing and Ballot Placement
            Statutes Do Not Violate the Equal Protection Clause
            . . . . . . . . . . . . . . . . . . . . . . 29

         v.   New Jersey's Bracketing and Ballot Placement
            Statuted Do Not Alter the Times, Place, or Manner
            of Congressional Elections . . . . . . . . . . 30

      C. A Balancing of the Hardships Demonstrates that Injunctive
         Relief is Inappropriate and Would Unduly Burden
         Defendants in this Matter . . . . . . . . . . . . . 31

      D. Plaintiffs' Motion Advances Only Their Self-Interest and
         Not the Public Interest . . . . . . . . . . . . . . 35

CONCLUSION...................................................39

i

321916v1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Adams v. Freedom Forge Corp.,
  204 F.3d 475 (3d Cir. 2000) ...................................9

Anderson v. Celebrezze,
  460 U.S. 780 (1983) ....................................23, 26

In re Arthur Treacher's Franchisee Litig.,
  689 F.2d 1137 (3d Cir. 1982) ................................9

AT&T v. Winback & Conserve Program, Inc.,
  42 F.3d 1421, 1427 (3d Cir. 1994) ...........................9

Bennington Foods LLC v. St. Croix Renaissance Grp.,
  528 F.3d 176 (3d Cir. 2008) ................................10

Burdick v. Takushi,
  504 U.S. 428 (1992) ........................................24

Cal. Democratic Party v. Jones,
  530 U.S. 567 (2000) ........................................26

Clough v. Guzzi,
  416 F. Supp. 1057 (D. Mass. 1976) ..........................27

Crookston v. Johnson,
  841 F.3d 396 (6th Cir. 2016) ...............................12

Del. River Port Auth. v. Transamerican Trailer
  Transport, Inc.,
  501 F.2d 917 (3d Cir. 1974) .............................8, 35

Democratic Party of United States v. Wisconsin ex rel.
  La Follette,
  450 U.S. 107 (1981) ........................................27

Democratic-Republican Org. v. Guadagno,
  900 F. Supp. 2d 447 (D.N.J. 2012) ..................10, 23, 25

Doe v. Colautti,
  592 F.2d 704 (3d Cir. 1979) ................................35

Doe v. Reed,
  561 U.S. 186 (2010) ........................................28

ii

*Donald J. Trump for President, Inc. v. Way,*
    492 F.Supp.3d 354 (D.N.J. 2020) ......................34, 37, 38

*Eu v. San Francisco Cty. Democratic Cent. Comm.,*
    489 U.S. 214 (1989) .................................23, 26, 27

*Fishman v. Schaffer,*
    429 U.S. 1325 (1976) (Marshall, J., Circuit Justice) .......12

*Frank v. Walker,*
    574 U.S. 929 (2014) ........................................37

*Freixenet, S.A. v. Admiral Wine & Liquor Co.,*
    731 F.2d 148 (3d Cir. 1984) ................................10

*Fulani v. Hogsett,*
    917 F.2d 1028 (7th Cir. 1990) ..............................13

*Gallagher v. N.Y. State Bd. of Elections,*
    477 F. Supp. 3d 19 (S.D.N.Y. 2020) ....................13, 14

*General Refractories Co. v. First State Ins. Co.,*
    500 F.3d 306 (3d Cir. 2007) ................................18

*Gruca v. United States Steel Corp.,*
    495 F.2d 1252 (3d Cir. 1974) ...............................11

*Gusciora v. Corzine,*
    2010 N.J. ..................................................20

*Harrison v. Jones,*
    44 N.J.Super. 456 (App.Div.1957) ...........................36

*Hays v. Port of Seattle,*
    251 U.S. 233 (1920) ........................................12

*Hoxworth v. Blinder, Robinson & Co.,*
    903 F.2d 186 (3d Cir. 1990) .................................9

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,*
    11 F.3d 399 (3d Cir. 1993) .................................18

*Koppers Co. v. Aetna Cas. & Sur. Co.,*
    158 F.3d 170 (3d Cir. 1998) ................................18

*Lucking v. Schram,*
    117 F.2d 160 (6th Cir. 1941) ...............................12

*Maldonado v. Houstoun,*
    157 F.3d 179 ...............................................29

iii

Mazurek v. Armstrong,
   520 U.S. 968 (1997) ........................................9

Mich. Chamber of Commerce v. Land,
   725 F. Supp. 2d 665 (W.D. Mich. 2010) ......................13

Miller v. Johnson,
   515 U.S. 900 (1995) .......................................26

Morton v. Beyer,
   822 F.2d 364 (3d Cir. 1987) ................................9

Munaf v. Geren,
   553 U.S. 674 (2008) ................................8, 10, 31

New Jersey Conservative Party, Inc. v. Farmer,
   753 A.2d 192 (N.J. Super. Ct. Ch. Div. 1999) ...........16, 22

O'Shea v. Littleton,
   414 U.S. 488 (1974) .......................................9

Opticians Ass'n of Am. v. Indep. Opticians of Am.,
   920 F.2d 187 (3d Cir. 1990) ................................9

Perry v. Judd,
   471 Fed. Appx. 219 (4th Cir. 2012) .................14, 15, 16

Purcell v. Gonzalez,
   549 U.S. 1 (2006) ..................................33, 37, 38

Quaremba v. Allan,
   67 N.J. 1 (1975) ......................................35, 36

Reedco Inc., et al. v. Hoffman-LaRoche, Inc.,
   667 F. Supp. 1072 (D.N.J. 1987) ...........................11

Republican Nat'l Comm. v. Democratic Nat'l Comm.,
   140 S.Ct. 1205 (2020) .....................................37

Republican Part of Pa. v. Cortes,
   218 F.Supp. 3d 396 (E.D. Pa. 2016) ....................12, 25

Reynolds v. Sims,
   377 U.S. 533 (1964) .......................................25

Rogers v. Corbett,
   468 F.3d 188 (3d Cir. 2006) ...............................23

Schundler v. Donovan,
   377 N.J.Super. 339 (App.Div.2005) .....................36, 37

iv

Smith v. Penta,
    81 N.J.65 (1979) ...........................................29

Sobosle v. United States Steel Corp.,
    359 F.2d 7 (3d Cir. 1966) .................................11

Sonneman v. State,
    969 P.2d 632 (Alaska 1998) ...............................25

Storer v. Brown,
    415 U.S. 724 (1974) ......................................16

Tashjian v. Republican Party of Connecticut,
    479 U.S. 208 (1986) ......................................27

Timmons v. Twin Cities Area New Party,
    520 U.S. 351 (1997) ......................................24

United States v. Classic,
    313 U.S. 299 (1941) ......................................30

Veasey v. Perry,
    574 U.S. 951 (2014) ......................................37

Voting Integrity Project, Inc. v. Bomer,
    199 F.3d 773 (5th Cir. 2000) .............................31

White Hall Bldg. Corp. v. Profexray Div. of Litton
    Industries, Inc.,
    387 F.Supp. 1202 (E.D.Pa.1974), *aff'd*, 578 F.2d 1375
    (3d Cir. 1978), *aff'd*, 578 F.2d 1377 (3d Cir. 1978) ........18

