MALAMUT AND ASSOCIATES, LLC
Mark R. Natale (#071292014)
Adam S. Malamut (#019101999)
457 Haddonfield Road, Suite 500
Cherry Hill, New Jersey 08650
(856)424-1808
Attorney for Defendant, Joanne Schwartz, in her official capacity as Burlington County Clerk

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ANDY KIM, et al.,

**Civil Action No**. 3:24-cv-01098-ZNQ-TJB

CIVIL ACTION

Plaintiffs,

**v.**

CHRISTINE GIORDANO HANLON, in her
Capacity as Monmouth County Clerk, et al.,

Defendants.

**Defendant Joanne Schwartz, in her official capacity as Burlington County Clerk, Brief in Opposition to Plaintiffs Motion for Preliminary Injunction**

# **Table of Contents**

Table of Authorities.......................................................................................................ii

I.       PRELIMINARY STATEMENT...................................................................... 1

II. FACTUAL AND PROCEDURAL HISTORY ...................................................... 2

  A. Factual Background ........................................................................................... 2

  B. Procedural Background……………………………………………………...3

III. LEGAL ARGUMENT ........................................................................................ 4

  A. The Plaintiffs Fail to Meet This Court's Heightened Standard for Injunctive Relief ........... 4

  B. No Plaintiff Has Standing to Bring a Claim Against the Burlington County Clerk............. 14

  C. Plaintiff's Motion Should Be Denied Due to a Failure to Include Necessary Parties.......... 16

III. CONCLUSION.................................................................................................. 17

**Table of Authorities**

Acierno v. New Castle Cnty, 40 F.3d 645 (3d Cir. 1994)…………………………………………8

Conforti v. Hanlon, 2022 WL 1744774 (D.N.J. May 31, 2022)…………………………5, 6, 7, 12

Cook v. Gralike, 531 U.S. 510 (2001)……………………………………………………………7

Council of Alt. Political Parties v. Hooks, 121 F.3d 875 (3d Cir. 1997)…………………………..8

Democratic Nat'l Comm. v. Wis. State Legis., 141 S. Ct. 28 (2020)……………………………13

Durel B. v. Decker, 455 F. Supp. 3d 99 (D.N.J. 2020)…………………………………………5

Eu v. S.F. Cty. Democratic Cent. Comm., 489 U.S. 214 (1989)…………………………………11

Jenness v. Fortson, 403 U.S. 431 (1971)………………………………………………………..8

N.J. Physicians, Inc. v. President of the U.S., 653 F.3d 234 (3d Cir. 2011)……………………...14

Mazo v. Way, 551 F.Supp. 3d 478 (D.N.J. 2021 )……………………………………………5

Messina v. Coll. of N.J., 566 F. Supp. 2d 236 (D.N.J. 2021)…………………………………...4

O'Brien v. Brown, 409 U.S. 1 (1972)………………….....…………………………………...13

Oburn v. Shapp, 521 F.2d 142 (3d Cir. 1975)……………………………………………..4

Purcell v. Gonzalez, 549 U.S. 1, 127 S. Ct. 5 (2006)…………………………………………13

Republican Nat'l Comm. v. Democratic Nat'l Comm., 140 S. Ct. 1205 (2020)…………………13

Ripon Society, Inc. v. Nat'l. Republican Party, 525 F. 2d 567 (1975)………………………...11

South Camden Citizens in Action v. N.J. Dep't. of Envtl. Prot., 274 F.3d 771 (3d Cir. 2001)……4

Tashjian v. Republican Party, 479 U.S. 208, 107 S. Ct. 544 (1986)……………………………11

Tilden Recreational Vehicles, Inc. v. Belair, 786 F. App'x 335 (3d Cir. 2019)…………………8

Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131 (3d Cir. 2009)……………………………15

