PREPARED BY THE COURT
Honorable Yolanda Ciccone, A.J.S.C.


FILED
DEC 22 2017
YOLANDA CICCONE, A.J.S.C.
CHAMBERS

|  |  |
|---|---|
| WARREN COUNTY DEMOCRATIC COMMITTEE et al., | : SUPERIOR COURT OF NEW JERSEY
: LAW DIVISION
: SOMERSET COUNTY |
| Plaintiff, | : DOCKET NO. WRN-L-120-17 |
| vs. | : CIVIL ACTION |
| KOLB et al., | : **ORDER** |
| Defendant. |  |

**THIS MATTER** having been brought to the Court by Plaintiffs by Motion for Summary Judgment, the Court having reviewed the related written submissions and heard oral argument, and for good cause shown;

**IT IS** on this 22nd day of December 2017:

**ORDERED** that Plaintiffs' Motion for Summary Judgment is GRANTED as to the County Clerk Defendant; it is further

**ORDERED** that Plaintiffs' attorney must submit a Certification of Services within ten (10) days of the receipt of this Order; it is further

**ORDERED** that Plaintiff shall serve a copy of this order upon all relevant parties within seven (7) days of the date of entry.

/s/ Yolanda Ciccone
HON. YOLANDA CICCONE, A.J.S.C.

# SUPERIOR COURT OF NEW JERSEY
## SOMERSET, HUNTERDON & WARREN COUNTIES
### VICINAGE 13

YOLANDA CICCONE
ASSIGNMENT JUDGE



SOMERSET COUNTY COURT HOUSE
P.O. BOX 3000
SOMERVILLE, NEW JERSEY 08876
(908) 231-7069

December 22, 2017

Rajiv D. Parikh, Esq.
Genova Burns LLC
494 Broad Street
Newark, NJ 07102

Joseph J. Bell, Esq.
Bell & Shivas, P.C.
150 Mineral Springs Road
Rockaway, NJ 07866

George N. Cohen, DAG
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625

FILED
DEC 22 2017
YOLANDA CICCONE, A.J.S.C.
CHAMBERS

RE:         Warren County Democratic Committee et al. v. Kolb et. al.
Docket No.: WRN-L-120-17

Dear Counsel,

This letter consists of the Court's Opinion regarding the Plaintiffs' Motion for Summary Judgment.

This matter arises out of Plaintiffs' Complaint against Defendants for the alleged deprivation of Plaintiff candidates' constitutional and statutory right to association via bracketing on primary election ballots.

By Order on April 25, 2017 and letter dated April 28, 2017, this Court found in favor of the Plaintiff, holding that Defendants were not in compliance with N.J.S.A. §§ 19:49-2, 19:23-26.1

The parties appeared for a Case Management Conference with this court on September 18, 2017 to discuss the remaining unresolved matters. This Court

1

ordered that a motion for summary judgment would be entertained on the following issues: (1) Plaintiffs' entitlement to attorney's fees in prosecuting the above referenced action; and (2) The basis for apportionment of any and all liability between and amongst Defendants for the payment of attorney's fees

## FACTS

### THE AVANTE MACHINE

On August 10, 2005, the Warren County Board of Chosen Freeholders ("Freeholders") had a meeting and discussed the Help America Vote Act ("HAVA") and the purchase of new voting machines for Warren County. The Board of Elections ("Board") recommended the purchase of large, full face voting machines. (Plaintiffs' Amended Complaint, Exhibit E, minutes page 379).

At that meeting, the Freeholders also discussed the possibility of purchasing smaller voting machines which would have more pieces to hook up. There was a brief discussion on bracketing but the Freeholders were unable to reach a consensus. (Plaintiffs' Amended Complaint, Exhibit E, Page 380). During that meeting, the discussion on bracketing highlighted some of the Freeholders' concerns. One Freeholder identified that he "like[d] the system in use now where names are positioned on the ballot arbitrarily," expressing the position that when "names [are] positioned on the 'party line', some candidates will be at a disadvantage. . ." He then asked "[h]ow do we maintain control so that candidates are put on the ballot fairly and evenly regardless of party affiliation?" (Parikh Cert., Exhibit A, Plaintiff's Amended Complaint, Ex. E, page 380).

