## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANDY KIM, in his personal capacity as a candidate for U.S. Senate, ANDY KIM FOR NEW JERSEY, SARAH SCHOENGOOD, SARAH FOR NEW JERSEY, CAROLYN RUSH and CAROLYN RUSH FOR CONGRESS** <br><br> *Plaintiffs,* <br><br>    *v.* <br><br> **CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk; SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk; PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk; MARY H. MELFI, in her capacity as Hunterdon County Clerk; STEVE PETER, in his official capacity as Somerset County Clerk; HOLLY MACKEY, in her official capacity as Warren County Clerk; NANCY J. PINKIN, in her official capacity as Middlesex County Clerk; JOSEPH GIRALO, in his official capacity as Atlantic County Clerk; JOHN S. HOGAN, in his official capacity as Bergen County Clerk; JOANNE SCHWARTZ, in her official capacity as Burlington County Clerk; JOSEPH RIPA, in his official capacity as Camden County Clerk; RITA M. ROTHBERG, in her official capacity as Cape May County Clerk; CELESTE M. RILEY, in her official capacity as Cumberland County Clerk; CHRISTOPHER J. DURKIN, in his official capacity as Essex** | **CIVIL ACTION No.: 3:24-cv-01098-ZNQ TJB** |

County Clerk; JAMES N. HOGAN, in
his official capacity as Gloucester County
Clerk;
E. JUNIOR MALDONADO, in his
official capacity as
Hudson County Clerk; ANN F.
GROSSI, in her official capacity as
Morris County Clerk; DANIELLE
IRELAND- IMHOF, in her official
capacity as Passaic County Clerk; and
JOANNE RAJOPPI, in her official
capacity as Union County Clerk.

*Defendants,*

DALE A. CROSS, in his official capacity as
Salem County Clerk; and JEFF
PARROTT, in is official capacity as Sussex
County Clerk, TAHESHA WAY, Esq., in
her official capacity as Secretary of State
for New Jersey,

*As Interested Parties*

---

## DEFENDANT E. JUNIOR MALDONADO'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

Edward J. Florio, Esq.   (025311987)
FLORIO KENNY RAVAL, L.L.P
125 Chubb Avenue, Suite 310 - N
Lyndhurst, New Jersey 07071
Phone: 201-659-8011, Fax: 201-659-8511
E-mail:  efloriofkrlaw.com
Attorneys for Defendant:
E. JUNIOR MALDONADO
In his official capacity as Hudson County Clerk

Of Counsel:
   Edward J. Florio, Esq.   (025311987)

On the Brief:
   Christopher K. Harriott, Esq. (035382001)
   Michael B. Simone, Esq. (27720219)

{01068761}

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL HISTORY ...........................................................................................2

STATEMENT OF FACTS .............................................................................................2

LEGAL ARGUMENT....................................................................................................3

PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF .............................3

A.   Plaintiffs Cannot Demonstrate Imminent, Irreparable Harm ...........................5

B.   Plaintiffs Are Not Likely to Succeed on the Ultimate Mertis of their Claims ..................6

    1. First Amendment Claims ...........................................................................6
    2. Equal Protection Claims............................................................................9

C.   The Balance of Equities Ways Is Not in Plaintiff's Favor...............................12

CONCLUSION .............................................................................................................12

# TABLE OF AUTHORITIES

## CASES:

Anderson v. Celebrezze,
    460 U.S. 780 (1983) .................................................................................7,8

Acierno v. New Castle Cty.,
    40 F.3d 645, 647 (3rd Cir. 1994) ...............................................................3

Bennington Foods LLC v. St. Croix Renaissance, Group LLP,
    528 F.3d 176, 179 (3rd Cir. 2008) .............................................................3

Burdick v. Takushi,
    504 U.S. 428 (1992) ...................................................................................7

Chisom v. Roemer,
    853 F.2d 1186, 1189 (5th Cir.1988) ..........................................................4

Clingman v. Beaver,
    544 U.S. 581, 586 (2005) ........................................................................6,7

Costello v. United States,
    365 U.S. 265, 282 (1961) ...........................................................................4

Ferguson v. Skrupa,
    372 U.S. 726, 732 (1963) ...........................................................................9

