# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, ANDY KIM FOR NEW JERSEY, SARAH SCHOENGOOD, SARAH FOR NEW JERSEY, CAROLYN RUSH and CAROLYN RUSH FOR CONGRESS; | Civ. Action No.: 3:24-cv-01098 (ZNQ) (TJB) |

Plaintiffs,

v.

CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk; SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk; PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk; MARY H. MELFI, in her capacity as Hunterdon County Clerk; STEVE PETER, in his official capacity as Somerset County Clerk; HOLLY MACKEY, in her official capacity as Warren County Clerk; NANCY J. PINKIN, in her official capacity as Middlesex County Clerk; JOSEPH GIRALO, in his official capacity as Atlantic County Clerk; JOHN S. HOGAN, in his official capacity as Bergen County Clerk; JOANNE SCHWARTZ, in her official capacity as Burlington County Clerk; JOSEPH RIPA, in his official capacity as Camden County Clerk; RITA M. ROTHBERG, in her official capacity as Cape May County Clerk; CELESTE M. RILEY, in her official capacity as Cumberland County Clerk; CHRISTOPHER J. DURKIN, in his official capacity as Essex County Clerk; JAMES N. HOGAN, in his official capacity as Gloucester County Clerk; E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk; ANN F. GROSSI, in her official capacity as Morris County Clerk; DANIELLE IRELAND-IMHOF, in her official capacity as Passaic County Clerk; and

JOANNE RAJOPPI, in her official capacity as Union County Clerk;

Defendants.

- and –

DALE A. CROSS, in his official capacity as Salem County Clerk; and JEFF PARROTT, in his official capacity as Sussex County Clerk; TAHESHA WAY, Esq., in her official capacity as Secretary of State for New Jersey.

As Interested Parties.

---

## SOMERSET COUNTY CLERK STEVE PETER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

**WILENTZ, GOLDMAN & SPITZER, P.A.**
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
*Attorneys for Defendant Steve Peter,*
*in his official capacity as Somerset County Clerk*

*Of Counsel and On the Brief*:
Gordon J. Golum, Esq.

*On the Brief*:
Richard K. Wille Jr., Esq.

#14331533.4

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................... 3

LEGAL ARGUMENT .......................................................................................... 10

POINT I ............................................................................................................... 10

    THIS MATTER SHOULD PROCEED NO FURTHER BECAUSE PLAINTIFFS HAVE
    FAILED TO JOIN INDISPENSABLE PARTIES TO THIS ACTION. ................................. 10

    A.    Plaintiffs have failed to Join Necessary Parties Pursuant to Fed. R. Civ. P. 19 .......... 10

    B.    This Matter Should Proceed No Further Because the Absent Necessary Parties are
            Indispensable ................................................................................................. 14

POINT II ............................................................................................................... 16

    THE COURT SHOULD NOT GRANT PLAINTIFFS' REQUEST FOR THE
    EXTRAORDINARY REMEDY OF A PRELIMINARY INJUNCTION. .............................. 16

          i.    Plaintiffs' Disingenuous Allegations of Harm Are Undermined by Their
                 Inexcusable Delay in Requesting Emergent Relief. ............................... 17

          ii.    The Balance of Equities Weighs Heavily Against Granting a Preliminary
                 Injunction. ......................................................................................... 18

          iii.    The Public Interest Weighs Decidedly in Favor of Denying Plaintiffs Request for
                 a Preliminary Injunction. .................................................................... 21

          iv.    Plaintiffs Are Unlikely to Succeed on the Merits. ................................. 22

POINT III ............................................................................................................. 24

    THE COURT SHOULD FIND THE DOCTRINES OF LACHES BARS PLAINTIFFS'
    REQUEST FOR RELIEF BECAUSE OF THEIR  INEXCUSABLE DELAY IN BRINGING
    THIS ACTION AND SEVERE PREJUDICE TO DEFENDANTS. ....................................... 24

CONCLUSION ..................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

*Abuhouran v. KaiserKane, Inc.*,
  CIV. 10-6609 NLH/KMW, 2012 WL 4027416 (D.N.J. Sept. 12, 2012) ............................... 11

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ................................................................................. 16

*Bank of America Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.,*
  844 F.2d 1050 (3d Cir. 1988 ............................................................................. 14, 16

*California Democratic Party v. Jones*,
  530 U.S. 567 (2000) ............................................................................. 12, 20, 21, 23

*Colony Ins. Co. v. Aspen Specialty Ins. Co.*,
  20-CV-09446-JHR-JS, 2021 WL 1589355 (D.N.J. Apr. 23, 2021) ...................................... 11

*Conforti v. Hanlon*, CV2008267ZNQTJB,
  2022 WL 1744774 (D.N.J. May 31, 2022) ............................................................. 22

*Democratic-Republican Org. of New Jersey v. Guadagno*,
  900 F. Supp. 2d 447 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012) ........................ passim

*EEOC v. Great Atlantic & Pacific Tea Co.*,
  735 F.2d 69 (3d Cir.), *cert. dismissed*, 469 U.S. 925 (1984) ................................................. 24

*Eu v. San Francisco County Democratic Central Committee*,
  489 U.S. 224 (1989) ............................................................................. 13, 20, 21, 23

*Gen. Refractories Co. v. First State Ins. Co.*,
  500 F.3d 306 (3d Cir. 2007) ................................................................................. 11, 14

*Gov't Employees Ins. Co. (GEICO) v. Korn*,
  310 F.R.D. 125 (D.N.J. 2015) ................................................................................. 12

*Guthrie Clinic, Ltd. v. Travelers Indem. Co. of Ill.,*
  104 Fed. Appx. 218 (3d Cir. 2004) ................................................................................. 14

*Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*,
  582 F.3d 721 (7th Cir. 2009) ................................................................................. 23

*Hybritech Inc. v. Abbott Labs,*
  849 F.2d 1446 (Fed. Cir. 1988) ................................................................................. 17

**TABLE OF AUTHORITIES** (cont'd)

*Intel Corp. v. ULSI Sys. Tech., Inc.*,
  995 F.2d 1566 (Fed. Cir.1993) ........................................................................ 16

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
  11 F.3d 399 (3d Cir. 1993) ............................................................................. 11

*Larami Ltd. v. Ohio Art Co.*,
  270 F. Supp. 2d 555 (D.N.J. 2003) ................................................................ 16

