UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate; *et al.*,<br><br>    Plaintiffs,<br>v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk; *et al.*,<br><br>    Defendants. | Civ. Action. No.:<br>3:24-cv-1098-ZNQ-TJB<br><br>**CERTIFICATION OF DEFENDANT, CHRISTINE GIORDANO HANLON, IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

I, CHRISTINE GIORDANO HANLON, certify as follows:

1. I am the Monmouth County Clerk, a position I have held since 2015. In my capacity as Monmouth County Clerk, I am also the Clerk of Elections for the County of Monmouth, New Jersey (the "County"). Prior to becoming the County Clerk, I served as a Commissioner on the Monmouth County Board of Elections.

2. As the Clerk of Elections, I am responsible for the preparation of all ballots pertaining to most elections in the County. This includes machine, mail-in, provisional, emergency, federal and sample ballots.

SHN\762678.1

3. My office is also responsible for intake and processing of mail-in ballot applications, the issuance of mail-in ballots to voters via mail or hand delivery, and the receipt of candidate petitions for county offices.

4. There are two other County election offices with independent jurisdiction that have important roles in the planning and administration of elections in the County that have not been named in this litigation. The Superintendent of Elections/Commissioner of Registration (the "Superintendent") and the Board of Elections. The three offices work together to effectuate each election.

5. The Superintendent is responsible for voter registration, maintaining the voter lists, voting machines, and electronic poll books. The Board of Elections is responsible for counting mail in ballots, polling locations, poll workers and redistricting of election districts. These offices are responsible for procuring the voting machines, equipment, scanners and related software that will be utilized in an election. The County Clerk does not have jurisdiction over these decisions.

6. My elections staff consists of only six employees.

7. My office's entire budget is annually appropriated by the County Commissioners, which also manage the contracting and purchasing of equipment and supplies for my office.

8. In a primary election, the Republican and Democrat ballots are prepared separately. The design and layout of the ballot in a political party's primary election is governed by Title 19 of the New Jersey statutes, which dictates the filing of candidate petitions, bracketing of candidates, candidate slogans, the process for the ballot draw to determine the order of candidates, the information required to appear on the ballot and the organizational format of the ballot.

9. In Monmouth County, the 2024 primary election includes candidates for President, Delegates for President, United States Senate, United States Congress, County Commissioner, and municipal officials. This primary election also includes municipal political party or "county committee" representatives for each election district in the County, pursuant to the bylaws of the Monmouth County Democrat and Republican parties.

10. In Monmouth County, there are 53 municipalities with 474 election districts apportioned between approximately 497,000 registered voters. For the 2024 primary election, each political party is entitled to two county committee representatives per election district, which requires two separate ballots—one for Democrats and one for Republicans, necessitating the preparation of 948 separate ballots by my office.

11. In preparation for this year's primary election, mindful of the very tight statutory timeframes for the collection of information set forth in Title 19, my

office is currently in the process of gathering information from the municipal clerks from 53 municipalities as to what offices and contests will be included on the ballot. Based upon similar elections in the past, I anticipate that there will be over 2,000 candidate names to be placed on the primary election ballot this year.

12. Pursuant to *N.J.S.A.* 19:23-14, Republican and Democrat candidates must file petitions seeking their respective party's nomination no later than 71 days prior to the primary election, which is March 25, 2024. Municipal candidates submit petitions to the municipal clerks in their jurisdictions; county candidates submit petitions to the County Clerk; state and federal candidates submit petitions to the Secretary of State.

13. Pursuant to *N.J.S.A.* 19:23-18 and 19:49-2, candidates wishing to bracket with other candidates and use slogans to associate with one another must submit those requests within 48 hours after the March 25, 2024 petition filing deadline, which is March 27, 2024. At this time, my office determines which candidates are permitted to bracket by ascertaining whether they have received consent from the campaign managers of the jointly filed petition candidates (*i.e.*, the County Commissioner(s)) who file petitions with my office.

14. Pursuant to *N.J.S.A.* 19:23-18 and 19:49-2, any candidates can form a bracketed slate or line with a slogan of their choice (so long as it's not incorporated by someone else) by securing at least 100 signatures on a petition for a County

4

Commissioner candidate to form a slate with them. Nowhere in the statutory framework is this ability limited to just political party organizations.

15. According to *N.J.S.A.* 19:49-2, the ballot shall be arranged in "columns or horizontal rows" and candidates wishing to bracket with one another are placed in the same line.

16. Pursuant to *N.J.S.A.* 19:23-24, the deadline for my office to conduct the drawing to determine final ballot positions for all primary election candidates for each political party is 61 days before election day, which falls on April 4, 2024.

17. By this date, most if not all of the offices being contested and the initial candidate information has already been entered into spreadsheets and the elections management software's database, and the basic ballot layout has been designed so that my office can comply with the statutory deadline for printing of ballots, which is the very next day.

