**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor, Camden County Democratic Committee*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br><br>   Defendants. | Case No.: 3:24-cv-01098-ZNQ-TJB |

**REPLY BRIEF ON BEHALF OF INTERVENOR, CAMDEN COUNTY DEMOCRATIC COMMITTEE, IN SUPPORT OF MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24.**

**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor, Camden County Democratic Committee*

7O67798

## INTRODUCTION

This case concerns significant issues regarding the constitutionality of New Jersey's primary bracketing and ballot placement system—namely, the organization, configuration, and placement of ballots utilized in New Jersey's primary elections. Camden County Democratic Committee ("CCDC") is the statutory Democratic Party Organization for Camden County, and promotes and endorses Democrat candidates nominated in New Jersey primary elections. Consistent with state law and well-established constitutional precedent, CCDC has an interest in associating with, and endorsing, Democratic candidates for office, and advancing its shared ideologies and preferences with Democratic voters in New Jersey's primary elections. Plaintiffs do not dispute these facts.

Nevertheless, Plaintiffs argue that intervention by CCDC is inappropriate in this matter and seek to promote their constitutional rights while ignoring the constitutionally-protected associational rights of other organizations such as CCDC. First, Plaintiffs incorrectly state that CCDC has conceded that New Jersey's ballot design laws and practices confer certain advantages to candidates. CCDC has made no such concession. Plaintiffs' blatant misrepresentations of CCDC's arguments cannot be condoned. Second, Plaintiffs do not dispute that CCDC has a sufficient interest in the underlying litigation or that there is a threat that CCDC's interest will be impaired or affected by the disposition of the underlying action. Instead,

Plaintiffs argue that CCDC's interests are already adequately represented by the parties in this action. However, no other party has asserted any interest in how the bracketing structure and ballot placement system affects a political organization's ability to associate with other candidates in elections.

CCDC has an identifiable, significantly protectable legal interest in its freedom to associate with and endorse Democratic candidates as afforded by the First Amendment. Any disposition by this Court, without consideration of CCDC's interest, would impair CCDC's ability to exercise these freedoms under the First Amendment, which are not yet represented by any existing party to this action. Because the relief sought by Plaintiffs implicates CCDC's well-established constitutional rights, CCDC respectfully submits that its Motion to Intervene should be granted.

## LEGAL ARGUMENT

**I.  CCDC HAS NOT MADE ANY CONCESSION NOR ASSERTED ANY INCONSISTENT POSITION IN ANY OTHER PROCEEDINGS.  THUS, JUDICIAL ESTOPPEL IS INAPPLICABLE.**

Plaintiffs misrepresent CCDC's contentions and assert that CCDC has "conceded the very point Plaintiffs are making" when no such concession occurred. *See* ECF No. 77, at 2. Plaintiffs argue that CCDC has conceded "that the advantages that come from the weight of the line, bracketing, and primacy, admittedly confer real benefits upon the CCDC and its endorsees." *Id.* However, Plaintiffs

2

misconstrue CCDC's arguments as CCDC **never** made **any** concession. Plaintiffs seek to invalidate New Jersey's primary election bracketing and ballot placement system. CCDC is not conceding that any advantage is provided to CCDC based upon this system. CCDC is simply stating that the ability to bracket with other candidates that share similar ideologies as CCDC is a constitutionally-protected right that cannot be infringed upon based upon Plaintiffs' unsupported assumption that some "advantages" or "benefits" are provided to candidates who are placed in first position on the ballot. At no point in time did CCDC "concede" let alone contend that any such "advantage" is provided to CCDC. Plaintiffs misrepresentations to the contrary must be rejected.

The doctrine of judicial estoppel has absolutely no application to this litigation. "Judicial estoppel may be imposed only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001).

Here, judicial estoppel is inapplicable to this litigation as CCDC has not asserted any position that is irreconcilably inconsistent with one asserted in a prior

3

proceeding. Plaintiffs' arguments are premised upon the incorrect assumption that CCDC has, in some way, conceded that "advantages" and "benefits" are conferred from "the weight of the line, bracketing, and primacy." *See* ECF No. 77, at 2. CCDC has made no such concession. CCDC's position in this litigation and in the *Conforti* matter is consistent and remains unchanged: any finding deeming unconstitutional New Jersey's primary election bracketing and ballot position and placement system would effectively abrogate *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214 (1989) and CCDC's right to "identify the people who constitute the association and to select a standard bearer who best represents the party's ideologies and preferences." CCDC has not deviated from this position and, therefore, judicial estoppel has no bearing on this case. This Court should find, as it did in *Conforti*, that CCDC's interests are separate and distinct from the interests of the existing parties and grant intervention.

