# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al., | Civ. No. 24-1098 (ZNQ) (TJB) |
| Plaintiffs, |   |
| v. |   |
| CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al., |   |
| Defendants. |   |

**BRIEF IN SUPPORT OF MOTION OF ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND, AAPI NEW JERSEY, AND ASIAN AMERICANS ADVANCING JUSTICE | AAJC TO APPEAR AS *AMICI CURIAE***

Niyati Shah (NJ Bar No. 026622005)
Noah Baron*
**Asian Americans Advancing Justice | AAJC**
1620 L Street NW, Suite 1050,
Washington, DC 20036
202-868-0396
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org

Jerry Vattamala*
Patrick Stegemoeller*
Ronak Patel*
**Asian American Legal Defense & Education Fund**
99 Hudson St., 12th Fl.
New York, NY 10013
212-966-5932
rpatel@aaldef.org

\* Pro hac vice application pending

*Attorneys for Proposed Amici Curiae
Asian American Legal Defense and Education Fund,
AAPI New Jersey, and Asian Americans Advancing Justice | AAJC*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT ...........................................................................................................3

      A.    *Amici* Possess A Strong Interest in the Adjudication of Issues Implicating the Voting and Democratic Rights of Asian Americans ...................................................................................... 4

      B.    *Amici*'s Participation Would Assist the Court By Providing Relevant Analysis, Context, and Data ...................................... 6

      C.    *Amici*'s Proposed Brief Is Timely ............................................ 8

      D.    Defendants Have Not Offered Any Basis to Deny *Amici*'s Motion ........................................................................................ 9

CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AANHPI for Equity v. Hobbs*,
 No. 22-cv-1381 (D. Ariz. filed Aug. 16, 2022) .................................................... 5

*Acra Turf Club, LLC v. Zanzuccki*,
 No. 12-2775 MAS, 2014 WL 5465870 (D.N.J. Oct. 28, 2014) .......................... 3

*All. of South Asian Am. Labor v. Bd. of Elections in the City of New
 York*, No. 1:13- cv-03732 (E.D.N.Y. July 2, 2013) ............................................... 5

*Asian Americans Advancing Justice-Atlanta v. Raffensperger*,
 No. 21-cv-1333 (N.D. Ga. filed Apr. 1, 2021) ..................................................... 6

*Ass'n of N.J. Rifle & Pistols Clubs, Inc. v. Grewal*,
 No. 18-cv-10507, ECF Nos. 41, 42, 187 (D.N.J. filed July 10, 2018
 and Nov. 14, 2023) ................................................................................................ 3

*Bernard v. Cosby*,
 No. 21-cv-18566, 2022 WL 3273877 (D.N.J. Aug. 11, 2022) ............................ 8

*Chinatown Voter Educ. All. v. Ravitz*,
 No. 1:06-cv-0913 (S.D.N.Y. Feb. 6, 2006) .......................................................... 5

*Crawford v. Marion Cnty. Election Bd.*,
 553 U.S. 181 (2008) ............................................................................................... 7

*Detroit Action v. City of Hamtramck*,
 No. 2:21-cv-11315 (E.D. Mich. June 3, 2021) .................................................... 5

*Diaz v. Silver*,
 978 F. Supp. 96 (E.D.N.Y. 1997) ......................................................................... 5

*Favors v. Cuomo*,
 881 F. Supp. 2d 356 (E.D.N.Y. 2012) ................................................................. 5

*Jama v. I.N.S.*,
 334 F. Supp. 2d 662 (D.N.J. 2004) ...................................................................... 3

**Page(s)**

*Jenkins v. Manning*,
   116 F.3d 685 (3d Cir. 1997) ...............................................................................7

*La Union Del Pueblo Entero v. Abbott*,
   5:21-cv-00844-XR (W.D. Tex. Sept. 30, 2021) ....................................................5

*LULAC v. Abbott*,
   3:21-cv-00259-DCG-JES-JVB (W.D. Tex. Nov. 16, 2021) ................................4

*N.Y. Cmtys. for Change v. Cnty. of Nassau*,
   No. 602316/2024 (Nassau Cnty. Super. Ct., Feb. 7, 2024) ..................................4

*National Shooting Sports Foundation, Inc. v. Platkin*,
   No. 22-cv-6646 (ZNQ), ECF No. 14 (D.N.J. filed Dec. 28, 2022) .....................3

*Neonatology Assocs., P.A. v. C.I.R.*,
   293 F.3d 128 (3d Cir. 2002) ........................................................................3, 8, 9

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ................................................................................4

