**WEISSMAN & MINTZ** LLC
ATTORNEYS AT LAW

STEVEN P. WEISSMAN
ANNMARIE PINARSKI
WILLIAM G. SCHIMMEL
IRA W. MINTZ
FLAVIO L. KOMUVES
JASON L. JONES
JUSTIN SCHWAM
PATRICIA A. VILLANUEVA

Of Counsel
ROSEMARIE CIPPARULO
BRETT M. PUGACH
ADAM M. GORDON
YAEL BROMBERG

Counsel
DAVID A. MINTZ*

\* ADMITTED TO PRACTICE ONLY IN NEW YORK

220 DAVIDSON AVENUE
SUITE 410
SOMERSET, NEW JERSEY 08873
(732) 563-4565
FAX (732) 560-9779

www.weissmanmintz.com

90 BROAD STREET
SUITE 254
NEW YORK, NEW YORK 10004
(212) 509-0918

JOEL N. WEISSMAN (1957-1998)
MARK ROSENBAUM (1955-2002)



March 14, 2024

VIA ELECTRONIC FILING
Hon. Zahid N. Quraishi, U.S.D.J.
United State District Court of the District of New Jersey
Clarkson S. Fisher Building
402 East State Street
Trenton, NJ 08608

      **RE:** **Kim, et al. v. Hanlon, et al.**
            **Civil Action No.: 24-1098 (ZNQ) (TJB)**

Dear Judge Quraishi:

      Plaintiffs, through undersigned counsel, and pursuant to the Court's letter order of March 13, 2024, respectfully submit this response to the Defendants' letter seeking additional written discovery from Plaintiffs beyond the enormous amounts of information and data already in Defendants' possession.

      On February 29, 2024, Your Honor entered an Order following a judicial telephonic case management conference held the same day. The Order does not call for any formal discovery. Indeed, the Court was clear at the case management conference that this case, coming by way of order to show cause in connection with an application for preliminary injunction, will proceed on an expedited basis. Various Defendant County Clerks raised questions during the conference, and the Court confirmed that *neither* dispositive motions

*nor* depositions would be entertained, and that the parties would have to put on proofs at an evidentiary hearing, where witnesses will be subject to cross-examination.[1]

Despite being asked several times if there were any additional issues that needed to be addressed by the Court, Defendants did not raise any other issues about written or other discovery. Accordingly, the Court did not provide for written discovery at the case management conference, nor in the accompanying February 29, 2024 order. (DE 34.) Despite this, on Friday March 1, 2024, the day following the court teleconference, and without authority to do so, Defendants propounded after business hours numerous overbroad and burdensome discovery requests related to the experts who filed reports in connection with the underlying application for preliminary injunction. Defendants' broad discovery requests focused on the experts and they insisted on various weekend correspondences and conferrals on the matter, to which Plaintiffs counsel exercised more than reasonable responsiveness and diligence, all while reminding Defendants that the Court did not authorize discovery requests and that such requests were therefore entirely unauthorized and wholly inconsistent with the letter, spirit, and intent of the case management conference and Court order. Plaintiffs have also repeatedly objected to the breadth of the requests.

Over the ensuing weekend, Plaintiffs objected to these unauthorized requests, but nevertheless, in a display of good faith and cooperation, apprised Defendants that they would provide various information and documentation related to these experts. Beginning on Monday, March 4, 2024 (one business day after the unauthorized discovery requests) and in the several days thereafter, Plaintiffs started producing voluminous documents pertaining to the expert witnesses, including a variety of notes, sources, raw data, voting systems manuals, ballots, voting equipment spreadsheets, historical ballot designs, election information, studies, and other materials relied on and/or created. Plaintiffs additionally provided all expert engagement agreements. Plaintiffs also and pointed Defendants to various information and documents requested which were actually *already in or referenced by* the expert reports and their respective CVs (all of which were on the public docket of the Court and in Defendants' actual possession since the filing of the Complaint). The new material produced included the production of approximately 330 MB of data by March 6, 2024, with an additional ~250MB added on March 11, 2024. Yet, Defendants continued to harp that Plaintiffs did not comply with basic discovery.

---

[1] Despite the court's clear instruction, a notice of cross-motion to dismiss was filed on March 7, 2024. As Plaintiffs reiterate in their reply brief in support of the motion for preliminary injunction (DE 95) in response to Defendants' opposition brief arguments, the premise of the cross-motion regurgitated arguments that the Court previously disposed of on May 31, 2022 in denying seven motions to dismiss in the separate but related matter, *Conforti v. Hanlon*.

