Jon Romberg
Atty No. 037351993
Seton Hall Law School
Center for Social Justice
833 McCarter Hwy.
Newark, NJ 07102
(973) 642-8700
jon.romberg@shu.edu
*Counsel of Record for Amici Curiae*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al., | No. 24-cv-01098-ZNQ-TJB |
| | Zahid N. Quraishi, U.S.D.J. |
| Plaintiff, | Tonianne J. Bongiovanni, U.S.M.J. |
| v. | |
| CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al., | **AMICI CURIAE BRIEF OF NEW JERSEY LAW PROFESSORS REGARDING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF NEITHER PARTY** |
| Defendants. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTERESTS OF AMICI CURIAE ..................................................................................... 1

INTRODUCTION ............................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

    I.    New Jersey's County Line Ballot System Violates the Elections Clause ......... 3

    II.   The Associational Rights of Parties Do Not Extend to the Ballot ................... 7

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ................................................................. 7

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)................................. 3

*Burdick v. Takushi*, 504 U.S. 428 (1992) ........................................................................ 8

*Cal. Democratic Party v. Jones*, 530 U.S. 567(2000) ................................................. 8, 9

*Conforti v. Hanlon*, 3:20-CV-08267 (D.N.J., July 6, 2020)........................................... 2

*Cook v. Gralike,* 531 U.S. 510 (2001) ..................................................................... 4, 5, 6

*Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)......................... 7, 8, 9

*Kim v. Hanlon*, 3:24-cv-01098 (Feb. 27, 2024)............................................................... 2

*Mazo v. Durkin*, 3:20-CV-08336 (D.N.J., July 6, 2020). .............................................. 2

*Ohio Council 8 Am. Fed'n of State, Cnty. & Mun. Emps. v. Husted*,
    814 F.3d 329 (6th Cir. 2016). .................................................................................. 8

*Smiley v. Holm*, 285 U.S. 355 (1932). ................................................................... 3, 5, 6

*Storer v. Brown*, 415 U.S. 724 (1974)........................................................................ 6, 9

*Tashjian v. Republican Party*, 479 U.S. 208 (1986) ..................................................... 7

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) ................................... 8

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) ........................................ 5, 7

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008). ................................................................................................ 8

**Constitutional Provisions**

The Elections Clause, U.S. Const. art. I, § 4, cl. 1..............................................*passim*

**Other Authority**

Records of the Federal Convention of 1787 (Max Farrand ed., 1911) ......................... 4

Eliza Sweren-Becker & Michael Waldman, *The Meaning, History, and Importance of the Elections Clause*, 96 Wash. L. Rev. 997 (2021) .................... 4

# **INTERESTS OF AMICI CURIAE**[1]

*Amici curiae* are New Jersey law professors who are committed to upholding the values of the Constitution of the United States as they apply to New Jersey elections. *Amici* are all longtime observers of New Jersey's political system and are intimately familiar with the "county line" ballot bracketing system. *Amici* have served in various capacities in New Jersey state government, run for public office in New Jersey, and written numerous scholarly articles about how the Constitution constrains state actions. *Amici* are particularly interested in aiding the Court's understanding of the Elections Clause of the United States Constitution, U.S. Const. art. I, § 4, cl. 1, and explaining how it applies to the facts of this case.

Paula A. Franzese is the Peter W. Rodino Professor of Law at Seton Hall Law School, where she has taught since 1986. She has served in many state government roles, including as vice-chair of the State Election Law Enforcement Commission, chair of the New Jersey State Ethics Commission, chair of the State Commission on Professionalism, and special ethics counsel to Governor Richard J. Codey. Earlier, Franzese clerked for Justice Alan B. Handler of the New Jersey Supreme Court.

Eugene D. Mazo is an Associate Professor of Law and Political Science at Duquesne University. Mazo is a nationally recognized scholar of election law. He previously taught at both Rutgers and Seton Hall. In 2020, Mazo was a candidate for U.S. Congress in New Jersey's Tenth Congressional District. Professor Mazo's books

---

[1] Counsel for *amici* certify that no party or counsel for any party helped draft this brief or contributed any funds to its preparation or submission.

1

include *The Best Candidate: Presidential Nomination in Polarized Times* (2020); *Democracy by the People: Reforming Campaign Finance in America* (2018); and *Election Law Stories* (2016). His *Oxford Handbook of American Election Law* is forthcoming in 2024.

Jon Romberg is an Associate Professor of Law at Seton Hall Law School, where he has taught since 1995. He directs the Impact Litigation Clinic at Seton Hall, which represents indigent litigants in numerous cases asserting constitutional claims. Prior to joining Seton Hall, Romberg served as a John J. Gibbons Fellow in Public Interest and Constitutional Law. He previously taught in the Constitutional Litigation Clinic at Rutgers Law School. Professor Romberg clerked for Warren J. Ferguson on the U.S. Court of Appeals for the Ninth Circuit.

