## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, ANDY KIM FOR NEW JERSEY, SARAH SCHOENGOOD, SARAH FOR NEW JERSEY, CAROLYN RUSH and CAROLYN RUSH FOR CONGRESS Plaintiffs, vs. CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et. al., Defendants. - and - DALE A. CROSS, in his official capacity as Salem County Clerk, et al., as Interested Parties. | Civil Action No.: 3:24-cv-1098 (ZNQ)(TJB) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE THE INTRODUCTION OR USE OF THE EXPERT REPORT OF DR. JULIA SASS RUBIN**

*Of Counsel and on the brief:*
Angelo J. Genova, Esq.
Rajiv D. Parikh, Esq.
Jennifer Borek, Esq.

*On the brief:*
Daniel A. Lebersfeld, Esq.
Katherine Szabo, Esq.

**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
Fax: (973) 533-1112
*Attorneys for Defendants*
*Christopher Durkin, Joanne Rajoppi, and Danielle Ireland-Imhoff*

Case 3:24-cv-01098-ZNQ-TJB   Document 153-2   Filed 03/18/24   Page 2 of 11 PageID: 2701

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

ARGUMENT ..........................................................................................................1

    I.    Sass Rubin's Testimony and Report Should be Stricken for Because of Methodological Flaws and Insufficient Analysis. .......... 3

    II.   Much of Sass Rubin's Report is Unsupported and Contains Contradictory Conclusions...................................................... 6

CONCLUSION ......................................................................................................8

ii

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

ARGUMENT ..........................................................................................................1

    I.    Sass Rubin's Testimony and Report Should be Stricken for Because of Methodological Flaws and Insufficient Analysis. .......... 3

    II.   Much of Sass Rubin's Report is Unsupported and Contains Contradictory Conclusions...................................................... 6

CONCLUSION ......................................................................................................8

# **TABLE OF AUTHORITIES**

## **CASES**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ...................................................................................2

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ...............................................................................................2

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994) .....................................................................................2

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) ...............................................................................................2

*Tyus v. Urban Search Mgt.,*
   102 F.3d 256 (7th Cir.1997) ...................................................................................2

*United States v. Hall,*
   93 F.3d 1337 (7th Cir.1996) ...................................................................................2

## **RULES**

Fed. R. Evid. 702 ................................................................................... 1, 2, 3, 6

Defendants Christopher Durkin, Joanne Rajoppi, and Danielle Ireland-Imhoff, in their official capacities, respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993, to exclude the testimony of Dr. Julia Sass Rubin ("Rubin"), the proffered expert witness of Plaintiffs.

## ARGUMENT

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides that an expert who is "qualified . . . by knowledge, skill, experience, training, or education may testify" if the testimony would be helpful to the trier of fact, is "based on sufficient facts or data," and is "the product of reliable principles and methods," reliably applied to the facts of the case. Fed. R. Evid. 702.  And these factors, in turn, largely have their origins in *Daubert*, in which the Supreme Court held that the district court bears a critical gatekeeping function in assessing the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589–95 (1993).

Although Fed. R. Evid. 702 sets forth specific criteria for the district court's consideration in evaluating a *Daubert* motion, the Supreme Court has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique "can be (and has been) tested," *Daubert,* 509 U.S. at 593; (2) "whether the theory or technique has been subjected to peer review and publication," *id.;* (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation," *id.* at

594; and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community. *Id.* Although these factors do not constitute, a "definitive checklist or test." *Daubert,* 509 U.S. at 593, and "the gatekeeping inquiry must be tied to the facts of a particular case," *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999) (internal quotation marks omitted), the Supreme Court has held that:

> nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

*Daubert* and Rule 702 "mandate the exclusion" of expert opinion testimony based on data or a methodology that are "simply inadequate to support the conclusions reached[.]" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). Indeed, "*any* step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible." *Id.* at 267 (quoting *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 745 (3d Cir. 1994) (emphasis in original)). Federal courts have extended the Daubert approach to social science testimony. *See, e.g., Tyus v. Urban Search Mgt.,* 102 F.3d 256, 263 (7th Cir.1997); *United States v. Hall,* 93 F.3d 1337 (7th Cir.1996).

Here, as set forth below, Rubin's methodology is not based on sufficient

2

relevant facts and data and does not use reliable and reproduceable methods, her reports fail to account for critical variables that undoubtably taint her findings, and her conclusions fail to cite to a single peer reviewed article or reputable academic study. It is unreliable at *every* step. Accordingly, her opinion is neither relevant nor reliable, as required by Rule 702 and *Daubert* and should, therefore, be excluded from this case.

I. **Sass Rubin's Testimony and Report Should be Stricken Due to Methodological Flaws and Insufficient Analysis.**

Sass Rubins' Report encounters glaring methodological limitations, particularly regarding the potential misinterpretation of causal relationships and an overreliance on descriptive statistics (mean, median). To try and understand Sass Rubin's methodology, we must start with her conclusion: "New Jersey's unique county line primary ballots provide a substantial electoral benefit to candidates who appear on the county line." *See* Export Report of Dr. Julia Sass Rubin at 22 (the "Report"), attached to Plaintiffs' Complaint as Exhibit B (Dkt. # 1-3). To prove this premise, the Report must provide a reliable methodology that the "county line primary ballot" is the main, if not sole, reason for why certain candidates perform better in counties where they are on the "county line" and worse when they are not. Notwithstanding the fact that Sass Rubin provides multiple examples where this is not the case, she does not provide a complete analysis that separates ballot positioning as an independent variable, and therefore cannot isolate its alleged effect

3

on voter behavior.

