# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al.<br><br>Plaintiffs,<br><br>vs.<br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et. al.,<br><br>Defendants.<br>- and -<br><br>DALE A. CROSS, in his official capacity as Salem County Clerk, et al.,<br><br>as Interested Parties. | Civil Action No.: 3:24-cv-1098 (ZNQ)(TJB) |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 4 TO EXCLUDE THE INTRODUCTION OR USE OF THE EXPERT REPORT OF DR. SAMUEL S.-H. WANG**

---

*Of Counsel and on the brief:*
Angelo J. Genova, Esq.
Rajiv D. Parikh, Esq.
Jennifer Borek, Esq.

*On the brief:*
Daniel A. Lebersfeld, Esq.
Katherine Szabo, Esq.

**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
Fax: (973) 533-1112
*Attorneys for Defendants*
*Christopher Durkin, Joanne Rajoppi, and Danielle Ireland-Imhoff*

## **TABLE OF CONTENTS**

ARGUMENT ................................................................................................................. 5

   DR. WANG'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HIS OPINION IS NOT HELPFUL AND HIS METHODOLOGY IS UNRELIABLE. ...................................... 7

CONCLUSION ............................................................................................................. 13

# **TABLE OF AUTHORITIES**

## **CASES**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)...................................................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993).................................................................................... 4, 5, 7

*Democratic-Republican Org. of N.J. v. Guadagno*,
   900 F. Supp. 2d 44 (D. N.J. 2012) .......................................................................8

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)..........................................................................................5, 7

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994)...................................................................................5

*Jacobson v. Lee*,
   411 F. Supp. 3d 1249 (N.D. Fla. 2019),
   *vacated*, 957 F.3d 1193 (11th Cir. 2020).......................................................10, 11

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)..............................................................................................5

*McLain v. Meier*,
   637 F.2d 1159 (8th Cir. 1980)

   *aff'd*, 700 F.3d 130 (3d Cir. 2012) .......................................................................8

*Nimely v. City of N.Y.*,
   414 F.3d 381 (2d Cir. 2005).................................................................................9

*Oddi v. Ford Motor Co.*,
   234 F.3d 126 (3d Cir. 2000).................................................................................7

*Sangmeister v. Woodward*,
   565 F.2d 460 (7th Cir. 1977),
   *cert. denied and app. dismissed sub nom. Illinois State Bd. of Elections v. Sangmeister*,
   435 U.S. 939 (1978)..............................................................................................8

*States v. Hall,*
    93 F.3d 1337 (7th Cir.1996)........................................................................................6

*Tyus v. Urban Search Mgt.,*
    102 F.3d 256 (7th Cir.1997)........................................................................................6

**Rules**

Fed. R. Civ. P. 37..................................................................................................................4

Fed. R. Evid. 702 .................................................................................................................4

Defendants Christopher Durkin, Joanne Rajoppi, and Danielle Ireland-Imhoff, in their official capacities, respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Evid. 702, Fed. R. Civ. P. 37, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), to exclude the testimony of Dr. Samuel S.-H. Wang ("Dr. Wang"), a proffered expert witness of Plaintiffs.

## ARGUMENT

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides that an expert who is "qualified . . . by knowledge, skill, experience, training, or education may testify" if the testimony would be helpful to the trier of fact, is "based on sufficient facts or data," and is "the product of reliable principles and methods," reliably applied to the facts of the case. Fed. R. Evid. 702. And these factors, in turn, largely have their origins in *Daubert*, in which the Supreme Court held that the district court bears a critical gatekeeping function in assessing the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589–95 (1993).

Although Fed. R. Evid. 702 sets forth specific criteria for the district court's consideration in evaluating a *Daubert* motion, the Supreme Court has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique "can be (and has been) tested," *Daubert,* 509

U.S. at 593; (2) "whether the theory or technique has been subjected to peer review and publication," *id.;* (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation," *id.* at 594; and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community. *Id.* Although these factors do not constitute, a "definitive checklist or test." *Daubert,* 509 U.S. at 593, and "the gatekeeping inquiry must be tied to the facts of a particular case," *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999) (internal quotation marks omitted), the Supreme Court has held that:

> nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

*Daubert* and Rule 702 "mandate the exclusion" of expert opinion testimony based on data or a methodology that are "simply inadequate to support the conclusions reached[.]" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). Indeed, "*any* step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible." *Id.* at 267 (quoting *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 745 (3d Cir. 1994) (emphasis in original)). Federal courts have extended the Daubert approach to social science

testimony. *See, e.g., Tyus v. Urban Search Mgt.,* 102 F.3d 256, 263 (7th Cir.1997); *United States v. Hall,* 93 F.3d 1337 (7th Cir.1996).

