# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, et al.<br><br>      Plaintiffs,<br><br>v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et. al.,<br><br>      Defendants.<br><br>- and -<br><br>DALE A. CROSS, in his official capacity as Salem County Clerk, et al.,<br><br>      as Interested Parties. | Civil Action No.: 3:24-cv-1098 (ZNQ)(TJB) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 5 TO EXCLUDE THE INTRODUCTION OR USE OF THE EXPERT REPORT OF DR. JOSH PASEK**

*Of Counsel and on the brief:*
Angelo J. Genova, Esq.
Rajiv D. Parikh, Esq.
Jennifer Borek, Esq.

*On the brief:*
Daniel A. Lebersfeld, Esq.
Katherine Szabo, Esq.

**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
Fax: (973) 533-1112
*Attorneys for Defendants*
*Christopher Durkin, Joanne Rajoppi, and Danielle Ireland-Imhof*

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT .............................................................................................................1

    I.     Pasek relies on improper sources ........................................................3

    II.    Pasek's observations of certain voters fail to account for relevant variables..................................................................................................4

    III.   Pasek's study was plagued by a flawed design....................................4

CONCLUSION...........................................................................................................6

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ...................................................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993).............................................................................................1, 2

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)................................................................................................2

*Hartle v. FirstEnergy Generation Corp.*,
   No. CIV.A. 08-1019, 2014 WL 1317702 (W.D. Pa. Mar. 31, 2014)...................6

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994) .....................................................................................2

*Tyus v. Urban Search Mgt.*,
   102 F.3d 256 (7th Cir.1997) ..................................................................................2

*United States v. Hall*,
   93 F.3d 1337 (7th Cir.1996) ..................................................................................2

## **Rules**

Fed. R. Evid. 702 .......................................................................................................1, 2

Defendants Christopher Durkin, Joanne Rajoppi, and Danielle Ireland-Imhof, in their official capacities, respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), to exclude the testimony of Dr. Josh Pasek ("Pasek"), the proffered expert witness of Plaintiffs.

## ARGUMENT

Pursuant to Fed. R. Evid. 702, an expert who is "qualified . . . by knowledge, skill, experience, training, or education may testify" before the Court if such testimony 1) will help the trier of fact understand evidence or determine a fact at issue, 2) is based on sufficient facts or date, 3) is the product of reliable principles and methods, and 4) reflects a reliable application of the principles and methods to the facts at issue. These requirements were codified in the Federal Rules of Evidence following the Supreme Court's decision in *Daubert*, which held that the district court is responsible for carefully assessing the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589–95 (1993).

In addition to the facts enumerated in Fed. R. Evid. 702, the Supreme Court has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique "can be (and has been) tested," *Daubert,* 509 U.S. at 593; (2) "whether the theory or technique has been subjected to peer review and publication," *id.;* (3) a technique's "known or potential

1

rate of error," and "the existence and maintenance of standards controlling the technique's operation," *id.* at 594; and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community. *Id.* Ultimately, the Supreme Court has held that:

> nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Expert opinion testimony based on data or a methodology that are "simply inadequate to support the conclusions reached" must be excluded. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). Indeed, "*any* step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible." *Id.* at 267 (quoting *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 745 (3d Cir. 1994) (emphasis in original)). This stringent approach to expert testimony has also been applied to the social sciences. *See, e.g., Tyus v. Urban Search Mgt.,* 102 F.3d 256, 263 (7th Cir.1997); *United States v. Hall,* 93 F.3d 1337 (7th Cir.1996).

The report proffered by Pasek (Complaint, Ex. B (Dkt. #1-2)) does not meet the requirements of Fed. R. Evid. 702. Several of Pasek's assertions are supported by unreliable sources, his research fails to account for critical variables, his study

design is flawed, and he reaches unsupported conclusions. Just one of these flaws is enough to render Pasek's report inadmissible – together, they are blatant indicators that Pasek's testimony should be excluded.

### I.     Pasek relies on improper sources.

Pasek's opinion runs the gamut of election and voting related issues potentially implicated by this lawsuit and by the bracketing system in place across most of New Jersey's counties. Many of these assertions are based not on Pasek's own observations and analysis, but on other sources. While the breadth of works cited by Pasek may appear impressive at first glance, a thorough review reveals Pasek's willingness to rely on flawed, and even incomplete, opinions.

