

**GORDON J. GOLUM, ESQ.**

T: 732.855.6056
F: 732.726.6523
ggolum@wilentz.com

90 Woodbridge Center Drive
Suite 900 Box 10
Woodbridge, NJ 07095-0958
732.636.8000

March 22, 2024

<u>*VIA ELECTRONIC FILING*</u>
Hon. Zahid N. Quraishi, U.S.D.J.
United States District Court of the District of New Jersey
Clarkson S. Fisher Building
402 East State Street Trenton, NJ 08608

      Re: *Kim, et al. v. Hanlon, et al.*
         Civil Action No.:  24-1098 (ZNQ)(TJB)

Dear Judge Quraishi,

  This firm represents defendant Somerset County Clerk in the above-referenced matter. We write on behalf of all defendant County Clerks in response to the letter by the Attorney General ("AG"), non-party to this action, filed on the eve of the Preliminary Injunction Hearing. ECF No. 149.

  While under N.J.S.A. 52:17A-4(e), the New Jersey AG within state government is the sole legal advisor for all state agencies, boards and authorities, and is also responsible for interpreting all statutes and legal documents, he does so as legal advisor only for those clients. There are "Formal Opinions," which the AG's letter ("AG's Letter") was not. What was issued in this instance was perhaps at best an informal opinion. There are "Formal Opinions" of the Department of Law and Public Safety ("DL&PS") that we understand go though an intensive internal process, are deeply researched, carefully drafted, reviewed by a committee, signed off by the Director of the Division of Law, and then forwarded to the Office of the Attorney General, and if approved, are publicly released and published in print and electronically and filed. They carry a designation as a "Formal Opinion" with a number and year. As noted by former AG Parsons who authored this "Formal Opinion" process in 1948, "Ordinarily, when an opinion that is to be written involves the payment of money, the construction of a statute, or a constitutional or other question of broad public concern, the formal opinion is used." Attorney General Theodore Parsons, Opinions of the Attorney General of New Jersey, https://www.nj.gov/oag/oag/ag_opinions_1949-1950.pdf.

  Moreover, despite the fact that the AG had the opportunity to join the instant matter, he demurred, did not appear at the hearing or file any submissions prior to his letter, has filed no appearance, has not sought to intervene or noticed this Court or the parties of his intention to submit



Hon. Zahid N. Quraishi, U.S.D.J.
March 22, 2024
Page 2

this letter. As the letter states, the AG does not represent any state agency responsible for enforcing the ballot statutes. AG's Letter, 5.

At the initial Case Management Conference in this matter, Deputy Solicitor General Angela Cai appeared on behalf of the AG. At that time, the AG had already taken a position as intervenor in *Conforti v. Hanlon* that was contrary to his recent letter. There, the AG argued that "the State not only has a rational basis for its bracketing statutes—it has a compelling one." *Conforti v. Hanlon*, No. 20-08267, State's Brief in Support of Motion to Dismiss, ECF No. 53-1, at 30. As the AG reasoned there, "the bracketing statutes set forth at N.J. Stat. Ann. §19:23-18 and §19:49-2 serve the State's interests in ensuring that voters understand candidates' associational preferences, providing a manageable and understandable ballot, and ensuring an orderly election process." *Id.* at 28-29.

Thus, any issues that the AG had with respect to the constitutionality of the statutes in the present matter should have been known to him by the initial Case Management Conference, but he nonetheless chose not to express his position there, instead waiting until the evening before the preliminary injunction hearing to submit his letter. The odd timing itself, like the timing of Plaintiffs' Verified Complaint, has the effect of unduly prejudicing the Defendant Constitutional Officers from adequately addressing the injunctive relief that risks compromising the integrity of our elections in violation of the *Purcell Principle*. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).

Ironically, the AG recently submitted a letter in *Conforti v. Hanlon* conceding that "28 U.S.C. § 2403(b) was designed to ensure that the [AG] had an opportunity to defend the validity of a statute before a court declared that statute unconstitutional—not an opportunity to intervene to ask that one be invalidated." No. 20-08267, State's Brief in Support of Motion to Withdraw as Intervenor, ECF No. 188-1, at 3. Yet the AG's Letter goes beyond the purpose of 28 U.S.C. § 2403(b) by seeking to declare the ballot statutes unconstitutional and instead support Plaintiffs' efforts to invalidate N.J.S.A 19:49-2. As the AG acknowledges that his intervention is discretionary, there was no reason for him to opine on the constitutionality of the statute in passing on his right to intervene in this matter.

