# BROWN & CONNERY, LLP

ATTORNEYS AT LAW
360 HADDON AVENUE
WESTMONT, NEW JERSEY 08108
(856) 854-8900
FAX (856) 858-4967

William M. Tambussi, Esq.
Certified by the Supreme Court of New Jersey as a Civil Trial Attorney
wtambussi@brownconnery.com
Direct Dial: (856) 858-8175



March 22, 2024

**Via Electronic Filing**
Hon. Zahid N. Quraishi
United States District Court
Clarkson S. Fisher Building
402 East State Street
Trenton, New Jersey 08608

    Re:    **Andy Kim, et al. v. Hanlon, et al.**
              **Docket No. 3:24-cv-01098-ZNQ-TJB**

Dear Judge Quraishi:

This office represents Intervenor Camden County Democratic Committee ("CCDC") in the above matter. In accordance with Your Honor's Order, please accept this letter in response to the letter filed by the New Jersey Attorney General on March 17, 2024.

**I.   This Court Need Not Consider the Attorney General's Reasons For His Decision Not to Intervene as the Attorney General Is Not A Party to This Action.**

On March 17, 2024, the Attorney General, at the eleventh-hour and on the eve of the hearing on Plaintiffs' Motion for Preliminary Injunction ("Motion"), filed a letter concluding that the statutes challenged in this litigation are unconstitutional. *See* ECF No. 149, at 1. In his letter, the Attorney General confirms that he will not be intervening in this matter and further provides the "reasons" for his decision not to defend the constitutionality of the challenged statutes. *Id.* First, the Attorney General has no authority to declare a statute unconstitutional. While the Attorney General possesses many powers and duties, including attending generally to all legal matters in which the State is a party or in which its rights or interests are involved and enforcing the provisions of the Constitution and all other laws of this State, *see* N.J.S.A. § 52:17A-4(g), (h), nothing delegates to him the authority to declare a statute unconstitutional. That power lies exclusively with the court. *State in Interest of J.G.*, 289 N.J. Super. 575 (App. Div. 1996) ("To declare a statute unconstitutional is a judicial power which must be exercised delicately.").

7O98789.DOCX

**BROWN & CONNERY, LLP**

Second, the Attorney General's letter informing the Court that he will not be intervening in this matter effectively negates any interest that he could have claimed in this action. Accordingly, the Attorney General's letter relegates his status in this litigation to nothing more than that of a non-party. As a non-party, this Court owes no consideration to the Attorney General or the "reasons" underlying his decision not to defend the constitutionality of the challenged statutes. The Attorney General cannot be permitted to backdoor his opinions on the constitutionality of the statutes without appearing in this case as a party to maintain such interests. His "reasons" for his decision not to intervene should be disregarded in their entirety.

There is nothing "exceptional" about this case that would justify the Attorney General's decision not to defend the constitutionality of the challenged statutes. Nothing in the legislative history or the statutory framework of the challenged statutes has changed in the three years since the Attorney General intervened in the *Conforti* matter to defend the constitutionality of the exact same statutes that would warrant a departure from that decision in this matter. The Attorney General's argument to the contrary is meritless.

Simply put, the Attorney General is a non-party in this litigation who disclaimed any interest he could have maintained in this action. Whether the Attorney General chooses not to intervene in this action and flout his obligations to defend the constitutionality of a statute he previously admitted the State has an interest in maintaining is left to his discretion. His "reasons" for doing so, as a non-party, have no place before this Court.

## II. Alternatively, the Attorney General Is Judicially Estopped from Not Defending the Constitutionality of the Challenged Statutes.

Alternatively, the Attorney General is judicially estopped from not defending the constitutionality of the challenged statutes because asserting this position is irreconcilably inconsistent with the position asserted by the Attorney General in the *Conforti* matter. "Judicial estoppel may be imposed only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001).

