**WEISSMAN & MINTZ** LLC
ATTORNEYS AT LAW

STEVEN P. WEISSMAN
ANNMARIE PINARSKI
WILLIAM G. SCHIMMEL
IRA W. MINTZ
FLAVIO L. KOMUVES
JASON L. JONES
JUSTIN SCHWAM
PATRICIA A. VILLANUEVA

Of Counsel
ROSEMARIE CIPPARULO
BRETT M. PUGACH
ADAM M. GORDON
YAEL BROMBERG

Counsel
DAVID A. MINTZ*

* ADMITTED TO PRACTICE ONLY IN NEW YORK

220 DAVIDSON AVENUE
SUITE 410
SOMERSET, NEW JERSEY 08873
(732) 563-4565
FAX (732) 560-9779

www.weissmanmintz.com

90 BROAD STREET
SUITE 254
NEW YORK, NEW YORK 10004
(212) 509-0918

JOEL N. WEISSMAN (1957-1998)
MARK ROSENBAUM (1955-2002)



## BROMBERG LAW LLC

YAEL BROMBERG, ESQ., PRINCIPAL
T: (212) 859-5083 | F: (201) 586-0427
ybromberg@bromberglawllc.com

43 West 43rd Street, Suite 32
New York, NY 10036-7424

P.O. Box 1131
Glen Rock, NJ 07452-1131

March 22, 2024

VIA ELECTRONIC FILING
Hon. Zahid N. Quraishi, U.S.D.J.
United State District Court of the District of New Jersey
Clarkson S. Fisher Building
402 East State Street
Trenton, NJ 08608

    RE:    **Kim, et al. v. Hanlon, et al.**
             **Civil Action No.: 24-1098 (ZNQ) (TJB)**

Dear Judge Quraishi:

    Plaintiffs, through undersigned counsel, submit this letter regarding the March 17, 2024 letter from the New Jersey Attorney General ("NJAG") filed in this case (DE149). This letter also addresses a related filing by the NJAG in *Conforti v. Hanlon*, Civ. A. No. 20-08267, specifically DE181 in that matter, which is another constitutional challenge to New Jersey's ballot design laws, also pending before Your Honor. Below, we argue that while the NJAG's views on the constitutionality of New Jersey's primary ballot design laws and practices do not bind this Court, they are nevertheless entitled to judicial notice and consideration, given the NJAG's role as the state's chief law officer charged with the duty to defend and enforce our laws. Moreover, even if the NJAG is not a party, and does not represent a party, in this matter, he most certainly is a party to the *Conforti* matter and his filings there is cognizable and useful in this matter.

To be sure, pursuant to Article III of the United States Constitution, this Court has plenary authority to render the ultimate decision regarding the constitutional question as presented. *See Marbury v. Madison*, 1 Cranch 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."). "In those rare instances" in which the Attorney General "may lawfully act in contravention of a statute" by refusing to enforce it due to an analysis of its unconstitutionality, "it is the Constitution that dispenses with the operation of the statute" via the judiciary, not the Executive via the Attorney General. *Att'y General's Duty to Defend & Enforce Constitutionally Objectionable Legislation*, 43 Op. Att'y Gen. 275, 275 (1980) (hereinafter "U.S. Attorney General Opinion on AG's Duty"), *available at*: https://www.justice.gov/file/149186-0/dl?inline.

The Court's plenary power, and the Attorney General's declination to defend the statute in *Kim*, and to withdraw as an intervenor in *Conforti*, need not be in tension. The Court may take judicial notice of both 1) the AG's March 17, 2024 letter filed in *Kim v. Hanlon* declining to intervene to defend the statutes at issue, and 2) the AG's March 20, 2024 motion to withdraw as intervenor filed in *Conforti*, while engaging in an independent judicial review of the record.

Procedural History

On March 17, 2024, the NJAG, represented by NJ Solicitor General Jeremy Feigenbaum, filed a letter in this Court (DE149), providing notice that the NJAG decided to not intervene in this matter, waiving any remaining time that the Rules might give him to do so, and stating his reasons therefor. Thereafter, on March 20, 2024, the NJAG filed a motion to withdraw his appearance in *Conforti* (*Conforti,* DE188). This motion had appended to it the above-mentioned letter of March 17, 2024.

AG Platkin advised the Court that his decision to not intervene in this case, and to withdraw as intervenor in *Conforti*, was based on his conclusion that the State's ballot design "statutes are unconstitutional and therefore [he] will not be defending them." (DE149 at 1). He then canvassed the evidence presented in this case, *id.* at 3-4, adding that "in the multiple years since these state statutes were challenged," [i.e. referring to the *Conforti* case begun in 2020], his office had not "identified reliable empirical evidence countering" the analysis offered in *Kim*. Importantly, the letter rejected the notion that the grid ballot used in New Jersey with a bracketing system for primary elections, a national outlier, is necessary to advance government interests. (*Id*. at 4.)

