# WEISSMAN & MINTZ LLC
### ATTORNEYS AT LAW

STEVEN P. WEISSMAN
ANNMARIE PINARSKI
WILLIAM G. SCHIMMEL
IRA W. MINTZ
FLAVIO L. KOMUVES
JASON L. JONES
JUSTIN SCHWAM
PATRICIA A. VILLANUEVA

Of Counsel
ROSEMARIE CIPPARULO
BRETT M. PUGACH
ADAM M. GORDON
YAEL BROMBERG

Counsel
DAVID A. MINTZ*

* ADMITTED TO PRACTICE ONLY IN NEW YORK

220 DAVIDSON AVENUE
SUITE 410
SOMERSET, NEW JERSEY 08873
(732) 563-4565
FAX (732) 560-9779

www.weissmanmintz.com

90 BROAD STREET
SUITE 254
NEW YORK, NEW YORK 10004
(212) 509-0918

JOEL N. WEISSMAN (1957-1998)
MARK ROSENBAUM (1955-2002)



March 25, 2024

VIA ELECTRONIC FILING
Hon. Zahid N. Quraishi, U.S.D.J.
United State District Court of the District of New Jersey
Clarkson S. Fisher Building
402 East State Street
Trenton, NJ 08608

    Re:    Kim, et al. v. Hanlon, et al.
              Civil Action No.: 24-1098(ZNQ)(TJB)

Judge Quraishi,

      At or after the close of business hours on Friday, March 22, 2024, defense counsel on behalf of the Essex, Passaic, and Union County Clerks (DE166), and on behalf of the Monmouth County Clerk (DE167) (i.e., 4 of the 19 Defendants) submitted letters to the Court addressing the issue of whether and in what amount Plaintiffs might be required to post a security bond in connection with its application for a preliminary injunction. Plaintiffs hereby respectfully request leave to file this letter in response and that the Court consider the substantive argument contained herein.

      While Fed. R. Civ. P. 65(c) generally calls for a security bond before the court issues a preliminary injunction, longstanding precedent in the Third Circuit has recognized instances where the requirement can be waived. *See Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991), *cert. denied sub nom.*, *Snider v. Temple Univ.*, 502 U.S. 1032 (1992). In *White*, the Third Circuit held that strictly reading the security requirement of Fed. R. Civ. P. 65(c) may not be appropriate in instances where (1) the hardship faced by the plaintiffs from a bond requirement would outweigh the potential loss to defendants; or (2) the injunctive relief is sought for enforcement of federal rights or those that are a matter of public interest. *Id.* These principles have been applied in various Third Circuit cases to waive the bond requirement. *See, e.g., Borough of Palmyra, Bd. of Educ. v. F.C. Through R.C.*, 2 F. Supp. 2d 637, 645-46 (D.N.J. 1998) (waiving security bond and recognizing exception to bond requirement "in non-commercial and public interest cases" where plaintiffs seek to enforce their "rights under a federal statute" such that "imposing the bond requirement would unduly interfere with that right"); *McCormack v. Twp. of Clinton*, 872 F. Supp. 1320, 1328 (D.N.J. 1994) (waiving bond requirement where plaintiffs sought to enforce significant political speech rights which were "of tremendous public significance" and where "the imposition of anything more than a nominal bond could constitute severe hardship to plaintiff"); *Drenth v.*

*Boockvar*, No. 1:20-cv-00829, 2020 WL 2745729, at *7 (M.D. Pa. May 27, 2020) (waiving bond requirement) ("Here, because the preliminary injunction seeks protection of Plaintiffs' fundamental right to vote, the court will waive the bond requirement. Imposing a bond on Plaintiffs in this case would effectively force them to pay a monetary cost to enforce their right to vote. Such financial burdens on the right to vote are inappropriate.") (citation omitted).[1] Even in instances where courts felt obliged to require a security bond in these types of cases, they nevertheless exercised their discretion to require only a nominal amount. *See, e.g.*, *Amalgamated Transit Union Loc. 85 v. Port. Auth. of Allegheny Cnty.*, 513 F. Supp. 3d 593, 622-23 (W.D. Pa. 2021), *aff'd* 39 F.4th 95 (3d Cir. 2022) (requiring "nominal bond of $100" where plaintiffs sought to protect First Amendment rights).

Here, Plaintiffs are clearly seeking to enforce fundamental federal rights guaranteed by the Constitution, including, among others, the right to vote, equal protection, and freedom of association under the First and Fourteenth Amendments, as well as rights under the Elections Clause of the United States Constitution. Additionally, these matters are of a non-commercial nature and are clearly in the public interest, with implications of those rights affecting all upcoming and future elections. Imposing a bond under such circumstances would interfere with the exercise of such rights and impose a severe chilling effect. Plaintiffs should not be required to tie a price tag to enforcement of their fundamental rights under the United States Constitution in a democratic society.

