## WEISSMAN & MINTZ LLC
### ATTORNEYS AT LAW

STEVEN P. WEISSMAN
ANNMARIE PINARSKI
WILLIAM G. SCHIMMEL
IRA W. MINTZ
FLAVIO L. KOMUVES
JASON L. JONES
JUSTIN SCHWAM
PATRICIA A. VILLANUEVA

Of Counsel
ROSEMARIE CIPPARULO
BRETT M. PUGACH
ADAM M. GORDON
YAEL BROMBERG

Counsel
DAVID A. MINTZ*

* ADMITTED TO PRACTICE ONLY IN NEW YORK

220 DAVIDSON AVENUE
SUITE 410
SOMERSET, NEW JERSEY 08873
(732) 563-4565
FAX (732) 560-9779

www.weissmanmintz.com

90 BROAD STREET
SUITE 254
NEW YORK, NEW YORK 10004
(212) 509-0918

JOEL N. WEISSMAN (1957-1998)
MARK ROSENBAUM (1955-2002)



## BROMBERG LAW LLC

YAEL BROMBERG, ESQ., PRINCIPAL
T: (212) 859-5083 | F: (201) 586-0427
ybromberg@bromberglawllc.com

43 West 43rd Street, Suite 32
New York, NY 10036-7424

P.O. Box 1131
Glen Rock, NJ 07452-1131

March 25, 2024

VIA ELECTRONIC FILING
Hon. Zahid N. Quraishi, U.S.D.J.
United States District Court of the District of New Jersey
Clarkson S. Fisher Building
402 East State Street
Trenton, NJ 08608

Re: Kim, et al. v. Hanlon, et al.
Civil Action No.: 24-1098(ZNQ)(TJB)

Dear Judge Quraishi,

New Jersey cannot tolerate one more unconstitutional election. Despite the wishes of defense counsel, Sunday afternoon's developments do not change the fact that Plaintiffs' motion for a preliminary injunction remains ripe, and emergent. The Defendant County Clerks' "county line" primary ballots continue to violate the constitutional rights of all three candidates who are suing, as well as the fundamental rights of the voters.

Plaintiffs Andy Kim, Sarah Schoengood, and Carolyn Rush, and their respective campaigns – New Jersey's voters and candidates – cannot have their rights violated due to these last minute machinations. While it is evident that First Lady Tammy Murphy has suspended her

1

campaign for the U.S. Senate,[1] bracketing requests are due to municipal and county clerks on Wednesday March 27, 2024. As of the submission of this letter, it remains to be seen whether Congressman Kim will be awarded the county lines in all of the counties which previously awarded county line ballot placements to the First Lady. Even if such written confirmation of withdrawal existed, and even if all bracketing requests had been written and awarded – they would not dilute the violation of the Congressman's rights statewide in 19 of the 21 counties which refuse to use an office block ballot in the 2024 primary election. Moreover, the violations of the constitutional rights of the other two Plaintiffs in this action, who are congressional candidates, are completely unchanged by any change in the Senate race, and continue to persist. Ms. Schoengood and Ms. Rush are running for office in Congressional Districts 3 and 2, respectively, which collectively comprise nearly half of the counties in the state that continue to insist on using the "county line" ballot design.

Defense counsel seems to aver that because Congressman Kim is now allegedly the beneficiary of the county line statewide, he no longer suffers a cognizable statewide harm or injury. Congressman Kim disputes this. Counsel respectfully represent to the Court on behalf of Rep. Kim, that as of this writing, they dispute the Burlington Clerk's claim that "all county lines [have been] awarded to Andy Kim and he has accepted them." That claim is simply not true, as all of the requisites and documentation contemplated by N.J.S.A. 19:49-2 to evidence an "award" of the line are incomplete or indeterminate in at least some counties. Undersigned counsel can give an update at tomorrow's hearing.

Even if the claim were accurate, however, this ignores the Congressman's associational rights, his Fourteenth Amendment rights to participate in an unrigged system, or the rights of the other two Plaintiffs. It also ignores that the Elections Clause of the United States Constitution does not speak with respect to advantages or disadvantages – but forbids state law that determines the outcome of our elections. *See e.g., Cook v. Gralike*, 531 U.S. 510, 523 (2001) (States may adopt procedural regulations but not "dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional constraints.").

Justice delayed is justice denied. There is no devil's bargain here, and the Court should pay no heed to these last minute desperate, hail-mary machinations designed to upend justice for the 2024 primary election.

