# BROWN & CONNERY, LLP

ATTORNEYS AT LAW
360 HADDON AVENUE
WESTMONT, NEW JERSEY 08108
(856) 854-8900
FAX (856) 858-4967

William M. Tambussi, Esq.
Certified by the Supreme Court of New Jersey as a Civil Trial Attorney
wtambussi@brownconnery.com
Direct Dial: (856) 858-8175



March 27, 2024

**Via Electronic Filing**
Hon. Zahid N. Quraishi
United States District Court
Clarkson S. Fisher Building
402 East State Street
Trenton, New Jersey 08608

      Re:    **Andy Kim, et al. v. Hanlon, et al.**
               **Docket No. 3:24-cv-01098-ZNQ-TJB**

Dear Judge Quraishi:

      This office represents Intervenor Camden County Democratic Committee ("CCDC") in the above matter. Please accept this letter in response to Your Honor's March 26, 2024 Text Order permitting briefing regarding the effects on the pending Motion for Preliminary Injunction ("Motion") caused by the "significant development in the factual record of this case" as articulated in Defendants' letter (ECF No. 174).

    **I.**    **Plaintiff Andy Kim's Alleged Harm is Now Nonexistent.**

      First Lady Tammy Murphy's withdrawal of her bid for United States Senate has a significant impact on the factual record in this case as it negates the harm that Plaintiff Andy Kim alleges he has suffered as a result of New Jersey's ballot design and placement system.

      To prevail on a motion for a preliminary injunctive relief Plaintiffs must show "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Holland v. Rosen*, 277 F.Supp.3d 707, 724 (D.N.J. 2017). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Id.*

7OB9684.DOCX

**BROWN & CONNERY, LLP**

At the Motion hearing, Plaintiff Kim testified that a "concrete injury" occurred in "a real and non-speculative way" on February 10, 2024 with the awarding of the official county line in Passaic County to First Lady Tammy Murphy. *See* Transcript of Preliminary Injunction Hearing ("Tr."), at 190:5-13. Plaintiff Kim further testified that whether he could achieve the county line was seen as "very much determinative" of whether he would be successful in his campaign and whether he would be seen as "viable" among Democratic Party institutions. *Id.* at 168:20-169:21. In describing the effect of one of his opponents receiving the county line, Plaintiff Kim testified that it would have been "devastating" and that the "advantage would then go to a competitor, and that would be something that would significantly adversely affect [his] candidacy." *Id.* at 171:17-24.

Here, Plaintiff Kim's self-described harm relates solely to the alleged "advantages" awarded to candidates that receive the county line and how his opponents obtaining the county line could adversely impact his candidacy. However, Plaintiff Kim's alleged harm is now nonexistent because of First Lady Murphy's withdrawal of her bid for U.S. Senate. As a result of First Lady Murphy's withdrawal of her bid, Plaintiff Kim has now been awarded, and he has accepted, the "county line" in almost all counties. *See* ECF No. 186, at 2. Thus, Plaintiff Kim has now embraced the exact same system that he alleges is unconstitutional. This effectively eliminates any irreparable harm that Plaintiff Kim alleges he has suffered as a result of New Jersey's ballot design and placement system.

Plaintiff Kim's alleged harm to his associational rights is likewise eliminated due to the withdrawal of First Lady Murphy's bid for U.S. Senate. At the Motion hearing, Plaintiff Kim testified that in some counties where he has been awarded the county line, there are candidates that are actively working against his campaign and in support of First Lady Murphy. *See* Tr. at 181:19-182:14. Any harm that Plaintiff Kim alleges he could have sustained as a result of being "forced" to associate with candidates who support First Lady Murphy is nonexistent now that First Lady Murphy has withdrawn her bid for U.S. Senate. In addition, Plaintiff Kim has been awarded and accepted almost all county lines previously obtained by First Lady Murphy. *See* ECF No. 186, at 2. Plaintiff Kim further acknowledged that, as part of the bracketing process, he is required to sign a consent to bracket with all other candidates that is filed with the County Clerk. *See* Tr. at 209:20-24. Thus, the agreement to bracket with other candidates is inextricably intertwined with an agreement to associate with these same candidates, which Plaintiff Kim has freely agreed to do. As such, it cannot reasonably be stated that Plaintiff Kim has suffered harm to his associational rights when he has willingly accepted the county lines in almost all of the counties previously awarded to First Lady Murphy following her withdrawal and he has consented to bracket with these candidates in those respective counties.

Further underscoring the lack of immediate and irreparable harm faced by Plaintiff Kim is the fact that Plaintiff Kim was offered to run on the county line in Camden County and subsequently declined. Plaintiff Kim's lawsuit is premised on the notion that certain "advantages" are provided to candidates who run on the county line and obtain first ballot position, and that his opponents achieving the line adversely impacts his candidacy. Here, Plaintiff Kim was offered the opportunity to run on the county line in Camden County. Not only does this represent a remedy to protect Plaintiff Kim from the supposed harm that he alleges exists without the Court needing

to issue a preliminary injunction, it effectively eliminates any argument that Plaintiff Kim is harmed by whatever "advantages" in ballot placement are provided to candidates who obtain the county line. Additionally, this demonstrates that the harm alleged by Plaintiff Kim is neither immediate nor irreparable, as he was provided a remedy to eliminate his alleged harm and subsequently declined. This negates any sense of urgency to his claim and alleged harm. This Court should deny Plaintiffs' Motion based on the absence of any immediate or irreparable harm.