**Statutes**

Accessibility Act...........................................20

N.J.S.A. 19:23-6, 19:23-18, and 19:23-24.....................3

N.J.S.A. 19:23-18............................................3

N.J.S.A. 19:23-24.........................................3, 4

N.J.S.A. 19:31-6a...........................................22

N.J.S.A. 19:48-1............................................19

N.J.S.A. 19:48-2 ...........................................20

N.J.S.A. 19:48-4............................................20

N.J.S.A. 19:49-2....................................2, 3, 36

v

321916v1

N.J.S.A. 19:53A:1 ..................................................19

N.J.S.A. 19:53A-3 ..................................................20

N.J.S.A. 40A:9-64 ...................................................2

N.J.S.A. 19:63-9 ...................................................15

N.J.S.A. 19:63-5 ...................................................15

N.J.S.A. §§ 19:23-6 ...............................................24

**Other Authorities**

First Amendment..............................................24, 26

Fourteenth Amendment.........................................21, 24

F.R.C.P. 19 ..............................................17, 18, 21

U.S. Const., art. 1, sec. 4, cl. 1..............................30

321916v1

## INTRODUCTORY STATEMENT

The present motion for injunctive relief seeks to upend the long established and affirmed electoral processes of our State based solely on the self-interest of the Plaintiffs in this matter. Plaintiffs, Andy Kim, Andy Kim for New Jersey, ("Kim") Sarah Schoengood, Sarah for New Jersey ("Schoengood"), Carolyn Rush, and Carolyn Rush for New Jersey ("Rush")(collectively "Plaintiffs") seek for this Court to declare unconstitutional the statutes that confer upon County Clerks, whose offices are born of our Constitution, the discretion necessary to design ballots, conduct ballot draws, and determine the placement of candidates and bracketing processes. These practices, crafted by the Legislature, have repeatedly been upheld in the face of challenges by unsuccessful candidates.

Nevertheless, the Plaintiffs rush to this court at the eleventh hour seeking to enjoin these processes and request this Court to order an entirely new process mere weeks before the 2024 primary election. Despite Plaintiffs' protests, they set forth no legitimate basis for this Court to take such a drastic action in any event, let alone immediately before the 2024 primary election occurs. Plaintiffs advance these claims under the guise of the public interest, but in reality seek only to avoid their own presumed defeat in contested primaries. Importantly, they couch

1

their arguments in imminency, when they themselves created same by delaying their challenge to these long-standing processes.

For the reasons set forth below, the Plaintiffs' motion for preliminary injunctive relief should be denied.[1]

### STATEMENT OF FACTS

In New Jersey, "County clerks, . . . shall be elected by the people of their respective counties at general elections" and serve as constitutional public officers for terms of "five years." N.J. Const., Art. VII, Sec. II, Para. 2. Once elected, the County Clerk takes their oath to dutifully execute their responsibilities and uphold the Constitutions of the United States and the State of New Jersey. See N.J.S.A. 40A:9-64. The Honorable Paula Sollami-Covello ("Covello") is the Mercer County Clerk. (Pl. Comp., at ¶ 30).

New Jersey primary election ballots are organized by a grid of rows and columns, with the specific placement of the offices sought and the candidates for those offices varying by County. See N.J.S.A. 19:49-2. A candidate's placement on the ballot depends on various factors including, but not limited to, endorsements from county political party committees, affiliation with other candidates for the same office or others, and a ballot drawing conducted by the County Clerk, known as "bracketing." (Plaintiff's

---

[1] The within Defendant adopts and incorporates by reference herein the arguments set forth by the co-Defendants in this matter.

2

Complanit, ("Pl. Comp."), Dkt. No. 3:2-cv-01098, ¶ 6; <u>See</u> <u>N.J.S.A.</u> 19:23-6, 19:23-18, and 19:23-24).

Candidates who want to bracket with candidates running for other offices file a joint petition with the County Clerk. <u>See</u> <u>N.J.S.A.</u> 19:23-18; <u>N.J.S.A.</u> 19:49-2). <u>N.J.S.A.</u> 19:49-2 details the bracketing process. Candidates who file petitions with the Municipal Clerk or with the Secretary of State must, within 48 hours of the petition filing deadline, request permission from the campaign manager of joint petition county candidates to be bracketed with those joint petition county candidates. (Pl. Comp., at ¶ 61).

Upon notification of the request, the campaign manager has 48 hours to grant permission to bracket with the joint petition county candidates. <u>See</u> <u>Ibid</u>. This leads to groupings of candidates who have earned such support. (Pl. Comp., at ¶ 62). Bracketed candidates will be featured on the same column of the ballot with the same slogan. (Pl. Comp., at ¶ 67). The clerk then conducts a drawing to determine the order of the ballot, the procedures of which are dictated by <u>N.J.S.A.</u> 19:23-24. County Clerks have discretionary authority to which office to draw first for ballot positioning (i.e., President of the United States, New Jersey Governor, United States Senate, etc.). The office selected by the County Clerk to be drawn first, is referred to by Plaintiff in the Complaint as the "pivot point." (Pl. Comp., ¶ 56). Interpretations

3

321916v1

of New Jersey law indicates that the 'pivot point' be the highest ranked state-wide candidate. (Pl. Comp., at ¶ 70). "All candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine." N.J.S.A. 19:23-24. Once one of the bracketed candidates – the pivot point – is placed on the ballot, all other candidates in that bracketed slate will be automatically placed in the same column, including other candidates. (Pl. Comp., at ¶ 71).

Under N.J.S.A. 19:23-24, the County Clerk then draws for the second position and so on. Once the initial ballot draw for the pivot point office has taken place, then a series of ballot draws take place between remaining candidates placing them along the remainder of the ballot. (Pl. Comp., at ¶ 67). Plaintiffs challenge the procedures delineated by N.J.S.A. 19:23-24 and claims that the statute creates an unfair framework whereby certain candidates are automatically guaranteed more favorable ballot placement, on the "pivot point," due to their bracketing. (See Pl. Comp., at ¶ 223).

On February 26, 2024, Plaintiffs Andy Kim, Andy Kim for New Jersey, Sarah Schoengood, Sarah for New Jersey, Carolyn Rush, and Carolyn Rush for Congress (collectively, "Plaintiffs") filed their Verified Complaint against nineteen (19) county clerks who utilize

a party column ballot design in connection with New Jersey's primary elections.