Tracey v. Recovco Mortg. Mgmt., LLC, 451 F. Supp. 3d 337 (D.N.J. 2020)……………………8

Washington State Grange v. Wa State Repub. Party, 552 U.S. 442 (2008)…….………………5

N.J.S.A § 19:23-18…………………..…...…………………………………………………2

N.J.S.A § 19:49-2……………………………………………………………………………2

N.J.S.A § 19:23-24……………………………………………………………………………2

N.J.S.A § 19:23-26.1…………………………………………………………………………7

Fed. R. Civ. Pro. 19…………………………………………………………..…16, 17

## I.  <u>PRELIMINARY STATEMENT</u>

While this case has been met with an atypical amount of fanfare, attention, and pontification, the actual question before the Court is a direct and routine procedural inquiry:

*Have the Plaintiffs satisfied the heightened burden of proof required to warrant a preliminary injunction that impacts the rights of thousands of citizens and places a great burden on state and local governments?*

The clear answer is no. Anything beyond a cursory glance at Plaintiffs accusations and their purported proofs reveals that the evidence before the Court is the type of vague and generalized argument appropriate for a campaign stump speech, while falling quite short of the standards imposed by the Supreme Court, the Third Circuit Court of Appeals, the Federal Rules of Civil Procedure, and this Court's prior precedent.

The Plaintiffs allege that by following state law and allowing political parties to exercise their First Amendment rights and clearly identify their endorsed candidates on a primary ballot, the County Clerks are interfering with the Constitutional rights of the unendorsed candidates. The first challenge for the Plaintiffs is that the caselaw provides an unlikely path to the ultimate success on the merits. Looking beyond that, their expert reports fail to produce an accurate assessment of the degree to which our state's ballot design injures the Plaintiffs (if at all). Without that evidentiary support, the court is unable to engage in the balancing tests required to rule on Plaintiffs claims, and the basis injunctive relief would be entirely speculative.

On top of failing on a procedural and evidential basis, the Plaintiffs requested relief also creates a great burden on the Defendant County Clerks, likely resulting in missed statutory deadlines for the election. This negative impact on the timely administration of the election,

caused by Plaintiffs own delay in filing this action, serves as an additional weight on the scale against granting Plaintiffs' relief.

For those reasons, those stated below, and those put before the Court at the upcoming hearing, the Burlington County Clerk respectfully requests this Court deny Plaintiffs' Motion.

## II. <u>FACTUAL AND PROCEDURAL HISTORY</u>

### A. Factual Background

On September 23, 2023, Congressman Kim launched his primary campaign for the Democratic Nomination for United States Senate. <u>See</u> ECF #1, para. 144. Congressman Kim won the Burlington County Democratic Committee endorsement and the right to bracket with the Burlington County Democratic Committee endorsed candidates. <u>See</u> ECF #1, para. 154. On January 21, 2024, Sarah Schoengood declared her candidacy for the Third Congressional District, encompassing Burlington County. <u>See</u> ECF #1, paras. 151-152. Ms. Schoengood participated in the Burlington County Convention where she did not receive the party's endorsement, and thus the ability to bracket with the Burlington County Democratic Committee. <u>See</u> ECF #1, para 153. Plaintiff Carolyn Rush is running for New Jersey's Second Congressional District, which does not contain any portion of Burlington County. <u>See</u> ECF #1, para. 158.

New Jersey Law requires candidates who want to bracket with other candidates running for office to request to be bracketed to the County Clerk. <u>See</u> N.J.S.A. 19:23-18, 19:49-2. Any candidates who want to bracket in Burlington County (as in any other county) must submit a request within 48 hours of the joint petition deadline. <u>See</u> N.J.S.A. 19:49-2. Subsequently the County Clerk will hold a ballot draw to determine the order of candidates. See N.J.S.A. 19:23-24.