The minutes state further that "There is always the potential for "bracketing", but there are limits. He did not know if the machine in question would exacerbate the problem of bracketing or not." Id. The discussion on bracketing concluded with one of the Freeholders mentioning he "thought placement was determined by the County clerk. . ." They then for research Title 19 and a report to the Board on "whether or not the Board has the ability to determine ballot structure." Id.[1]

On September 6, 2005, Counsel wrote to the Freeholders answering bracketing questions, advising that the election statutes provide for bracketing and that

---

[1] County Defendants asserted in their opposition brief that this Court did not consider the other positive qualifications of the Avante machine in its April 27, 2017 Letter Opinion. The minutes of the August 10, 2005 meeting discuss the ease of machine set up, the superiority of Avante machines as it pertains to skipping choices, and the larger screen with the entire ballot on one page. The Court recognizes that different machines carry with them different advantages and disadvantages. However, as this matter pertains to the constitutional and statutory right to bracket, the bracketing capability of the machine is the relevant attribute of the Court's concern.

2

equipment must be designed to permit a County Clerk to perform statutory functions. (Certification of Joseph Bell, Esq. at 2).

At the October 12, 2005 meeting, the Freeholders introduced Resolution 606-05 "Award of a Purchase Order to Avante International Technology, Inc. for (200) Two Hundred Full Face Voting Machines Model DRE Vote Trakker EVCX308-SPR-FF, for the Warren County Election Board in the Total Contract Amount of $1,637,9090.00." The Freeholders specified that the Contract must be made available for the public. (Plaintiffs' Amended Complaint, Exhibit F, Page 459).

On January 26, 2006, there was a hearing date with the Attorney General for the approval of the Avante machine.

On May 5, 2006, the Attorney General accepted the recommendation to approve the Avante machine for use and attached the certification of approval of voting equipment.

## THE JUNE 6, 2017 PRIMARY ELECTION

The primary elections for the Democratic and Republican parties took place on June 6, 2017 determining, among other offices, political party nominations for candidates for Governor, State Senate, State Assembly, and other county and municipal offices for the November 7, 2017 General Election. In connection with the primary election, the Plaintiffs sought to bracket with one another.[2] The machine and paper ballots issued failed to afford Plaintiffs the bracketing and associations they had requested.

Plaintiffs filed an Order to Show Cause against the County of Warren and the County Clerk ("County Defendants"), which was entered on April 21, 2017. The Order temporarily restrained the County Clerk from taking any action with respect to ballots "in connection with the June 6, 2017 Primary Elections in Warren County until the issues raised in the Verified Complaint in this matter are fully adjudicated."

On April 21, 3017, the County Clerk submitted her response to the Order to Show Cause, certifying that: (1) The Avante System does "does not allow for a ballot to be designed in lines and columns."; (2) "positions are drawn by office and name." Citing to NJSA 19:23-24; (3) the system is touch screen and arranges the names according to the ballot draw. "The system does not have the ability to skip empty spaces."; (4) the system had been used for the past decade and the p5rocedure has not changed; (5) the system in Warren County

---

[2] Defendants allege that neither the Democratic nor the Republican Party Chairs requesting bracketing from the clerk at the March 23, 2017 meeting. Defendants also assert that the County Clerk instructed as to why the machine was incapable of bracketing. Defendants mention this meeting and cite the minutes in Exhibit 6, however, the meeting transcript is not included, as it was with all other meetings cited to.

3

is unlike any other system in New Jersey; and (6) the Avante system is auto-generated, it populates its own spaces. (Parikh Cert., Exhibit C).

The Order to Show Cause hearing took place on April 25, 2017. The Court Clerk testified as to the impossibility of bracketing with the machine and its current software. (Parikh Cert., Exhibit E, pages 9-10). The Clerk also testified that an update was made to the machine previously. She went on stating that "Avante really is not interested in doing much in New jersey anymore with their election systems so I doubt you can get them to do it." Id. at 9. Immediately after stating there was a previous update, the Court asked "You're not aware of any kind of updates or anything else?" To which the Clerk responded "No they could not come and do an update on the machine." Id.