Ferring Pharms., Inc. v. Watson Pharms., Inc.,
    765 F.3d 205, 210 (3rd Cir. 2014) .............................................................3

Kos Pharm., Inc. v. Andrx Corp.,
    369 F.3d 700, 708 (3rd Cir. 2004) .............................................................4

McKenzie v. Corzine,
    396 N.J. Super. 405, 934 A.2d 651 (App. Div. 2007) ...............................6

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,
    290 F.3d 578, 586 (3rd Cir. 2002) .............................................................3

Page v. Bartels,
    248 F.3d 175, 195–96 (3rd Cir. 2001) .......................................................4

Purcell v. Gonzalez,
    549 U.S. 1 (2006) .......................................................................................4

Quaremba v. Allan,
　　67 N.J. 1, 11 (1975) .........................................................................8,9,10,11

Reilly v. City of Harrisburg,
　　858 F.3d 173, 179 (3rd Cir. 2017) ...................................................................4

Reynolds v. Sims,
　　377 U.S. 533, 585 (1964) ...............................................................................4

University of Texas v. Camenisch,
　　451 U.S. 390 (1981) ........................................................................................3

## **FEDERAL RULES:**

Fed. R. Civ. P. 65 ...................................................................................................3

## **STATUTES:**

N.J.S.A. 19:23-24 ...................................................................................................9

N.J.S.A. 19:49-2 .................................................................................................9,10

## PRELIMINARY STATEMENT

In the present matter, PLAINTIFFS, ANDY KIM, in his personal capacity as a candidate for U.S. Senate, ANDY KIM FOR NEW JERSEY, ("KIM,") SARAH SCHOENGOOD, SARAH FOR NEW JERSEY, ("SCHOENGOOD,") CAROLYN RUSH and CAROLYN RUSH FOR CONGRESS, ("RUSH,") (collectively "PLAINTIFFS,") seek injunctive relief of an unprecedented nature, relief that threatens to disrupt the entire electoral process and change the rules in the middle of the game. DEFENDANT, E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, ("MALDONADO,") opposes PLAINTIFF'S application on the grounds that it fails to satisfy the relevant standard for the granting of such relief.  First, PLAINTIFFS cannot establish the existence of imminent, irreparable harm in the absence of an injunction. In as much as KIM has already, in several counties, obtained the "County line," it is as likely that he will benefit from the current "bracketing" system in place as he will be harmed by it. Moreover, any harm that would be experienced by PLAINTIFFS is due to their own unreasonable delay in seeking a preliminary injunction. Second, PLAINTIFFS are not likely to prevail on the ultimate, substantive merits of their claims. Not only does PLAINTIFFS' application demonstrate a likelihood of success as either their First Amendment or Equal Protection constitutional claims, but any such claim would be subject to the affirmative defense of laches, as PLAINTIFFS have chosen to lie in wait, and seek extraordinary relief in the midst of an electoral process, rather than moving promptly to protect his rights when they first believed them to be violated. KIM has spent the last several months attempting to obtain the benefit of the same process he now seeks to destroy, and it was only when his efforts proved to be unsuccessful that he chose to file the present application. Finally, in light of the massive disruption, ranging from confusion to voter disenfranchisement, to the status quo of the electoral process that will occur if this Court

{01068760}

were to award PLAINTIFFS the injunctive relief sought herein, the balance of equities weighs strongly in favor of MALDONADO and the other defendants herein. Accordingly, respectfully requests that this Court enter an Order denying the application of PLAINTIFFS, ANDY KIM, in his personal capacity as a candidate for U.S. Senate, ANDY KIM FOR NEW JERSEY, SARAH SCHOENGOOD, SARAH FOR NEW JERSEY, CAROLYN RUSH and CAROLYN RUSH FOR CONGRESS, for injunctive relief.

## **PROCEDURAL HISTORY**

MALDONADO relies upon and incorporates herewith the procedural history contained in the briefs of CO-DEFENDANTS as if set forth verbatim herein.