*Liberty Mutual Ins. Co. v. Treesdale, Inc.*,
  419 F.3d 216 (3d Cir. 2005) ........................................................................... 12

*Merrill v. Milligan*,
  142 S. Ct. 879 (2022) ................................................................................ 18, 19

*New England Braiding Co. v. A.W. Chesterton Co.*,
  970 F.2d 878  (Fed. Cir. 1992) ....................................................................... 16

*Nichino Am., Inc. v. Valent U.S.A. LLC*,
  44 F.4th 180 (3d Cir. 2022) ............................................................................ 22

*Otsuka Pharm. Co. v. Torrent Pharm. Ltd., Inc.*,
  99 F. Supp. 3d 461 (D.N.J. 2015) .............................................................. 17, 20

*Pfizer, Inc. v. Teva Pharm., USA, Inc.*,
  429 F.3d 1364 (Fed. Cir. 2005) ................................................................. 17, 20

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*,
  223 F.R.D. 326 (D.N.J. 2004)..................................................................... 11, 14

*Pub. Interest Legal Found. v. Boockvar*,
  495 F. Supp. 3d 354 (M.D. Pa. 2020) ............................................................. 19

*Punnett v. Carter*,
  621 F.2d 578 (3d Cir. 1980) ........................................................................... 16

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ........................................................................ 18, 19, 21, 22

*Quaremba v. Allan*,
  67 N.J. 1 (1975) .......................................................................... 21, 22, 23

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
  32 F.3d 1552 (Fed. Cir. 1994) ........................................................................ 16

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017), *as amended* (June 26, 2017).............................. 23

**TABLE OF AUTHORITIES** (cont'd)

**PAGE**

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
    140 S. Ct. 1205 (2020) ................................................................ 18

*Republican Party of Pa. v. Cortes*,
    218 F.Supp. 3d 396 (E.D. Pa. 2016) ........................................ 19

*Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as "The Sindia"*,
    895 F.2d 116 (3d Cir. 1990) .................................................... 11

*Spring–Ford Area School District v. Genesis Ins. Co.*,
    158 F.Supp.2d 476 (E.D. Pa. 2001) ........................................ 12

*State Farm Mut. Auto. Ins. Co. v. State*,
    124 N.J. 32  (1991) ............................................................ 13, 23

*T.J. Smith & Nephew Ltd. v. Consol. Medical Equip. Corp.*,
    821 F.2d 646 (Fed. Cir. 1987) ................................................ 17

*Tashjian v. Republican Party of Connecticut*,
    479 U.S. 208  (1986) ......................................................... 21, 22

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) ............................................................... 12

*Waddell v. Small Tube Products. Inc.*,
    799 F.2d 69 (3d Cir. 1986) .................................................... 24

**Statutes**

N.J.S.A. 19:14-1 ........................................................................ 19

N.J.S.A. 19:49-2 .................................................................. 13, 23

**Other Authorities**

Fed. R. Civ. P. 19 ...................................................... 10, 11, 15, 16

Fed. R. Civ. P. 19(a)(1)(B)(i) ................................................... 12

Fed. R. Civ. P. 19(b) ............................................................ 13, 14

**Treatises**

U.S. Const., Art I, § 4, cl. 1 .............................................. 21, 22

## PRELIMINARY STATEMENT

The County Clerk in the State of New Jersey is a Constitutional Officer charged with certain duties relating to the orderly administration of our elections.  These duties require compliance with a series of legislative enactments that enjoy the presumption of constitutionality and are designed to preserve the integrity of our elections.  The County Clerks' responsibilities do not begin on Election Day, nor do they begin the day ballots are mailed out.  In order to fulfill these duties, the County Clerk must work to ensure that the instrumentalities of our elections are in place.  This includes overseeing the programming and testing of voting machines that must be certified by the New Jersey Secretary of State, the programming and testing of ballot-printing machines, bidding on vendor contracts and procurement of necessary funds to ensure that the voters are equipped with the necessary tools for their voices to be heard in our representative democracy.

Plaintiffs Andy Kim, in his personal capacity as a candidate for U.S. Senate ("Mr. Kim"); Andy Kim for New Jersey; Sarah Schoengood ("Ms. Schoengood"); Sarah for New Jersey; Carolyn Rush ("Ms. Rush") and Carolyn Rush for Congress (collectively, "Plaintiffs") urge this Court to intervene in their primary election contests by upending the legislative framework of our elections, regardless of the mischief it will sow.  It is long past the time that the requested relief can be provided without a substantial risk of error and adverse impact on voter confidence in our elections.  Indeed, to even try to do so now would force a change in the process historically used in New Jersey without full investigation and consideration given the short time to address Plaintiffs' request.

A preliminary injunction is a drastic and extraordinary remedy that should not be routinely granted.  Particularly where the injunction is directed at disrupting the status quo, the movant bears a heavy burden.

As discussed in this brief, the Third Circuit has recognized that the greater the public interest and harm to other parties, the greater the likelihood of success on the merits must be to support an injunction. The questionable feasibility of complying with the extraordinary changes Plaintiffs seek at this late stage should defeat their motion, regardless of their ultimate chances of success.  To the extent the Court analyzes Plaintiffs' chance of success on the merits, the United States Constitution and Supreme Court of the United States have recognized and protected the right of association since the early days of our republic.  Courts have rejected similar challenges to the legislative enactments that Plaintiffs challenge, which enjoy a presumption of constitutionality that Plaintiffs bear a heavy burden to invalidate.

Plaintiffs' request for relief should be denied because the public interest is not served by rushing to judgment on an important issue of constitutional magnitude which will have an impact on the rights of every New Jersey voter and the ability to administer our elections.  Moreover, federal courts have recognized that there is a compelling public interest in promoting the associational rights of candidates and political institutions because they are protected under constitutional law.  As Plaintiffs waited until the eleventh hour to file this action, their delay negates any claim of irreparable harm. Yet the constitutionally protected associational rights of the many candidates and political committees that are not even party to his action stand to be irreparably harmed at least as much as Plaintiffs.  The balance of equities thus militates against injunctive relief.

While all the foregoing reasons strongly support denial of Plaintiffs' request for emergency judicial intervention, Plaintiffs' failure to join necessary parties with constitutional interests that are at stake in this matter is an independent ground to deny their motion.  Due process demands that their associational rights should not be ignored without an opportunity to

be heard.  Similarly, the doctrine of laches should bar Plaintiffs' requested relief.  Plaintiffs' inexcusable delay in bringing this action long after it was ripe has prejudiced the ability of Defendants to investigate and demonstrate to the Court the grave danger in granting an injunction.