18. Because this year's primary election includes a U.S. Senate election, *N.J.S.A.* 19:23-26.1 applies and is harmonized with *N.J.S.A.* 19:49-2. *N.J.S.A.* 19:23-26.1 requires the U.S. Senate candidates for each party to be placed in the first column or row of the ballot. If a U.S. Senate candidate has bracketed with others, they are placed in the same column or row on the ballot. When determining which U.S. Senate candidate appears in the first column or row on the ballot, the names of the U.S. Senate candidate (along with any other candidates they have

bracketed with) are, pursuant to *N.J.S.A.* 19:23-24, placed in a box, shaken, and the names are randomly drawn one by one. The first name drawn is placed in the first column or row, and so on. Thereafter, the positions of any unbracketed candidates for offices other than U.S. Senate are determined by separate drawing if need be.

19. Pursuant to *N.J.S.A.* 19:14-1, the deadline for the preparation of primary election ballots for printing is 60 days before election day, which falls on April 5, 2024. This is the last possible day that any changes can be made to the ballot in order for the primary election to meet both federal and state deadlines for the finalizing of ballot layout and the mailing of mail-in ballots (which, in Monmouth County, due to the integrated elections management software system that is in place, impacts the voting machine programming and ballot design).

20. Accordingly, my office needs to design, program, print and mail 948 separately designed ballots containing more than 2,000 candidate names and slogans in a very short amount of time. This process requires coordination between my office, the Superintendent, the Board of Elections, ES&S and our ballot printer, Reliance Graphics, which is an outside contractor.

21. The same unified elections management software used by my office is also utilized to program the County's electronic voting machines, which are maintained by the Superintendent, and to program the optical scanners used to canvass paper ballots, which are maintained by the Board of Elections.

6

SHN\762678.1

22. All ballots that are designed and programmed for the mail-in ballots in the elections management software directly affects the programming for the machines under the custody and control of the Superintendent and Board of Elections.

23. In 2021, pursuant to a new state law requiring early in person voting, the Superintendent invested in an entirely new fleet of voting machines, and the Board of Elections invested in new ballot scanners to function in conjunction with the County's elections management software. These decisions required my office to utilize the same elections management software for the preparation of ballots and tabulation of election results in a timely fashion.

24. All of the equipment and technology is integrated into one system. The voting machines are ES&S ExpressVote XL machines, which have only been designed, coded and certified by the Secretary of State to conform with existing law. The ES&S ballot scanners purchased and utilized by the Board of Elections have also been designed, coded and certified by the State. All of this equipment is compatible and connected to an ES&S software program called Electionware, which is the main software system utilized to create the database for all of the information for a particular election and ultimately, the tabulation of results.

25. My staff and my ballot printer have been extensively trained in the operation of the ES&S election system and software in the current format since

2021. Any changes to these machines, software, policies and procedures would require significant training.

26. I am not personally aware of the ES&S Express Vote XL machines or accompanying elections management software being used with an office block balloting format in any county in the state.

27. Plaintiff's expert claims that it might be "possible" for the ES&S ExpressVote XL to support office block balloting; however, even if it were possible, I have seen no evidence as to how it would be accomplished or how long it would take to accomplish those changes. In my experience, it would be costly and unwise to attempt to re-code the ES&S machines and then reprogram the election management software for 948 separate ballots containing more than 2,000 candidate names and slogans in the remaining time provided for the primary election.

28. Pursuant to *N.J.S.A.* 19:63-9 and the Uniformed and Overseas Citizens Absentee Voting Act (52 *U.S.C.* 20302), the deadline for mailing mail-in ballots for the primary election is 45 days before election day, which falls on April 20, 2024.

29. The statutory time constraints imposed upon my office (and others) to complete these tasks in the normal course are extraordinary and have become increasingly difficult with the increased utilization and prevalence of voting by

8

mail, the enactment of early voting, and the recent state requirement that mail in ballot and early in person votes be reported by election district. These tasks are particularly difficult in Presidential election years when turnout is extraordinarily high and county committee races are also taking place, which means the volume of individual ballots and candidates is at its highest.

30. The risks of making significant changes in such a short amount of time with software and equipment that have not previously been used, tested or certified for office block balloting, could greatly compromise the integrity of a number of highly competitive primary elections at a time when the integrity of the election process is already under extreme scrutiny.

31. Primary election voters are accustomed to New Jersey's ballot design, which has been utilized for decades. Significant voter education would be required to make primary election voters aware of any new proposed changes. Based on my personal experience, especially during presidential election cycles during which turnout is highest, any abrupt changes to New Jersey's longstanding primary election ballot structure would likely cause significant voter confusion in the absence of a comprehensive voter education campaign.

32. For these reasons, it is practically impossible and imprudent at this time to re-code untested and uncertified hardware and software, then design, program, print and mail ballots in time for the 2024 primary election. Any effort to

implement changes at this late stage of the process would create an enormous strain on already strained resources and impose a significant risk to the integrity of the primary election process.

**I HEREBY CERTIFY** that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____
**CHRISTINE G. HANLON**
Monmouth County Clerk

Date: 03/06/2024