Plaintiffs' argument that CCDC "compels the county clerk to design the ballot" is nonsensical. CCDC has no role in designing the ballots. "The position [of the candidates and bracketed groups on the primary-election ballots] shall be determined by the county clerks." *Schundler v. Donovan*, 377 N.J. Super. 339, 343 (App. Div. 2005) (citing *N.J.S.A.* 19:23-24). "The clerk has the responsibility to deal with petitions for the elections and to set up the ballot arrangements and array." *Schundler*, 377 N.J. Super. at 343 (citing *Quaremba v. Allan*, 128 N.J. Super. 570

(App. Div. 1974)). As such, "unless specifically directed by statute as to a procedure, the clerk has discretion in carrying out this responsibility." *Ibid.* The ballot design and placement fall squarely within the discretion of the county clerks as provided by statute and CCDC has no role in ballot arrangements.

Plaintiffs argue that "CCDC asserted [in *Conforti*], and again asserts here, that it has interests in and derives advantages from the ongoing existence of New Jersey's primary ballot design laws and practices." *See* ECF No. 77, at 1. As stated, at no point in time did CCDC contend that it receives "advantages" from the current ballot design laws and practices. Rather, CCDC argues, as it did in *Conforti*, that any ruling invalidating New Jersey's primary election system would necessarily impair CCDC's freedom to associate and endorse political candidates with similar ideologies. Such an argument to the contrary is based upon Plaintiffs own illusions. As CCDC argued, which Plaintiffs wholly ignore, in Camden County in a United States Senatorial or New Jersey Gubernatorial election year, all United States Senate Candidates or New Jersey Gubernatorial candidates are eligible for and have participated in the draw to appear in first position on the ballot. This holds true regardless of whether the candidates bracket or choose not to bracket with candidates. Thus, whatever "advantages" or "benefits" that Plaintiffs seem to believe exist if a candidate is placed in first position on the ballot, Plaintiffs are eligible to receive the exact same "advantages" or "benefits" as any other United

5

States Senate or New Jersey Gubernatorial candidates in Camden County.

## II. CCDC SHOULD BE PERMITTED TO INTERVENE AS OF RIGHT PURSUANT TO FED.R.CIV.P. 24(a)(2).

Plaintiffs do not dispute that CCDC's application for intervention is timely. Nor do Plaintiffs dispute that CCDC has a sufficient interest in the underlying litigation or that there is a threat that CCDC's interest will be impaired or affected by the disposition of the underlying action. Instead, Plaintiffs argue that there are existing parties that adequately represent "any interests as they relate to whether the state may confer ballot advantages beyond endorsements or slogans." *See* ECF No. 77, at 6. However, Plaintiffs' argument is misguided and clearly wrong.

CCDC has not asserted any interest regarding whether the state may confer ballot advantages or whether ballot advantages exist in the first instance. As set forth above, at no point in time has CCDC ever advanced any position that there are advantages or benefits conferred to candidates that receive first position on the ballot. CCDC's interest is, and has been, clearly defined. CCDC has an identifiable, significantly protectable legal interest in its freedom to associate with Democratic candidates for office as afforded by the First Amendment. If the Court were to find that New Jersey's primary election bracketing and ballot position and placement system is unconstitutional, this would effectively abrogate *Eu v. S.F. Cty. Democratic Cent. Comm.* and CCDC's right to "identify the people who constitute the association and to select a standard bearer who best represents the party's

6

ideologies and preferences." *Eu*, 489 U.S. at 224.

CCDC's interests are not adequately represented by any of the existing parties in this litigation. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

Plaintiffs argue that the "governmental interests" are more than adequately advanced by the 19 participating Defendant County Clerks or by the Attorney General Office's if it chose to enter this action. *See* ECF No. 77, at 6. However, CCDC does not share any interests with that of the County Clerks or the Attorney General. The County Clerks have an interest in how the application of New Jersey's election laws affects their administration and facilitating of elections. The Attorney General, if it joins this litigation, has an interest in upholding the constitutionality of the challenged election laws and the integrity of the electoral process. None of the currently existing parties have advanced an interest in how the implementation of New Jersey's election laws, including its bracketing structure and ballot placement, impacts a political organization's ability to associate with and endorse Democratic candidates for office or advance their shared ideologies and preferences with Democratic voters in elections.