*Petteway v. Galveston County*,
   No. 23-40582 (5th Cir Feb. 22, 2024) ..................................................................4

*Smith v. Chrysler Fin. Co.*,
   No. 00-cv-6003, 2003 WL 328719 (D.N.J. Jan. 15, 2003) ..................................9

*United States v. Alkaabi*,
   223 F. Supp. 2d 583 (D.N.J. 2002) ...................................................................3, 9

*United States v. Farber*,
   No. CIV.A. 06-2683 (FLW), 2006 WL 2417272
   (D.N.J. Aug. 21, 2006) .........................................................................................3

*United States v. Gotti*,
   755 F. Supp. 1157 (E.D.N.Y. 1991) .....................................................................9

*United States v. Lowson*,
   No. CRIM. 10-114 KSH, 2010 WL 9549498
   (D.N.J. Oct. 12, 2010) ..........................................................................................3

*Waste Mgmt. of Penn., Inc. v. City of York*,
   162 F.R.D. 34 (M.D. Pa. 1995) ............................................................................9

**Page(s)**

**Rules**

Fed. R. App. P. 29 ...................................................................................................3, 8, 9

L. Civ. R. 7.2(b) ..............................................................................................................8

**Other Authorities**

AAPI Data, State of Asian Americans, Native Hawaiians, and
 Pacific Islanders in the United States 102–03 (2022),
 https://aapidata.com/wp-content/uploads/2022/06/State-AANHPIs-
 National-June2022.pdf........................................................................................7

Coleen O'Dea, *Will the New Legislature Be Any More Diverse Than
 the Last?*, NJ SPOTLIGHT NEWS (Jan. 9, 2024),
 https://www.njspotlightnews.org/2024/01/how-diverse-is-njs-221-
 legislature ............................................................................................................7

The proposed *amici* ("*Amici*")—Asian American Legal Defense and Education Fund ("AALDEF"), AAPI New Jersey, and Asian Americans Advancing Justice | AAJC ("Advancing Justice-AAJC")—are a coalition of nonprofit, nonpartisan organizations devoted to educating and advocating for the rights of Asian Americans, including on issues affecting Asian Americans' voting and democratic rights. This lawsuit implicates *Amici*'s core missions by challenging an entrenched impediment to Asian Americans' ability to vote for candidates of their choosing and to run for elected office in New Jersey. *Amici* seek leave to file an *amici curiae* brief, attached as **Exhibit 1**, in support of Plaintiffs' motion for a preliminary injunction.

*Amici*'s proposed brief explains that the impediment that is the focus of this lawsuit—confusing, counterintuitive "county line" ballot designs (the "Challenged Ballot Designs")—imposes twin barriers to Asian American democratic participation. At the ballot box, Asian American voters are disproportionately disadvantaged by the Challenged Ballot Designs because those designs make it difficult for new voters and limited English proficient ("LEP") voters—groups overrepresented in the Asian American community—to understand the ballot and thus vote for the candidates of their choosing. At the same time, the Challenged Ballot Designs impede Asian American candidates from seeking and winning elected office because they allow county party leaders—who are

overwhelmingly white—to confer a powerful and unfair advantage to "insider" candidates—who are also overwhelmingly white—while relegating "outsider" candidates to the corners of the ballot known as "ballot Siberia."

The net effect of these barriers is that Asian Americans have been unable to achieve anything approaching proportional representation in New Jersey elected offices at all levels. *Amici*'s proposed brief provides the Court with statistics, analyses, and additional anecdotal and reported facts demonstrating Asian Americans' significant underrepresentation in elected office in New Jersey—for example, by a recent measure, three percent of New Jersey's elected office holders are Asian American, while about eleven percent of the State's population identifies that way.

*Amici* respectfully submit that their proposed brief—which addresses matters as to which *amici* possess special interest and expertise—would be useful and relevant to the Court's adjudication of Plaintiffs' motion for a preliminary injunction. For these reasons and those discussed further below, *amici* respectfully request that the Court grant this Motion for Leave to Appear as *Amici Curiae* and accept the accompanying brief for filing.[1]

---

[1] *Amici* contacted counsel for the parties to seek consent for this motion. Plaintiffs' counsel consented; counsel for certain Defendants declined to consent and counsel for other Defendants did not respond. *See* Declaration of Niyati Shah ("Shah Decl.") ¶¶ 3-7 & Ex. 1. As discussed below, to the extent Defendants articulated a