Plaintiffs made themselves available to meet and confer with Defendants (numerous defense counsel attending) on Friday, March 8, 2024 to discuss additional information and documents they wanted in connection with their unauthorized discovery requests. On Saturday, March 9, 2024, Plaintiffs set forth their position as to the various interrogatories and requests for production of documents, in a seven-page letter, even though they were under no obligation to do so, and subsequently provided even more documents and information. Among others, this included expert witness invoices/bills and confirmation of information regarding cases where the expert witnesses appeared as testifying experts in previous cases. Defendants again demanded to meet and confer (some suggesting to do so on Sunday March 10, 2024 and others suggesting Monday March 11, 2024)[2], so Plaintiffs made themselves available on Sunday March 10, 2024.

At that Sunday meet and confer, it became clear that, among other items, Defendants were insisting on discovery whose focus went beyond experts.[3] The conferral included reminders to Defendants that the engagement letters with the retainers had already been produced, as had related invoices; colloquies regarding the broad request for various privilege logs; certain verbal acknowledgement by a defense counselor that certain propounded requests were "very broad"; and the reasonableness by which Plaintiffs should or could assure Defendants, and even certify to or produce certification by the experts as to, responsiveness to the expansive request for "[a]ll writings by each expert on the area of ballot design, whether formal or informal, published or unpublished, draft or final form, in the last twenty (20) years," as set out in request for production number 8, or "[a]ny recordings of any conversations, interviews, podcasts, lectures or other speaking engagements of any of the experts where the topic of ballot design was discussed in the last ten (10) years," as set out in request for production number 15. Plaintiffs' objections to these latter requests included overbreadth and burdensomeness, proportionality, the expedited nature of the briefing schedule, and the availability of sources like libraries and online databases of publications.

On March 11, 2024, Plaintiffs provided additional responses to various outstanding issues concerning the unauthorized discovery requests, providing yet again more information and additional documents, including, among others, a prior signed draft expert report, dozens

---

[2] As is consistent with the unreasonable manner in which defense counsel has conducted themselves throughout this entire process, and despite Plaintiffs' diligence and good faith in providing documents that they were not even entitled to, Defendants' daily barrage of emails included hassling Plaintiffs over what hour of the day on a Sunday they could be available for a call.

[3] The discovery requests were entitled "Expert Interrogatories Directed to the Plaintiffs" and "Expert Request for Production of Documents Directed to the Plaintiffs."

of source materials that were referenced in the expert report, and the expert reply report of Dr. Pasek which had just been finalized (and produced even prior to its filing in connection with Plaintiffs' reply brief due the next day on March 12, 2024). Plaintiffs made clear that while no discovery was authorized at all, their good faith in providing information related to experts did not extend to generalized fact discovery about plaintiffs, third parties, attorney-client communications, etc.

Additionally, also on Monday March 11, 2024, Plaintiffs provided an initial, non-final, tentative working draft of potential witnesses and exhibits, kicking off what was supposed to be an internal collaborative process to comply with the Court's order that such items be jointly provided to the Court on Friday March 15, 2024. Within a couple of hours after providing this document to Defendants (at 7:22pm), it appears to have been leaked to the media (article posted at 10:11pm). *See* David Wildstein, *Kim on Witness List for Line Lawsuit Hearing*, New Jersey Globe (March 11, 2024), *available at*: https://newjerseyglobe.com/congress/kim-on-witness-list-for-line-lawsuit-hearing/ (last accessed Mar. 14, 2024). Plaintiffs produced this initial draft early in the week at Defendants' repeated insistence that they could not similarly exchange any information on their intended witnesses, even among those ten who submitted certifications in connection with the opposition brief.[4] At Defendants' request, Plaintiffs agreed to allow Defendants additional time to provide their tentative list of witnesses or potential witnesses, and accordingly received the list from Defendants just prior to this letter response.

On March 12, 2024, Defendants further expanded their requests to include communications by Plaintiffs or Plaintiffs' counsel with any parties that seek to appear as amicus in this case on or before the date this action was filed. On March 13, 2024, Defendants filed a letter with the Court asking for a conference, reiterating a request that Plaintiffs produce communications "between the proposed amici or their counsel, and Plaintiffs and/or their counsel on or before February 26, 2024 – the date this action was initiated." (DE 98.) All of this leading to the Plaintiffs' submission of this response.

This history makes clear the efforts with which Plaintiffs have bent over backwards to provide documents and information to Defendants, even though Defendants did not request written discovery during the teleconference, and even though written discovery was not

---

[4] Defendants' factual proofs to date consists of the ten certifications offered in connection with their oppositions to the motion for preliminary injunction. Those certifications are by seven (7) of the nineteen (19) Defendant County Clerks. Additionally, two (2) certifications were propounded by each of the two voting systems vendors servicing Defendant Clerks in New Jersey; and one (1) certification was included by a third party printing vendor servicing several counties. The various county clerk certifications and underlying motions include multiple cross-references to the latter three vendor certifications.

required in the Court's order, nor contemplated by the spirit and intent of the case management conference. Indeed, Your Honor acknowledged the fast-moving schedule necessary on an application for a preliminary injunction in order for the Court to issue a timely decision.