## INTRODUCTION

*Amici* are scholars and teachers of the Constitution who are extremely knowledgeable about how the county line ballot system works and are aware of its empirical effects. They have read both the literature on the county line and followed the litigation challenging it closely, including the three cases before this Court: *Kim v. Hanlon*, 3:24-cv-01098 (D.N.J., Feb. 27, 2024); *Conforti v. Hanlon*, 3:20-CV-08267 (D.N.J., July 6, 2020); and *Mazo v. Durkin*, 3:20-CV-08336 (D.N.J., July 6, 2020).

*Amici* take no position here on whether this Court should grant the preliminary injunction requested by the *Kim* plaintiffs. Rather, *amici* write to provide the Court with information about the limited scope of New Jersey's power to regulate federal

elections under the Elections Clause of the Constitution. As *amici* explain below, the county line is not a proper "Manner" by which New Jersey is permitted to regulate Congressional elections and thus violates the Elections Clause because it favors or disfavors classes of candidates and because it dictates electoral outcomes. Additionally, *amici* write to clarify for this Court that, under federal election law, a political party's associational rights do not extend to the ballot and thus do not justify or require the county line that the Elections Clause forbids.

## ARGUMENT

**I.    New Jersey's County Line Ballot System Violates the Elections Clause.**

The Constitution grants States the power to regulate the time, place, and manner of federal elections by enacting procedural provisions that are designed neither to favor nor disfavor Congressional candidates, nor to unduly influence citizens' choices in deciding how to cast their ballot. The Elections Clause does not empower Defendant county clerks to implement the county line because it violates those prohibitions.

The Elections Clause states:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

U.S. Const. art. I, § 4, cl. 1.

The Elections Clause is the sole grant of power by which New Jersey is entitled to structure ballots for Congress, providing the "complete code for congressional elections." *Smiley v. Holm,* 285 U.S. 355, 366 (1932); *see also Arizona v. Inter Tribal*

3

*Council of Ariz., Inc.*, 570 U.S. 1, 8 (2013). "[T]he States may regulate the incidents of [congressional] elections, *including balloting*, only within the exclusive delegation of power under the Elections Clause." *Cook v. Gralike*, 531 U.S. 510, 522–23 (2001) (emphasis added). "No other constitutional provision gives the States authority over congressional elections . . . ." *Id.* States are thus strictly limited in their power to regulate ballots for the election of Congressional candidates: They must act within the scope of the limited powers granted by the Elections Clause.

From its inception, the Elections Clause was intended to constrain state legislatures from regulating federal elections in a manner that would enable favoring particular factions. One of the two "overlapping concerns" that drove the Framers to include the Elections Clause in the Constitution was "a distrust of state lawmakers." Eliza Sweren-Becker & Michael Waldman, *The Meaning, History, and Importance of the Elections Clause*, 96 Wash. L. Rev. 997, 1002 (2021). During the Constitutional Convention, James Madison "recogniz[ed] that state lawmakers would abuse their power" and "warned that the Elections Clause was needed to prevent self-interested partisans from twisting election rules to benefit their faction." *Id.* at 1007–08 (citing 2 The Records of the Federal Convention of 1787, at 240–41 (Max Farrand ed., 1911)); *see also id.* at 1018 (explaining that the "original public meaning of the Clause . . . gave Congress sweeping power and aimed to curb abuse by state lawmakers").

The Elections Clause strictly limits states to enacting neutral, procedural regulations, forbidding regulations that permit state officers to influence the substantive outcome of Congressional elections through ballot design. "[T]he Framers

4

understood the Elections Clause as a grant of authority to issue procedural regulations, and not as a source of power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833–34 (1995).

The county line, however, is not a neutral "procedural" regulation that complies with these instructions. New Jersey's county line ballot system does not purport to regulate the time or places of federal elections. Nor does it regulate the manner of federal elections within the meaning of the Elections Clause. In *Cook*, the Supreme Court rejected a State's regulation of Congressional ballots as outside the bounds of "the 'manner' of elections as we understand it." *Cook*, 531 U.S. at 523–24. As the Court explained, "in our commonsense view that term encompasses matters like 'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns.'" *Id.* (quoting *Smiley*, 285 U.S. at 366).

States are thus barred from regulating the manner of elections by designing federal election ballots (or permitting state officials such as county clerks from designing such ballots) as they do through the county line—to aid or handicap particular candidates and classes of candidates, and to affect election outcomes. State regulation of the structure of federal election ballots violates the Election Clause when "ballot designations would handicap candidates for the United States Congress," or when they impose a "substantial political risk . . . on current and prospective Congressional members" that they may not be elected if they take actions resulting

5

in their being disfavored through the design of the ballot. *Cook*, 531 U.S. at 525. Here, as Plaintiffs demonstrate, the county line plainly imposes a substantial risk on those Congressional candidates who do not secure the county line that they will be handicapped in seeking election.