For example, the Report indicates that candidates on the county line saw a mean performance margin of 38 percentage points better than when their opponents were on the county line. This observation does not account for potential endogeneity, where disregarded factors (such as a candidate's popularity, campaign resources, or experience) influence both the likelihood of receiving the certain ballot positioning and the actual election outcomes. Indeed, Sass Rubin did not use specific statistical methods designed to test for causation, such as instrumental variables or difference-in-differences. These techniques are crucial for determining whether the ballot placement directly causes better electoral outcomes, or if both are influenced by underlying factors not accounted for in the analysis.

Similarly, Sass Rubin attempts to isolate ballot placement from two separate variables: incumbency and county party endorsements. By doing this, Sass Rubin inadvertently proves the opposing viewpoint, as for example, the reduction in the mean difference in performance from 38 to only 12 percentage points when considering endorsements (which go hand-in-hand with ballot positioning) clearly indicate that the so-called county line's impact is mediated by these political variables, and is nearly as big of an alleged factor when isolated.

Sass Rubin even admits this prior to submitting her report:[1]



Without a detailed analysis, the methodology opens the door to several alternative interpretations of the observed data. Indeed, it is possible that voters are more sophisticated and aware than the Report suggests. Voters are likely not blindly influenced by the county line; instead, they may use ballot positioning as a heuristic or shortcut. Voters recognize endorsed candidates as those vetted by the party and thus use their position on the ballot as a signal of credibility or alignment with their preferences, especially in primary elections where differences between candidates are often subtle. Either way, exclusion of the Report would encourage a more thorough and nuanced exploration of how ballot positioning influences electoral outcomes, ultimately leading to a clearer understanding of the "county line's" true impact.

---

[1] Sass Rubin's publicly available social media statements referenced herein are electronically linked herein and available at https://twitter.com/JuliaSassRubin accessed March 14, 2024).

5

## II. Much of Sass Rubin's Report is Unsupported and Contains Contradictory Conclusions.

The inherent methodological weaknesses and speculative nature of Sass Rubin's report, underscored by a lack of empirical support and reliance on personal interpretations, fundamentally compromise its reliability and admissibility as expert testimony under the rigorous standards set by *Daubert* and Rule 702. An expert's opinion cannot be based on "subjective belief or unsupported speculation"; rather experts must have "good grounds" for his or her belief. *Daubert*, 509 U.S. at 113. The Report cites to no scholarly reviewed articles. In fact, the only law review article that Sass Rubin cites to is her own. *See* Report at 6 (citing to her own article in *Seton Hall Journal of Legislation and Public Policy*). Citing one's own work without reference to a broader body of peer-reviewed literature does not adequately demonstrate the reliability of the methodology or conclusions reached. The significant reliance on speculative connections between observed data (such as voter behavior in relation to the county line) and the conclusions drawn exemplifies an "analytical gap" as cautioned against in *General Electric Co.* The Report's failure to empirically ground its claims or to elaborate on methodological framework to bridge the data with the opinions offered undermines the reliability of Rubin's testimony.

For example, in explaining the undervote in the 2020 Senate Democratic Primary in Atlantic County, Sass-Rubin attributes it to the idea that "[voters] **may**

6

have believed that they had fully completed the ballot by voting for everyone on the county line; been reluctant to vote for candidates not on the county line; or not even realized that they could vote for candidates running both on and off the county line." Report at 10 (emphasis added). This speculation implies a level of confusion or misunderstanding among voters regarding the ballot structure and the status of candidates relative to the county line. Yet, the Report does not cite to any source in support of this speculation, which is peculiar, considering the language above is not definitive.

Then, earlier in the Report, Sass Rubin concludes that "[w]hile voters may not know the names of candidates running for county commissioner or county clerk, they generally know the leading candidates for President, Governor, or U.S. Senator. These better-known candidates lend familiarity and legitimacy to the other candidates on the county line." Report at 6. This assertion implies a baseline of voter knowledge and intentionality in their voting behavior, especially for high-profile races. If voters are generally knowledgeable about leading candidates for major offices, as suggested by the assertion regarding the familiarity and legitimacy lent by these candidates, it would follow that voters should be aware of their options for the U.S. Senate race and, by extension, less prone to the confusion or oversights implied in the speculation about undervotes.

7

The Report's reliance on Sass Rubin's subjective interpretation of the data, without underpinning these interpretations with empirical evidence or clear methodology, contradicts the requirement that expert opinions must not be based on subjective belief or unsupported speculation.

## CONCLUSION

For the foregoing reasons, Defendants Christopher Durkin, Joanne Rajoppi, and Danielle Ireland-Imhoff respectfully request that the Court grant their motion *in limine* and exclude Dr. Julia Sass Rubin's reports and testimony in this matter.

Respectfully submitted,

**GENOVA BURNS LLC**
*Attorneys for Defendants,*
*Christopher Durkin, Joanne Rajoppi,*
*and Danielle Ireland-Imhof*

By: *s/ Angelo J. Genova*
ANGELO J. GENOVA
RAJIV D. PARIKH
JENNIFER BOREK

Dated:  March 18, 2024

17465311v1 (1154.215)

8