## DR. WANG'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HIS OPINION IS NOT HELPFUL AND HIS METHODOLOGY IS UNRELIABLE.

Dr. Samuel S.-H. Wang is a professor of neuroscience who purported to assess New Jersey's existing ballot design "using principles of decision-making and visual processing that are well-known in neuroscience, cognitive science and psychology." (*See* Expert Report of Dr. Samuel S.-H. Wang Report (Complaint, Ex. D (Dkt.# 1-4) ("Report") at 2, 4). In addition to these apparent neuroscientific principles, Dr. Wang also claims he used "basic statistical tests" to measure the advantage the so-called "county line" provides to New Jersey political candidates. (Report at 4). While Dr. Wang's credentials appear impressive and his statistical analyses provide a certain shock value, ultimately his methodology and conclusions, which, we stress, have *not* been tested in discovery, fall apart under basic scrutiny.

For starters, while Dr. Wang's purported expertise is in neuroscience, there is very little actual neuroscience in his report, and even less that is likely to be beyond the common sense of a reasonable layperson. Specifically, the only neuroscientific principles Dr. Wang claims to have applied are the concepts that the human brain uses mental or cognitive "shortcuts" in decision making and that "the

brain's visual system is biased towards horizontal and vertical orientations relative to oblique orientations." (Report at 6). From these basic concepts, Dr. Wang claims that New Jersey's ballot structure "guide[s] the eye in ways that do not allow equal treatment of all candidates" because it "nudges the voter toward one choice over others…." (*Id.* at 6, 7). In reality, Dr. Wang presents **no** evidence, sufficient to satisfy *Daubert*, to support this conclusion from a neuroscientific standpoint, his purported area of expertise.

Specifically, Dr. Wang does not cite to any peer reviewed studies that address whether mental "shortcuts" or the "biases" in the "brain's visual system" influence or "nudge" voter choice *viz-a-viz* ballot design, be it New Jersey's or any other ballot design. Nor does he rely on any controlled experiments with respect to ballot design that he or others might have conducted. Thus, in reality, Dr. Wang's conclusions as to the neuroscientific effect of New Jersey's ballot design are his own *ipse dixit*, which does not pass scrutiny, no matter what his credentials might be. *General Elec. Co. v. Joiner*, 522 U.S. 126, 146 (1997); *Oddi v. Ford Motor Co.*, 234 F.3d 126, 158 (3d Cir. 2000) (accident reconstruction expert's opinion that alternate bumper design would have been safer was inadmissible *ipse dixit* because he conducted no tests, "used little, if any methodology beyond his own intuition," and provided nothing to submit to peer review).

Indeed, even the red herring[1] that Dr. Wang attempts to create in addressing the "primacy effect," which supposedly biases voters towards the candidate(s) in the first ballot position, is not, even by a cursory analysis, supported by the evidence he cites. Specifically, citing only to a non-peer reviewed law review articles and *McLain v. Meier*, 637 F.2d 1159 (8th Cir. 1980), Dr. Wang claims that "[t]he primacy effect, when it systematically favors one candidate over others, has been found to be a violation of voting rights." (Report at 7). To the contrary, the Eighth Circuit, as far back as 1980, made clear that the "primacy effect" is not nearly as uncontroversial as Dr. Wang makes it out to be, observing "[w]e are aware from the summary of evidence in other cases that there are studies which question the finding of positional bias." *Id.* at 1166 n.15 (citing *Sangmeister v. Woodward*, 565 F.2d 460, 466 n.12 (7th Cir. 1977), *cert. denied and app. dismissed sub nom. Illinois State Bd. of Elections v. Sangmeister*, 435 U.S. 939 (1978); *Clough v. Guzzi*, 416 F. Supp. 1057 (D. Mass. 1976)).

---

[1] It is a red herring, because Plaintiffs' lawsuit is not about the "primacy effect," as such, which, in the context of New Jersey's general election ballot design, was already the subject of a suit that was dismissed on the merits. *See Democratic-Republican Org. of N.J. v. Guadagno*, 900 F. Supp. 2d 447, 459 (D. N.J. 2012) (holding that "placing political party candidates on the left side of the ballot and all other candidates on the right side… does not violate Plaintiffs' constitutional rights"), *aff'd*, 700 F.3d 130 (3d Cir. 2012). Rather, Plaintiffs' suit claims the effect of what they characterize as the "weight of the line," is what makes New Jersey's ballot structure unconstitutional.