In his report, Pasek claims that "eye tracking studies" show that voters' method of examining ballots may cause them to overly focus on the left side of the ballot, while "visual attention studies" demonstrate that voters may become confused about separate elections if candidates for the same office are split between ballot columns. *See* Ex. B., Pasek Expert Report ("Pasek Rep."), ¶¶ 101-102. To support these conclusions, Pasek relies on student works, specifically one from an undergraduate student and another from a master's student. These are not expert, peer reviewed, or reliable opinions – instead, they are a reflection of the authors' incomplete study of the issues they happen to address. Pasek cites a similarly flawed report in his recitation of international evidence of "name order effects," including

3

an incomplete and preliminary report that claims to study ballot order in the Spanish Senate. *See* Pasek Rep., ¶ 14.

## II. Pasek's observations of certain voters fail to account for relevant variables.

In determining that New Jersey's bracketing system confers an unfair advantage on candidates in the first few positions, Pasek fails to consider other variables that can distinguish candidates regardless of ballot placement. Indeed, the only other variable that Pasek appears concerned with is that of the county party slogan. By randomizing the assignment of party slogans, Pasek believes he can overcome voters' impressions of "candidate quality." *See* Pasek Rep., ¶ 114. However, Pasek fails to acknowledge the obvious: that perceptions of candidate quality are influenced by candidate experience, name recognition, campaign advertising, candidate accolades, and more. This is particularly true in the upcoming Democratic Primary Election, which Pasek focused his study on, as several candidates running are easily recognizable to New Jersey voters, many of whom have likely already decided who to vote for regardless of ballot design.

## III. Pasek's study was plagued by a flawed design.

Pasek repeatedly asserts that New Jersey's ballot design either confuses, fatigues, or unduly influences voters. *See* Pasek Rep., ¶ 94, 101-102, 104-105. Accordingly, one would expect that in designing his study, Pasek would take appropriate measures to avoid complications with his own methodology that could

4

confuse, fatigue, or influence his test subjects. Instead, the methods behind Pasek's study favored the office-block ballot design from the outset.

For his study, Pasek randomly provided participants with either an office-block or party-column style ballot. *See* Pasek Rep., ¶ 118. All candidates were recruited via text message, and those who ultimately participated received a link to a ballot on their phone. Participants then had to use their phones to review and fill out the ballot assigned to them. *See* Pasek Rep., n. 13. Because this study was conducted via phone screens, individuals who received party-column style ballots, which needed to be manipulated into landscape view to make them legible, were immediately disincentivized from following through with selecting candidates or prevented from seeing all candidates on the ballot. *See* Pasek Rep., pp. 45-46. In contrast, the office-block ballot apparently did not have text or visibility issues. *See* Pasek Rep., p. 44. Moreover, by conducting his study via phone screens instead of a controlled simulation of typical election experiences, Pasek fails to account for the behavior that voters are likely to exhibit in real world election scenarios, such as voting by mail or appearing at a polling place with a clearly legible voting machine.

Following completion of this study, Pasek determined that "individuals are less enthusiastic about filling out party-column ballots than they are about completing office-block ballots," because those who received a party-column ballot to their phone were observed as more likely to abandon the survey or leave their

5

ballots incomplete compared to those who received office-block ballots. *See* Pasek Rep., ¶¶ 166-167. Given his purported expertise regarding voter confusion and fatigue, it is surprising that Pasek did not immediately understand the design flaws in his study, and how they favored the office-block ballot over the party-column ballot. These flaws render Pasek's study inadmissible, as the fundamental question – whether voters prefer a ballot with a party-column or office-block design – was improperly presented to participants. *See Hartle v. FirstEnergy Generation Corp.,* No. CIV.A. 08-1019, 2014 WL 1317702, at *6 (W.D. Pa. Mar. 31, 2014).

## CONCLUSION

For the foregoing reasons, Defendants Christopher Durkin, Joanne Rajoppi, and Danielle Ireland-Imhof respectfully request that the Court grant their motion in *limine* and exclude Dr. Josh Pasek's reports and testimony in this matter.

    Respectfully submitted,

    **GENOVA BURNS LLC**
    *Attorneys for Defendants,*
    *Christopher Durkin, Joanne Rajoppi,*
    *and Danielle Ireland-Imhof*

    By: *s/ Angelo J. Genova*
        ANGELO J. GENOVA
        JENNIFER BOREK
        RAJIV D. PARIKH

Dated:  March 18, 2024

17472203v2 (1154.215)