The AG justifies his eleventh hour decision not to defend the constitutionality of the ballot statutes by citing *Gen. Assembly of State of New Jersey v. Byrne*, 448 A.2d 438, 440 (N.J. 1982), where his office declined to defend a statute that violated separation of powers principles. AG's Letter, 4. The AG should know better than anyone that it is the role of the legislature to create the laws and his core function to enforce them, not to usurp the legislature's role.

The AG presumes to speak for the State by declaring that "the record lacks evidence showing that these laws advance the relevant government interests." *Id.*, 3. His letter further acknowledges that "the Attorney General traditionally defends all state statutes from constitutional challenge in any case in which there is any plausible basis to defend the law," and that "this Court has made clear in its prior decisions that the constitutional question at issue turns on the evidence." *Id.*, 4-5. When the letter was submitted, the only record the AG had to rely upon to reach his conclusion was the untested academic reports submitted by Plaintiffs, without the benefit of rebuttal experts or even cross-examination of those claims. Moreover, the purpose of the preliminary injunction hearing was focused on whether to temporarily enjoin enforcement of the ballot statutes prior to final adjudication on the merits. The County Clerks' concern—and the focus of the hearing—was on the feasibility of



Hon. Zahid N. Quraishi, U.S.D.J.
March 22, 2024
Page 3

complying with Plaintiffs' request for relief, not on presenting a robust defense of the statutes on the merits that would be presented by the absent necessary parties—the affected candidates and political committees—and traditionally, *the AG*. *See* AG's Letter, at 3. That phase of the litigation is yet to come, and as a result the AG's conclusion is ill-founded and premature.

The AG recognized in *Conforti* that the "[p]laintiffs' theories about what led to a candidate's success or lack thereof often depend on numerous, sometimes unquantifiable, factors." *Conforti v. Hanlon*, No. 20-08267, State's Brief in Support of Motion to Dismiss, at 28. This is consistent with the testimony of Plaintiffs' expert Julia Sass-Rubin, Ph.D, who conceded that she failed to account for the impact of campaign funding, volunteer support, and endorsements from other candidates that are part and parcel with winning a county political convention and being bracketed with other candidates with the party's support. [Preliminary Injunction Hearing Tr. 328:10-329:10.]

The AG states that a defense to the constitutionality of the statutes is not warranted because "no official that the AG represents in court implements these laws, so there is no risk that any state agency would simultaneously be enforcing but declining to defend a particular statute." *Id.*, 5. This is too narrow a view of the State's multifaceted election process, which indeed requires the AG's client, Secretary of State and Lieutenant Governor Tahesha Way, to certify the County Clerk's compliance with the UOCAVA, a federal law to protect the franchise of military members serving our nation abroad. *See* 52 U.S.C. § 20301 *et seq*; N.J.S.A. 19:63-5 to -9. As the deadline for mailing out ballots in compliance with the UOCAVA is rapidly approaching, Lt. Governor Way's ability to certify compliance will be adversely impacted if the County Clerks are unable to comply with an injunction granted this close to the election. Thus, the AG's client has a clear interest starkly at odds with the relief Plaintiffs seek due to the infeasibility of complying with the UOCAVA's deadlines if the injunction is granted. The AG admits in a footnote that he does not address the *Purcell Principle* and factors the Court is to consider in granting a preliminary injunction, and for that reason alone his letter serves no purpose with respect to the present motion. AG's Letter, at 5, n.12.

Finally, the AG's Letter weighing in as the State's chief law enforcement officer has introduced issues to this matter for the County Clerks to consider, without any of the necessary guidance. Where does this leave the Clerks? The AG's Letter does not have the effect of invalidating N.J.S.A. 19:49-2. As a result, the County Clerks must still be guided by the statute unless this Court adjudicates otherwise. Yet the AG's proclamation that enforcement of the ballot statute is unconstitutional may impact the Clerks' qualified immunity from claims pursuant to 42 U.S.C. §1983. *See Morillo v. Torres*, 222 N.J. 104, 118 (2015) (holding qualified immunity "protects all officers 'but the plainly incompetent or those who knowingly violate the law.'"). Thus, the AG's Letter causes further confusion to the administration of our elections that is starkly at odds with the *Purcell Principle*.

For all the foregoing reasons, the Court should not consider the AG's Letter.

Respectfully submitted,

*/s/ Gordon J. Golum*
GORDON J. GOLUM

CC:   All counsel (*via ECF*)