In *Conforti*, the Attorney General filed a letter "as confirmation that the State of New Jersey will be participating in this matter in defense of the challenged statutes." *See Conforti, et al. v. Hanlon, et al.*, Civil Action No. 3:20-cv-08267-ZNQ-TJB (hereinafter "*Conforti* Docket"), ECF No. 46. Notably, this was a one page, one-sentence letter indicating the Attorney General's intention to participate in *Conforti* without an explanation of the reasons for doing so. *Id.* On March 29, 2021, the Attorney General filed a Motion to Intervene as well as a Motion to Dismiss Plaintiffs' First Amended Complaint. *See Conforti* Docket, ECF Nos. 52, 53. The Attorney General's Motion to Dismiss thoroughly describes the interests of the State in defending the constitutionality of the statutes and states in unambiguous terms that the challenged statutes do not violate the federal Constitution. *See Conforti* Docket, ECF No. 53-1, at 2 ("the only issue for this

federal court to decide is whether allowing bracketing violates the federal Constitution. It does not."); *Id.* at 20 ("Plaintiffs' claims as to violations of the right to associate or right to vote should be rejected because the challenged bracketing statutes do not burden those rights.") *Id.* at 29 ("the bracketing laws are constitutionally nondiscriminatory[.]"); *Id.* at 31 ("the bracketing statutes fall well within the State's Constitutionally-delegated authority because they advance the Legislature's chosen method for administering free and fair elections."). This position directly contradicts the position now taken by the Attorney General that these same statutes are unconstitutional.

Furthermore, the Attorney General's assertion that "the record lacks evidence showing that these laws advance the relevant government interests" is irreconcilably inconsistent with the position taken by the Attorney General in the *Conforti* matter. *See* ECF No. 149, at 3. In *Conforti*, the Attorney General argued that "the Legislature could find that New Jersey's bracketing statutes protect important governmental interests, such as preserving candidates' rights to associate or not to associate, making those associative characteristics of candidates known to voters, providing a manageable and understandable ballot, and ensuring an orderly election process." *See Conforti* Docket, ECF No. 53-1, at 25. These interests, as advanced by the Attorney General, "outweigh any burden on the First Amendment rights, which, . . . are either nonexistent or limited." *Id.* Now, the Attorney General claims that the bracketing statutes "impos[e] a burden on [candidates'] associational rights. *See* ECF No. 149, at 4. The Attorney General's divergent positions in this matter and in the *Conforti* matter cannot be sustained.

The motivations for the Attorney General's change in position are currently unknown. Nonetheless, it is difficult to accept the Attorney General's contention that the "evidence," which, according to him, did not exist when he filed his brief in *Conforti*, "does not provide a basis for intervening to defend their constitutionality." *See* ECF No. 149, at 2. The Attorney General's new position is predicated on the notion that "factual and expert record evidence" exists, including historical data of primary results within the State and "cognitive mechanisms" identified by "experts." *Id.* at 3. However, such evidence was presented in the *Conforti* matter prior to the Attorney General's decision to intervene to defend the constitutionality of the statutes therein. Indeed, Plaintiffs filed with their Amended Complaint in *Conforti* an "Executive Summary" prepared by Joanne M. Miller "discuss[ing] in detail the primacy effect and other ballot design features" and "contesting the validity of New Jersey primary ballot design laws." *See Conforti* Docket, ECF No. 33, at ¶ 96; ECF No. 33-2, at 1. Such "evidence" cannot form the basis for the Attorney General's change in position when such evidence was presented in the *Conforti* matter and the Attorney General still opted to intervene to defend the constitutionality of the challenged statutes.

The Attorney General's letter filed at the eleventh-hour on the eve of the hearing on Plaintiffs' Motion can only be characterized as a change in position in "bad faith" designed in a "manner threatening to the court's authority or integrity." *Montrose Med. Grp. Participating Sav. Plan*, 243 F.3d at 777-78. The timing of the letter casts doubt on the Attorney General's contention that the "evidence" in the record underlies the decision not to defend the constitutionality of the statutes. If, as the Attorney General asserts, the "evidentiary record" was of such particular significance to his decision to not defend the statutes, surely he would have waited until *after* the hearing on Plaintiffs' Motion in order to weigh the evidence presented by the Defendants

contesting Plaintiffs' assertions. The Attorney General's preemptive filing prior to having a complete evidentiary record belies any contention that the "evidence" is the impetus for the decision not to defend the constitutionality of the challenged statutes.

In sum, the Attorney General is judicially estopped from not defending the constitutionality of the challenged statutes, as this position is irreconcilably inconsistent with his position in the *Conforti* matter and results in a change in position in bad faith that is in a culpable manner threatening to the court's authority and integrity.