During the March 18, 2024 evidentiary hearing in this matter, this Court noted the filing of the NJAG's letter. Rather than simply accept it as a filing to be considered, the Court stated its "concern is that I don't even know if I should consider that letter at all. The attorney general is not a party to the case. In fact, he actually failed to intervene and stated he was not going to intervene in the case" nor was he an amicus curiae. (T14). The Court also pondered whether the letter might cause "prejudices to the defense here." (T15). Accordingly, besides hearing brief argument from the parties, the Court extended to counsel an opportunity to submit written argument on whether the NJAG's letter should be considered at all, and any response to the substance of the letter. (T17.)

<u>Analysis</u>

Putting aside for the moment the question of whether the letter was properly filed in *this* case, there can be no doubt that the letter is a proper filing in the *Conforti* case, where the NJAG is an existing party-intervenor who has applied for leave to withdraw from the case after concluding that "the statutes are not constitutional." (*Conforti*, DE181 at 2). It is eminently appropriate for this Court to consider judicial records in another case pending before it as a matter of judicial notice. *See* Evid. R. 201; *Korotki v. Levenson*, CV 20-11050, 2021 WL 2650775, at *3 (D.N.J. June 28, 2021) (noting that it is appropriate to take judicial notice of matter like pleadings, testimony or the record generally in another litigation).

"While there is no general privilege" for the Attorney General "to disregard laws that it deems inconsistent with the Constitution," he may do so "***in rare cases***" where the "duty to the constitutional system may require action in defiance with a statute." U.S. Attorney General Opinion on AG's Duty at 275 (emphasis added). In such a case, the "refusal to defend and enforce an unconstitutional statute is authorized and lawful." *Id*. Should a "conflict" present between his duties to defend and enforce a statute or the Constitution, the Attorney General "must acknowledge his dilemma and decide how to deal with it. That task is inescapably his." *Id*.; *see also id*. at 279. This is consistent with the reasoning offered by the NJAG in this matter regarding his charge to defend "all state statutes from constitutional challenge in any case in which there is a plausible basis to defend the law," unless the "***exceptional cases***" arise where he is convinced that a challenged statute is unconstitutional. (DE 149 at 4, emphasis added.)

The NJAG has previously offered a "constitutional nondefense"[1] of statutes based on an independent determination of unconstitutionality. For example, over Governor Whitman's veto, the legislature passed a 1997 law prohibiting a medical procedure known as a partial-birth abortion. Although the NJAG did not defend the law's constitutionality, the federal court refused the NJAG's motion to dismiss all the executive branch entities from the suit, or at least to relieve them of the obligation to participate as parties in the conduct of the litigation. *Planned Parenthood of Cent. N.J. v. Verniero*, 41 F. Supp. 2d, 478 (D.N.J. 1998), *aff'd sub nom. Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127 (3d Cir. 2000). The NJAG therefore remained listed as a Defendant in the litigation in some nominal capacity before both the district court and Third Circuit Court of Appeals. The Third Circuit simply notes the Defendant Attorney General's declination to defend the act. *Id*. at 482. The NJAG's constitutional nondefense was not deemed controversial, particularly where other counsel was present to defend the constitutionality of the statute in question – as is the case here.

The duties of the federal counterpart, the United States Attorney General ("USAG"), are similar under federal law. The Supreme Court has similarly found unremarkable the USAG's refusal to defend a law the office independently deems unconstitutional. For example, in *Myers v. United States*, 272 U.S. 52, 106-07 (1926), then-President Wilson did not obtain the consent of

---

[1] The AG's refusal to defend the constitutionality of a statute in court has been termed "constitutional nondefense," and is different than the refusal to enforce a constitutionally objectionable statute; the latter being a more aggressive exercise of executive power. *See* Katherine Shaw, *Constitutional Nondefense in the States*, COLUMBIA L. REV. 213, 218 (2014).

3

the Senate, as required by statute, prior to removing a postmaster, because the President concluded that the statute was unconstitutional. *Id*. at 107. Notably, the executive branch therein affirmatively argued against the constitutionality of the statute; the Court independently reached the same conclusion.

More recently, the Supreme Court opined on the implications where the USAG refuses to defend a statute due to a principled determination of its unconstitutionality, despite the USAG's change of perspective on the issue. *United States v. Windsor*, 570 U.S. 744, 753 (2013). Therein, the USAG's previous longtime defense against challenges involving legally married same-sex couples pursuant to Section 3 of the Defense of Marriage Act (DOMA), but reversed course, explaining that it considered "a documented history of discrimination" and "conduct[ed] a new examination of the defense of this provision" causing it to understand that a stricter standard of review applies. *See* Letter from U.S. Attorney General Eric H. Holder, Jr. to Congress on Litigation Involving the Defense of Marriage Act (Feb. 23, 2011), *available at:* https://www.justice.gov/opa/pr/letter-attorney-general-congress-litigation-involving-defense-marriage-act. Accordingly, the USAG stopped defending the statute in pending litigation, while simultaneously enforcing Section 3 in furtherance of its "Take Care" obligations to ensure that the laws be faithfully executed until Congress repeals the statute or the judiciary renders a definitive verdict. The USAG explained– like the NJAG here – "the ***rare case*** where the proper course is to forgo the defense of this statute." *Id*. (emphasis added.) The USAG therein remained a party representing the interests of the United States throughout the litigation.