Additionally, while the above reasons are sufficient to waive the bond requirement, if the Court were inclined to require some form of a security bond, the Court should exercise its discretion to limit any bond to a nominal amount. Plaintiffs' experts submitted certifications and other evidence that the existing voting machines and other devices used by Defendants are not only capable of accommodating an office block display, but would require only minimal changes that would not take considerably more time, nor be considerably more expensive, than the current administration of our elections. *See, e.g.*, DE95, Exh. C, par. 27 ("I would be surprised if the task of copying a previously finalized election definition in order to apply a new ballot layout would

---

[1] Courts in other federal jurisdictions have waived the bond requirement for similar reasons, including in right to vote cases. *See, e.g.*, *Colorado v. DeJoy*, 487 F. Supp. 3d 1061, 1066-67 (2020) (no bond in voting rights case) ("Although phrased as mandatory, in practice the Court has discretion under this Rule whether to require a bond, particularly in public interest cases involving the fundamental rights of citizens." (citing 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2954 n.29 (3d ed., Apr. 2017 update) (citing public rights cases where the bond was excused or significantly reduced)); *Curling v. Raffensperger*, 491 F. Supp. 3d 1289, 1326 n.2 (N.D. Ga. 2020), *vacated on other grounds by* 50 F.4th 1114 (11th Cir. 2022) (compelling production of paper voter registry at all polling places and waiving bond requirement, recognizing federal court discretion to do so particularly when infringement of fundamental rights under the Constitution are at stake) (noting, "It is not too late for Defendants to take these reasonable concrete measures to mitigate the real potential harms that would otherwise likely transpire at precinct polling locations grappling with the boiling brew created by the combination of new voting equipment issues and old voter data system deficiencies."); *Majority Forward v. Ben Hill County Board of Elections*, 512 F. Supp. 3d 1354, 1374-75 (M.D. Ga 2021) (amount and whether security bond is required at all is in discretion of the federal trial court).

take more than a few hours at the most"); DE1-5, p. 5 ("the work or effort needed to prepare office-block ballots, using the same EMS, will not be significantly different from the work or effort needed to prepare row-and-column ballots."). Only two of the nineteen county clerk Defendants (Union and Monmouth) provided any estimates of potential costs that could be incurred if the application or preliminary injunctive relief is granted, and both are wrongfully premised on the incorrect and unfounded assumption that an all-vote-by-mail election would be required. As such, they deserve little to no weight from this Court. The evidence proffered shows not only that two New Jersey counties design their ballots with an office block display, but many if not all Defendant County Clerks readily use a hybrid ballot which includes office block displays, and have even in the past used a ballot which entirely uses such a display.

It is clear from these disingenuous estimates in the amount of over $1 million per county that burdening a campaign with such amounts within a couple of months before the election would be extremely inconsistent with the public interest.[2] Rather, it is apparent that the allegedly "neutral" county clerk Defendants are solely intent on hamstringing the Plaintiffs' campaigns in one way or another. Their suggested bond amounts ask the Court to present Plaintiffs with an unfathomable dilemma whereby (1) on one hand, they would be forced to allow their opponents an enormous head start through manipulation of the ballot if they did not bring this case; or (2) on the other hand, their campaign funding would be crippled heading into the primary election if they come to Court to enforce their rights and the rights of the voters.

Impressed by the essential role of the judiciary to the happiness of the country and the stability of its political system, George Washington recognized that "due administration of justice is the firmest pillar of good government."[3] Accordingly, candidates and voters cannot, and should not, be effectively penalized in the pursuit of their rights in the Halls of Justice in furtherance of fair and democratic elections. Under such circumstances, the Court should waive the bond requirement.

Respectfully submitted,

WEISSMAN & MINTZ LLC

By: ____/s/ Brett M. Pugach____

---

[2] This holds true in any election, regardless of the individual. Indeed, if Plaintiffs were responsible for a security bond of over $1 million in each county, it would far surpass the entire amount of campaign dollars on hand for all of the candidates, including Congressman Andy Kim, as well as Sarah Schoengood and Carolyn Rush, who have minimal campaign funds on hand.

[3] Letter from George Washington to Edmund Randolph (Sept. 28, 1789), *available at*: https://www.loc.gov/resource/mgw2.022/?sp=177&st=text ("Impressed with the conviction that the due administration of justice is the firmest pillar of good Government, I have considered the . . . Judicial department as essential to the happiness of our Country, and to the stability of its political system."). The letter was penned four days after the Judiciary Act of 1789 was signed into law by the First Congress, providing a charter for the federal judicial system.