1. **Congressman Andy Kim's constitutional rights continue to be violated absent the emergent relief requested.**

From the outset, Congressman Kim has been clear and consistent that he is forced to play within the rules of the game in order to ensure his political viability – including being forced to

---

[1] Thus, Defendants are not entirely right in saying that the First Lady "withdrew" from the race. As best as Plaintiffs can tell, Murphy "suspended" her campaign. CNN, *New Jersey first lady Tammy Murphy is suspending Senate campaign*, available at https://www.cnn.com/2024/03/24/politics/tammy-murphy-suspends-new-jersey-senate-bid/index.html (last visited Mar. 25, 2024). Plaintiffs are unaware of any evidence that Murphy has officially written or filed a "resignation" of any sort as would be required to formally and indefeasibly terminate her candidacy as contemplated by N.J.S.A. 19:13-12.

associate with candidates. In reflecting on his prior bids for office, Congressman Kim testified during the March 18, 2024 evidentiary hearing of his "real concern and something that [he] worried about a lot" regarding being "forced to associate" with candidates whose policy backgrounds he is unaware of, or the effect that this forced association may be imposed on his candidacy by some "new information or some scandal that one of the candidates might have." (TR 170-171.)

The Congressman explained that "the whole point of democracy is to give the people a choice and be able to have the decision made by the people. But if you are limiting that or if there are elements that are limiting or repressing that choice, [that is] adverse to the pursuit of [ ] democracy . . . of fairness, and equality." (TR 173.) In furtherance of this basic premise of democracy, he testified, "I just ask for us to have a fair ballot here. I'm not asking for any advantage to me. I'm not asking to hold on to the advantages that I have in the counties that I have been successful in." (TR 180.)

He confirmed his personal willingness to give up the county lines in the counties where it has been awarded, in favor of an office block ballot design. (TR 180-181.) And, he specified that in those counties where he is awarded the county line for the 2024 primary, his right to associate (and right not to associate) are violated:

> In some of the counties . . . where I've been awarded the line, there are candidates – there are candidates that have also won the line in those counties that are actively working against my campaign.
>
> So, for instance, in Monmouth County, I won the county convention there. That was my very first win.
>
> The congressman there, Congressman Frank Pallone, is actively supporting a competitor of mine, has been campaigning on her behalf. So that makes it very challenging for me. That makes it very difficult for me to be on an endorsed candidate line with – with someone who is not supportive of my campaign. . .
>
> [That's] also the case in Morris County, a county that I just won the congressional candidate there, somebody who has endorsed a competitor of mine. So it just makes things very difficult for me to be able to campaign.
>
> Think about how to build a field program, how to do voter engagement. And certainly it's very confusing to the voters that I've talked to when – the county-line is not all supporting each other but instead that there are elements within those county lines that are actively working against each other.
>
> .. [I]t's very confusing to voters. I mean, the whole idea of association, you know, presents the idea that these are candidates that chose to associate with each other. But essentially what has happened is that I do not actually have formal conversations with all of these other candidates. As I mentioned, I don't even know most of these candidates in, you know, these different counties across the state that

3

> are awarded these lines. I am – I am basically being awarded this and then forced to associate with one another through the county organizations. . .
>
> I don't know the policy positions of many of these candidates, and because I'm running for Senate, I'm now in many more counties than I was before as a House candidate. So it's more pronounced, more difficult for me to understand, that it's more concerning in terms of, you know, whether or not there are candidates there that I might disagree with policy-wise, might have elements of a background that I would be and find concerning. And because I'm associated with them, I'm often referred to as a running mate for some of these candidates. I'm taking on that type of potential concern and harm to my campaign. . .
>
> I just want to run for the Senate seat. That is what I was stepping up to do because there's so much at stake right now. And like – you know, if I think about - - about, yes, freedom to associate in this country, that also should mean that I have the freedom to not associate with others if I choose not to. And, you know, here's a situation where, for my own electoral prospects, I am forced to have to associate with people that I do not know, many of them I do not know, some of them who are actively working against me, and I just find that to be, you know, deeply challenging.
>
> I don't want to have to do this. I'd rather just run for my Senate race and not have to consider, you know, dozens if not hundreds of other candidates across multiple counties. But, unfortunately, I have to given the system here in New Jersey. . .
>
> [I]f I do not accept these lines, if I do not participate in those conventions, then a competitor of mine would be able to then be on the line and be afforded very significant advantages to the election.
>
> So, again, even if it was something that I personally did not like, I felt it necessary to participate, even if it was to prevent a competitor of mine from gaining that type of advantage in all of those different counties which would have very much had an adverse effect on my capacity to be able to win this campaign."

(TR 182 - 185).

When asked again on cross-examination whether the Congressman is seeking the advantages of the ballot bracket, he reiterated that the system is designed for the very gamesmanship that he is constitutionally challenging: "Well, I was actually seeking to prevent a competitor from gaining those advantages." (TR 215.)