In sum, Plaintiff Kim's alleged harm is nonexistent in light of First Lady Tammy Murphy's withdrawal of her bid for U.S. Senate and his voluntary decision to decline to associate with the Camden County Democratic Committee. Therefore, Plaintiffs' Motion should be denied.

## II.   In Balancing the Harms, Great Harm Would Result if the Court Were to Grant Plaintiffs' Motion for Preliminary Injunction.

In balancing the harms to the parties and the public interest, great harm would result if this Court were to grant Plaintiffs' Motion for Preliminary Injunction. Granting Plaintiffs' Motion would have a lasting effect on ballot construction for several reasons. First, in Senatorial and Gubernatorial elections in Camden County, there is no issue regarding the primacy effect because each candidate has the same opportunity to obtain first position on the ballot regardless of whether they choose to bracket and, as stated above, any harm that Plaintiff Kim alleges he has suffered related to the county line and ballot position has been eliminated following First Lady Murphy's withdrawal of her bid for U.S. Senate and his refusal to associate with the Camden County Democratic Committee.

Second, there has been no proof that the congressional candidates in this action, Plaintiffs Sarah Schoengood and Carolyn Rush, will suffer any harm with respect to ballot position in Senatorial and Gubernatorial elections. The harm alleged by Plaintiffs Schoengood and Rush can be distilled to twelve (12) paragraphs of the Verified Complaint. *See* ECF No. 1, at ¶¶ 151-163.

As to Plaintiff Schoengood, she alleges that she declared her candidacy on January 21, 2024, two days after Monmouth County Democratic Committee's deadline for filing an intent to seek endorsement at the Monmouth County Democratic Convention. *Id.* ¶ 152. Thus, her inability to be featured on the county line, as she contends, and any alleged harm that she alleges as a result, is through no fault but her own and cannot be attributed to the purported effects of the ballot design and placement system. As to the remaining two counties that comprise Plaintiff Schoengood's district, Plaintiff Schoengood has decided against bracketing with any other candidates in Burlington and Mercer counties. *See* ECF No. 186, at 1. Plaintiff Schoengood has not set forth any evidence demonstrating how her inability to obtain the county line or be placed in first ballot position impacts her candidacy or success in her respective elections.

As to Plaintiff Rush, like Plaintiff Schoengood, she has not provided any evidence in the record establishing any harm she would sustain by not obtaining the county line in her respective counties.

**BROWN & CONNERY, LLP**

Plaintiffs argue that, with respect to Cape May, Cumberland, and Gloucester counties, a ballot stacking all candidates for the congressional race in a shared line would create an "untenable ballot design" and "gives the appearance that candidates running for the same office are associated with one another." *See* ECF No. 186 n.1. However, Plaintiffs fail to acknowledge that an office-block ballot design that Plaintiffs seek to adopt, similarly stacks candidates by office sought. Thus, what Plaintiffs complain of regarding stacking of candidates in these counties based on the current ballot design is the exact same ballot design that will be utilized for an office-block ballot, which Plaintiffs request be adopted statewide. Furthermore, there has been no opportunity to determine how this ballot would be structured, particularly in light of the fact that a draw will be necessary to determine what position candidates will be placed down the ballot in an office-block ballot design. Simply stated, the record is devoid of any harm that would result to Plaintiffs Schoengood and Rush, and there has not been an adequate opportunity to determine the effects of the change in ballot design at this juncture.

Third, a change in ballot construction without the opportunity to educate the electorate on the changed ballot will lead to voter confusion and overvoting on mail in ballots. The minimal harm, if any, Plaintiffs claim to have suffered as a result of the ballot design and placement system does not outweigh the substantial harm to Defendants and burden on the administration of elections if the injunction should issue. Nor does it justify an overhaul of the electoral system within the time constraints imposed by Plaintiffs. CCDC will be prejudiced if a preliminary injunction were to issue as CCDC did not have an opportunity to elicit testimony and evidence on how a change in ballot construction could lead to voter confusion and overvoting. Based upon this scant record of alleged harm and Plaintiffs' intention not to bracket, it would be dangerous to order a reconstruction of the ballot this close to the election in a Presidential election year based upon such sparse proofs.

For these reasons, CCDC respectfully requests that Plaintiffs' Motion for Preliminary Injunction be denied.

Respectfully submitted,
**BROWN & CONNERY, LLP**

*s/ William M. Tambussi*
William M. Tambussi

cc:   All Counsel of Record (*via ECF*)

7OB9684.DOCX