According to the New Jersey Secretary of State, the Petition Filing Deadline for Senate and Congress is March 25, 2024.[2]

Plaintiff Andy Kim announced his campaign for United States Senate on September 23, 2023. (Pl. Comp., at ¶ 144). Plaintiff Sarah Schoengood announced her candidacy for New Jersey's third congressional district on January 22, 2024. (Pl. Comp., at ¶ 152). Plaintiff Carolyn Rush announced her candidacy for New Jersey's second congressional district on February 16, 2023.[3]

In 2018, Plaintiff Andy Kim received the benefit of ballot placement commensurate with the county line vote and won the Democratic nomination for New Jersey's third congressional district. (Pl. Comp., at ¶ 140). In 2020, Plaintiff Andy Kim again won the Democratic nomination for New Jersey's third congressional district under the same rules. (Pl. Comp., at ¶ 142). In 2022, Plaintiff Andy Kim again won the Democratic nomination for New Jersey's third congressional district under the same rules. (Pl. Comp., at ¶ 143). In 2022, Plaintiff Carolyn Rush previously ran

---

[2] New Jersey Sec. of State, *New Jersey Voter Information Portal: Candidate Information*, (last accessed Mar. 5, 2024) https://nj.gov/state/elections/candidate-information.shtml.
[3] Joey Fox, *Rush will run again for 2nd congressional district in 2024*, New Jersey Globe ( February 16, 2023, 9:27 am), (last accessed Mar. 5, 2024), https://newjerseyglobe.com/congress/rush-will-run-again-for-2nd-congressional-district-in-2024/.

321916v1

for New Jersey's second congressional district under the current rules for Democratic nomination, making the current 2024 race their second occurrence.[4]

New Jersey's third congressional district contains part of three counties: Monmouth, Burlington, and Mercer. (Pl. Comp., at ¶ 151).[5] New Jersey's second congressional district contains portions or all of six counties: Atlantic, Cape May, Cumberland, Salem, Gloucester, and Ocean. (Pl. Comp., at ¶ 158). Plaintiff Andy Kim is the only candidate whose race covers the entirety of Mercer County, if at all.

Plaintiffs have not alleged that, since or prior to any of their current or prior candidacies, any of the laws they now challenge were modified. <u>See</u> <u>gen.</u> Complaint.

To date, six nominating conventions have already been held throughout New Jersey for county Democratic organizations. On February 10, 2024, Plaintiff Andy Kim won the Monmouth County Convention.[6] On February 24, 2024, Plaintiff Andy Kim won the

---

[4] Joey Fox, *Rush will run again for 2nd congressional district in 2024, New Jersey Globe* ( February 16, 2023, 9:27 am), (last accessed Mar. 5, 2024), https://newjerseyglobe.com/congress/rush-will-run-again-for-2nd-congressional-district-in-2024/.

[5] NJ Spotlight News, *3rd Congressional District 2022*, (April 1, 2022), (last accessed Mar. 6, 2024), https://www.njspotlightnews.org/2022/04/3rd-congressional-district-2022/.

[6] David Wildstein, *Nine takeaways on Andy Kim's big Monmouth convention win*, New Jersey Globe, (Feb. 10, 2024, 6:00pm) (last accessed Mar. 6, 2024),

Burlington County Convention.[7] On February 25, 2024, Plaintiff Andy Kim won the Hunterdon County Convention.[8] On March 2, 2024, Plaintiff Andy Kim won the Sussex County Convention[9]. On March 3, 2024, Plaintiff Andy Kim won the Warren County Convention.[10] On March 4, 2024, Plaintiff Andy Kim lost the Bergen County Convention to Senate Candidate, Tammy Murphy.[11]

Multiple upcoming nominating conventions remain to be held for the Democratic nomination for United States Senate including the Mercer County Convention is scheduled for March 11, 2024.[12] In

---

https://newjerseyglobe.com/congress/nine-takeways-on-andy-kims-big-monmouth-convention-win/.

[7] Daniel Han and Katherine Dailey, *Andy Kim wins another county Democratic endorsement in blowout over NJ first lady Murphy*, Politico, (Feb. 24, 2024, 2:29 pm) (last accessed Mar. 6, 2024), https://www.politico.com/news/2024/02/24/andy-kim-burlington-county-democratic-endorsement-00143081.

[8] Daniel Han and Katherine Dailey, Andy Kim hands a third straight loss to NJ first lady Tammy Murphy in Senate primary, Politico, (Feb. 25, 2024, 5:48 pm) (last accessed Mar. 6, 2024), https://www.politico.com/news/2024/02/25/andy-kim-tammy-murphy-primary-00143216.

[9] Joey Fox and David Wildstein, Sussex Democrats go for Andy Kim, New Jersey Globe, (Mar. 2, 2024, 11:36 am), (last accessed Mar. 6, 2024), https://newjerseyglobe.com/congress/sussex-democrats-go-for-andy-kim/.

[10] David Wildstein, Andy Kim wins Warren County, his 5th straight convention victory, (Mar. 3, 2024, 1:48 pm), (last accessed Mar. 6, 2024), https://newjerseyglobe.com/campaigns/andy-kim-wins-warren-county-his-5th-straight-convention-victory/.

[11] Tracey Tully, *Tammy Murphy Wins Crucial Support in Her Bid for U.S. Senate*, The New York Times, (March 4, 2024) (last accessed Mar. 6, 2024), https://www.nytimes.com/2024/03/04/nyregion/new-jersey-senate-race.html.

[12] Mercer County Democratic Committee, *Mercer County Democratic Convention Monday March 11th*, (last accessed Mar. 5, 2024), https://www.mercerdemocrats.com/.

7

the Mercer County Convention, any candidate who receives at least forty percent (40%) of the vote of registered delegates in any ballot will appear in the same column of the endorsed candidates on the line.[13] Of particular note, April 20, 2024 is the statutory deadline for the mailing of ballots to be distributed in advance of the June 4, 2024 primary election. N.J.S.A. 19:63-5; N.J.S.A. 19:63-9.

## LEGAL ARGUMENT

### POINT I

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED AS PLAINTIFFS HAVE FAILED TO ESTABLISH A RIGHT TO INJUNCTIVE RELIEF.**

A plaintiff seeking a preliminary injunction must establish (1) a reasonable likelihood of success on the merits; (2) the prospect of irreparable harm in the absence of an injunction; (3) that this harm would exceed harm to the opposing party; and (4) that the public interest favors such relief. Munaf v. Geren, 553 U.S. 674, 689-690 (2008); see also, e.g., Del. River Port Auth. v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 919-20 (3d Cir. 1974).

---

[13] Mercer County Democratic Committee, *Constitution and Bylaws of the Mercer County Democratic Committee: Article VII*, (last accessed Mar. 6, 2024), https://www.mercerdemocrats.com/_files/ugd/f6fae7_3f3c588f8c354170aca934a23017a381.pdf.

A preliminary injunction cannot be issued simply to prevent the possibility of some remote future injury. O'Shea v. Littleton, 414 U.S. 488, 502 (1974). Rather, injunctive relief may issue only upon a clear showing that the plaintiff is entitled to relief. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). As such, preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994). The goal of the preliminary injunction analysis is to maintain the status quo. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 197 (3d Cir. 1990).

A court will consider all four factors, but the first two are essential: a court may not grant injunctive relief, "regardless of what the equities seem to require," unless plaintiffs carry their burden of establishing both a likelihood of success and irreparable harm. Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000); accord Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d Cir. 1990) (placing particular weight on the probability of irreparable harm and the likelihood of success on the merits, stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982)); Morton v. Beyer, 822 F.2d 364,

367 (3d Cir. 1987); Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148, 151 (3d Cir. 1984); Am. Ex., 669 F.3d at 366, 374.