**B. Procedural Background**

This matter arises from a verified complaint filed by Plaintiffs Andy Kim, in his personal capacity as a candidate for U.S. Senator, and Andy Kim for New Jersey, Mr. Kim's campaign organization (collectively referred hereafter as "Mr. Kim"); Sarah Schoengood, a candidate for the U.S. House of Representatives for New Jersey's Third District, and her campaign organization Sarah for New Jersey (collectively referred hereafter as "Ms. Schoengood"); and Carolyn Rush, a candidate for the U.S. House of Representatives for New Jersey's Second district, and her campaign organization Carolyn Rush for Congress (collectively referred hereafter as "Ms. Rush"). Plaintiffs' filed their verified complaint with this Court on Monday February 26, 2024.  See ECF #1.  Plaintiffs collectively brought suit against a number of the New Jersey County Clerks, including Joanne Schwartz, in her official capacity as Burlington County Clerk (hereafter referred to as "Burlington County", "Clerk", or "Burlington County") under the U.S. Constitution, specifically the First and Fourteenth Amendments, and the Elections Clause, seeking declaratory relief regarding allegedly unconstitutional primary ballot design. Id. On the same day as the filing of the complaint, Plaintiffs filed the instant motion for preliminary injunction, seeking preliminary and permanent injunctive relief enjoining the Clerk from designing a ballot according to current New Jersey law, and requiring the Clerk to utilize new ballot design proposed by the Plaintiffs. See ECF # 5.

On Thursday, February 29, 2024, this Court held a Case Management Conference with Counsel for Plaintiffs, named Defendants, and named interested parties to establish a briefing schedule and to address other concerns of the parties. See ECF #34. Pursuant to the Court order, Defendant timely submits this opposition brief.

### III. Legal Argument

**A. The Plaintiffs Fail to Meet This Court's Heightened Standard for Injunctive Relief**

Plaintiffs ask the Court for both a preliminary and permanent injunction, enjoining Defendants, including Burlington County Clerk, from following New Jersey state law when designing the primary election ballot. However, their request is not met with a legal or factual argument that satisfies the requirements for a preliminary injunction.

To obtain a preliminary injunction, the moving party must demonstrate (1) the reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured if the injunction is not granted.  See South Camden Citizens in Action v. N.J. Dep't. of Envtl. Prot., 274 F3d 771, 777 (3d Cir. 2001). The court should also consider, when relevant, (3) the possibility of harm to other interested persons as a result of the court's decision, and (4) the public interest. Id.  The Third Circuit has held that district courts should balance those four factors, but only if the party seeking the injunction meets the threshold of the first two. Id. citing Oburn v. Shapp, 521 F.2d 142, 147 (3d Cir. 1975). Without a showing of a likelihood of success on the merits or a demonstration of irreparable injury, the analysis stops there and the injunction must be denied. Id. at 777.  Even with that two tiered approach, the burden always remains on the party pursuing the injunction, and an injunction should only be issued if the court is convinced that "all four factors" favor preliminary relief. See Messina v. Coll. of N.J., 566 F. Supp. 2d 236 (D.N.J. 2021).

*i. The Plaintiffs fail to prove they have a likelihood of succeeding on the merits.*

The Plaintiffs, in facing a bevy of contradicting caselaw and offering insufficient expert evidence, cannot show a likelihood of success on the merits. To meet this factor, a plaintiff must

make a showing that is "significantly better than negligible" See Durel B. v. Decker, 455 F. Supp. 3d 99, 106 (D.N.J. 2020).

In the instant cases, the Plaintiffs first two arguments are that the current statutory ballot design framework violates First Amendment rights.[1] As explained by this Court, the *Anderson-Burdick* factoring test is used to determine the constitutionality of burdens on election-related First Amendment rights. See Conforti v. Hanlon, 2022 WL 1744774 (D.N.J. May 31, 2022). Under this test, the Court considers what burden is placed on the rights the Plaintiff seeks to assert, and then balances that burden against the precise interests identified by the state and the extent to which these interests require that Plaintiff's rights be burdened. See Washington State Grange v. Wa State Repub. Party, 552 U.S. 442, 452-453 (2008). When reviewing a case under the *Anderson – Burdick* test, "courts trend toward establish a robust factual record to characterize an alleged burden." See Mazo v. Way, 551 F.Supp. 3d 478, 508 n. 12 (D.N.J. 2021).