Because of the timetable for ballot filing for the primary election, this Court ruled as follows: "while it is too late to require Defendant to change the ballots to comply with well-established statutory and constitutional provisions, limited discovery is appropriate to the extent that it may illuminate a way for Defendant to comply with said law in the future."

At the Case Management Conference with this Court on September 18, 2017, this Court agreed to entertain the instant Motion for Summary Judgment.

The Board of Elections and the State of New Jersey ("State Defendants") are not parties to this action; however, the County Defendants filed a cross-claim against them for indemnification and contribution.

## UPDATES TO THE AVANTE MACHINE

On June 14, 2017, the Warren County Board of Elections wrote to Avante International Technologies regarding the quotes to upgrade the Vote Trakker system that Avante developed. The Board received a quote of $16,000.00 exclusive of any certification costs/fees. (Bell Certification, Exhibit 8).

Counsel for the County Defendants indicated by letter dated August 14, 2017 that "by
August 2, 2017 all updates to the Avante system were completed by the manufacturer." (Parikh Cert. Exhibit G).

On December 12, this Court received a notification from Defendant Kolb the State of New Jersey Division of Elections has scheduled a certification meeting of the Avante machines for December 20, 2017.

## STANDARD
## SUMMARY JUDGMENT

The New Jersey Supreme Court in <u>Brill v. Guardian Life Insurance Co. of America</u>, 142 <u>N.J.</u> 520 (1995), held that according to Rule 4:46-2, a court should grant summary judgment when "the pleadings, depositions, answers to

4

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

A determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact-finder to resolve the alleged disputed issue in favor of the nonmoving party. Id. at 540.

"[A] non-moving party cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Id. at 529.
The essence of the inquiry in summary judgment motions is "whether the evidence presents a sufficient disagreement to require it be submitted to a jury, or whether it is so one-sided that one party must prevail as a matter of law." Id. at 533.

## ATTORNEYS' FEES

New Jersey Courts permit the award of attorney's fees to successful plaintiffs. The legislature has enacted "numerous statutes that include fee shifting provisions" when doing so serves the interests of justice. Walker v. Giuffre, 209 N.J. 124, 127-28 (2012).

The New Jersey Supreme Court has identified three essential purposes underlying civil rights fee shifting provisions to: (1) address the problems of unequal access to the courts; (2) provide to individuals, whose rights are being protected by statutes, with the resources to enforce those rights in court; and (3) encourage adequate representation. Id. at 129-30.

Fee shifting provisions, like in New Jersey Civil Rights Act ("NJCRA"), ensure that a plaintiff's claims are able to find lawyers to represent them. Coleman v. Fiore Brothers, Inc., 113 N.J. 594, 596-97 (1989). Fee shifting encourages competent attorneys to represent citizens who would have his or her day in court denied without the right resources.

The NJCRA provides that "[i]n addition to any damages, civil penalty, injunction or other appropriate relief awarded in an action brought pursuant to subsection c. of this section, the court may award the prevailing party reasonable attorney's fees and costs." N.J.S.A. 10:6-2(f).

## ANALYSIS

As a preliminary matter, Defendants argue this motion is moot because the matter has been concluded as none of the Plaintiffs lost in the election and because the machine was retrofitted and bracketing is no longer impossible. This mootness argument fails under the "catalyst theory" of the New Jersey Civil Rights Act.

Pursuant to NJCRA § 10:6-2(f), a Party who brings an action that is shown to have been a catalyst for the cessation of conduct alleged to violate NJCRA may qualify as a prevailing party entitled to an award of attorney's fees. See D. Russo, Inc. v. Township of Union, 417 N.J. Super. 384 (App.Div. 2010), certif. denied, 206 N.J. 328 (N.J. 2011) (holding that a party who brings an action under the NJCRA that results in a change in the defendant's conduct may qualify, under the catalyst theory, as a "prevailing party" entitled to attorney's fees and costs, even though the action was dismissed as moot rather than being concluded by a judgment in the plaintiff's favor); see also Jones v. Hayman, 418 N.J. Super. 291 (App.Div. 2011) (finding that the trial court erred by failing to consider their success in obtaining preliminary injunctive relief as providing a sufficient foundation for an award of the attorney's fees under the fee-shifting statutes even though the case became moot before a final adjudication).