## **STATEMENT OF FACTS**

MALDONADO relies upon and incorporates herewith the relevant facts contained in the briefs of CO-DEFENDANTS as if set forth verbatim herein. Additionally, MALDONADO states as follows. Candidates for political office participate in the ballot draw for the first or primary ballot position. This ballot drawing is conducted in a blind, fair, unbiased manner. Preference, or advantage is provided to no candidate, or slate of candidates. This is true and factual, in every election, for Senate and Gubernatorial whether a general or primary election. (See MALDONADO CERT. at ¶3.) For example, a candidate who has been endorsed and runs on what is called a county party line, Republican or Democrat, or any candidate, who runs with a full or partial slate, or no slate, All participate in a draw which in the election, which is the subject matter of this lawsuit, would be for column one through four. (See MALDONADO CERT. at ¶4.) Once the initial draw for the first or primary ballot position is completed, other candidates, bracketed with Senate candidates will be placed in the respective columns. (See MALDONADO CERT. at ¶5.) It is imperative to note that each Senate candidate has equal opportunity to obtain through the ballot

draw process the first column, while the bracketing protects constitutionally protected rights of all parties, whether political parties, or individuals running without political party endorsement or political party affiliation. (See MALDONADO CERT. at ¶6.) The ballot draw process is open and transparent form inception to completion. It is open to the public, for candidates and non-candidates to observe. The ballot draw is also live streamed on Facebook and Instagram, as well as, the Hudson County Clerk YouTube Channel. (See MALDONADO CERT. at ¶7.)

## LEGAL ARGUMENT

## PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF.

It is well-established that "[p]reliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." Ferring Pharms., Inc. v. Watson Pharms., Inc., 765 F.3d 205, 210 (3rd Cir. 2014) (quoting Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3rd Cir. 2002)). The purpose of a preliminary injunction under Fed. R. Civ. P. 65 is to preserve the status quo between the parties pending final determination on the merits of an action. University of Texas v. Camenisch, 451 U.S. 390 (1981); Acierno v. New Castle Cty., 40 F.3d 645, 647 (3rd Cir. 1994). Particular scrutiny is required where, as in the present matter, the plaintiff is asking the Court to order an affirmative act that changes the status quo. See Bennington Foods LLC v. St. Croix Renaissance, Group LLP, 528 F.3d 176, 179 (3rd Cir. 2008) ("[W]here the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." ); Acierno, 40 F.3d at 653 ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.").

To obtain a preliminary injunction, the moving party must establish: (1) a likelihood of success on the merits; (2) that [he] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3rd Cir. 2004) The movant bears the burden of establishing "the threshold for the first two 'most critical' factors .... If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3rd Cir. 2017).

A party's delay in seeking a preliminary junction weighs strongly against granting the extraordinary relief they seek, particularly where, as here, an election is looming[1]. Purcell v. Gonzalez, 549 U.S. 1 (2006). "[U]nder certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief...." Reynolds v. Sims, 377 U.S. 533, 585 (1964). As set forth in Purcell, supra, there is good reason to avoid last-minute intervention in a state's election process as any intervention at this point risks practical concerns including disruption, confusion or other unforeseen deleterious effects. Purcell, 549 U.S. at 5. Federal intervention at a late hour risks "a disruption in the state electoral process [which] is not to be taken lightly." Page v. Bartels, 248 F.3d 175, 195–96 (3rd Cir. 2001); See also, Chisom v. Roemer, 853 F.2d 1186, 1189 (5th Cir.1988) (vacating a district court's preliminary injunction of

---

[1] This delay would also form the basis for an affirmative defense of laches, which requires a defendant to prove two elements: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. Costello v. United States, 365 U.S. 265, 282 (1961). With respect to the second prong, MALDONADO relies upon and incorporates by reference the various examples of prejudice set forth in the brief of CO-DEFENDANTS.

{01068760}4

a state election, on the rationale that "intervention by the federal courts in state elections has always

been a serious business, not to be lightly engaged in" (internal quotations and citations omitted)).