For all the foregoing reasons, the Court should deny Plaintiffs' request for preliminary injunction.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Procedural History

Plaintiffs Andy Kim, in his personal capacity as a candidate for U.S. Senate ("Mr. Kim"); Andy Kim for New Jersey; Sarah Schoengood ("Ms. Schoengood"); Sarah for New Jersey; Carolyn Rush ("Ms. Rush") and Carolyn Rush for Congress' (collectively, "Plaintiffs") filed a Verified Complaint and Motion for a Preliminary Injunction on February 26, 2024.  Plaintiffs did not serve the Verified Complaint on the political committees of any counties, nor the candidates whose constitutional rights may infringed by Plaintiffs' requested relief.

The Court held a Case Management Conference on February 29, 2024.  ECF Doc. No. 31. On March 4, 2024, the Camden County Democratic Committee moved to intervene.  ECF Doc. No. 41.  A hearing on Plaintiffs' emergency application is scheduled for March 18, 2024.

### B.    Statement of Facts

Somerset County Clerk Steve Peter ("Mr. Peter") is a duly elected constitutional officer of Somerset County pursuant to Article 7, § 2,  ¶2 of the New Jersey Constitution.  Certification of Steve Peter, dated March 6, 2024 ("Peter Cert."), ¶2.  The duties of his office are enumerated in the duly enacted New Jersey Statutes, N.J.S.A. 40A:9-63 to N.J.S.A. 40A:9-77.2.  *Id.*, ¶3.  Mr. Peter has served in this capacity since 2018.  *Id.*, ¶9.  Mr. Peter previously served as the Deputy County Clerk of Champaign County, Illinois.  *Id.*, ¶7.  Mr. Peter also serves as the Vice President of the Constitutional Officers Association of New Jersey, and previously served as the Secretary

and Section Chief of Clerks and Recorders of that organization.  *Id.*, ¶¶10-11.  Through these roles, Mr. Peter has firsthand knowledge of the many factors associated with administering elections. *Id.*, ¶12.

A main significant difficulty the Somerset County Clerk's Office would face if the Court grants Plaintiffs' request for a preliminary injunction is the extremely tight timeline for preparation of ballots, which is already a challenge using the system it has been using for decades (the county line), let alone having to learn a new setup while complying with the deadlines.  *Id.*, ¶13.

The first deadline at issue is March 25, 2024 at 4:00 p.m.  *Id.*, ¶14.  Pursuant to N.J.S.A. 19:23-14, before 4:00 p.m. on or before the 71st day prior to the primary election, county candidates submit to the Clerk their nominating petitions.  Peter Cert., ¶14.  In advance of this March 25 deadline, the candidates must coordinate their associations on the ballot and slogans to submit pursuant to N.J.S.A. 19:23-14.  Peter Cert., ¶14.

Between March 25 and April 5, candidates must submit the name of their campaign manager to empower that person to determine which candidates will appear on their column in the ballot.  *Id.*, ¶15.  If any races are contested, the Clerk must coordinate with the campaign manager to determine which candidates will be associated with others on the ballot.  *Id.*

At this point, the County Clerk begins the ballot layout.  *Id.*, ¶16.  This is started before the drawing to ensure that all of the offices, candidate names and translations are correct before being placed in the appropriate space on the ballot after the drawing.  *Id.*  Somerset County produces ballots in two languages, English and Spanish.  *Id.*  Other counties may be required to add additional languages to their ballots, depending on their population.  *Id.*  While these functions will need to be carried out regardless of whether an injunction is entered, it is one of many steps in the election process that must be executed in a tight timeframe. *Id.*, ¶17. The longer the ballot

preparation process is delayed due to Plaintiffs' litigation, the less time there is to engage in these processes and correct any issues with the translations.  *Id.*

Pursuant to N.J.S.A. 19:23-24, at 3:00 p.m. on the 61st day before the primary election, the County Clerks and municipal clerks conduct the drawings for ballot positions.  Peter Cert., ¶18.  For the 2024 primary, the statutory deadline for drawing falls on April 4, 2024.  *Id.*, ¶18.  In advance of this date, the Clerk must prepare slips with the names of candidates and the capsules to place the slips in.  *Id.*  There are 319 contests in this election in Somerset County.  *Id.*  At a minimum, there will be 638 names to put on the ballot if there are no contested races.  *Id.*  There are likely to be many contested races with multiple candidates, which will significantly increase the number of names to be drawn and placed on the ballots. *Id.*

In 2023, Mr. Peter drew for 57 names of candidates across 26 contests in Somerset County, which took approximately 30 minutes. *Id.*, ¶19.  If the preliminary injunction is granted, ballot draws will now become a multi-hour affair, cutting into the 24-hour clock that is already ticking for ballot preparation pursuant to N.J.S.A. 19:23-24 (April 4th drawing date) and N.J.S.A. 19:14-1 (April 5th ballot submission to printer).  Peter Cert., ¶20.  This is because if candidates are no longer able to associate as a block consistent with N.J.S.A. 19:49-2 and be drawn with a single capsule, each candidate for each race must get a separate drawing.  Peter Cert., ¶20.

The next day, April 5, 2024, is the deadline for preparation of the official primary election ballot for printing pursuant to N.J.S.A. 19:14-1 (60 days before the primary election).  Peter Cert., ¶21.  The statute expressly requires that "Every county clerk shall have ready for the printer on or before the 60th day prior to the primary election . . . a copy of the contents of official ballots as hereinafter required to be printed for use at such election."  *Id.*, ¶21.  There is thus a 24-hour clock

between the drawing for ballot position on April 4th and preparation of the ballots for submission to the printer on April 5th.  *Id.*

Typically, Mr. Peter personally prepares the layouts for the ballots between the drawing and the submission to the printer.  *Id.*, ¶22.  Some county clerks do the same, while other county clerks utilize vendors to accomplish this function.  *Id.*  If the preliminary injunction is granted, given the departure from the usual process and the significant additional demands resulting from the drawing, Mr. Peter will likely need to utilize a vendor to assist with the ballot layout, which will incur additional costs and come with its own risk of human error.  *Id.*  This is but one of many points in the process where errors may occur as a result of the novelty of the procedure for New Jersey clerks if Plaintiffs' eleventh-hour request for injunctive relief is granted.  *Id.*, ¶23.