Interestingly, several other parties in this litigation have acknowledged that the interests asserted by CCDC as a political party organization are not adequately represented in this action by seeking to dismiss Plaintiffs' Verified Complaint and Application for Injunctive Relief for failure to join indispensable parties, such as organizations like CCDC, or have argued that a finding in Plaintiffs' favor would invalidate rights, such as CCDC's, to associate with political candidates and organizations. *See* ECF Nos. 50, 51, 53, 57, 60, 61, 63. It is clear that CCDC's associational rights as a political party organization are not adequately represented by any current party in this litigation. Thus, intervention as of right should be granted.

### III. CCDC SHOULD BE PERMITTED TO INTERVENE PERMISSIVELY

Plaintiffs argue that Federal Rule of Civil Procedure 24 provides for permissive intervention unless intervention would unduly delay or prejudice the adjudication of the original parties' rights. *See* ECF No. 77, at 5. Plaintiffs oppose permissive intervention solely upon the contention that CCDC has asserted "illusory interests" to "gain access but then turn around to be denied upon that grant of access," and that intervention will unduly delay and potentially prejudice adjudication. *Id.* at 6. However, as set forth at length above, CCDC's interests are well-defined and grounded in precedent. In *Eu*, the Supreme Court specifically found that

> [b]arring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association. It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments . . . Freedom of association means not only that an individual voter has a right to associate with the political party of her choice . . . , but also that a political party has a right to "identify the people who constitute the association, . . . and to select a standard bearer who best represents the party's ideologies and preferences."

*Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989) (internal citations omitted).

Here, Plaintiffs' challenge directly implicates CCDC's right to associate with and endorse Democratic candidates in primary elections as afforded by the First Amendment and recognized in *Eu*. A finding that the election system, bracketing structure, and ballot placement is unconstitutional would necessarily impact and impair a political organization, such as CCDC's, right to associate with and endorse, political candidates, and advance its ideologies and preferences, abrogating *Eu*. Further, intervention will not unduly delay or prejudice the adjudication of this matter as no substantive proceedings have yet occurred.

Moreover, CCDC has a claim or defense that shares with the main action a common question of law or fact – namely, CCDC's ability to bracket on the ballot and associate with candidates that share similar ideologies and preferences with CCDC, which is rooted in CCDC's First Amendment freedoms of association. This question of law is common to the issues raised in this litigation, and CCDC's interest

is not identical to the interest of any existing party in this case. Therefore, it is appropriate for the Court to exercise its broad discretion to permit CCDC to intervene in this action.

## IV. PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DENIED

Plaintiffs' application is predicated upon the notion that embedded in the freedom to associate is the freedom not to associate and Plaintiffs have the freedom not to bracket with candidates that Plaintiffs believe share dissimilar views as Plaintiffs. However, granting Plaintiffs their requested relief will block the rights of political organizations, such as CCDC, to bracket with and "identify the people who constitute the association, . . . and to select a standard bearer who best represents the party's ideologies and preferences." *Eu,* 489 U.S. at 224.

The fact remains that the bracketing and ballot placement system as designed does not infringe upon any of Plaintiffs' constitutional rights. The system does not restrict Plaintiffs' access to the ballot. It does not deny voters the right to vote for Plaintiffs if they so choose. Nor does it impair Plaintiffs' ability to not associate with candidates or political organizations that do not share the same views as Plaintiffs. At bottom, Plaintiffs' issue lies with the government, not CCDC, and the alleged burdens on Plaintiffs' purported constitutional rights when balanced against the legitimate interests advanced by the government. The bracketing and ballot placement system as applied in Camden County in United States Senatorial and New

Jersey Gubernatorial elections affords Plaintiffs the exact same opportunities to be appear in first position on the ballot as any other candidate regardless of whether they bracket or choose not to bracket with other candidates. There is simply no justification to upend New Jersey's long-standing electoral system and uphold the unburdened constitutional rights of Plaintiffs to the detriment of the constitutionally-protected associational rights of CCDC.

## CONCLUSION

For these reasons, Intervenor Camden County Democratic Committee respectfully requests that its instant Motion to Intervene be granted.

Respectfully submitted,

**BROWN & CONNERY, LLP**
Attorneys for Intervenor, Camden County Democratic Committee

Dated: March 12, 2024

*/s/ William M. Tambussi*
William M. Tambussi
Alyssa I. Lott

11