## ARGUMENT

District courts have inherent power and "broad discretion" to grant amicus status. *United States v. Alkaabi*, 223 F. Supp. 2d 583, 592 (D.N.J. 2002). Because there is no district court rule governing the appearance of *amici*, this Court has been guided by the requirements of Federal Rule of Appellate Procedure 29. *See Alkaabi*, 223 F. Supp. 2d at 592; *Acra Turf Club, LLC v. Zanzuccki*, No. 12-2775 MAS, 2014 WL 5465870, at *1 (D.N.J. Oct. 28, 2014). As the Third Circuit has explained, the crucial factors are whether the proposed *amici* have "a sufficient 'interest' in the case" and whether their proposed brief will be helpful and relevant. *Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128. 129 (3d Cir. 2002) (quoting Fed. R. App. P. 29(b)). These criteria should be "broadly interpreted" and, when in doubt, "it is preferable to err on the side of granting leave." *Id.* at 133.[2]

*Amici*'s proposed brief meets these criteria.

---

basis for their non-consent, their reasons appeared to be related to the merits of the lawsuit, not the factors relevant to a motion for leave in the Third Circuit.

[2] *Amicus* briefs are routinely accepted for filing in this District. *See, e.g.*, *National Shooting Sports Foundation, Inc. v. Platkin*, No. 22-cv-6646 (ZNQ), ECF No. 14 (D.N.J. filed Dec. 28, 2022); *Ass'n of N.J. Rifle & Pistols Clubs, Inc. v. Grewal*, No. 18-cv-10507, ECF Nos. 41, 42, 187 (D.N.J. filed July 10, 2018 and Nov. 14, 2023); *Acra Turf Club*, 2014 WL 5465870, at *1; *United States v. Lowson*, No. CRIM. 10-114 KSH, 2010 WL 9549498, at *1 (D.N.J. Oct. 12, 2010); *United States v. Farber*, No. CIV.A. 06-2683 (FLW), 2006 WL 2417272, at *1 (D.N.J. Aug. 21, 2006); *Jama v. I.N.S.*, 334 F. Supp. 2d 662, 673 (D.N.J. 2004); *Alkaabi*, 223 F. Supp. 2d at 592.

### A. *Amici* Possess A Strong Interest in the Adjudication of Issues Implicating the Voting and Democratic Rights of Asian Americans

First, *Amici* possess a particular and specific interest in the case. As set forth in the proposed brief, *Amici* are organizations focused on studying, educating, and advocating matters affecting Asian Americans, with a particular focus on Asian Americans' voting and democratic rights. Furthermore, *Amici* AALDEF and Advancing Justice-AAJC routinely litigate, including as *amici*, cases that implicate the ability of Asian American communities to elect candidates of their choice. Their litigation advocacy includes, by way of example:

- *Petteway v. Galveston County*, No. 23-40582 (5th Cir Feb. 22, 2024) (appearing as amici, arguing that the text, legislative history, and purpose of Section 2 of the Voting Rights Act (VRA) all support coalition claims by minority voters who suffer common racial discrimination, even if they do not share a common racial identity);

- *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017) (challenging a Texas statute that limited voter access to assistors of choice under Section 208 of the Voting Rights Act);

- *N.Y. Cmtys. for Change v. Cnty. of Nassau*, No. 602316/2024 (Nassau Cnty. Super. Ct., Feb. 7, 2024) (challenging Nassau County's legislative map for impermissibly diluting the ability of minority voters to elect candidates of choice and influence the outcome of elections);

- *LULAC v. Abbott*, 3:21-cv-00259-DCG-JES-JVB (W.D. Tex. Nov. 16, 2021) (challenging Texas's legislative maps for illegally diluting the voting strength of minority voters in violation of Section 2 of the VRA, and the 14th and 15th Amendments of the U.S. Constitution);

4

- *La Union Del Pueblo Entero v. Abbott*, 5:21-cv-00844-XR (W.D. Tex. Sept. 30, 2021) (challenging a Texas election law for illegally restricting, among other things, voter assistance and access to vote by mail ballots and registration materials);

- *Detroit Action v. City of Hamtramck*, No. 2:21-cv-11315 (E.D. Mich. June 3, 2021) (seeking enforcement of Section 203 of the VRA in Hamtramck, Michigan, a covered jurisdiction that was failing to provide adequate language access to LEP voters);

- *All. of South Asian Am. Labor v. Bd. of Elections in the City of New York*, No. 1:13- cv-03732 (E.D.N.Y. July 2, 2013) (seeking enforcement of Section 203 of the VRA in Queens, New York, a covered jurisdiction that was failing to provide adequate language access to LEP voters);