Nevertheless, amidst the backdrop of the time pressures of having to respond to intervenor motions and approximately a dozen separate opposition briefs and letters, let alone preparing for the evidentiary hearing, Defendants have occupied the vast majority of Plaintiffs' time and efforts with the unauthorized and unreasonable discovery requests under the circumstances. Despite this backdrop, Plaintiffs produced almost 600 MB of voluminous documents consisting of thousands upon thousands of pages related to the background and qualifications of the expert, what they relied on even where the material is publicly available, what they created, etc. Contrary to Defendants' contentions, Plaintiffs have been diligent in providing these various and voluminous documents and information immediately and on a rolling basis, and making themselves available on multiple occasions and on weekends to meet and confer. While Defendants are likely not entitled to anything, they are certainly not entitled to everything they ask for, especially under the circumstances of an expedited proceeding and where they will have an opportunity, as advised by the Court, to cross-examine witnesses at an evidentiary hearing. Discovery is often not available on an order to show cause, and certainly full blown discovery is not customary. Nor did Defendants ask the Court for it. Defendants at this point have everything they need to understand the expert reports and potential expert testimony.

Additionally, Plaintiffs responded in their reply brief to Defendants' baseless allegation of "delay," and will incorporate, but not repeat these arguments at length here. Nevertheless, it is worth pointing out that the vast majority of the research found in Dr. Rubin and Dr. Wang's reports has been available to the public for many months, as it was published in the Seton Hall Journal of Legislation and Public Policy, following a conference where some of the Defendants' counsel attended, and at least one (from one of the law firms that filed a letter with this Court about the instant discovery issue) even participated as a speaker.[5] Additionally, the expert report of Dr. Pasek could not be drafted until after completion of the study he designed and oversaw, which needed to be within a certain degree of proximity to the election to produce trustworthy results. In fact, another one of the defense counsel that filed a letter with this Court about the instant discovery issue even surmised in

---

[5] More, although this action was filed on February 26, 2024, and although defense counsel attended and spoke on a panel at the symposium, last night (March 15, 2024) Defendants served on corporate counsel for Seton Hall Law School a subpoena for any recordings made in connection with a law symposium organized by the law students on February 24, 2023.

his Opposition Brief that Dr. Pasek's study was conducted *too far away* from the election to have reliable data. *See* DE53, at p. 9. What gives?

It pains counsel to have to write this letter, but it has become apparent that Defendants are intent on embellishing and/or fabricating a record to try to sow doubt in the proceedings of this case, even before it is heard. Defendants will not allow Plaintiffs to commandeer the record on these ancillary, non substantive issues. To be clear, the record shows that Plaintiffs produced a massive amount of information and documents to Defendants, and after all this work by Plaintiffs' counsel, Defendants are only complaining about the three items listed in their March 13, 2024 letter, three business days before the evidentiary hearing. Plaintiffs have gone above and beyond any obligation to provide documents and information that could possibly be appropriate for this case, and both sides should be able to focus on preparing for trial, rather than wasting each other's and the Court's time with unfounded allegations of delay and insistence on unreasonable discovery requests under the circumstances.

This case involves a matter of critical importance to the state of democracy in New Jersey – the fairness of the primary ballot, and the harms that flow from it, including, potentially, the legitimacy of the outcome of the upcoming primary election. This basic issue has increasingly captured the public's attention since the last presidential cycle in 2020. The Defendants are not being bamboozled. Several are parties in a separate related lawsuit which has survived seven motions to dismiss. The public has repeatedly directly asked them, via public petitions, appeals, or otherwise, to design primary ballots in a manner that conforms with basic equity and fairness, and in a manner akin to what 49 states in the nation readily do – and, in a manner not entirely dissimilar from what Defendants already do for general, primary, and other elections. If Defendants cannot substantiate their arguments about the inability of the voting machines to support an office-block ballot layout, then that is not a concern related to Plaintiffs' copious discovery productions, but rather a result of Defendants' repeated insistences to look for problems rather than solutions to uphold the basic tenets of our democratic fabric.

Respectfully submitted,

/s/ Brett M. Pugach, Esq.
/s/ Yael Bromberg, Esq.
/s/ Flavio L. Komuves, Esq.

cc:     All counsel of record (via ECF)