The Supreme Court has held that State regulations of the manner of elections are lawful only if they are among "'the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved,' ensuring that elections are 'fair and honest,'" *id.* at 524 (quoting *Smiley*, 285 U.S. at 366), and ensuring "that 'some sort of order, rather than chaos, is to accompany the democratic process,'" *id.* (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

Importantly, such procedural regulations do not give states the power to "'dictate electoral outcomes,'" *Cook*, 531 U.S. at 526 (quoting 514 U.S. at 833–34), and "[s]uch 'regulation' of congressional elections simply is not authorized by the Elections Clause." *Id.* The empirical evidence, however, demonstrates that the county line accomplishes exactly what the Elections Clause forbids: it favors classes of candidates and dictates electoral outcomes.

State ballot designs violate the Elections Clause when they "surely place their targets at a political disadvantage" compared to other "candidates for congressional office," *Cook*, 531 U.S. at 525, as the county line does. "[S]tates may regulate the incidents of [federal] elections, including balloting, only within the exclusive delegation of power under the Elections Clause." *Cook*, 531 U.S. at 523. And the

6

Elections Clause forbids statutes that "dictate electoral outcomes," that "favor or disfavor a class of candidates," or that take action that "render[s] a class of potential candidates ineligible for ballot position." *U.S. Term Limits*, 514 U.S. at 833–35. Because the county line ballot system enables each of these three forbidden outcomes, and because it does so "at the most crucial stage in the election process—the instant before the vote is cast," *Cook*, 531 U.S. at 525, it is unconstitutional under the Elections Clause, Article I, Section 4, Clause 1 of the Constitution.

## II. The Associational Rights of Parties Do Not Extend to the Ballot.

*Amici* also write to dispel an argument concerning political parties' associational rights raised in some of the Defendants' briefs. Those briefs argue that the Supreme Court in *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989), provides political parties the right to associate with their chosen candidates on the ballot. That is a misreading of *Eu* and an inaccurate statement of federal case law, which holds just the opposite.

*Eu* stands for the proposition that a state cannot regulate a political party's internal affairs, *id.* at 232–33, and cannot prevent parties from endorsing candidates in party primaries, *id.* at 229. As the Supreme Court explained, "[b]arring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association. It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments." *Id.* at 224 (citing *Tashjian v. Republican Party*, 479 U.S. 208, 214 (1986)).

7

Nowhere in *Eu*, however, did the Court hold that a political party's associational rights extended *to the ballot* itself. Indeed, most federal courts have held just the opposite, finding that "a political party has no First Amendment right to use the general-election ballot for expressive activities." *Ohio Council 8 Am. Fed'n of State, Cnty. & Mun. Emps. v Husted*, 814 F.3d 329, 336 (6th Cir. 2016). When it comes to a political party's First Amendment rights, "[n]either the candidate nor the party [may] dictate[] the message conveyed by the ballot." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 461 (2008) (Roberts, C.J., concurring).

A political party's associational rights simply do not extend to the ballot. The Supreme Court has been unpersuaded by a political party's "contention" that the party "has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997). Political parties therefore do not have any associational right to use the ballot to express their support of a particular slate of candidates on the county line—and whatever such interests the State wishes to further can be accomplished through, e.g., shared slogans, and do not require the county line. "Ballots serve primarily to elect candidates, not as fora for political expression." *Id.* (citing *Burdick v. Takushi*, 504 U.S. 428, 438 (1992)).

"When a political party defines the organization and composition of its governing units, when it decides what candidates to endorse, and when it decides whether and how to communicate those endorsements to the public, it is engaged in the kind of private expressive associational activity that the First Amendment protects." *Cal.*

8

*Democratic Party v. Jones*, 530 U.S. 567, 592 (2000) (Stevens, J., dissenting) (citing *Timmons*, 520 U.S. at 354–55, 354 n.4, 359). "[H]owever, the associational rights of political parties are neither absolute nor as comprehensive as the rights enjoyed by wholly private associations." *Id.* at 593 (citation omitted). "The reason a State may impose . . . significant restriction[s] on a party's associational freedoms is that both the general election and the primary are quintessential forms of state action." *Id.* at 594.

The Court in *Eu* itself reiterated these principles, explaining that "a State may enact laws that interfere with a party's internal affairs when necessary to ensure that elections are fair and honest." *Eu*, 489 U.S. at 231 (citing *Storer*, 415 U.S. at 730); *see also Storer*, 415 U.S. at 730 ("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process."). The Court in *Eu* overtly recognized that "a State may impose restrictions that promote the integrity of primary elections." *Eu*, 489 U.S. at 231. The State is not obligated by *Eu* to permit the county line as a matter of associational rights; instead, the State is barred by the Elections Clause from permitting Defendants to implement the county line.

## CONCLUSION

*Amici* take no position here on the ultimate disposition of Plaintiffs' motion. Rather, they seek to educate this Court on two points: First, the county line ballot system is incompatible with the Elections Clause; and second, political parties have no First Amendment right to associate on the ballot.

Respectfully submitted,

/s/ *Jon Romberg*
_____
Jon Romberg

Jon Romberg
Seton Hall University School of Law
Center for Social Justice
833 McCarter Hwy.
Newark, NJ 07102
(973) 642-8700
jon.romberg@shu.edu

March 12, 2024