Dr. Wang's statistical analyses, and the extreme sounding odds he attributes to the ballot structure, fare no better. For starters, while Dr. Wang vaguely refers to published articles he has written about "statistics," (Report 3) he does not profess to have any specialized training in statistical methods. *See Nimely v. City of N.Y.*, 414 F.3d 381, 399 n.13(2d Cir. 2005) ("it is worth emphasizing that, because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields"). Thus, there is no basis for the Court to conclude that Dr. Wang's use of the various statistical methods he applies (for example, the "chi-square test" or the "Student's t-test") are at all appropriate here, irrespective of whether his math, as applied to those methods, is correct. This is especially the case given the timing of Plaintiffs' motion for injunctive relief, which was, to a near certainty, designed to shield their experts, including Dr. Wang, from any meaningful discovery.

But even assuming, *arguendo*, Dr. Wang has sufficient knowledge of statistics and statistical methods, courts have recognized that statistical analyses, such as his, that account for a limited set of variables in the context of voter choice are inherently unreliable. Specifically, the only variables that Dr. Wang claims to have taken into account in his statistical analysis are: (i) whether a primary candidate is bracketed with the "county committee," *i.e.* appears on the supposed "county line," (ii) incumbency; and (iii) party endorsement. (Report at 9-14).

Otherwise, according to Dr. Wang, primary candidates are considered equal, and their odds of securing the nomination are supposedly heavily influenced by the "average" advantage New Jersey's ballot design provides to the candidate that is bracketed with the "county committee." (Report at 11).

The Eleventh Circuit, in *Jacobson v. Florida Sec. of State*, 957 F.3d 1193 (11th Cir. 2020) criticized this methodology, and the putative expert who employed that method, Dr. Jon Krosnick, to whom Dr. Wang's approvingly cites. (Report at 14). Specifically, *Jacobson* involved a challenge to Florida's general election ballot design that awarded first position to the party that won the prior gubernatorial election. Dr. Krosnick, like Dr. Wang here, purported to calculate the "average advantage" that Florida's ballot design afforded to candidates who appeared first on the ballot, and claimed that the odds this advantage came by chance was one one-thousandth of one percent. *Jacobson v. Lee*, 411 F. Supp. 3d 1249, 1269 (N.D. Fla. 2019), *vacated*, 957 F.3d 1193 (11th Cir. 2020). In vacating the district court's order on standing grounds, the Eleventh Circuit found Dr. Krosnick's methodology and conclusions to be unreliable, explaining:

> [The plaintiff's] experts testified, and the district court found, that candidates who appear first on the ballot in Florida receive an *average* primacy effect vote of about five percent. But the experts acknowledged that this average measure tells us nothing about the existence or size of the primacy effect in any given election. Dr. Krosnick agreed that his analysis did not mean that every Republican candidate receives a five percent advantage

> by being listed first. As he explained, the primacy effect will be larger in some races and smaller in others. Indeed, because [the plaintiff] relies solely on an average measure of the primacy effect, we cannot know how often the primacy effect is zero and how often it is much greater than five percent. Any estimates we might make about the variance in the primacy effect across races would be pure speculation.
>
> …
>
> [T]he average measure of the primacy effect treats all elections as indistinguishable, even though their individual situations are quite different. In low-information races between Democrats and Republicans, the primacy effect may be quite pronounced. But in an especially competitive, high-information race, the primacy effect may be negligible or nonexistent. Likewise, some races in noncompetitive districts may have no Republican candidates on the ballot at all and, hence, no primacy effect. An average measure of the primacy effect across all elections cannot tell us whether ballot order has diluted or will dilute [the plaintiff's] or any other citizen's vote in any particular election.

*Jacobson*, 957 F.3d at 1203-04 (quotations and alterations in original omitted) (emphasis in original).

In sum, despite his credentials and claims of extreme sounding improbabilities, Dr. Wang's analysis, in reality, only supports the unremarkable conclusion that, on average, primary candidates tend to perform better in counties where they have the endorsement of local elected officials, and that the advantage this endorsement brings fluctuates on a race-by-race basis. Other than speaking generally about human brain's use of "mental shortcuts," there is nothing in Dr.

Wang's analysis, such as it is, that links New Jersey's ballot design to the "average" advantage he calculates it affords to primary candidates, which, in and of itself, is a meaningless metric. His analysis is therefore not helpful, his methodology unreliable, and his testimony therefore should be barred at the preliminary injunction hearing.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion in *limine* and exclude Dr. Samuel S.-H. Wang reports and testimony in this matter.

Respectfully submitted,

**GENOVA BURNS LLC**
*Attorneys for Defendants*
*Christopher Durkin, Joanne Rajoppi and*
*Danielle Ireland-Imhoff*


By: */s/ Angelo J. Genova*
    ANGELO J. GENOVA
    RAJIV PARIKH
    JENNIFER BOREK

March 18, 2024