### III. Even if this Court Were to Consider the Attorney General's Letter, New Jersey's Bracketing and Ballot Design Statutes Are Not Unconstitutional.

To the extent that this Court is inclined to consider the arguments of the Attorney General, New Jersey's bracketing and ballot design statutes for primary elections are not unconstitutional and, therefore, should be upheld. The Attorney General's position that the challenged statutes are unconstitutional is premised exclusively upon the "expert" reports submitted by Plaintiffs. *See* ECF No. 149, at 2-4. However, the Attorney General fails to appreciate that courts have consistently upheld the constitutionality of these statutes. As stated by the Appellate Division in *Schundler v. Donovan*, 377 N.J. Super. 339, 348 (App. Div. 2005), "the integrity and fairness of the electoral process is the primary principle to be advanced in all such matters; and equality of treatment among candidates for the same office is a linchpin of that idea."

The Attorney General argues that there is an "electoral advantage" for candidates who bracket and a "corresponding disadvantage" for candidates who do not bracket, "imposing a burden on associational rights." *See* ECF No. 149, at 3. However, the Attorney General's contention cannot be reconciled with the state court decisions upholding the constitutionality of the bracketing statutes. As stated in *Schundler*:

> There can be no rights violation where a county clerk makes a fair effort to follow the dictate that all candidates for the highest office, i.e., U.S. Senator or Governor, be treated equally to the extent physical constraints allow, as long as, at the same time, a good faith effort is made to effect the expressive rights of all candidates.

*Schundler*, 377 N.J. Super. at 348.

CCDC has steadfastly maintained that, in Senatorial and Gubernatorial elections in Camden County, Plaintiffs are afforded the exact same opportunities to appear in first position on the ballot as any other candidate, regardless of whether they bracket or choose not to bracket with other candidates. It cannot reasonably be stated that the challenged statutes are unconstitutional as applied to U.S. Senatorial and Gubernatorial elections in Camden County. The statutes are applied in a nondiscriminatory manner whereby Plaintiffs are provided equal treatment and equal opportunity to obtain first position, regardless of whether Plaintiffs choose to bracket. The challenged statutes require nothing more than equal treatment among all candidates. The bracketing and ballot design system does not infringe on Plaintiffs' access to the ballot, does not deny voters the right to vote for Plaintiffs if they so choose, and does not impair Plaintiffs' ability

**BROWN & CONNERY, LLP**

to not associate with other candidates or political parties. The Attorney General's perceptions regarding the alleged infringement on Plaintiffs' constitutional rights are speculative and misguided, and cannot eliminate the constitutionally protected associational rights afforded to CCDC under the First and Fourteenth Amendments.

The Attorney General's suggestion that an office-block ballot can adequately communicate candidates' legitimate associational interests finds no support in legal precedent. Rather, the Attorney General's argument ignores the constitutionally-protected associational rights of political organizations as guaranteed by *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214 (1989). In *Eu*, the Court stated,

> Barring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association. It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments. Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, but also that a political party has a right to identify the people who constitute the association, and to select a standard bearer who best represents the party's ideologies and preferences.

*Id.* at 224 (internal citations omitted). Adopting an office-block ballot, at the eleventh hour without discovery and a full plenary hearing and without the opportunity to educate the electorate in a presidential election year on a radically changed ballot, as suggested by the Attorney General, would impair CCDC's right to endorse candidates and its freedom to associate with and identify Democratic candidates for office that best represent CCDC's ideologies and preferences. The legislative framework as designed fully protects the constitutional rights of political party organizations while affording candidates the same opportunity to draw for ballot position in a nondiscriminatory manner. The statutes should be upheld as constitutional.

The Attorney General's letter is lacking any definitive factual or legal basis. The Attorney General's naked political beliefs as to the constitutionality of the statutes that he is tasked with defending warrant no consideration or deference by this Court. CCDC respectfully requests that the Attorney General's letter be stricken.

        Respectfully submitted,
        **BROWN & CONNERY, LLP**

        *s/ William M. Tambussi*
        William M. Tambussi

cc: All Counsel of Record (*via ECF*)