The Supreme Court in *Windsor* went on to determine the constitutionality of the law despite the Attorney General's refusal to defend it, noting the presence of other parties – like those present here – who could essentially present the other side of the argument, reasoning that prudential considerations demand that the Court insist upon "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." 570 U.S. at 760 (*citing Baker v. Carr*, 369 U.S. 186, 204 (1962)). Therefore, judicial review was not precluded despite the refusal of the USAG to defend the law, and despite the USAG's change in course, while the Supreme Court clearly took notice of the position but simultaneously proceeded to undertake an independent judicial review.

As is the case here, the NJAG has previously changed its position in deciding not to defend a law after a review of new evidence and findings. For example, in *State v. Soto*, the NJAG withdrew its appeal in 1999 based on its independent evaluation confirming the evidence of racially discriminatory traffic stops previously presented by the Office of Public Defender. 324 N.J. Super. Ct. 66 (1996) (unrebutted statistical evidence of disproportionate traffic stops of African-American motorists established de facto policy of targeting them for investigation and arrest). The NJAG continued on in the action, requesting that the Supreme Court of New Jersey issue an administrative order assigning one judge to hear all discovery motions relating to racial profiling by the New Jersey State Police so that the Defendants could pursue their independent claims of selective enforcement. *See State v. Ballard*, 752 A.2d 735 (N.J. App. Div. 2000). The evaluation offered by the NJAG was not set aside despite the office's reversing course, and indeed the NJAG helped to inform ongoing case management.

This is consistent with the role of the NJAG as set out in the 1947 New Jersey Constitution, which provided for the nomination and appointment of the Attorney General by the

Governor with the advice and consent of the Senate. N.J. CONSTITUTION, Section IV, ¶ 3. The position is provided a set term of office that coincides with the Governor, rather than at the pleasure thereof. The distinction is important insofar as the 1947 Constitution also centralized and expanded the role of the Governorship, rendering it one of the most powerful in the country, while also permitting independence by the Attorney General. This independence is all the more important in this litigation given the political dynamics of the 2024 primary elections.

The defense's position that the Attorney General is "estopped" from confessing error and declining to defend a statute is also without merit. (T16). First, "equitable estoppel claims against the government are disfavored" and even if they could be asserted, require evidence of "some 'affirmative misconduct'" on the part of government officials. *Admiralty Condo. Ass'n, Inc. v. Dir., Fed. Emergency Mgmt. Agency*, 594 Fed. Appx. 738, 741 (3d Cir. 2014). The record is bereft of any such evidence here. To the extent that the defense is talking about judicial estoppel, it faces two insurmountable barriers. First, judicial estoppel can only be invoked when the party took a position and prevailed in the prior court, and then strategically took an inconsistent position later. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314, 319 (3d Cir. 2003). Here, the NJAG tried to have the *Conforti* case dismissed, but did not prevail, precluding application of the rule. Moreover, a litigant that changes position after giving a "good explanation," without acting in "bad faith" or without the *intent* "to play fast and loose with the court" cannot be judicially estopped. *Id.* The NJAG's filings in *Conforti* are pellucidly clear: the decision was premised on its lack of success in the *Conforti* motion to dismiss, *coupled with* a deep analysis of the *Kim* evidence and materials, none of which existed when the NJAG decided to participate in *Conforti* (*Conforti* DE181 at 2; *Kim* DE149 at 3-4), and further noting the lack of empirical evidence countering this record evidence in the multiple years since the original 2020 challenge. This is consistent with a good explanation, not an improper attempt to game the Court.

What becomes clear, then, is that the NJAG had three courses of conduct before him. Two would be unbecoming of an officer of the court and the chief law officer for the state: (1) to continue to litigate a claim related to the constitutionality of a state statute in bad faith, or (2) to sit silently aside and allow such litigation to continue, despite its consequential impact on election results and possibly electoral outcomes in violation of the fundamental right to vote. The third – which he followed – was to act as he did, and state his principled reason for this action. Accordingly, the NJAG should not be estopped from taking the position it is taking in its twin *Kim* and *Conforti* filings to prevent further harm to our elections. Judicial notice of the Attorney General's action is therefore proper, despite its change of analysis, as is the Court's plenary authority to independently determine the substantive merits of the legal challenge.

Respectfully submitted,

| | |
|---|---|
| */s/ Brett Pugach, Esq.* | */s/ Yael Bromberg, Esq.* |
| */s/ Flavio Komuves, Esq.* | Bromberg Law LLC |
| Weissman & Mintz LLC | |

*Counsel for Plaintiffs*