In sum, Congressman Andy Kim's associational rights were harmed before Sunday's announcement; they continue to be harmed today; and they will continue to be harmed even after the bracketing request letters are filed on Wednesday March 27, 2024. These continuing constitutional violations are compounded and intertwined, implicating the Fourteenth

Amendment's guarantee of equal protection and the fundamental right to vote,[2] along with the Elections Clause.

**2.   The Unconstitutional Coin: Heads, your rights are violated; Tails, your rights are violated. Everyone loses.**

From the very beginning of this case, Plaintiffs have asserted that New Jersey's unconstitutional primary election bracketing and ballot placement system presents a Hobson's choice, violating their rights, regardless of who ends up ultimately getting the county line. This is because Plaintiffs, and any other candidates forced to play in this system, must choose to either (1) exercise their right to not associate, in which case their opponents will have an enormous advantage; or (2) force themselves to associate with other candidates to prevent their opponents from obtaining an advantage over them or otherwise mitigate against such advantage. (*See e.g.*, Verified Complaint ¶¶ 201, 221; Brief in support of Motion for Preliminary Injunction at 10, 15, 26.) Either of these two instances represent one side of an unconstitutional coin, and whether it lands on heads or lands on tails, their constitutional rights are being violated.

Even if Congressman Kim were to end up on the county line in all the counties that have one, he will still experience immediate irreparable harm, as will the other Plaintiffs in this case. In order to be featured on the county line, Congressman Kim is forced to associate with candidates with whom he does not want to associate. On the witness stand, Congressman Kim gave but a few examples of other individuals who will be featured on the county line who were actively campaigning against him. (TR 182 - 185, excerpts *supra*.) He also presciently noted that there will be various candidates on the county line that he either does not agree with on policy, does not even know, or did not have time to vet. (*Id.*) Nevertheless, he is forced to associate with such candidates, lest he risk one of his opponents getting a substantial advantage over him. (*Id.*) As Congressman Kim explained, he just wants to run for United States Senate, without having to get enmeshed in the uncertainty and messiness of associating with other candidates running for other offices up and down the ballot. (*Id.*) However, if he chooses not to associate, he risks having his opponent obtain the enormous advantage of the line. In this manner, he is burdened with a cost or penalty to exercising his associational rights, thereby interfering with his ability to exercise these constitutional rights in violation of the First and Fourteenth Amendments, as well as the Elections Clause of the United States Constitution.

---

[2] The Second Circuit Court of Appeals has recognized the "inseparable" aspect of Fourteenth Amendment protections with the First Amendment right to associate "to engage in association for the advancement of beliefs and ideas" and "to cast [ ] votes effectively." *Yang v. Kosinski*, No. 20-1494 (2d Cir. June 1, 2020) (citing *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214 (1986), *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958)).  In so doing, the Second Circuit upheld a grant of preliminary injunction 21 days ahead of the election. There, the Plaintiff, presidential candidate Andrew Yang, and Intervenor Plaintiffs, delegates for Bernie Sanders, successfully enjoined New York county clerks to list them on the primary ballot although the presidential bids of Andrew Yang and Bernie Sanders were canceled. The case is instructive insofar as the election outcomes were void due to the cancellation of the races, although their associational rights and related Fourteenth Amendment protections were preserved.

Furthermore, there are some counties which are not endorsing a particular candidate, but rather will feature all of the candidates for United States Senate on the county line. In such instance, Mr. Kim will be featured on the same column of the ballot as his opponents, giving the appearance of association. Additionally, it is that very same design – including multiple candidates in the same column even though it was "Vote for One" – which led to almost ⅓ of CD-4 voters in Mercer County overvoting, and thus having their votes disqualified, in the 2020 Democratic Primary Election (Conforti and Schmid example). (*See* Ver. Compl. ¶¶ 91, 117.)

Moreover, Defendants do not get to selectively ignore the other Plaintiffs, Sarah Schoengood and Carolyn Rush, and erase them from this case. Some of their injuries overlap with Rep. Kim's, and some are discrete, but their rights as plaintiffs should not be affected by a putative change in their co-plaintiff's opponent's status (i.e., the First Lady). Indeed, Plaintiffs have maintained that the bracketing and ballot placement system is unconstitutional in a substantial number of its applications. Here, collectively, Plaintiffs will experience the full ambit of immediate, irreparable constitutional harms presented by the bracketing and ballot placement system. Having landed on "heads," Andy Kim's associational rights will be violated, in order to prevent any of his opponents from obtaining the advantages of the county line.

Having landed on "tails," Sarah Schoengood's right to vote and equal protection rights will be violated, as she will be punished for exercising her right to not associate, such that one of her opponents will get the advantage of the county line in each of the three counties in her congressional district, CD-3 (Monmouth, Burlington, and Mercer). Since she does not want to bracket with or otherwise associate with other Senate candidates, she will be further punished for exercising her right to not associate, since she will not be included in the preferential ballot draw (opponent will benefit from primacy effect), will be featured in a column further to the right, risks ballot gaps and placement in Ballot Siberia, and will either be in a column by herself or stacked with candidates running for the same or different office with whom she did not wish to associate.