It is respectfully submitted that Plaintiffs are not entitled to injunctive relief. As set forth below, Plaintiffs cannot establish a reasonable likelihood of success on the merits. Equally important, though, Plaintiffs' delay in bringing this challenge is unreasonable and prejudicial. Delay is a key, determinative factor in negating a plaintiff's claim of irreparable harm. Democratic-Republican Org. v. Guadagno, 900 F. Supp. 2d 447, 450 (D.N.J. 2012).

### A. Plaintiffs Have Failed to Establish That They Will Suffer Irreparable Harm.

As noted above, to obtain preliminary injunctive relief, litigants must show both that they will suffer irreparable harm if relief is not granted and a likelihood of success on the merits. Munaf, supra, 553 U.S. at 689-690. A failure to prove either of these first two prongs, including the irreparable harm prong, is fatal and obviates a need to analyze the other prongs of the test. Bennington Foods LLC v. St. Croix Renaissance Grp., 528 F.3d 176, 179 (3d Cir. 2008).

Plaintiffs' own conduct in bringing this case belies any showing of irreparable harm. It should end this Court's injunctive relief analysis. In their briefing papers, Plaintiffs pound the table and assert that the irreparable harm they face is imminent.

Tellingly, though, their briefing on the irreparable harm prong evades a crucial and fatal failing of their own making: delay.

Plaintiffs press this Court to consider the alleged imminent harm facing their candidacies because of New Jersey's ballot system. They argue repeatedly that they have been "thrust" into an unfair system. Yet, the statutes they challenge are not new. They have protected candidates' associational rights in New Jersey primaries for countless decades. The statutes were in place prior to each Plaintiffs' candidacy announcements and since each Plaintiffs' announcements months ago. Plaintiffs have idled at the courthouse curb. Only now, amidst ballot preparations and close to the very eve of ballot printing, have they rushed the courthouse steps to declare the imminence of their harm.

A litigant's inexcusable delay in seeking a preliminary injunction "may operate as a defense to the issuance of an injunction when, in light of all the existing circumstances, it appears that a plaintiff has unreasonably delayed application for relief and prejudice to the opposing party has thereby resulted." Reedco Inc., et al. v. Hoffman-LaRoche, Inc., 667 F. Supp. 1072, 1082 (D.N.J. 1987), citing Sobosle v. United States Steel Corp., 359 F.2d 7, 12-13 (3d Cir. 1966); see also Gruca v. United States Steel Corp., 495 F.2d 1252, 1258 (3d Cir. 1974) (finding that a defense of laches requires a showing of (1) inexcusable delay in

11

instituting suit; and (2) prejudice resulting to the defendant from such delay).

It is a "long-established doctrine" of the courts that "equity aids the vigilant, and not those who slumber on their rights." Lucking v. Schram, 117 F.2d 160, 162 (6th Cir. 1941) (quoting Hays v. Port of Seattle, 251 U.S. 233, 239 (1920)). Delay has been found particularly important in the election context, where courts have found that denial of preliminary injunctive relief based upon laches is appropriate, particularly where delay would cause disruption to the orderly undertaking of ballot issuance and election processes. Crookston v. Johnson, 841 F.3d 396, 398 (6th Cir. 2016) (identifying the "first and most essential" reason to issue a stay of an election-related injunction as plaintiff offering "no reasonable explanation for waiting so long to file this action"); Republican Part of Pa. v. Cortes, 218 F.Supp. 3d 396, 405 (E.D. Pa. 2016) ("Here the Plaintiff elected to file its suit on the eve of the national election. There was no need for this judicial fire drill and Plaintiffs offer no reasonable explanation or justification for the harried process they created"); see also Fishman v. Schaffer, 429 U.S. 1325, 1330 (1976) (Marshall, J., Circuit Justice) (denying ballot access injunction in part on the ground that "applicants delayed unnecessarily in commencing [the] suit" until "[t]he Presidential and overseas ballots have already been printed; some have been distributed[,

12

and t]he general absentee ballots are currently being printed."); Fulani v. Hogsett, 917 F.2d 1028, 1031 (7th Cir. 1990) ("As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made."); Mich. Chamber of Commerce v. Land, 725 F. Supp. 2d 665, 681 (W.D. Mich. 2010) ("It is well established that in election-related matters, extreme diligence and promptness are required." (internal citation and quotation omitted)).

Notably, in cases where courts have rejected application of the equitable doctrine of laches, litigants were found to have acted in the very opposite manner than Plaintiffs here. For instance, in Gallagher v. N.Y. State Bd. of Elections, 477 F. Supp. 3d 19, 41 (S.D.N.Y. 2020), where candidates for State Assembly in New York and various voters challenged the rejection of absentee ballots due to the absence of a timely postmark, the court recognized that a defense of laches can be asserted where plaintiffs are "guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." Id. at 41. However, the court was not persuaded that delay should defeat a presumption of irreparable harm because plaintiffs could not have fully understood the issues raised with postmarking until after absentee ballot counting had begun when copies of the invalidated ballots were revealed pursuant to challenge. Id. at 42. Delay was excused

13

because the "full scope of issues likely did not become clear to Plaintiffs." Id. at 41.

In the instant matter, Plaintiffs feign no naivete. Plaintiff Kim is a three-time and current United States Congressional Representative. See Verified Complaint at ¶24. Plaintiff Rush has already participated in at least one prior election having unsuccessfully run for the Second Congressional District in the 2022 Democratic primary election. Id. at ¶26. Plaintiff Schoengood has been formally running for her seat since January 2024. Id. at ¶152. Plaintiffs have had good reason to understand the ballot design arising from New Jersey election law they would not appear "on the line" of the respective county parties should they not obtain the endorsement of respective county committees. Yet, they waited, all the while still competing for county lines.

Plaintiffs' conduct is notably similar to conduct critiqued by the court in the election matter, Perry v. Judd, 471 Fed. Appx. 219, 220 (4th Cir. 2012). There, the court applied the doctrine of laches to bar plaintiffs' request for an injunction ordering ballots, including absentee ballots for military and overseas voters, not be ordered, printed, or mailed. Id. at 220. The court emphasized that a laches defense was appropriate as the challenge election laws in Virigina had "been on the books for years" and yet plaintiffs elected not to bring their suit until months prior to seek a motion for injunctive relief. Id. at 222-223. Notably,

14

the Court wrote, "If we were to grant the requested relief, we would encourage candidates for President who knew the requirements and failed to satisfy them to seek at a tardy and belated hour to change the rules of the game." Id. at 220.

The prejudice to Defendants is material and clear. This is not a matter in which the Court can only find delay without any actual prejudice to the responding party. If the Court grants Plaintiffs requested injunctive relief, Defendants will need to scramble to alter their ballot preparations with only weeks left until the April 20, 2024 cutoff for the mailing of absentee and military ballots. See N.J.S.A. 19:63-5, N.J.S.A. 19:63-9. Further, the Counties' respective election system companies will be required to modify, certify, test, and implement new ballot designs within that same timeframe so that ballots can be printed before April 20, 2024.