The lack of the factual record mentioned by this court in Mazo is fatal to Plaintiff's request for a preliminary injunction. Simply put, this court is not in a position to opine on the likelihood of success on the merits without discovery, according to the observations made by this Court in the Conforti matter. This Court in Conforti wrote:

> "Rather, in this case, Plaintiffs' burdens and the State's interests **are factual and may require discovery**. **Depending on further factual findings**, the state's interest may be sufficiently compelling to pass muster under the relevant Constitutional tests." See Conforti, 2022 WL WL 1744774 , 37 (D.N.J. May 31, 2022) (emphasis added).

---

[1] For the sake of brevity, the Burlington County Clerk will not re-litigate the constitutional arguments made in *Conforti*, while acknowledging that this Court has already ruled that the Plaintiffs First Amendment claims are valid, and the Equal Protection Claim is not. Defendant Burlington County Clerk reserves the right to challenge the existence of these alleged First Amendment and Equal Protection Claims in subsequent motion practice and/or appeal.

In order to win injunctive relief, Plaintiffs will have to show what has changed since the Conforti opinion to eliminate the need for a robust factual record. The record here is not meaningfully different than the record before the Court in Conforti. Discovery in this action has obviously not commenced, and discovery in the Conforti action has not begun in earnest due to multiple requested extensions by counsel for the Plaintiffs (including one on the eve of filing this new lawsuit). The Defendants are thus left without the opportunity to pursue the "further factual findings" that this court stated may very well defeat Plaintiffs claim.

Looking at the state interests expressed in the Conforti matter, the Defendants would be well served with the opportunity to conduct discovery. There, the County Clerks and the State of New Jersey argued that there were state interests in preserving ballot integrity and avoiding voter confusion, and allowing candidates to express their associations on the ballot.  Additional discovery, on the election integrity issue, could reveal the extent to which a change in New Jersey's ballots would cause voter confusion, and what steps would be necessary to mitigate voter confusion prior to an election. Additionally, discovery would be useful in the second category of state interests of allowing candidates to express their associations on the ballot. Discovery would help illuminate the difference, if any, between allowing Plaintiffs to express their association with a slogan only as opposed to a bracket, and to what extent removing the bracket interferes with that right. Knowing that the court specifically said discovery could lead to these interests defeating Plaintiffs claims, the Plaintiffs are now trying to push through this preliminary injunction without the benefit of any discovery.

There is a slight variation on the state interests that was not present in Conforti. Rather than just concern with elections as a whole in a generalized sense, the Defendants and the State have a huge interest in the election that is upon us. A whole bey of concerns that were not present

in the Conforti action but that could interfere with the appropriate administration of an election are now present due to the timing of the Plaintiffs' motion. This is addressed more below in the "public interest" section.

Moving past the First Amendment arguments, the Plaintiffs argue that the current ballot design statutory framework violates the Elections Clause of the Constitution. When a state regulation goes beyond the "time, place, or manner" of the election, courts consider whether the regulation goes beyond state power by dictating outcomes, favoring or disfavoring a class of candidates, or evading constitutional constraints. See Cook v. Gralike, 531 U.S. 510, 523 (2001). The Supreme Court has invalidated state regulation that attaches a "concrete" consequence to noncompliance. See Id. at 524.

Plaintiffs argue that the concrete consequence is the loss of the primacy effect and the positive impact of the line. This argument fails for two reasons. First, Senate Candidate Andy Kim does not lose his chance at earning the first ballot position, as the ballot draw rules differ when governor or United States Senator is on the ballot. See N.J.S.A § 19:23-26.1.  Second, the record is not clear on the impact of the current statutory framework. In Conforti, the Court found that the much lower pleading standard was met in the Motion to Dismiss stage, because the Plaintiffs "sufficiently alleged" that no non-incumbent had won a federal election without gerrymandering in the past fifty years, and referred to evidence that suggested ballot position impacts voting. Here, under the higher preliminary injunction standard, Plaintiffs cannot support those two arguments. First, no analysis is done to show the various other explanations as to why no federal non-incumbent has won a primary without gerrymandering in the past fifty years. There are multitude of reasons – from name identification, to money, to campaign operations – as to why incumbents win. Ignoring that at the pleading stage may be appropriate, but here where

7

the Plaintiffs must meet the higher standard it cannot be ignored. Additionally, for reasons outlined below, the experts used to support that ballot position has an advantage provided insufficient reports without the appropriate opportunity for rebuttal, so the Court cannot consider that point proven or likely to be proven.