It is undisputed that the voting machines here were not able to bracket until after the Plaintiffs filed their Order to Show Cause. Whether this Court's April 25 Order and April 27 Letter were an adjudication on the merits is irrelevant for the purposes of this analysis.

The ultimate issue before this Court is whether Plaintiffs are entitled to attorneys' fees for bringing this action and if so, what the correct apportionment of liability amongst the Defendants is.

This Court must determine: (1) Whether the County violated the bracketing provisions of Title 19 by failing to take the reasonable steps to every decent effort has been made to give the fullest possible effect to the free speech and associational rights of the Plaintiffs; (2) If yes, whether the County deprived the Plaintiffs of a substantive statutory right protected by the New Jersey Civil Rights Act; and (3) The Apportionment of Liability between and Amongst Defendants.

**A. Whether the County violated the bracketing provisions of Title 19 by failing to take the reasonable steps to every decent effort has been made to give the fullest possible effect to the free speech and associational rights of the Plaintiffs**

I. Substantive Right

The New Jersey Supreme Court in Tumpson v. Farina, approved the award of attorney's fees where a Clerk failed to comply with the law which resulted in the deprivation of a constitutional and/or statutory right. 218 N.J. 450 (2014). As prevailing parties, Plaintiffs were entitled to attorneys' fees. "[T]o succeed as a prevailing party, plaintiffs must show that the right of referendum is a substantive right guaranteed by the Faulkner Act and that they were deprived of that right by the City Clerk in contravention of the Civil Rights Act. Id. 464.

The Tumpson case involved the citizens' right of referendum guaranteed by the Faulkner Act, N.J.S.A. 40:69A-185. The Plaintiffs in Tumpson wanted to challenge an ordinance and filed a petition with the City Clerk of Hoboken. Pursuant to the Faulkner Act, challengers are to file with the city clerk a petition containing signatures of qualified voters numbering at least fifteen percent of the votes cast in the last election of members of the General Assembly.

The Court had to determine "whether the City Clerk's refusal to file or certify the referendum petition constitutes a deprivation of 'any substantive rights . . . secured by the Constitution or laws of this State,' entitling plaintiffs to relief under the New Jersey Civil Rights Act." Id. at 472.

To establish a violation of the NJCRA, a plaintiffs must prove that (1) the Constitution or laws of the State conferred on them a substantive right; (2) the County deprived them of that right; and (3) the County was "acting under color of law" when it did so. N.J.S.A. 10:6-2(c).

The NJCRA does not define what a "substantive right" is, but it is modeled off the Federal Civil Rights Act, 42 U.S.C.A. § 1983 ("§1983"). The Tumpson Court applied the Blessing Test, developed the United State Supreme Court, to determine whether the statute confers a rights and whether the Legislature did not intend for the remedies of the Civil Rights Act to supplant those of other statutes. Id. at 476. The Blessing test was used to analyze whether Congress intended a statute enacted after 1871 to foreclose the available remedies under §1983. Fitzgerald v. Barnstable Sch. Comm, 555 U.S. 246, 253 (2009). Because the NJCRA is newer, the Court applied the Blessing test to determine whether the Legislature did not intend for the NJCRA to provide remedies in addition to those of previously enacted statutes. The Blessing test requires Plaintiffs to establish that (1) the statute was intended to confer a 'benefit' on plaintiffs as a representative of a class; (2) the statutory right is not "so 'vague [or] amorphous' that its enforcement would strain judicial competence"; and (3) the Faulkner Act "unambiguously impose[s] a binding obligation" on Hoboken. Tumpson, 218 N.J. at 477.

The Court in Tumpson found that the "power of referendum" is a right under the test. The declaration that "[t]he voters shall also have the power of referendum," N.J.S.A. 40:69A-185, makes clear that the benefit conferred is not only to plaintiffs, but to the entire class of voters in Hoboken. Id. at 478.