A.    **Plaintiffs Cannot Demonstrate Imminent, Irreparable Harm.**

In the first instance, PLAINTIFFS' request for a preliminary injunction should be denied

as PLAINTIFFS fail to demonstrate imminent, irreparable harm will result in the absence of such

relief. Simply put, PLAINTIFFS' alleged harm is speculative and remote. In as much as KIM has

already, in several counties, obtained the "County line," it is as likely that he will benefit from the

current process that is in place as he will be harmed by it. Moreover, PLAINTIFFS' argument

places an undue emphasis on ballot placement and ignores other relevant factors for an individual

in casting their vote. Campaigns run months-long campaigns in which, to varying degrees of

success, they marshal votes, raise funds, and increase their public notoriety.  Mere placement of a

candidate's position on a ballot does not influence, signal, or control a voter's likelihood of voting

for a candidate. PLAINTIFFS' claims of being disadvantaged due to their placement in one column

or another fails to account for the most important factor in determining how an individual casts a

vote – whether or not the voter agrees with the candidate's political views.

Moreover, any harm that would be experienced by PLAINTIFFS is due to their own

unreasonable delay in seeking a preliminary injunction. PLAINTIFFS bring this action less than

six (6) months before the upcoming Democratic Primary Election to be held on June 4, 2024. KIM

could have, and should have, sought injunctive relief as early as September 23, 2023, when he

announced that he would mount a primary challenge to Senator Menedez.  If not in September,

then certainly two months later, on November 15, 2023, when Tammy Murphy announced her run

for Senate and KIM was then aware that he would not be running un-opposed for Senator

Menendez's seat.  Additionally, SCHOENGOOD'S argument with respect to being left off the

county line is due to her announcing her candidacy after the date which she could have obtained the Monmouth County Democratic Convention's endorsement.

In addition to the cases cited above discussing a plaintiff's unreasonable delay in seeking preliminary restraints, MALDONADO respectfully directs the Court's attention to <u>McKenzie v. Corzine</u>, 396 <u>N.J. Super.</u> 405 (App. Div. 2007), in which the plaintiffs sought preliminary injunction prohibiting the printing of ballots pending adjudication of their challenge to the interpretive statement adopted by the Legislature in seeking voter approval of the New Jersey Stem Cell Research Bond Act. Plaintiff's application in McKenzie was brought "a mere few days before the requirement that the county clerks begin the process of printing of the ballots." <u>Id</u>. at 414. As set forth therein, "[c]ertainly, this issue could have been adjudicated much earlier in the process without the potential of additional costs to the public and disruption of the voting process. Due to this delay, it is plaintiffs, knowingly or unknowingly, who have self-created a situation where it is alleged the irreparable harm is 'imminent' which could have been avoided if filed timely." <u>Id</u>. at 414-15.

**B.      <u>Plaintiffs Are Not Likely to Succeed on the Ultimate Merits of their Claims.</u>**

PLAINTIFFS are not entitled to a preliminary injunction as they have failed to demonstrate a likelihood of success on the ultimate merits of their claim, be it under the First Amendment or the Equal Protection Clause.

**(1)      <u>First Amendment Claims.</u>**

The United States Supreme Court has held that the First Amendment protects the right of citizens to band together in promoting among the electorate candidates who espouse their political views. <u>Clingman v. Beaver</u>, 544 U.S. 581, 586 (2005). Regulations that impose severe burdens on associational rights must be narrowly tailored to serve a compelling state interest. <u>Id</u>. at 586.

However, when regulations impose lesser burdens, a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. Id. at 586-87.

In Anderson v. Celebrezze, 460 U.S. 780 (1983), the U.S. Supreme Court set forth a framework for the review of the constitutionality of alleged violations of the right to freely associate under the First Amendment.  The Court found that not all restrictions imposed by States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on a voter's right to freely associate and acknowledged that any state law governing the election process has at least some effect on "the individual's right to vote and his right to associate with others for political ends." Id. at 788.  This test was later refined in Burdick v. Takushi, 504 U.S. 428 (1992).  Together, the Supreme Court provided a factoring test to determine the constitutionality of burdens on election-related First Amendment rights. Id. constitutionality of burdens on election-related First Amendment rights. Id.

Specifically, the Court in Anderson held that, where a state law is alleged to burden the right of a candidate, the reviewing court must analyze the character and magnitude of the asserted injury, as well as the precise interests put forward by the State as justifications for the burden imposed by its rule. Id. at 789.   Courts must then weigh the burdens against the state interests and take into consideration the extent to which those interests make it necessary to burden a candidate's rights. Id. Rational basis review is warranted when a plaintiff's rights are minimally burdened in a nondiscriminatory manner. Burdick, 504 U.S. at 434.  Strict scrutiny, on the other hand, is warranted when a plaintiff's constitutional rights are severely burdened, such as when there is a prohibition on certain guaranteed rights. Id.