Pursuant to N.J.S.A. 19:63-5 and -9, the mailing of mail-in ballots commences 45 days before the primary election, which falls on April 20th this year.  Peter Cert., ¶25.  This includes the deadline to send ballots according to the Uniformed and Overseas Voters Absentee Voting Act ("UOCAVA"), a federal law that protects the voting rights of military members, public servants and their families serving our nation's interests abroad.  *Id.*

By April 26, 2024, the programming and proofing of machine ballots for each district must be complete to meet subsequent deadlines.  *Id.*, ¶26.  If a preliminary injunction is granted, this voting ballot machine process will take longer, leaving even less time to program the machine ballots.  *Id.*  For each of the 267 election districts in Somerset County, Mr. Peter must perform various functions to ensure the integrity of the election and protect the franchise of New Jersey voters.  *Id.*, ¶27.  For example:

- Proofread the draft ballots for substantive and technical accuracy, *id.*;
- Print test deck and deliver to the voting machine vendor (for Somerset County, ES&S), *id.*;

- ES&S then performs tests to ensure proper function of voting machine and to detect and correct any errors, *id.*;
- The ballot printing then begins, *id.*;
- County Clerk staff prepares mailing: address envelopes, insert ballots and other materials and delivers to USPS for delivery, *id.*

The County Clerks are responsible for overseeing the aforementioned process in their respective counties. *Id.*, ¶28. Each county is served by one of only two vendors: ES&S or Dominion. *Id.*

Notably, Somerset is one of fifteen (15) counties that utilize ES&S for the foregoing services. *Id.*, ¶29. Thus, the Office of the Somerset County Clerk would need to know whether ES&S, its current vendor, is able to accommodate the changes Plaintiffs seek in time for the 2024 primary elections. *Id.*, ¶30. ES&S has indicated that it cannot implement the changes necessary to comply with the last-minute overhaul of our elections that Plaintiffs request in time for New Jersey's 2024 primary elections. *See* ECF Doc. No. 46.

The remaining six (6) counties utilize Dominion, which is the only other vendor capable of executing these necessary tasks. *Id.*, ¶31. It is unclear whether it is feasible for Somerset County to use Dominion in the short time remaining to administer the rapidly approaching primary election. *Id.*, ¶32. Even if Dominion were able to accommodate the requested changes, my office would need to contract with them and procure the necessary funds. *Id.*, ¶33. There may be additional unforeseen challenges in any effort to switch to Dominion, particularly at this late stage in the election cycle. *Id.*, ¶34.

From April 26th to May 22nd, County Clerks' offices and vendors conduct testing. Each district's machine data is downloaded onto a thumb drive. *Id.*, ¶35. Each thumb drive is then uploaded onto each voting machine. *Id.* Somerset County has over 300 voting machines that will

need to undergo this process.  *Id.*  If errors are detected, the vendor costs would likely increase. *Id.*  The County would be required to fund these costs.  *Id.*

From May 13 to 16, sample ballots are proofread and the printers prepare for mailing.  *Id.*, ¶36.  On May 14, non-partisan elections are held in some counties.  *Id.*, ¶37.  The Somerset County Clerk's printing vendor, Royal Printing Service, has submitted a sworn affidavit in this matter expressing its concerns that it will not be able to implement the changes necessary to comply with Plaintiffs' request for relief in time for the 2024 primary election if an injunction is granted.  *See* ECF Doc. No. 53-1, ¶27.

On or around May 22, 2024 an inspection of the voting machines is conducted pursuant to N.J.S.A. 19:23-34. Peter Cert., ¶38. If there are substantial errors detected as a result of the requested drastic overhaul of every step of the foregoing processes, additional time will be necessary to remedy any issues with the novel systems, if they can be remedied at all.  *Id.*

By May 22, 2024 at the latest (on or before 12 noon on Wednesday preceding the start of the early voting period for the primary election), sample ballots of the primary election must be mailed to the voters pursuant to N.J.S.A. 19:23-34.  Peter Cert., ¶39.  In any Presidential election year, the Somerset County Clerk's Office historically receives a high volume of calls from voters concerning the ballot format and instructions to ensure their vote is counted.  *Id.*, ¶40.  If a preliminary injunction requiring the drastic changes requested in a short timeframe, based on Mr. Peter's extensive experience in election administration, he expects that a new design will prompt many new calls from voters and declarations of conspiracy.  *Id.*, ¶41.

While all of this will present significant difficulties and disruption to the Clerk's offices (and we note that Clerks have duties outside of elections that must be fulfilled while they prepare ballots), the Clerks can do their best to comply.  *Id.*, ¶42.  What they cannot do, however, is ensure

a lack of errors because of the totality of new processes required, new designs to test, and a new format to explain to the voters.  *Id.*

In addition to all stages in the process where errors can occur and would need to be addressed in advance of rapidly approaching deadlines, there may be many unforeseen issues that the Clerks cannot anticipate if an injunction is granted.  *Id.*, ¶43.  If there are errors in any ballot, many of the processes involved must be re-run and re-tested to ensure there are no other errors, until every ballot and machine is free of errors.  *Id.*, ¶44.  Any errors, no matter how minor, caused by this rapid switch will call into question the integrity of the election.  *See id.*, ¶45.

If the voting machines cannot ultimately pass the required tests and certifications in time, the only remaining option is to utilize emergency ballots.  *Id.*, ¶46.  This is not feasible, as the preparation of emergency ballots involves the previously described testing, printing, and challenges to create emergency ballots using a completely novel format.  *Id.*

In that scenario, there would be significant additional time and expense associated with preparing huge volumes of emergency ballots and the logistical challenge of administering the election on that basis.  *Id.*, ¶47. The use of paper emergency ballots also requires significant time for the counting of the ballots, which could be subject to human error given the scale of an election without voting machines.  *Id.*, ¶48.  The "Track My Ballot" website normally permits New Jersey voters to verify that their vote is counted shortly after an election.  *Id.*, ¶49.  If all voters are required to use emergency ballots, their ability to check on the status of their vote will be significantly delayed.  *Id.*

Ultimately, even if an election using emergency paper ballots could be conducted (which is not feasible because it requires nearly every step of the foregoing processes to be error free),

this would likely have an impact on voter confidence because of the resultant risk of error.  *Id.*, ¶50.