- *Favors v. Cuomo*, 881 F. Supp. 2d 356 (E.D.N.Y. 2012) (challenging New York State's legislative maps for violating one person – one vote equal protections under the 14th Amendment in New York City and Downstate, where most people of color in New York State reside);

- *Chinatown Voter Educ. All. v. Ravitz*, No. 1:06-cv-0913 (S.D.N.Y. Feb. 6, 2006) (alleging violations of Section 203 of the VRA for failure to provide Chinese and Korean language assistance in New York City);

- *Diaz v. Silver*, 978 F. Supp. 96 (E.D.N.Y. 1997) (intervened to defend New York State's congressional map and successfully argue that the Asian American community in Manhattan's Chinatown and Brooklyn's Sunset Park were one community of interest, and should remain in one congressional district);

- *AANHPI for Equity v. Hobbs*, No. 22-cv-1381 (D. Ariz. filed Aug. 16, 2022) (challenging discriminatory Arizona voting laws disproportionately affecting Asian American, Native Hawaiian, and Pacific Islander communities);

- *Asian Americans Advancing Justice-Atlanta v. Raffensperger*, No. 21-cv-1333 (N.D. Ga. filed Apr. 1, 2021) (challenging

5

>Georgia voter suppression law restricting voting methods disproportionately used by Asian American and Pacific Islander voters).

As described in detail in *Amici*'s proposed brief, the Challenged Ballot Designs at issue in this case strike at *Amici*'s core missions because the ballot designs impair Asian Americans' voting and democratic rights, both at the ballot box and in elected office. *Amici*'s proposed brief also provides data that explains why Asian American voters are disproportionately harmed by the confusing and non-intuitive Challenged Ballot Designs. Among other reasons, Asian Americans are overrepresented among new voters, naturalized voters, and LEP voters, and many come from countries without strong democratic traditions. As such, they are particularly vulnerable to the confusion and ballot error that the Challenged Ballot Designs cause.

    **B.** ***Amici*'s Participation Would Assist the Court By Providing Relevant Analysis, Context, and Data**

*Amici*'s participation in this case would assist the Court by providing relevant context and data regarding Asian Americans' demographic electoral circumstances in New Jersey. These circumstances bear directly on the issues in the litigation, because they demonstrate that the status quo—including the Challenged Ballot Designs—have fostered a situation in which Asian Americans are significantly underrepresented relative to their population in the State.

Courts have frequently noted that proportionality of representation is an important measure of whether an electoral system treats minority groups fairly. *See Jenkins v. Manning*, 116 F.3d 685, 692 (3d Cir. 1997) (noting that "proportionality of representation, or the lack thereof" is "relevant" but "not dispositive" in a claim under Section 2 of the Voting Rights Act); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202 (2008) (noting relevance of disparate impact in *Anderson-Burdick* analysis).

The proposed *Amici* brief provides data regarding the extent of Asian Americans' underrepresentation in elected positions in New Jersey. It also sets this data against recent demographic trends to explain that while the Asian American population is New Jersey's fastest growing demographic,[3] there is no definitive trend of increased elected representation.[4]

Likewise, the proposed *Amici* brief also provides information and context—drawn from *Amici*'s experience working with the Asian American community in New Jersey—explaining why and how the Challenged Ballot Designs contribute to underrepresentation by preventing Asian Americans from

---

[3] AAPI DATA, STATE OF ASIAN AMERICANS, NATIVE HAWAIIANS, AND PACIFIC ISLANDERS IN THE UNITED STATES 102–03 (2022), https://aapidata.com/wp-content/uploads/2022/06/State-AANHPIs-National-June2022.pdf.

[4] Coleen O'Dea, *Will the New Legislature Be Any More Diverse Than the Last?*, NJ SPOTLIGHT NEWS (Jan. 9, 2024), https://www.njspotlightnews.org/2024/01/how-diverse-is-njs-221-legislature.

7

voting for candidates of their choice. This context includes both data and case studies of Asian American voters and candidates in New Jersey. This is information and context that *Amici* are uniquely situated to provide given their focused areas of study and their relationships with Asian American communities in New Jersey and elsewhere. *See Neonatology Assocs.*, 293 F.3d at 132 ("Some friends of the court are entities with particular expertise not possessed by any party to the case.") (cleaned up).

### C. *Amici*'s Proposed Brief Is Timely

*Amici*'s proposed brief is timely. *Amici* understand that at the February 29, 2024 conference in this matter, the Court set March 12, 2024 as the deadline for proposed amicus filings. Accordingly, this filing is made within the time set by the Court.