Similarly, Carolyn Rush will be running against an opponent on the county line in at least two counties in her congressional district, CD-2 (Atlantic and Ocean).[3] While Ms. Rush still has time to decide if she will bracket with candidates running for other offices, we know that either way, her constitutional rights will be violated, be that her associational rights, harm to her electoral prospects, or both. Furthermore, in at least two counties (Cape May and Gloucester), all three candidates will be featured in the same column, on the county line, even though it is "Vote for One." Thus, Ms. Rush will be placed in the same column as her opponents, appearing to associate with them while there is also a substantial risk of overvoting due to voter confusion, resulting in disenfranchisement.

In the grand scheme of forced gamesmanship that New Jersey primary candidates and voters have uniquely suffered under for decades, constitutional rights are pitted against one another. Regardless of whether a candidate does exercise their right to not associate or is forced to forego it to prevent their opponent from obtaining an enormous advantage over them, it always ends in their constitutional rights being violated. It is truly, "heads I win, tails you lose."

---

[3] In at least one county (Cumberland), the line has not yet been awarded. In one other, the county uses an office block ballot, and thus there is no county line (Salem).

Between the harm that will be suffered by Congressman Kim, as well as the harm that will be suffered by Ms. Schoengood and Ms. Rush, let alone the harm to all candidates and voters in this unconstitutional system, First Lady Murphy's alleged departure from this race does not change the equation and does not erase the imminent irreparable harm suffered by Plaintiffs.[4] To address the harm to be suffered by all of the Plaintiffs in this matter, and in consideration of the public interest, the Court should address the Plaintiffs' application and issue the injunctive relief sought.

Specifically, even if the Murphy withdrawal claim were true, the Burlington Clerk's contention that these developments "invalidate a large portion of the factual record in this case" is without merit. First, all of the expert reports, expert testimony, and Rep. Kim's testimony about the effects of the line on the campaign process generally, and the magnitude of those effects, are unchanged by Ms. Murphy's "withdrawal." Second, all of the items in the Verified Complaint and presented in Mr. Kim's testimony about the associational burdens and gamesmanship associated that are endemic to the county line ballot, whether or not a particular candidate is on it, is not changed, nor are the narratives from the *amici* candidates presented in DE118. Third, all the testimony about the voting equipment and software used in New Jersey, and its presence in other states with different ballot designs, is unchanged. Fourth, all of the expert testimony and fact testimony about the current use of office-block ballots throughout New Jersey, and the feasibility of applying office-block ballots in mailed and machine ballots in time for the upcoming primary election, has not been altered because one candidate allegedly dropped out. Fifth, the allegations of the Verified Complaint about the harms visited on Plaintiffs Rush and Schoengood, and Rep. Kim, are unchanged by the putative change in Ms. Murphy's status as a candidate. And finally, if, as Defendants claim, Rep. Kim will have been awarded more county lines than the eight he already had at the time of the hearing, they must also concede that their claims of a grand conspiracy about delaying this case are irrelevant, regardless of their veracity. As is noted in DX3, contact with the other two plaintiffs, the Congressional candidates, did not begin in earnest until mid-February, and even the Defendants have never contended that the short time between engagement and filing on behalf of those candidates is evidence of lack of diligence on their part.

For all of the foregoing reasons, any purported changes in the candidate status of the First Lady and/or in the county lines awarded to Congressman Kim in no way materially changes the legal issues (including the preliminary injunction factors) of *any of the three candidates*. These issues have been fully vetted in briefing and in the evidentiary hearing. Plaintiffs' request for an injunction is ripe for resolution, and indeed the public is crying out for resolution of this issue by the Court.

---

[4] The candidate *amici* include one current candidate for Congress in CD-3, another in CD-8, and another seeking the office of Mayor of Piscataway. They have all related harms that they have experienced and immediate and irreparable harms that they will experience in this upcoming election cycle. (DE 90-3, 90-4, 90-5, 90-8.)  As with Plaintiffs, their harms are no greater or less if Ms. Murphy is or is not a candidate for Senator. We have been authorized to state that the amici group composed of Joseph Cohn, Staci Berger, James Solomon, Valerie Huttle, and Ravi Bhalla (DE 118) joins in the Plaintiffs' position that nothing has changed due to recent events, and that there are neither constitutional nor factual reasons to preclude the requested grant of emergent relief.

Respectfully submitted,

*/s/ Brett Pugach, Esq.*            */s/ Yael Bromberg, Esq.*
*/s/ Flavio Komuves, Esq.*          Bromberg Law LLC
Weissman & Mintz LLC

*Counsel for Plaintiffs*