Plaintiffs withheld their challenge until February 26, 2024, fifty-four (54) days prior to April 20, 2024. As testimony is anticipated to establish at the public hearing on Plaintiffs' requested relief, County Clerks do not simply press print the day prior to April 20, 2024. County Clerks must utilize the weeks prior to the April 20, 2024 cutoff to arrange the ballot for, in many Counties, hundreds of districts.

After delivery of ballots to a County's respective election system company, County Clerks will need to communicate with those

15

companies to ensure that every single district has been properly programmed. Those companies themselves must ensure that the ballot style being implemented has already been certified and tested. In the event a deviation in style is ordered by the Court, the ripples would begin at the very level of these election system companies themselves, which would be expected to not simply redesign the ballot layout style but certify and test the new style to be implemented. Those ripples would course through the County Clerk's waters as well. Each County would need to revise the layouts of ballots for hundreds of districts and check the work of the election system companies after the revised ballots are delivered to the companies for programming

Courts have long expressed particular concern about a party bringing last-minute election-related challenges. See, e.g., Perry, supra, 471 F. App'x at 227 (noting that "applications for a preliminary injunction granting ballot access have been consistently denied when they threaten to disrupt an orderly election"). One court noted that, "[a]s time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made."; See also New Jersey Conservative Party, Inc. v. Farmer, 753 A.2d 192, 197 (N.J. Super. Ct. Ch. Div. 1999) (noting the state has "the power . . . to regulate elections to 'ensure orderly, rather

16

than chaotic, operation of the democratic process'" (quoting Storer v. Brown, 415 U.S. 724, 730 (1974)).

Plaintiffs have unreasonably delayed their application for relief. The prejudice to Defendants and the election process that will result is clear and inexcusable. As such, it is respectfully submitted that Plaintiffs have failed to establish irreparable harm and to satisfy the criteria for an injunction. Their Motion should rightly be denied.

### B. Plaintiffs Have Failed to Establish A Likelihood of Success on The Merits.

The alleged violations asserted by Plaintiff are not cognizable claims for relief. Plaintiffs cannot establish a likelihood of success on the merits and, thus, are not entitled to injunctive relief. As an initial matter, Plaintiffs have failed to join indispensable parties and, thus, cannot succeed on the merits. Further, when assessed pursuant to the proper weighing process long established by case law, it is clear that the election laws challenged by Plaintiffs are not in fact unconstitutional or violations of election law.

### i. Plaintiffs Have Failed to Join Indispensable Parties.

As an initial matter, Plaintiffs' action is unlikely to succeed as they have failed to join indispensable parties to this suit in accordance with F.R.C.P. 19. Pursuant to F.R.C.P. 19:

> A person who is subject to service of process and whose joinder will not deprive the court

17

> of competent jurisdiction over the subject
> matter of the action shall be joined as a party
> in the action if (1) in the person's absence
> complete relief cannot be accorded among those
> already parties, or (2) the person claims an
> interest relating to the subject of the action
> and is so situated that the disposition of the
> action in the person's absence may (i) as a
> practical matter impair or impede the person's
> ability to protect that interest or (ii) leave
> any of the persons already parties subject to
> substantial risk of incurring double, multiple
> or otherwise inconsistent obligations by
> reason of the claimed interest.

Id. "Rule 19 is meant to insure both that all parties interested in the outcome of a suit have a chance to affect such outcome, and that the parties in any case will have the benefit of finality as to the judgment rendered." White Hall Bldg. Corp. v. Profexray Div. of Litton Industries, Inc., 387 F.Supp. 1202, 1207 (E.D.Pa.1974), aff'd, 578 F.2d 1375 (3d Cir. 1978), aff'd, 578 F.2d 1377 (3d Cir. 1978). "Courts treat clauses (1) and (2) in the disjunctive just as the rule phrases them." General Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007) (citing Koppers Co. v. Aetna Cas. & Sur. Co., 158 F.3d 170, 175 (3d Cir. 1998)).

The first inquiry under Rule 19 is whether "complete relief may be accorded to those persons named as parties to the action in the absence of any unjoined parties." Id. at 313. What is otherwise known as "completeness" is "determined on the basis of those persons who are already parties, and not as between a party and

18

the absent person whose joinder is sought." Id. (citing Janney
Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405
(3d Cir. 1993)).

Here, there can be no doubt that this matter cannot be
"complete" without the inclusion of unjoined, necessary parties.
The ultimate relief sought in this matter is the undoing of all
primary election ballot composition and preparation throughout the
State of New Jersey. This would include the processes set forth
not only for the ballot design and ordering, as suggested by
Plaintiffs, but also for the approval and use of electronic voting
systems, which would be required to implement said designs as set
forth under N.J.S.A. 19:48-1, *et al*. and N.J.S.A. 19:53A:1, *et al*.
Both the County Board of Elections and Superintendent of Elections
are also responsible for various duties with respect to elections
in this State as set forth under Title 19. Notably, the
Superintendent, also referred to as the Commissioner of
Registration, is required for all 1st class counties, and permitted
in 2nd and 5th class counties. Mercer County, for instance, utilizes
a Superintendent of Elections. In counties where there is no
Superintendent, the Board of Elections fills the role of the
Superintendent. Under New Jersey law, the Superintendent:

> (1) accepts voter registrations; (2) reviews
> and approves voter registrations; (3) receives
> and stores provisional ballots after the
> election; (4) verifies registration for all
> provisional ballots; and (5) acts the

19

> custodian for the voting machines. As
> custodian, the Superintendent is responsible
> for the maintenance, storage, and delivery of
> the voting machines.

Gusciora v. Corzine, 2010 N.J.Super.Unpub. LEXIS 2319*, fn 8

(Mercer County Superior Court, Law Division, February 1, 2010).

These duties interact with those of the County Clerks and the

County Boards of Election. County Boards of Election are

responsible for:

> (1) selection of polling places; (2);
> enforcement of the Accessibility Act; (3)
> creation and maintenance of election
> districts; (4) appointment of challengers; (5)
> appointing and training of board workers; (6)
> receiving, counting, investigation, and
> certifying mail-in ballots; and (7) counting
> and certifying provisional ballots. In
> counties where there is no Superintendent, the
> Board also handles all of the responsibilities
> of Superintendent.

Id. For both the Superintendent and the County Boards, their duties

extend to the actual use and care of voting machines. See N.J.S.A.

19:48-4. All electronic voting systems must first be certified and

meet the requirements set forth under N.J.S.A. 19:53A-3 before use

in any election. See also N.J.S.A. 19:48-2 and N.J.S.A. 19:53A-4.

None of the parties responsible for these actions, i.e. that

Superintendents of Election or the County Board of Elections are

listed as parties to this suit. The statutory scheme that provides

for the actual use of voting machines and voting systems, which

would be directly impacted by the requested relief in this matter,

20

requires these parties for completeness. Regardless of the respective County Clerk's design of the primary ballots, those designs require implementation through the various machinery approved and used for each district. Failure to include these parties who are responsible for major aspects of the upcoming 2024 primary election deprives this Court of all necessary facts and information to determine whether a complete overhaul of our election process is warranted on an emergent basis.