*ii. Irreparable Injury*

As the moving party, Plaintiffs must make a "clear showing of immediate irreparable injury." See Tracey v. Recovco Mortg. Mgmt., LLC, 451 F. Supp. 3d 337, 344 (D.N.J. 2020). Irreparable injury is defined by the Third Circuit as harm "such that legal remedies are rendered inadequate." Tilden Recreational Vehicles, Inc. v. Belair, 786 F. App'x 335, 342 (3d Cir. 2019). To justify injunctive relief, the risk of irreparable harm must not be speculative. See Acierno v. New Castle Cnty, 40 F.3d 645, 655 (3d Cir. 1994). Demonstrating irreparable harm requires more than just "a possibility of a remote future injury," but rather sufficient evidence to make a "clear showing of immediate irreparable injury." Id. In election cases, the irreparable harm standard has been found satisfied during extreme examples of a candidate at risk of not appearing on the ballot. See Jenness v. Fortson, 403 U.S. 431 (1971); See also Council of Alt. Political Parties v. Hooks, 121 F.3d 875 (3d Cir. 1997).

Here, the extent of the injury alleged by the Plaintiffs and whether it exists at all, is completely speculative due to the inadequate expert opinions provided in this action.  Plaintiffs produce three experts that provide a combination of opinions on psychology and historical voter data. These opinions are formed by ignoring major influences on voter behavior. Defendant Burlington County Clerk will rely on the record created on the March 18, 2024, hearing to show the specific deficiencies in the expert reports, however, a few broad strokes are worth

highlighting in this brief. These are just some of the ways that Plaintiffs' experts purposely ignored information in order to reach their conclusions.

Dr. Pasek relied on a poll done with voters about the 2024 Primary election. See ECF #1, Exhibit #2, paras. 115-122. However, this study was done in January of 2024, six months before the actual primary date.  The study fails to account for how information voters receive during a campaign will influence their behavior regardless of ballot design, nor did it take into account any information the voters already had about the candidates in its survey. The study ignores the very real chance that any effect ballot design has is diluted the more information voters learn about the race, which will be drastic in an election as heavily contested and publicized as the 2024 Senate Primary. As such, the behaviors of the voters in the study cannot be compared to behaviors of voters in June of 2024.

Dr. Julia Sass Rubin presented a report based on historical election data. See ECF #1, Exhibit #3. The report analyzes several specific races, while also looking at larger sets of data from across the state. The report, very generally, looks at how a candidate did when they had the "county line" against how they did in county's where they did not have the line. She then attributes the difference to the line. For example, in discussing the 2020 Republican Nomination for the Third Congressional District, Dr. Julia Sass Rubin concludes that the difference between the candidates when they were on the county line as opposed to when their opponent was on the county line was thirty five points. See id. pages 10 to 11. However, Dr. Rubin looks at literally no other factor about that election, and does not even attempt to find any other alternative sources for why one candidate would have performed so well in Burlington County and another would have performed so well in Ocean County. It is assumed that the explanation is the line, and in making that assumption, Dr. Rubin is ignoring various factors that can influence voter behavior.

9

Dr. Samuel Wang also produced a report on the alleged cognitive effects of the "county line" and it's purported statistical impact. See ECF #1, Exhibit #4. Dr. Wang, to his credit, at least admits that other factors can cause a change in voter behavior besides just the ballot design. He writes:

> "One concern in testing the effects of ballot design is the importance of avoiding conflation with the consequences of ballot design with other causes. For example, endorsement by the political party apparatus may reflect advances in 'access to money, voter databases, field organizations, and other resources that may not be available to other candidates' Pugach, supra at 655. In this alternative narrative, better candidates receive party endorsements and resources, leading to better performance at the ballot box, regardless of the unfair impact that a ballot design may yield. In this report I will test this alternative hypothesis." See Id. at page 8.