Plaintiffs had to show that the right was substantive, not procedural. "Substantive" addresses those rights and duties that may give rise to a cause of action. Brown & Root Indus. Serv. v. Indus. Comm'n., 947 P.2d 671, 675 (Utah 1997). "Procedural" addresses "the manner and the means" by which those rights and duties are enforced. Shady Grove Orthopedic Assocs. v. Allstate Ins. Co., 559 U.S. 393 (2010). The City Clerk's failure to file the referendum petition to allow a vote on the ordinance gave rise to a cause of action. Thus, by definition, the right of referendum is substantive in nature.

7

Here, the Court must determine whether the right to bracket is a substantive right. N.J.S.A 19:14-12 entitled "Procedure for determining position on ballot" provides in part that:

> The county clerk shall draw lots in his county to determine which columns the political parties which made nominations at the next preceding primary election shall occupy on the ballot in the county. The name of the party first drawn shall occupy the first column at the left of the ballot, and the name of the party next drawn shall occupy the second column, and so forth. The position which the names of candidates, and bracketed groups of names of candidates nominated by petitions for all offices, shall have upon the general election ballot, shall be determined by the county clerks in their respective counties.

N.J.S.A. § 19:23-24 provides in part that:

> The position which the candidates and bracketed groups of names of candidates for the primary for the general election shall have upon the ballots used for the primary election for the general election . . . shall be determined by the county clerks in their respective counties. . .

N.J.S.A. § 19:49-2, "Official ballots," states that:

> For the primary election for the general election in all counties where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine;

The Court in Schundler v. Donovan, articulated that The First Amendment protects the free speech and associational rights of every candidate in a primary election to declare a ballot affiliation with any other candidate or cause, or to designate his or her choice not to affiliate. 377 N.J. Super. 339, 348 (App. Div. 2005). The Schunder, case was unique in that it was physically impossible for the clerk to bracket all the candidates requesting to be bracketed without creating an obscure and unfair ballot with multiple pages. Id. After making diligent efforts to accommodate the candidates, the clerk was unable to fit the names on the ballot. The court explained how a typical election would not have as many candidates for the top position and the bracketing would impose no disadvantage on the other candidates, however, where there was not enough space, the placement on the ballot was left to the discretion of the clerk in accordance with the statute. Id at 349. The Court noted that "the right to bracketing is, as a general matter, fundamental as an expressive exercise." Id.

The only Defendant in the Schundler case was the City Clerk. The Court ultimately ruled that there was no deprivation because:

8

> There can be no rights violation where a county clerk makes a fair effort to follow the dictate that all candidates for the highest office be treated equally to the extent physical constraints allow, as long as, at the same time, a good faith effort is made to effect the expressive rights of all candidates. Well-considered choices serving that end are sustainable as long as every decent effort has been made to give the fullest possible effect to the free speech and associational rights protected by the First Amendment.

Id.

This Court finds that bracketing, as it is provided for in the New Jersey Statutes and pursuant to the Appellate Division's findings in Schundler, is a fundamental right. The deprivation of the right to bracket gives rise to the instant cause of action, therefore this Court finds that the Plaintiffs had a substantive right.

As the County Defendants argue, this case can be distinguished from the Tumpson case as the Plaintiffs here are candidates running for office, not voters. The Court appreciates this different but ultimately finds that there is ample case law highlighting the associational rights of candidates running for office which further supports the holding that bracketing is a substantive right. See Eu v. San Francisco County Democratic Cent. Committee, 489 U.S. 214 (1989); Schundler v. Donovan, 377 N.J. Super, 339 (App. Div. 2005) ("The First Amendment protects the free speech and associational rights of every candidate in a primary election to declare a ballot affiliation with any other candidate or cause, or to designate his or her choice not to affiliate."); Batko v. Sayreville Democratic Organization, 373 N.J. Super. 93 (App. Div. 2004) (holding that statute banning state county, or municipal committees of a political party from endorsing the candidacy of any candidate violated the First Amendment).

As such, this Court finds, as the Court in Tumpson found, that the NJCRA was intended to apply to cases like this where a citizen is deprived of a substantive right.

### B. Whether the County deprived Plaintiffs of a substantive statutory right protected by the New Jersey Civil Rights Act

Here, Defendants argue that because all Plaintiff candidates were successful in the election, that they were not deprived of a substantive right. While the analysis under Tumpson for determining whether there is substantive right is different with regards to the right being asserted, the analysis here for deprivation is largely the same.