Here, regardless of which test/standard the Court ultimately chooses to apply to the facts and circumstances of the present case, MALDONADO contends that the precise interests put

forward by the State as justifications for the burden imposed by its bracketing system are sufficient to pass muster under either strict scrutiny or rational basis.  The Complaint alleges no cognizable claim of exclusion of "certain classes of candidates from the electoral process," nor exclusion of voters' ability to cast votes for candidates. <u>Anderson</u>, <u>supra</u>, 460 U.S. at 793. Even if PLAINTIFFS could somehow demonstrate their first amendment rights are in some way burdened by their ballot position, Plaintiffs' own respective association rights can be limited without constitutional infringement because of the public interest served by protecting the associational rights of all political organizations that seek placement on the ballot. New Jersey's comprehensive election laws, including but not limited to those pertaining to bracketing, demonstrate that New Jersey has a significant interest in assisting its registered voters by streamlining the election process and making it as easy as possible for them to make their voices heard in so far as who they believe to be the best candidates to run New Jersey.  This process has assisted voters for more than seventy years, has never been invalidated, and has become a system that New Jersey residents have come to rely on during primary elections.  As set forth in the MALDONADO Certification, "ballot drawing is conducted in a blind, fair, unbiased manner. Preference, or advantage is provided to no candidate, or slate of candidates" and that "each Senate candidate has equal opportunity to obtain through the ballot draw process the first column, while the bracketing protects constitutionally protected rights of all parties, whether political parties, or individuals running without political party endorsement or political party affiliation." Again, the New Jersey Supreme Court has previously noted that the "purpose of the ballot is to permit voters to record their will, and one must assume that the Legislature intended a ballot so arranged that all voters may find their candidates with the least difficulty the total content of the ballot will permit. <u>Quaremba v. Allan</u>, 67 <u>N.J.</u> 1, 12 (1975).Moreover, the legislative determination that whatever the effect on an

unaffiliated candidate, the public interest is better served by permitting a grouping of candidates having common aims or principles and authorizing those candidates to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the machine ballot. Id. at 13.

**(2)**     **Equal Protection Claims.**

The Equal Protection Clause of the Fourteenth Amendment of the Federal Constitution states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.  In their Complaint, Plaintiffs allege that New Jersey's bracketing and ballot placement system violate their equal protection rights as they fail to treat similarly situated persons – candidates pursuing the same office in the same political party – the same with respect to ballot order and the display of the ballot.

In Quaremba, supra, one of the two seminal cases upholding the New Jersey bracketing statutes, the New Jersey Supreme Court analyzed the plaintiff's equal protection claim as follows, "If claiming an equal protection violation, the appellants' burden was to demonstrate in the first instance a discrimination against them of some substance.  Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution. Quaremba, supra, 67 N.J. at 11 (1975) (citing Ferguson v. Skrupa, 372 U.S. 726, 732 (1963)). In so doing, the Court distinguished between provisions of N.J.S.A. 19:49-2, which regulate the positioning on lines of a voting machine of the names of candidates for nomination at a primary election, from provisions of N.J.S.A. 19:23-24, which regulate positioning on paper ballots.  Specifically, the plaintiff argued that those affected by the provisions of N.J.S.A. 19:49-2 were denied equal protection of the laws because the statute improperly (1) created preferred classes of primary candidates; (2) favored candidates and voters in rural counties which use paper

ballots over candidates and voters in populous counties which use voting machines; (3) favored candidates in counties using voting machines who file a joint petition and those who affiliated with them over all other candidates; and (4) imposed an unequal burden on unaffiliated candidates and thus denied them their constitutional rights. Id. at 10.