The New Jersey Division of Elections must certify state-wide totals for federal and state election contests.  *Id.*, ¶51. Any delays in certification by the County Clerks will in turn affect their certification.  *Id.*  Depending on the severity of the issues and errors resulting from granting Plaintiffs' request for relief, this could impact whether New Jersey's vote is certified in time for the dates imposed by the United States Constitution with respect to the 2024 Presidential Election. Peter Cert., ¶52.

## **LEGAL ARGUMENT**

### **POINT I**

### **THIS MATTER SHOULD PROCEED NO FURTHER BECAUSE PLAINTIFFS HAVE FAILED TO JOIN INDISPENSABLE PARTIES TO THIS ACTION.**

The Court should not grant the extraordinary remedy of injunctive relief sought in this action because indispensable parties have not been joined, and their rights will be irreparably prejudiced as a result.  Those parties include the county Democratic and Republican Committees and the candidates whose associational rights Plaintiffs seek to sever by judicial intervention.

**A.**    **Plaintiffs have failed to Join Necessary Parties Pursuant to Fed. R. Civ. P. 19**

Federal Rule of Civil Procedure 19 expressly states:

(a) **Persons Required to Be Joined if Feasible**.

(1) **Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; **or**

      (B) **that person claims an interest relating to the subject of the**
**action and is so situated that disposing of the action in the**
**person's absence may**:

      (i) **as a practical matter impair or impede the person's ability**
**to protect the interest**; or

      (ii) leave an existing party subject to a substantial risk of incurring
double, multiple, or otherwise inconsistent obligations because of
the interest.

      [Fed. R. Civ. P. 19 (emphasis added).]

Courts treat clauses (A) and (B) in the disjunctive, just as Rule 19 phrases them. *Gen.*
*Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007); *Colony Ins. Co. v.*
*Aspen Specialty Ins. Co.*, 20-CV-09446-JHR-JS, 2021 WL 1589355, at *7 (D.N.J. Apr. 23, 2021)
(noting that *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993)
wrongly stated that that "[a] Rule 19(a)(1) inquiry is limited to whether the district court can grant
complete relief to the persons already parties to the action," which "ignores that subsections
(a)(1)(A) and (a)(1)(B) are distinct factors, either of which can render a party necessary to the
litigation."). "[T]hus, if *either* subsection is satisfied, the absent party is a necessary party that
should be joined if feasible." *Abuhouran v. KaiserKane, Inc.*, CIV. 10-6609 NLH/KMW, 2012
WL 4027416, at *4 (D.N.J. Sept. 12, 2012) (emphasis added).

"Subdivision (a)(2)(i) protects the interests of absent third parties who might be prejudiced
if not joined." *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 329 (D.N.J.
2004). Subdivision (a)(2)(ii) "was enacted to protect parties from a substantial risk of multiple or
inconsistent obligations" and "also helps to protect defendants from needless multiple litigation."
*Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as "The Sindia"*, 895 F.2d 116,
122 (3d Cir. 1990) (quotations and citations omitted).

-11-

The interest protected by Rule 19(a)(1)(B)(i) must be "relat[ed]" to the subject of the action," and "a legally protected interest," "not merely a financial interest." *Liberty Mutual Ins. Co. v. Treesdale, Inc.,* 419 F.3d 216, 230 (3d Cir. 2005) (quoting *Spring–Ford Area School District v. Genesis Ins. Co.*, 158 F.Supp.2d 476, 483 (E.D. Pa. 2001)).

Additionally, the interest must be practically impaired or impeded by a disposition in the person's absence, Fed. R. Civ. P. 19(a)(1)(B)(i), and the impairment must be "direct and immediate," "not speculative." *Gov't Employees Ins. Co. (GEICO) v. Korn*, 310 F.R.D. 125, 132 (D.N.J. 2015).

"The First Amendment protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997). The United States Supreme Court has recognized that the associational interests of candidates and political parties are of constitutional magnitude.

As the Court held in *California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000):

> [T]he First Amendment protects "the freedom to join together in furtherance of common political beliefs," *Tashjian*, at 214–215, which "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only," *La Follette*, 450 U.S., at 122. That is to say, a corollary of the right to associate is the right not to associate. In no area is the political association's right to exclude more important than in its candidate-selection process. That process often determines the party's positions on significant public policy issues, and it is the nominee who is the party's ambassador charged with winning the general electorate over to its views. The First Amendment reserves a special place, and accords a special protection, for that process, [*Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 224 (1989)], because the moment of choosing the party's nominee is the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power.

Government actions that may unconstitutionally burden this freedom may take many forms, one of which is "intrusion into the internal structure or affairs of an association" like a "regulation that forces the group to accept members it does not desire," such as Plaintiffs. *Eu*, 489 U.S. at 214.

These associational interests are further protected by New Jersey statutes, which as enactments of our duly-elected legislature enjoy a presumption of constitutionality. *See State Farm Mut. Auto. Ins. Co. v. State*, 124 N.J. 32, 45–46 (1991) (holding legislative enactments "are presumed to be valid and the burden on the proponent of invalidity is a heavy one."). N.J.S.A. 19:49-2 provides that candidates may signal their association to one another by using the same slogan and being placed on the same line of the voting machine. And as the United States Supreme Court recognizes, the party itself has a constitutionally protected interest in signaling its support for a given candidate. *See Cal. Dem. Party,* 530 U.S. at 574; *Eu*, 489 U.S. at 214.

In this case, the Camden County Democratic Committee has already moved to intervene. As a result, it has claimed an interest relating to the subject of this action. Similarly, all candidates in New Jersey that have chosen "the same designation or slogan" and to "have their names placed on the same line of the voting machine" pursuant to N.J.S.A. 19:49-2 have asserted a cognizable legal interest that Plaintiff's eleventh-hour request for emergency relief would eviscerate, if granted. *See* Fed. R. Civ. P. 19(b). The ability of the parties and candidates to protect their constitutionally protected associational rights will be impaired if a preliminary injunction is granted in their absence. *See Cal. Dem. Party,* 530 U.S. at 574; *Eu*, 489 U.S. at 214; Fed. R. Civ. P. 19(B)(1).