Additionally, though not required by rule, *Amici* have conformed their proposed brief to the length limitations of Fed. R. App. P. 29(a)(5), *i.e.*, it is no more than one-half of the length allowed under L. Civ. R. 7.2(b) for the parties' principal briefs.[5]

---

[5] District Courts sometimes consider whether a proposed amicus is "partial to a particular outcome in the case." *Bernard v. Cosby*, No. 21-cv-18566, 2022 WL 3273877, at *1 (D.N.J. Aug. 11, 2022). Here, *Amici*'s strong interest in ensuring that Asian Americans' voting and democratic rights are understood and protected is the very interest that warrants their participation in the case, and would not be a proper basis for their exclusion. *See Neonatology Assocs.*, 293 F.3d at 131-133

### D. Defendants Have Not Offered Any Basis to Deny *Amici*'s Motion

As noted above, *Amici* sought the Parties' consent for this Motion. Counsel for Defendants declined to consent—some by responding that they declined to consent, and others by failing to respond.[6] *See* Shah Decl. ¶¶ 3–7. Only one Defendant offered an explanation for their position, which was unrelated to the Rule 29 considerations. *See id.* Ex. 1. Specifically, counsel for Defendant Ripa explained:

> Our opposition to the plaintiffs' request for a preliminary injunction is focused not so much on the merits of the allegations but on the timeliness of the application. It is our position that such a substantial change to New Jersey's long-standing statutory election processes should not be addressed through rushed litigation under the pressure of an upcoming primary election.

---

("Rule 29 requires that an amicus have an 'interest' in the case"). Indeed, "there is no rule that the amicus must be impartial" in an absolute sense. *Waste Mgmt. of Penn., Inc. v. City of York*, 162 F.R.D. 34, 37 (M.D. Pa. 1995); *see also Alkaabi*, 223 F. Supp. 2d, at 592 ("Parties with pecuniary and policy interests have been regularly allowed to appear as amici in our courts," and holding that its "partisan stance is not a bar to its appearance as amicus"). Courts have cast doubt on the relevance of impartiality as a factor, recognizing that "by the very nature of things the amicus is not normally impartial." *Smith v. Chrysler Fin. Co.*, No. 00-cv-6003, 2003 WL 328719, at *8 (D.N.J. Jan. 15, 2003) (quoting *United States v. Gotti*, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991). The Third Circuit has also criticized this fourth factor as anachronistic and poorly suited to modern amicus practice. *See Neonatology Assocs.*, 293 F.3d at 131-133.

[6] *Amici* provided Defendants with sufficient time to consider this request. *Amici* solicited the parties' positions by message sent nearly a week ago, on March 7, 2024. *See* Shah Decl. Ex. 1.

9

*Id.* Ex. 1.[7]

This position, however, has no bearing on the factors that courts in this District consider when considering whether an *amicus* submission should be accepted. Rather, it speaks to the Defendant's quarrel with Plaintiff's lawsuit and injunction motion on their substance—that is, Defendant's position that the Court should not entertain Plaintiffs' preliminary injunction motion on the present timetable. This quarrel, however, does not implicate the Rule 29 considerations and has no bearing on whether *Amici*'s submission would be helpful and relevant to the issues actually before the Court.

## CONCLUSION

In light of *Amici*'s significant interest in this case and the useful information their timely proposed amicus brief would provide the Court on important issues, *Amici* respectfully request that the Court grant this Motion for Leave to Appear as *Amici Curiae* and accept the accompanying brief for filing.

---

[7] This is an excerpt of counsel's message; the full message is appended to the Shah Declaration as Exhibit 1.

Dated: Washington, D.C.
March 12, 2024

Respectfully submitted,

s/ Niyati Shah

| | |
|---|---|
| Jerry Vattamala* | Niyati Shah (NJ Bar No. 026622005) |
| Patrick Stegemoeller* | Noah Baron* |
| Ronak Patel* | **Asian Americans Advancing** |
| **Asian American Legal Defense &** | **Justice \| AAJC** |
| **Education Fund** | 1620 L Street NW, Suite 1050, |
| 99 Hudson St., 12th Fl. | Washington, DC 20036 |
| New York, NY 10013 | 202-868-0396 |
| 212-966-5932 | nshah@advancingjustice-aajc.org |
| rpatel@aaldef.org | nbaron@advancingjustice-aajc.org |

\* Pro hac vice application pending

*Attorneys for Proposed Amici Curiae*
*Asian American Legal Defense and Education Fund,*
*AAPI New Jersey, and Asian Americans Advancing Justice | AAJC*

11