Equally problematic is the Plaintiffs failure to include, at the very minimum, the other candidates seeking the offices in which the Plaintiffs are also running. While the Plaintiffs' Certification of Service (ECF Doc. 8) sets forth that the various candidates including Senate Candidates Patricia Campos-Medina, Lawrence Hamm, and Tammy Murphy, CD-2 candidates Tim Alexander, Brandon Saffold, and Joe Salerno; and CD-3 candidates Joseph Cohn, Herbert C. Conaway, Jr., and Carol Murphy were all served with a copy of the present emergent application (via electronic mail), no such service is a substitute for inclusion of any of these individuals as a party under Rule 19. Each one of them has a material interest in the matter as candidates for the respective offices. The requested relief may significantly impact those candidates and their rights, including the very First and Fourteenth Amendment rights claimed by the Plaintiffs. The failure to include them as parties to this complaint further deprives this

Court of the ability to test and assess the arguments presented by the Plaintiffs. It also dilutes the Court's ability to address these requests on the emergent and truncated basis that Plaintiffs seek.

Likewise, the New Jersey Secretary of State is an essential party to the litigation as her office oversees and enforces the election laws of this State. See N.J.S.A. 19:31-6a and N.J.S.A. 52:16A-98. As noted above, the Secretary of State is also tasked with the certification of the election voting machines and systems utilized in the State. The systems presently certified are based upon the traditional ballot layout style used throughout the State. The changes sought by the Plaintiffs require much more than simply moving names and titles. They will require different development, testing, and ultimately, certification from the Secretary of State. While the Plaintiffs have named the Secretary of State as an "interested party" in the caption, there is no stated action against the office of the Secretary. Arguably, the Secretary's positioning as only an interested party, rather than a defendant is an inadequate way of satisfying Rule 19's requirement of joinder as a party to the action.

What makes this more confounding is the fact that the Plaintiffs do assert that they provided notice of their Verified Complaint and Motion for Injunctive Relief to the other candidates and the Secretary of State, but chose not to name them as

22

Defendants. By doing so, these indispensable parties are left to file motions to intervene in the suit rather than have an opportunity to be heard, as of right, as parties to the Complaint. The emergent nature of the suit is no reason to not include necessary parties to an action. In reality, the request for injunctive relief is precisely why Plaintiffs had an obligation to file suit with the appropriate parties named. This failure on Plaintiffs' part creates hurdles and stifles potential opposition to their claims. Same cannot be rewarded.

### ii.  *Framework for Review of an Election Law Challenge*

The framework for review of an election law challenge was established in <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 788 (1983). There, the Court promulgated a less categorial system of classification for the applicable standard of review and rejected pegging election law cases into strict scrutiny, intermediate scrutiny, and rational basis categories. <u>Rogers v. Corbett</u>, 468 F.3d 188, 194 (3d Cir. 2006).

Rather, the Court enunciated a test by which courts are to undertake a weighing process that examines "what burden is placed on the rights which plaintiffs seek to assert and the burden against the precise interest identified by the [S]tate and the extent to which these interests require that plaintiff's rights be burdened." <u>Democratic-Republican Org. v. Guadagno</u>, <u>supra</u> 900 F.

Supp. 2d at 452; <u>see also</u> <u>Eu v. San Francisco Cty. Democratic Cent.</u>
<u>Comm.</u>, 489 U.S. 214, 222 (1989).

If a court finds that a challenged law burdens rights
protected by the First and Fourteenth Amendments, the court must
then "weigh the character and magnitude of the burden the State
rule imposes on the [First Amendment] rights against the interest
the State contends justify that burden, and consider the extent to
which the State's concerns make the burden necessary." <u>Timmons v.</u>
<u>Twin Cities Area New Party</u>, 520 U.S. 351, 357-58 (1997) (citing
<u>Burdick v. Takushi</u>, 504 U.S. 428, 434 (1992)) (internal quotation
marks omitted).

### iii. New Jersey's Bracketing and Ballot Placement Statutes Do Not Violate the First and Fourteenth Amendments.

At Count I (Right to Vote) and Count III (Freedom of
Association), Plaintiffs claim that New Jersey's bracketing and
ballot placement systems, as established pursuant to various
provisions of <u>N.J.S.A.</u> §§ 19:23-6; 19:23-18; 19:23-24; and 19:49-
2, violate Plaintiffs' right to vote and associational rights.
These claims fail as a matter of law.

Plaintiffs' allegation that the bracketing and ballot
placement systems constitute an obstruction of the right to vote
is not supported by the facts. The statutory system employed by
Defendant and other County Clerks throughout New Jersey does not

24

obstruct access to the ballot or deny voters the right to vote for their chosen candidate.

While ballot placement reflects regulation of ballot structuring, it does not in and of itself constitute a restriction on access. See Guadagno, supra, 900 F. Supp. at 456 (citing Sonneman v. State, 969 P.2d 632, 638 (Alaska 1998) ("[T]he statute in question, however, does not restrict access to the ballot or deny any voters the right to vote for candidates of their choice … Instead, it merely allocates the benefit of positional bias, which places a lesser burden on the right to vote."))

Further, Plaintiffs attempt to wrap a vote dilution theory into their right to vote claims is equally unavailing. Plaintiffs' allegations of injury by diminution of their electoral chances fail as a matter of law. Voter dilution has been recognized as a cognizable constitutional claim where voting schemes sound from discrimination or the systematic or invidious devaluing of community votes compared to similarly situated persons. See Reynolds v. Sims, 377 U.S. 533, 557 (1964) (finding dilution where an apportionment system deprived voters in the more populous counties of their proportionate share of representatives and senators, and, thus, a dilution of the voting weight of a certain class of citizen based upon geographic residency); Republican Party of Pa. v. Cortés, 218 F. Supp. 3d 396, 406-407 (E.D. Pa. 2016) ("Vote dilution is certainly a viable equal protection theory

321916v1

in certain contexts. Such claims can allege that a state has enacted a particular voting scheme as a purposeful device 'to minimize or cancel out the voting potential of racial or ethnic minorities.'" (quoting Miller v. Johnson, 515 U.S. 900, 911 (1995)).

Plaintiffs raise no claims of voter exclusion based upon any form of invidious discrimination against a class of similarly situated voters. Further, no claims are made that the bracketing and ballot placement system discriminate based upon voters' geographic boundaries. Voters throughout each respective county may vote for candidates, including Plaintiffs, regardless of location. The Complaint alleges no cognizable claim of exclusion of "certain classes of candidates from the electoral process," nor exclusion of voters' ability to cast votes for candidates. Anderson v. Celebrezze, 460 U.S. 780, 793 (1983).

Plaintiffs also fail to state a claim under Count III (Freedom of Association). There, Plaintiffs allege that the bracketing and ballot systems violate Plaintiffs' constitutional rights of freedom of association. However, freedom of association is a right enjoyed by partisan political organizations that wish to identify with those who constitute the association. See Eu, supra, 489 U.S. at 216.

The First Amendment both protects the right to associate and the right not to associate. See Cal. Democratic Party v. Jones,

26

530 U.S. 567, 573 (2000) ("[T]he First Amendment protects the freedom to join together in furtherance of common political beliefs, which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only"); see also Democratic Party of United States v. Wisconsin ex rel. La Follette, 450 U.S. 107 (1981) ("Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being.")