While he at least acknowledges the problem with the analysis, Dr. Wang does not overcome it. His promise to "test" the alternative theories is superficial. While at different points he tests "alternative explanations" he does so by looking at broad (sometimes nationwide) data sets and drawing conclusions from them. See Id. at 10. Nowhere does he look at the individual races he is using to derive his opinion and explore the very same alternative explanations he writes about in his introduction. In fact, he also argues that these alternative explanations by looking at lines within the same race, without any consideration for the fact that the alternative explanations he previously listed (as well as several others) can exist within a race. Dr. Wang's broad statistical approach completely loses the nuance of each election and undermines his results.

As mentioned before, Defendant Burlington County Clerk relies upon the cross examination and evidence presented at the preliminary injunction hearing to further establish this argument that the alleged damage is too speculative, the Plaintiffs have not provided sufficient proof, and the injunction should be denied as a result.

*iii. The possibility of harm to other interested persons in the event of grant or denial*

A showing of harm to interested parties can defeat a preliminary injunction. Here, there are two interested parties that can be harmed by the Plaintiff's relief: our state's political parties, and our state's voters.

Political parties have a first amendment right to associate. <u>See</u> <u>Eu v. S.F. Cty. Democratic Cent. Comm.</u>, 489 U.S. 214, 224 (1989). This includes a party's right to choose their standard bearer "who[se] best represents the party's ideologies and preferences". <u>Id</u>. citing <u>Ripon Society, Inc. v. National Republican Party</u>, 173 U. S. App. D. C. 350, 384, 525 F. 2d 567, 601 (1975) (Tamm, J., concurring in result), cert. denied, 424 U.S. 933 (1976). In <u>Tashjian v. Republic Party</u>, the Supreme Court ruled that a State law that limited participation in a party's primary to registered members of that party violated the Party's, and therefore its members, right to Freedom of Association under the First Amendment. The Court stated in dicta:

> The statute here places limits upon the group of registered voters whom the Party may invite to participate in the "basic function" of selecting the Party's candidates. <u>Kusper v. Pontikes</u>, supra, at 58. The State thus limits the Party's associational opportunities at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community.

<u>Tashjian v. Republican Party</u>, 479 U.S. 208, 216, 107 S. Ct. 544 (1986)

11

The current statutory framework gives form to this fundamental right, allowing a Party's common principles, articulated through a well known and established party name, to guide a voter's decision. With Plaintiffs' requested relief, that right will be substantially infringed. Granting this preliminary injunction would infringe upon that right without an appropriate opportunity for discovery and litigation on the merits. Additionally, the political parties whose rights will be violated are not even named in this suit, and outside of any that are aware of the suit and choose to intervene, will not be represented in the process. This weighs heavily against granting the preliminary injunction.

This Court has acknowledged, in Conforti, that voters are disenfranchised when they accidentally vote for the wrong number of candidates. See Conforti, 2022 WL at 37. Here, the Plaintiffs would ask for a sudden shift in ballot design without any voter education or any time to explain to voters the differences in the ballot. The likelihood of voter confusion and disenfranchisement, as described by this Court in Conforti, is extremely high under this scenario.

*iv. Public Interest*

There is a long standing public interest in keeping elections free of judicial intervention, particularly when the political process can bring the remedy requested. See O'Brien v. Brown, 409 U.S. 1, 5(1972). In O'Brien, Democratic Party delegates challenged actions by the Democratic party during the nominating process as unconstitutional. Id. After the lower courts ruled in favor of the delegates, the Supreme Court reversed. Id.  The Supreme Court pointed to the availability of political forums who could grant the remedy requested, and the lack of precedent to support the relief requested as reasons why the courts should not intervene in the election. Id. These same reasons that caused reluctance by the court in O'Brien are present here. There are multiple political remedies available to the Plaintiffs. They could challenge the

practice of our political parties to utilize bracketing, and reform the parties from the elected county committee members on up. The Plaintiffs could also organize and reform state law through the State Legislature. Instead, they try to bypass these democratic options in order to get unprecedented relief from the court.  Plaintiffs are asking the Court to alter the administration of an election after it has already started, an extreme measure that should be avoided in favor of the less intrusive, democratic means available to the Plaintiffs to achieve their requested relief.