Before the Plaintiffs filed their Order to Show Cause, bracketing was an impossibility in Warren County. That the County later ameliorated the

9

situation and updated the machine software does not alter the prior deprivation of the Plaintiffs' statutory rights. "That a court comes to a plaintiff's rescue does not alter the nature of the earlier governmental deprivation or anticipated deprivation." Tumpson, 218 N.J. at 483. Arguably, the Plaintiffs in the instant matter are facing a much greater deprivation, as their right to bracket could not be remedied prior to the election.

### C. Apportionment of Liability

As a preliminary matter for apportionment of fees, this Court stated from the bench at Oral Argument on December 15, 2017 that laches and equitable estoppel would not preclude recovery in this matter, that "the argument was of no consequence."

The State Defendants are immune from the claims of this suit. First, State Defendants were never named as parties. Second, The NJCRA is the State's limited waiver to absolute sovereign immunity from constitutional torts, and is the State counterpart to 42 U.S.C.S 1983. Just as the State is not a "person" amenable to suit under § 1983, the State is not a "person" amenable to suit under the NJCRA.

Pursuant to NJSA 19:45-4, "all costs, charges and expenses incurred by the county clerk, county board, commissioner, superintendent, or any other official of a county in carrying out the provisions of this title . . . shall be paid by the county." Additionally, "the county is responsible for any costs incurred by the county clerk, the county board of elections and where applicable the county superintendent of elections for all costs related to carrying out their respective election related responsibilities set forth in Title 19." Id.

The County Defendants assert that it is not the job/duty of the Freeholders or the County Clerk to select the machine. The aforementioned statutes, §§ 19:14-12, 19:23-24, and 19:49-2 each place the responsibility of bracketing and ballot preparation on the County Clerk.

County Defendants attempt to place the blame on the parties responsible for ordering the machines, the parties responsible for certifying the machines, and the parties responsible for purchasing the machines. These arguments hold no weight.

During Oral Arguments, this Court questioned the parties about the Certification of voting machines. It became clear that bracketing is not a requirement for certification of voting machines. Certification has to do with the technicalities of voting, not the Constitutional requirements.

Additionally, references made to the "Help America Vote Act" are misplaced as the act was intended to eliminate punch card voting pursuant to 42 U.S.C 15301, Title 1 – "Payments to States for Election Administration Improvements and Replacement of Punch Card and Lever Voting Machines.

10

Defendants assert that there is no law that mentions the Clerk's responsibility in selecting a voting machine. This Court is not requiring a County Clerk to select a voting machine, however, the New Jersey statutes are clear. It is the responsibility of the County Clerk to bracket those names that are to be bracketed, to draw the names for the ballot, and to prepare the ballot. This Court also finds that it is the responsibility of the Clerk to bring issues with the voting machines up with the appropriate people. In this case, the County Clerk did not make a fair or good faith effort to effectuate the association rights of the Plaintiffs. The Clerk in Schundler made numerous efforts to permit the requested bracketing, but after those efforts, was unable to find a way. This is unlike the Clerk here who refused to look into options to facilitate the issues with the machine. This Court is not asking a County Clerk to fix, alter, purchase, approve, etc. voting machines. However, "every decent effort must be made to give the fullest possible effect to the free speech and associational rights of the First Amendment."

Apportioning liability to the Freeholders would require this Court to act as a fact finder in interpreting the 2005 minutes as an attempt to obtain machines that could not bracket. The Court cannot base its opinion on conjecture, and therefore, apportioning fees to the Freeholders during this Summary Judgment motion is premature.

## CONCLUSION

Therefore, this Court finds, undisputedly, that the right to bracket is a substantive right, that the Plaintiffs' right to bracket was deprived by the County Clerk, and that it is the County Clerk who was required by New Jersey Statute and in the best position to ensure candidates have the right to bracket.

Based on the Aforementioned, the Plaintiff's Motion for Summary Judgment is GRANTED as to the County Clerk Defendant.

Counsel for the Plaintiffs must provide all parties and this Court a Certification of Services within 10 days of receipt of this letter and Order.

Very Truly Yours

HON. YOLANDA CICCONE, A.J.S.C.

11