In upholding the constitutionality of the bracketing laws, the Court held that (1) N.J.S.A. 19:49-2 did not deny equal protection of the laws to any class or primary candidates; (2) the county clerk in counties using voting machines was not required to list all candidates for nomination to any given office in a single column or row and in an order determined by lot; and (3) whether or not a particular course taken by a county clerk in the exercise of discretion vested in him by the statute depends on the specific facts and circumstances of the individual case, but the clerk must act in good faith and may not intentionally discriminate against any candidate or group of candidates. Id. at 10-16. In doing so, the Court reasoned,

> Even if we were to disregard the presumption of validity which attaches to N.J.S.A. 19:49-2, it is clear that it is not invidiously discriminatory. The obvious differences in the physical makeup of the face of a voting machine and a paper ballot afford a reasonable basis for the Legislature's decision to provide the different procedures governing the listing of candidates' names on the face of the voting machine than are provided for listing such names when paper ballots are used.

Id. at 11-12.

Here, as previously discussed, PLAINTIFFS' facial attack on the constitutionality of the Equal Protection Clause of the Fourteenth Amendment is vague, at best. They have not presented any sort of analysis of the bracketing statutes with regard to an equal protection challenge. Furthermore, even if the Court assumes that PLAINTIFFS intended a facial attack, their claims of unequal application of the laws do not involve either suspect or quasi-suspect classifications. Thus, the proper standard to apply to a facial attack would be the rational basis test. Here, the statutes and the case law of New Jersey make clear that the ballot system is designed to assist voters. As

the Court in *Quaremba* noted, the "purpose of the ballot is to permit voters to record their will, and one must assume that the Legislature intended a ballot so arranged that all voters may find their candidates with the least difficulty the total content of the ballot will permit. Id. at 12. Moreover, the legislative determination that whatever the effect on an unaffiliated candidate, the public interest is better served by permitting a grouping of candidates having common aims or principles and authorizing those candidates to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the machine ballot. Id. at 13.

Finally, with regard to PLAINTIFFS' as-applied attack, they have not presented any evidence that MALDONADO acted in bad faith and with invidious discrimination in his application of the bracketing laws. However, the mere fact that Defendants, including MALDONADO, may have made certain ballot design features, pursuant to their discretionary right to do so under the bracketing laws, that PLAINTIFFS feel have resulted in the unequal treatment of certain candidates, is a far cry from alleging that Defendants acted with any sort of malicious intent or invidious discrimination when they designed these features. Again, as set forth in MALDONADO'S Certification, the ballot positioning is determined in a blind, fair, unbiased manner and no preference, or advantage is provided to any candidate, or slate of candidates. Finally, as previously discussed, the government has a significant interest in assisting the voters with the current ballot system.

Accordingly, PLAINTIFFS' cannot demonstrate a likelihood of success on the merits and, as such, are not entitled to injunctive relief in their favor.

**C.**   <u>**The Balance of Equities Is Not in Plaintiffs' Favor.**</u>

In as much as PLAINTIFFS' fail to satisfy the first two elements of the analysis, the Court need not proceed any further. However, MALDONADO notes that the harm which will result from the granting of a preliminary injunction during the late stages of the electoral process is far more severe than the harm, if any, which purportedly would be imposed upon PLAINTIFFS in the absence of an injunction. Again, PLAINTIFFS' claims of irreparable harm ignore, consciously or otherwise, the myriad of factors which determine the success of an electoral candidate. Instead, PLAINTIFFS fixate solely on the "County line" and ballot positioning. PLAINTIFFS' arguments also ignore the havoc that would be wreaked upon our State's electoral process if the rules of the game were to be changed once the contest had already begun. Given the looming election deadlines, the time and expense that would inevitably be incurred, and the potential for not just confusion, but voter disenfranchisement, MALDONADO respectfully suggests that the public interest would be well-served by denying PLAINTIFFS' application.

<u>**CONCLUSION**</u>

Accordingly, for the reasons set forth herein, DEFENDANT, E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, respectfully requests that this Court enter an Order denying the application of PLAINTIFFS, ANDY KIM, in his personal capacity as a candidate for U.S. Senate, ANDY KIM FOR NEW JERSEY, SARAH SCHOENGOOD, SARAH FOR NEW JERSEY, CAROLYN RUSH and CAROLYN RUSH FOR CONGRESS, for injunctive relief.

Respectfully submitted,
FLORIO KENNY RAVAL, L.L.P.

*Edward J. Florio*

_____
EDWARD J. FLORIO, ESQ.

.

ATTORNEYS FOR DEFENDANT, E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk

DATED:          March 6, 2024