Thus, the political parties and candidates exercising their associational rights by availing themselves of N.J.S.A. 19:49-2 are necessary parties to this action. "[W]hen a party is deemed

'necessary' under Rule 19(a), joinder must occur if feasible." *Gen. Refractories Co.*, 500 F.3d at 319 (holding joinder is not feasible if it would destroy subject matter jurisdiction based on diversity). Indeed, failure to do so is grounds for dismissal.[1] *See* Fed. R. Civ. P. 12(b)(7). In *Princeton Biochemicals, Inc.*, 223 F.R.D. at 329, the court applied Rule 19(a) to find that Rutgers University should be joined as a necessary party, noting that joining it would not defeat jurisdiction and that Rutgers had an interest in the litigation that would be impaired if it remained absent. As joinder of the county and state political committees is perfectly feasible in this matter, the Court need not analyze Rule 19(b), which concerns only circumstances where joinder is not feasible.

Accordingly, the Court should dismiss Plaintiff's Verified Complaint and deny its request for a preliminary injunction because Plaintiffs have failed to join necessary parties pursuant to Rule 19(a).

**B.      This Matter Should Proceed No Further Because the Absent Necessary Parties are Indispensable**

Where non-parties are necessary to an action and their joinder is not procedurally feasible, the court must evaluate whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *see also Guthrie Clinic, Ltd. v. Travelers Indem. Co. of Ill.,* 104 Fed. Appx. 218, 221 n. 4 (3d Cir. 2004). If the party is indispensable, the action ultimately cannot go forward. *See Bank of America Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.,* 844 F.2d 1050, 1053–54 (3d Cir. 1988); *see also Doe v. Matthews*, 420 F. Supp. 865, 870 (1976) (holding "the failure to join an indispensable party" requires dismissal of injunctive application).

In making this determination, Fed. R. Civ. P. 19(b) requires the Court to consider:

---

[1] The Court indicated in the Case management Conference held on February 29, 2024 that it "wouldn't entertain a dispositive motion in advance of March 18th." TR. 16:1-2. As failure to join necessary parties is a valid grounds for dismissal that directly relates to Defendants' opposition to entry of a preliminary injunction, we raise it here.

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

      (A) protective provisions in the judgment;
      (B) shaping the relief; or
      (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

[Fed. R. Civ. P. 19.]

Political parties and candidates are indispensable because their associational rights will be infringed if the requested relief is granted. This prejudice can be avoided by simply denying the request for injunctive relief and deciding the important constitutional issues in this case on a non-expedited basis. While a judgment rendered in *favor* of the Clerks on the motion for a preliminary injunction would be adequate to protect the political parties' interests, an *adverse* judgment would gravely affect the political parties' constitutional rights without any meaningful opportunity to oppose in a reasonably timely manner prior to its entry. Finally, no remedy could redress the harm that will result if a preliminary injunction is granted and then Defendants succeed on the merits after the election. This is particularly true of candidates, who may lose an election as result of the grant of a preliminary injunction that deprived them of associational rights without any opportunity to be heard. *See Democratic-Republican Org. of New Jersey*, 900 F. Supp. 2d at 453.

Accordingly, the Court should find that this action cannot move forward, and deny Plaintiffs' request for a preliminary injunction.  *See Bank of America Nat'l Trust & Sav. Ass'n*, 844 F.2d at 1053–54; Fed. R. Civ. P. 19.

## POINT II

## THE COURT SHOULD NOT GRANT PLAINTIFFS' REQUEST FOR THE EXTRAORDINARY REMEDY OF A PRELIMINARY INJUNCTION.

A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir.1993). A trial court's decision to issue a preliminary injunction is discretionary.  *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992).  In order to obtain the extraordinary relief of an injunction prior to trial, the movant carries the burden to establish a right thereto in light of the following factors: (1) that the movant is likely to succeed on the merits at trial; (2) the movant will suffer irreparable harm if preliminary relief is not granted; (3) that the balance of the hardships tips in the movant's favor; and (4) that the preliminary injunction is in the public interest. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citing *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994)); *Larami Ltd. v. Ohio Art Co.*, 270 F. Supp. 2d 555, 557 (D.N.J. 2003)).

"[W]hen the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980) (citation omitted).

Here, Plaintiffs seek to disrupt the status quo of New Jersey's election laws that have been in place for decades.  The Court should deny Plaintiffs request because any alleged harm to Plaintiffs is negated by their delay in bringing this action; the balance of hardships weighs decidedly in Defendants' favor; there is a strong, long-recognized public interest in protecting the

associational rights of political candidates and their parties; and they have not shown they are likely to succeed on the merits.  Each of these factors will be discussed in turn below.

     **i.**     **Plaintiffs' Allegations of Harm Are Undermined by Their Inexcusable Delay in Requesting Emergent Relief.**

Plaintiffs' cries of irreparable harm ring hallow, as their own inexcusable delay has created the claimed emergency, which they now seek an extraordinary judicial intervention to avoid.

While courts may presume the existence of irreparable harm if the movants can demonstrate a constitutional injury, *see Democratic-Republican Org. of New Jersey*, 900 F. Supp. 2d at 453, a plaintiff's delay in seeking a preliminary injunction is "an important factor bearing on the need for a preliminary injunction, particularly irreparable harm."  *Otsuka Pharm. Co. v. Torrent Pharm. Ltd., Inc.*, 99 F. Supp. 3d 461, 503 (D.N.J. 2015); *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2005) (generally noting that delay "negates the idea of irreparability"); *Hybritech Inc. v. Abbott Labs,* 849 F.2d 1446, 1457 (Fed. Cir. 1988) (noting that a "period of delay" constitutes "one factor to be considered by a district court in its analysis of irreparable harm"); *T.J. Smith & Nephew Ltd. v. Consol. Medical Equip. Corp.*, 821 F.2d 646, 648 (Fed. Cir. 1987) (finding that the plaintiff's delay in seeking an injunction negated any irreparable harm).

Here, Plaintiffs could have filed this Verified Complaint and Motion for Preliminary Injunction months ago, which could have greatly reduced the risk of error associated with making the kind of significant changes to every aspect of the administration of our elections that the U.S. Supreme Court cautioned against in *Purcell* and avoided any adverse impact to the integrity of our elections.  Instead, Plaintiffs delay has forced an expedited schedule that prejudices Defendants by depriving them of the ability to adequately litigate these constitutional issues of paramount public importance.