Even, assuming arguendo, Plaintiffs' specific associational rights are in some manner burdened by not receiving Plaintiffs' *preferred* position on the upcoming primary's ballots, Plaintiffs' own respective association rights can be limited without constitutional infringement because of the public interest served by protecting the associational rights of all political organizations that seek placement on the ballot.

Under the balancing test to be employed in constitutional election law challenges, including association rights claims, a severe burden on a candidate's rights requires a narrowly tailored burden that advances a compelling state interest, while a lesser burden triggers a lesser standard of review under which a State's regulatory interests will usually justify reasonable, nondiscriminatory restrictions. Eu, supra, 489 U.S. at 216; Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986);

27

see also <u>Clough v. Guzzi</u>, 416 F. Supp. 1057 (D. Mass. 1976) (Rejecting challenge to placement of candidates on first ballot position for primaries, reasoning, "even assuming some positional advantage here, the voters' right to choose their representatives is not sufficiently infringed as to warrant strict scrutiny of the Massachusetts statute and underlying legislative purpose.")

Plaintiffs' alleged burden is not a severe one. The system challenged by Plaintiffs does not forbid placement on the ballot, prevent Plaintiffs from association with others as they wish to on the ballot, inhibit any voter from voting from exercising their right to vote, or limit Plaintiffs' ability outside the voting booth to communicate their association with other candidates or groups. Rather, Plaintiffs have the same opportunity as all others to communicate their association with other candidates on the ballot.

Rather, the system challenged by Plaintiffs is designed to effectuate opportunity for candidates at a given level to clearly signal their association with others by appearing on a single line or, if they elect to do so, associate with no other candidates on a line of their own. Further, it is designed to provide a manageable and understandable system for voters to discern those associational signals. The system established by the Legislature effectuates the State's interest in protecting the associational rights of candidates and permitting voter discernment of those

28

associations through an orderly electoral process. <u>Doe v. Reed</u>, 561 U.S. 186, 197 (2010) ("The State's interest in preserving the integrity of the electoral process is undoubtedly important."); <u>see also</u> <u>Smith v. Penta</u>, 81 N.J.65, 70 (1979).

Plaintiffs cannot establish a likelihood of success on the merits as to Count I (Right to Vote) and Count III (Freedom of Association).

### iv. New Jersey's Bracketing and Ballot Placement Statutes Do Not Violate the Equal Protection Clause.

At Count II (Equal Protection), Plaintiffs claim that New Jersey's bracketing and ballot placement systems violate Plaintiffs' equal protection guarantees. Yet again, Plaintiffs will be unable to establish a likelihood of success on the merits.

The Equal Protection Clause directs that all persons in a similar circumstance shall be treated alike. <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982). Nonetheless, not all classifications created by the state are per se unconstitutional or automatically subject to heightened judicial scrutiny. <u>Maldonado v. Houstoun</u>, 157 F.3d 179, 184. Rather, a classification can be found constitutional so long as a classification bears a rational relation to a legitimate end and does not burden a fundamental right or target a suspect class. <u>Ibid.</u>

In the instant matter, the bracketing and ballot placement system challenged by Plaintiffs satisfies the applicable test and

29

should be found constitutional. As Plaintiffs do not allege a suspect classification or violation of a fundamental right, the question at hand is whether a rational basis exists for the ballot system as designed. As set forth above, supra at Point II(B)(i), the State's ballot system effectuates the protection of associational rights and voters' ability to discern candidates' associational interests. This is a compelling interest that clears the low burden of establishing a rational basis. Under the standard applicable to alleged violations of equal protection guarantees, protecting this constitutional survives scrutiny.

Plaintiffs cannot establish a likelihood of success on the merits as to Count II (Equal Protection).

### *v.* *New Jersey's Bracketing and Ballot Placement Statutes Do Not Alter the Times, Place, or Manner of Congressional Elections.*

At Count IV (Violation of Elections Clause), Plaintiffs allege that the challenged election laws violate the Constitution's Elections Clause. Plaintiffs fail to set forth a cognizable claim. The Election Clause provides, "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing [sic] Senators." U.S. Const., art. 1, sec. 4, cl. 1.

It has been recognized that the Election Clause grants the states "wide discretion in the formulation of a system for the choice by the people of representatives," United States v. Classic, 313 U.S. 299, 307 (1941), and that such discretion is limited only in that, "the state system cannot directly conflict with federal election laws on the subject." Voting Integrity Project, Inc. v. Bomer, 199 F.3d 773, 775 (5th Cir. 2000).

No conflict exists between the challenged election laws and the Election Clause. The laws do not regulate the time and place of elections. They do not exceed the State's authority to regulate the manner of congressional elections for the reasons seset forth previosuly. Moreover, they in no manner dictate the electoral outcome, as candidates are free to associate as they wish and as the system provides voters the ability to identify their representatives and select their choice.

It is respectfully submitted that Plaintiffs have not established a likelihood of proving their constitutional and election law challenges and, thus, entitlement to injunctive relief.

**C.  A Balancing of the Hardships Demonstrates that Injunctive Relief is Inappropriate and Would Unduly Burden Defendants in this Matter.**

In addition to likelihood of success on the merits and irreparable harm, Plaintiffs are also required to establish that that the balance of equities tips in its favor and that the

31

injunction sought is in the public interest. Munaf v. Geren, 553 U.S. 674, 689-690 (2008).

Plaintiffs make no real attempt to balance the hardships in their moving papers. Suffice it to say that same would be difficult given the speculative nature of their claims. Plaintiffs' arguments presuppose defeat in order to claim their alleged harms. This is despite the fact that at least one of the Plaintiffs has already won several of the county lines Plaintiffs allege to so detest and seek to upend. What Plaintiffs then attempt to do is advance an unsupported theory that Defendants are not harmed at all if the requested preliminary injunctive relief is granted. They simply state that the re-configuration of the primary ballot scheme in 19 counties can "be easily accomplished through [the] use of an office block ballot, a method already in practice in New Jersey." See Pl. br. 51.

Plaintiffs' averment obscures the fact that while the office block ballot may be used in two counties, that does not mean that this is a simple copy and paste job that can be re-purposed in all counties, especially on with the time constraints for developing, certifying, preparing, printing, and delivering of the ballots. Indeed, the support Plaintiffs seek through Dr. Appel's report falls flat. Plaintiffs' state "Dr. Appel's expert report makes clear that the voting machines used in New Jersey are capable of accommodating office block ballot and that the work or effort

32

needed to prepare office-block ballots, using the same [software] will not be significantly different from the work or effort needed to prepare row-and-column ballots." Id. at 51-52.

Putting aside the untested veracity of the "expert report", nowhere within same is there any supported opinion that any of these proposed changes can be performed before the statutory deadlines imposed for ballots to be printed and mailed. The threshold issue at this juncture is not whether the proposed wholesale change to the primary ballot procedure can be done, but rather can such a systemic change be accomplished in time for the 2024 primary election. Neither Plaintiffs nor Dr. Appel provide an articulated answer to this question. The answer, though, is that it cannot.