Moreover, the Supreme Court has made clear in Purcell v. Gonzalez, and subsequent rulings in Democratic Nat'l Comm. v. Wis. State Legis., and Republican Nat'l Comm. v. Democratic Nat'l Comm., that "[w]hen an election is close at hand, the rules of the road should be clear and settled." Democratic Nat'l Comm. v. Wis. State Legis., 141 S. Ct. 28, 31 (2020); Purcell v. Gonzalez, 549 U.S. 1, 127 S. Ct. 5 (2006); Republican Nat'l Comm. v. Democratic Nat'l Comm., 140 S. Ct. 1205 (2020). Judicial intervention that would result in last minute changes to election procedures directly contradict this principle and may in fact cause the exact harm the public interest that this Court sought to avoid in Conforti: voter confusion and disenfranchisement.

The public also has an interest in the orderly administration of elections, which is thrown into doubt if the court issues a preliminary injunction. Defendant Burlington County Clerk here relies upon the evidence produced by the other Clerk-Defendants on the logistical challenges brought by Plaintiff's eleventh-hour application. In addition, submitted along with this brief is the Certification of Dave Passante, owner of Royal Printing Services. See Attached as **Exhibit A**, Certification of David Passante. Mr. Passante is co-owner of the New Jersey based printing company responsible for printing ballots for ten counties, nine of which would need to change their design if Plaintiffs' relief is granted. Id. Considering we are less than a month away from

13

the ballot submission date, Mr. Passante's company has already done considerable leg work in order to have their ballot designs ready. That would all need to be re-started if a new design is chosen. Mr. Passante, with thirty years' experience, believes that will at least three to four weeks four weeks. See Id., at para 26. This certification, read along with the contributions from Dominion and ES&S, shows that granting the Plaintiff's relief creates the very serious risk that the administration of the election is compromised.

The Court made clear that it was not sympathetic to logistical arguments. However, it is respectfully requested that these practical challenges be considered in light of the risk to the public if the deadlines are not missed. Plaintiff's requested relief could result in the disruption of a major primary election. The fact is, Plaintiffs can only blame themselves for the lack of time to adequately address the issues they raise. Congressman Kim was a declared Senate candidate in September. See ECF #1, para. 144.  Ms. Schoengood entered the race for the Third Congressional District in January. See ECF #1, para. 152. Timely filing this application to coincide with either of these announcements would put the county governments in a drastically better position to complete any relief ordered by the Court without disrupting the election. However, the Plaintiffs needlessly and inexplicably waited, truncating the timeline and putting the public at risk for a disrupted election and missed deadlines.

**B. No Plaintiff Has Standing to Bring a Claim Against the Burlington County Clerk**

In order for a Plaintiff seeking declaratory or injunctive relief to have standing under Article III, they must adequately plead three elements.

First, Plaintiff proving standing for a prayer for injunctive relief, must demonstrate that the future harm they seek protection from is imminent and impending, and that there is a genuine probability that a future injury will occur. See N.J. Physicians, Inc. v. President of the U.S., 653

F.3d 234, 239 (3d Cir. 2011). Second, there must be a causal connection between the injury and the conduct complained of. The injury has to be fairly traceable to the challenged action of the defendant, and not…the result of the independent action of some third party not before the court."  See Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131. 142 (3d Cir. 2009). Lastly, Plaintiffs must demonstrate that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Id. at 143.  In the instant case, none of the Plaintiffs have standing against Burlington County.

Plaintiff, Congressman Andy Kim, fails to adequately plead injury in fact against Defendant Burlington County Clerk, as he won the endorsement of the Burlington County Democratic Committee. Congressman Kim pursued the endorsement, submitted his name to the convention, campaigned for the support of the elected county committee members, and won a resounding victory. Now, he will receive the very ballot position this suit claims is advantageous. As such, the Congressman cannot turn around and also claims the Burlington County Clerk is injuring him in any capacity.