This Court should not countenance Plaintiffs' delay, but find any harm Plaintiffs allege will result from denial of their emergent motion is negated by their lack of urgency in bringing this litigation when their purported harm was apparent.

### ii.    The Balance of Equities Weighs Heavily Against Granting a Preliminary Injunction.

The balance of equities militates against the extraordinary remedy of a preliminary injunction.  The United States Supreme Court, in *Purcell v. Gonzalez*, 549 U.S. 1 (2006), held that federal district courts should not enjoin state election laws in the period close to an election because doing so is likely to create problems with the administration of elections that impact the voters.  *Purcell* modifies the traditional test for a stay by requiring the Court to consider the its impact on "institutional procedures" specific to the administration of elections and inherent risk of adversely impacting voters through untimely judicial intervention.  "As an election draws closer, that risk will increase."  *Id.* at 5.

The Court has repeatedly reiterated this standard—the "Purcell Principle"—applying it in numerous election cases since this "bedrock tenet of election law" was first announced.  *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022); *see Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.").  Rather, the "rules of the road" should be determined in advance of elections to avoid any unintended harms to the integrity of our elections.  *See Merrill*, 142 S. Ct. at 880.

The United States District of New Jersey has historically applied these principles in the face of untimely election challenges.  In *Democratic-Republican Org. of New Jersey v. Guadagno*, 900 F. Supp. 2d 447, 461 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012), this Court denied a request for injunctive relief regarding a candidate's placement on a ballot filed

approximately one week before the deadline to print mail-in ballots pursuant to N.J.S.A. 19:14-1. The court denied the plaintiffs' untimely request for relief, holding: "At this late state in the election process, any injunctive remedy ordered by this Court would dramatically upset ongoing ballot printing and distribution." *Democratic-Republican Org. of New Jersey*, 900 F. Supp. 2d at 461 (citing *Purcell*, 549 U.S. at 4).

In weighing the equities in an election challenge, District Courts in the Third Circuit consistently disfavor a plaintiffs' inexcusable delay in bringing a challenge and its potentially adverse impact, particularly on a national election as here. *See, e.g., Pub. Interest Legal Found. v. Boockvar*, 495 F. Supp. 3d 354, 361 (M.D. Pa. 2020); *Republican Party of Pa. v. Cortes*, 218 F.Supp. 3d 396, 405 (E.D. Pa. 2016) ("There was no need for this judicial fire drill and Plaintiffs offer no reasonable explanation or justification for the harried process they created.").

Here, Plaintiff Kim acknowledges that he has sought endorsements, the support of county political organizations, and bracketing within their county lines for months prior to filing his application for emergency relief. Verified Complaint, ¶ 148. Mr. Kim announced the launch of his campaign for nomination to the U.S. Senate in September 23, 2023. Verified Complaint, ¶ 144. First Lady Tammy Murphy ("First Lady Murphy") launched her primary election bid for the same seat on November 15, 2023. *See id.*, at ¶ 145 and n. 9. As Plaintiff Kim alleges, endorsements for First Lady Murphy by county political parties began immediately. *Id.* Yet, inexplicably, Plaintiffs waited over three months to file the present action to overturn New Jersey's entire election process, notwithstanding the potentially deleterious impact to the integrity of our elections as cautioned against by federal case law. *See, e.g.*, *Democratic-Republican Org. of New Jersey*, 900 F. Supp. 2d at 461, *aff'd*, 700 F.3d 130 (3d Cir. 2012); *Purcell*, 549 U.S. at 4; *Merrill*, 142 S. Ct. at 880.

Plaintiffs' lack of urgency in bringing this action for injunctive relief negates any purported harm to Plaintiffs. *See Otsuka Pharm. Co.*, 99 F. Supp. 3d at 503; *Pfizer, Inc.*, 429 F.3d at 1382.

Conversely, many candidates for political office in New Jersey will suffer irreparable harm if an injunction is granted. *Democratic-Republican Org. of New Jersey*, 900 F. Supp. 2d at 453 (holding the Court assumes that irreparable harm results from a constitutional injury resulting from loss of First Amendment freedoms). Precedent recognizes that the candidates have constitutionally protected associational rights, *Calif. Dem. Party*, 530 U.S. at 574; *Eu*, 489 U.S. at 214, which will be eviscerated if an injunction is entered. The harm to each of these candidates is at least as great as the harm to each Plaintiff in the present action, only there are many, many more of such candidates than are Plaintiffs. Should the Court determine that this matter may proceed in the absence of those candidates as argued against above, the harm to their recognized constitutional rights should be weighed in balancing the equities.

Most importantly, County Clerks are constitutional officers tasked with administering elections according to the duly enacted laws of New Jersey. The preservation of the integrity of the elections is at the heart of this function, of paramount concern. The voting machine vendor used by Somerset County, ES&S, has indicated that it is too far into the primary election cycle to accommodate Plaintiff's request for relief. *See* ECF Doc. No. 46. If an injunction is granted, even Herculean efforts by Defendants to comply will result in an unacceptable risk of error and jeopardize the integrity of the election.

Accordingly, the harm to the voters and public, the adverse impact an injunction will have on our election, and harm to the many candidates, political organizations, and their recognized

constitutional rights of association, all heavily outweigh any purported harm to Plaintiffs, which is negated by their lack of urgency, thus creating this prejudicial and unnecessary judicial fire drill.

### iii. The Public Interest Weighs Decidedly in Favor of Denying Plaintiffs Request for a Preliminary Injunction.

"It is well-settled that the State has an interest in regulating elections to ensure that voters are able to understand the ballot, and may do so by treating political party candidates differently than unaffiliated candidates." *Democratic-Republican Org. of New Jersey v. Guadagno*, 900 F. Supp. 2d 447, 456 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012); *Purcell*, 549 U.S. at 4 ("A State indisputably has a compelling interest in preserving the integrity of its election process.") (quoting *Eu*, 489 U.S. at 231).

Article I, Section 4, clause 1 of the U.S. Constitution grants states the right to prescribe "[t]he Times, Places and Manner of Holding Elections for Senators and Representatives," and the Supreme Court has held states have an equal power to regulate their own elections. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986) (quoting U.S. Const., Art I, § 4, cl. 1).

In *Quaremba v. Allan*, 67 N.J. 1 (1975), the New Jersey Supreme Court recognized the "public interest [in] permitting a grouping of candidates having common aims or principles and authorizing those candidates to have such fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the voting machine ballot."