The Plaintiffs' attempts to downplay the significance of the changes proposed by their immediate application does not lessen the burden that will actually be imposed on Defendants. "A State indisputably has a compelling interest in preserving the integrity of its election process." Purcell v. Gonzalez, 549 U.S. 1, 4 (2006). To implement the changes sought by Plaintiffs preliminary injunction would create chaos immediately before the 2024 primary, which is antithetical to preserving the integrity of the election process. Notably, the election voting machines and systems already in use have been certified and prepared for the printing and tabulation of traditional ballots used in the respective counties.

33

Implementing the changes necessitated by Plaintiffs' injunctive relief request would require development, testing, and certification of the systems by the Secretary of State before implementation and use can be considered.

Moreover, such drastic changes to the primary election ballots mere days before those ballots are mailed out would more likely to confuse voters and sow distrust in the process. Undeniably, the Mercer County Clerk and other County Clerks would have minimal time to prepare the ballots through a new system. An unintended consequence would then befall the County Clerks and other election officials throughout the State to educate voters about entirely new ballots, most of which have never been seen before, on the eve of the primary election. The time and expense required to undertake these efforts is a significant and real burden on Defendants. See Donald J. Trump for President, Inc. v. Way, 492 F.Supp.3d 354, 375 (D.N.J. 2020) (finding that changes enjoining mail-in vote canvassing efforts just prior to the election would force a "walk-back" of a voter education campaign that had been underway regarding the new by-mail election).

It is clear that a true balancing of the hardships demonstrates that granting injunctive relief would have a more onerous and injurious impact on Defendants than the Plaintiffs would face if injunctive relief is not granted. Accordingly, the extraordinary remedy that Plaintiffs seek should be denied.

34

**D.   Plaintiffs' Motion Advances Only Their Self-Interest and Not the Public Interest.**

To meet the fourth prong, Plaintiffs must provide information for the Court to assess the effect on third parties, i.e., the public, that would result from entering the requested relief. See Doe v. Colautti, 592 F.2d 704, 706 (3d Cir. 1979) ("A district court should also consider, when they are relevant, the possibility of harm to third parties from the injunction and the effect of the injunction on the public interest." (citing Delaware Port Auth. v. Transamerican Trailer Tramp., Inc., 501 F.2d 917, 920 (3d Cir. 1974))). Plaintiffs' flatly state in their brief that their position advances the public interest as the "fundamental right to vote is at stake" and that without injunctive relief the 2024 primary election will "proceed in an unconstitutional manner." See Pl. Br. 52. The problem for Plaintiffs is that this is flat-out wrong. The fundamental right to vote is not at stake and the election laws themselves have been upheld by New Jersey Courts repeatedly.

In Quaremba v. Allan, 67 N.J. 1 (1975), the New Jersey Supreme Court determined that the manner in which New Jersey assigns ballot positions is constitutional and the County Clerk's exercise of discretion in enforcement of the ballot design provisions of the law were constitutional. Much like the Plaintiffs here, the

35

plaintiffs in Quaremba argued that unaffiliated candidates were unfairly treated in the ballot design process as opposed to the favorable treatment granted to their opponents who were grouped, or bracketed, together. The New Jersey Supreme Court found:

> [e]ven if that be true, it affords no basis for invalidating, as unreasonable, the legislative determination that whatever the effect on an unaffiliated candidate, the public interest is better served by permitting a grouping of candidates having common aims or principles and authorizing those candidates "to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the machine ballot." Harrison v. Jones, 44 N.J.Super. 456, 461 (App.Div.1957).

Quaremba, supra, 67 N.J. at 13. Squarely at odds with Plaintiffs arguments here, the New Jersey Supreme Court also found that "nothing in the challenged section [N.J.S.A. 19:49-2] inhibits any voter from voting for any person he chooses or limits the right of any candidate to run for office." Id. at 11.

The New Jersey Appellate Division in Schundler v. Donovan, 377 N.J.Super. 339 (App. Div. 2005) also found constitutional the County Clerk's exercise of discretion in designing the ballot. It was specifically determined that the process of bracketing candidates and the "two-tiered drawings first of allied slates and thereafter of State candidates running without allied slates in the county" is not to be disturbed. Id. at 343. Indeed, "[w]here the clerk's discretion is exercised to further a goal of the

36

election laws the court will not substitute its judgment for that of the clerk. The court looks to see that the clerk's action in exercise of that discretion is rooted in reason." Id. at 343-344 (citations omitted).

The Appellate Division noted that "[i]n situations such as the case at hand, we must respect the discretionary role of the count clerks, with their duties qualified by legislatively established standards." Id. at 347. "The integrity and fairness of the electoral process is the primary principle to be advanced in all such matters; and the equality of treatment among candidates for the same office is a linchpin of that idea." Id. at 348.

Succinctly, the only interest served here is that of the Plaintiffs whose defeatism drives the basis of their request for injunctive relief. Their claims are not intended to serve the public in any way. This Court has recently found that issuing injunctive relief on the eve of an election would erode the very integrity to be preserved. See Way, supra 492 F.Supp.3d at 374 (citing Republican Nat'l Comm. v. Democratic Nat'l Comm., 140 S.Ct. 1205, 1207 (2020) finding "federal courts should ordinarily not alter the election rules on the even on an election"); see also Purcell, supra 549 U.S. 1; Frank v. Walker, 574 U.S. 929 (2014); Veasey v. Perry, 574 U.S. 951 (2014).

As noted above, the complete upending of the election process in 19 counties less than 80 days before the primary election will

321916v1

only serve to create voter confusion and sow distrust in the process. "The Court must consider that enjoining a state's election regulations and procedures on the eve of an election can 'result in voter confusion' and incentivize voters 'to remain away from the polls.'" Way, 492 F.Supp.3d at 376 (citing Purcell, 549 U.S. at 405). Even if the requested relief were deemed possible and practicable, there would be no lead time to inform and educate the public.

In a time where distrust in our electoral process is an argument front and center for some, the last thing that our citizenry needs is an overhauled process, rushed at the behest of candidates who claim to have the public's interest at heart. Meanwhile, those very candidates refer to our processes, ones that have been upheld by the Courts and that the candidates themselves have been aware of and participated in long before the filing of this application, as "rigged." This oft used and misapplied labeling of our election laws is an *ad hominem* attack on our system in order to advance the Plaintiffs' private interest. There is no advancement of the public interest by the Plaintiffs' present motion for injunctive relief. Accordingly, same should be denied by this Court.

321916v1

**CONCLUSION**

Based upon the foregoing, Defendant, Paula Sollami Covello, in her official capacity as Mercer County Clerk, demands that Plaintiffs' Motion for Preliminary Injunction be denied.

Respectfully submitted,

**RAINONE COUGHLIN MINCHELLO, LLC**

By:  s/Louis N. Rainone, Esq.
     Louis N. Rainone, Esq.


By:  s/David L. Minchello, Esq.
     David L. Minchello, Esq.


By:  s/Matthew R. Tavares, Esq.
     Matthew R. Tavares, Esq.


By:  s/Christopher Zingaro, Esq.
     Christopher Zingaro, Esq.


Dated:  March 6, 2024

321916v1