Plaintiff Ms. Schoengood has not offered any allegations or proof to support the fact she is suffering an injury from the Burlington County Clerk. Specifically, other than vague allegations that she most closely aligns with Congressman Kim, she has not alleged specifically why bracketing with any other Senate Candidate would violate her freedom to not-associate (by, for example, pointing out ideologically where she differs from these candidates). Ms. Schoengood has also not pled specific evidence as to how she plans on communicating with voters in Burlington County, and how her failure to appear on the "county line" will interfere with her ability to win a plurality of Burlington County voters. Instead, she simply relies on speculative and vague allegations of the expert reports prepared for this litigation.

**C. Plaintiff's Motion Should Be Denied Due to a Failure to Include Necessary Parties**

Plaintiffs failed to include necessary parties in their action, and the truncated schedule for a preliminary injunction does not provide adequate time for these parties to join. As such, the Federal Rules of Civil Procedure dictate the claims be dismissed.

Federal Rule of Civil Procedure 19 dictates the Required Joinder of Parties. See Fed. R. Civ. Pro. 19. The rule states that a party must be joined if the court cannot accord complete relief in their absence or that person has an interest in the action and disposing of the action in that persons absence may impede the ability to protect the interest. Id. at 19(a)(1)(A)(i-ii). When joinder is not feasible, the court must determine if the action should be dismissed. Id. at 19(b). When making that analysis, the court must consider factors including: (1) where a judgment in that parties absence might prejudice that party, (2) whether that prejudice can be lessened or avoided, (3) whether a judgment rendered in the persons absence would be adequate) and (4) whether plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Here, there are numerous necessary parties who are not joined. They include:

1) The State of New Jersey. The State has an obligation to oversee our elections and enforce our State's election laws. However, in an action to invalidate our state's laws, the state was not named or served with the claim. Yet it will be the State's laws that are invalidated, and the State's laws and regulations that will need to be altered to meet the relief requested by the Plaintiffs.

2) The Political Parties: This action directly attacks the First Amendment Rights of political parties, yet none of them were named. Every county political party in the state should have been named so they can adequately protect their first amendment interest that will be prejudiced in their absence if this case proceeds.

16

3) Plaintiffs' Opponents: Plaintiffs are not running in their races alone. Instead, each of them have opponents who, like the Plaintiffs, have been working to get the county endorsements and right to bracket with the county endorsed candidates. These campaigns and individuals have a right in running a campaign in accordance with State law, but the Plaintiffs are trying to change the rules of that election without naming the opponents and making sure they are joined as interested parties.

Additionally, as of the writing of this brief, there were multiple named parties who had not been served and have not entered their appearance on the docket.[2] Without all of these parties, none of the safeguards detailed in Federal Rule of Civil Procedure 19 can be met, and the Court's only option is to deny the motion for a preliminary injunction and allow an adequate window to join all necessary parties. The Plaintiffs, unlike in a traditional action, will still have an adequate remedy of pursuing this litigation outside of the preliminary injunction context.

## III. CONCLUSION

The question before the Court is whether Plaintiffs have satisfied the heightened burden of proof required to warrant a preliminary injunction that impacts the rights of thousands of citizens and places a great burden on state and local government.

Plaintiff has failed to adequately demonstrate that the law supports their success on the merits, nor do they plead adequate facts to allow this Court to made a determination of their claims. Moreover, none of the Plaintiffs have standing to bring a claim against Defendant

---

[2] A review of the docket on the morning of March 6, 2024 shows no docket activity for the Waren County Clerk, Middlesex County Clerk, Atlantic County Clerk, Hunterdon County Clerk, or Ocean County Clerk, despite the fact it is the day opposition to Plaintiffs motion is due. This lack of service alone should defeat the motion.

Burlington County Clerk. Finally, Plaintiffs have failed to bring in all parties necessary to provide complete relief.

For the foregoing reasons, Defendant Burlington County Clerk respectfully requests that this Court deny Plaintiff's requested relief.

18