There is thus a recognized public interest in: (1) allowing candidates and parties to signal to voters their cooperation and association so that voters may select those candidates with the greatest chance of victory in the general election, *see id.* and *Calif. Dem. Party*, 530 U.S. at 574; (2) allowing states to decide the manner in which their elections are held, *see* U.S. Const., Art I, §

4, cl. 1; *Tashjian*, 479 U.S. at 217; and *Quaremba*, 67 N.J. at 1; and (3) refraining from judicial intervention that would produce a risk of errors in the voting process that could compromise the integrity of the election and perception of its legitimacy, *Purcell*, 549 U.S. at 4.  There is no countervailing public interest if an injunction is granted, as the foregoing law makes clear.

Notably, this Court in *Conforti v. Hanlon* addressed a similar challenge to the present litigation and found:  "Plaintiffs' burdens and the State's interests are factual and may require discovery. Depending on further factual findings, the state's interests may be sufficiently compelling to pass muster under the relevant Constitutional tests."   *Conforti v. Hanlon*, CV2008267ZNQTJB, 2022 WL 1744774, at *17 (D.N.J. May 31, 2022).  Thus, as this Court in *Conforti* has acknowledged, the depth of the public interest at stake requires the development of facts through discovery, and no injunction should be granted without this benefit.

In the same decision, this Court acknowledged that "[t]he State's interests in providing a manageable and understandable ballot, as well as ensuring an orderly election process [we]re hampered by the fact that one-third of all Mercer County voters were disenfranchised because they voted for more than one candidate for the same office." *Id.* at *17.  This is precisely the type of voter confusion the Purcell Principle seeks to avoid, and demonstrates the public interest in preventing the invalidation of votes resulting from last-minute changes to ballots and the voter confusion and disenfranchisement that foreseeably results.  *See Purcell*, 549 U.S. at 5-6.

Accordingly, the public interest weighs decidedly against granting the extraordinary remedy of a preliminary injunction.

### iv.    Plaintiffs Have Not Demonstrated The Requisite Likelihood of Success on the Merits.

"If a court finds no likelihood of success on the merits, the inquiry ends and the injunction will be denied." *Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 185 (3d Cir. 2022).  While

"likelihood of success on the merits" does not mean "more likely than not," the Third Circuit has endorsed a sliding-scale approach to this inquiry, holding that: "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief," and vice versa. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017) (quoting *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009) (Easterbrook, C.J.)).

Here, because of the harm that will result to the integrity of our elections if a preliminary injunction is granted, the strong constitutional interests and compelling public interest that our courts have repeatedly recognized in candidates and their party's associational rights, and the invalidation of any harm to Plaintiffs by their delay, and the fact that the relief Plaintiffs will disrupt, rather than preserve the status quo, the Court should require Plaintiffs to show a high likelihood of success on the merits to support their request for relief.

The Court should find that Plaintiffs cannot demonstrate the likelihood of success on the merits required to support the drastic relief they seek on several grounds. First, legislative enactments enjoy a presumption of constitutionality, and Plaintiffs bear a heavy burden on the merits. *See State Farm Mut. Auto. Ins. Co.*, 124 N.J. at 45–46. Second, robust precedent from all levels of federal and state court support the exercise of associational rights reflected in N.J.S.A. 19:49-2. *See, e.g.*, *Calif. Dem. Party*, 530 U.S. at 574; *Eu*, 489 U.S. at 214; *Democratic-Republican Org. of New Jersey*, 900 F. Supp. 2d at 461; *Quaremba*, 67 N.J. at 1.

Regardless of whether Plaintiffs can demonstrate any such likelihood of success, nothing changes the fact that is not feasible for Defendants to comply with Plaintiffs request for relief. As Plaintiffs cannot establish any of the four factors necessary to meet their heavy burden of

upending the status quo through emergency judicial intervention, the Court should deny their request.

### POINT III

**THE COURT SHOULD FIND THE DOCTRINES OF LACHES BARS PLAINTIFFS' REQUEST FOR RELIEF BECAUSE OF THEIR   INEXCUSABLE DELAY IN BRINGING THIS ACTION AND SEVERE PREJUDICE TO DEFENDANTS.**

The elements of laches are "(1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting the defense." *Waddell v. Small Tube Products. Inc.*, 799 F.2d 69, 74 (3d Cir. 1986) (quoting *EEOC v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir.), *cert. dismissed*, 469 U.S. 925 (1984)).

As previously discussed, Plaintiffs inexcusably waited until the month before statutory election deadlines began to file this action, notwithstanding that they could have done so months earlier and avoided this judicial fire drill. *See* N.J.S.A. 19:23-14 (March 25, 2024 deadline to file nominating petitions with Clerk). As a result Plaintiffs' delay, Defendants are significantly prejudiced, having a very short time to litigate a significant constitutional challenge that flippantly jeopardizes the integrity of our elections. Moreover, Defendants have been deprived of the ability to obtain and present meaningful expert rebuttals to Plaintiffs purported proofs (let alone seek approval for the funds required to obtain such experts) due to the expedited nature of their self-created emergency. This Court should not countenance Plaintiffs' conduct, and find the Doctrine of Laches bars their extraordinary request for relief. *See Waddell*, 799 F.2d at 74.

Finally, we note that Plaintiffs' delay in bringing this action and the expedited nature of this motion has not only deprived Defendants of the ability to support their concerns with expert testimony and a robust factual record, it has also deprived the Court of benefitting from an equal presentation of the relevant facts and expert testimony. The public interest is not served by

-24-

rushing to judgment of these important issues, and nothing is preventing the Court from addressing them with the time and consideration they deserve.

Should the Court still be inclined to hold a hearing on Plaintiffs' motion for injunctive relief, Plaintiffs should be barred in equity from supporting their assertions with the benefit of expert testimony because their conduct has deprived Defendants and the Court of that benefit.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should deny Plaintiffs' Motion for a Preliminary Injunction.

**WILENTZ, GOLDMAN & SPITZER, P.A.**
Gordon J. Golum, Esq.
Richard K. Wille Jr., Esq.
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
*Attorneys for Defendant Steve Peter,*
*in his official capacity as Somerset County Clerk*

Dated: March 6, 2024

GORDON J. GOLUM, ESQ.