

Mark R. Natale, Esquire.
mnatale@malamutlaw.com
Phone (856) 424-1808
Fax (856) 424-2032

The Honorable Zahid N. Quraishi
United States District Judge, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

March 25, 2024

    **RE : Kim, et al. v. Hanlon, et al.**
    **Civil Action No.: 3:24-cv-01098-ZNQ-TJB**

Dear Judge, Quraishi,

    I write on behalf of my client, Defendant Burlington County Clerk, and all Defendant County Clerks (the "Defendants") and pursuant to this court's order of March 26, 2024, allowing the parties to provide supplemental briefing on the impact of lead Plaintiff Rep. Andy Kim ("Plaintiff Kim") accepting the "county line" in each county it is offered, and no longer having an opponent occupy any "county line" position in the State.

    To borrow a phrase used by the court, Defendants submit that these new developments prove the Plaintiffs' proverbial house is **not on fire**, and this case should be denied for lack of harm, inexcusable delay, and unreasonable burden on the Defendants. While Defendants assert that the requirements for emergent relief are completely absent from the record as a result of changed circumstances, even assuming the Plaintiffs new position is correct, the pending motion must be denied under <u>Purcell</u>. Indeed, this Court can now examine these complex Constitutional challenges without the need to drastically interfere with an election.

### The Lead Plaintiff's Self-Described "Concrete Injury" is Now Gone

    When asked about the delay in filing this case, Plaintiff Kim testified:

    "So the **concrete injury that happened in a real and non-speculative way was on February 10th with the—with the awarding of the actual, formal, official county-line** in Passaic County on February 10th. That was—that was adverse to me." – Transcript of March 18, 2024 proceeding, 190:9-13 (emphasis added).

Asked to clarify the injury that he was alleging, Plaintiff Kim further elaborated:

"Well, the injury that I'm alleging here is that – that- that I am not being given fair opportunity to be able to appear on the ballot in a way that can – where I can be successful in terms of – of—in all the different counties that are out there. **That there's significant – there's significant advantage giving to a competitor of mine in a far larger part of New Jersey**. That's something that doesn't give me a fair shot to be able to pursue this election." See Id., 237:9-19.

These two quotes are examples of the significant portions of the record that are now only relevant to Plaintiffs undue delay in filing this action.[1] Plaintiff Kim has pursued and/or received every 'county line' that was offered in this election. His remaining opponents have none. As such, the concrete injury as described by Plaintiff Kim no longer exists.

**Reliance on Associational Rights Highlights Undue Delay and Lack of Irreparable Harm**

Plaintiff Kim now argues that regardless of being the only candidate in his race occupying "county lines", the irreparable injury to his associational rights under the First Amendment remains through required bracketing. This argument is fatal to Plaintiffs' cause in two respects.

First, under the Purcell doctrine, the Supreme Court requires that the emergent relief requested by the Plaintiffs can only be granted if there was no undue delay in filing the action. See Merrill v. Milligan, 142 S. Ct. 879, 880 (2022); Democratic-Republican Org. of N.J. v. Guadagno, 900 F. Supp. 2 447, 461 n.8 (D.N.J. 2012).[2] According Plaintiff Kim's testimony, he decided to run for Senate in September of 2023, which started the clock on applying for injunctive relief. As a seasoned politician, Plaintiff Kim knew New Jersey's primary election process, in fact experiencing the alleged harm in each of the three times he ran for Congress. The injury allegedly caused by the award of the "county line" is no longer viable. The delay in filing this action is inexcusable, prejudiced the Defendants, risks compromising the administration of the election, and defeats Plaintiffs' emergent application pursuant to Purcell.

Second, any alleged harm to associational rights is unsupported in the record and is not "irreparable". The evidence provided by the Plaintiffs on the alleged harm suffered to their associational rights is sparse and speculative. Plaintiff Andy Kim testified that he did not want to be forced to run with other candidates, specifying Congressman Frank Pallone as a concern due to Pallone's endorsement of his opponent. See Tr. 182:9-14.  That is the only specific example of alleged forced associational harm testified to, and Plaintiff's reason for why it was harmful is now non-existent.

---

[1] To be clear, Plaintiff Kim's self-imposed requirement of a "concrete injury" is not a legal requirement. Instead, he only needed to face "threat of imminent harm", which is dispositive of the inexcusable delay in filing this case.
[2] Even under a traditional preliminary injunction analysis, delay is an "equally dispositive basis" to deny the requested relief. See Pharmacia Corp v. Alcon Labs., Inc., 201 F. Supp. 2d 335, 382 (D.N.J. 2002).

In the verified complaint, there are similar minor references by all three Plaintiffs. Plaintiff Kim dedicates two paragraphs to alleged First Amendment harm, failing to mention any specific injury and providing only speculation. See P-1 at paras. 149 -150. Plaintiff Sarah Schoengood dedicates two paragraphs to her First Amendment rights, first arguing that out of the Senate candidates she most aligns with Co-Plaintiff Kim but is now unable to bracket with him. Id. at para. 154. She then argues that she may be forced to bracket with others and "needlessly hitch her wagon to the ups and downs of a campaign for a completely different office." Id. at para. 157. These are vague, unsupported, and speculative allegations which do not support First Amendment harm. Plaintiff Carolyn Rush spends one paragraph talking about her First Amendment rights, vaguely stating that she does not want to "give the voters the impression that she adopts the policy position of any candidate she may bracket with", though provides no supporting evidence for this assertion. Id. at para. 163.

That means the entirety of the record before this court on alleged First Amendment harm is: *a fraction of Congressman Kim's testimony and five paragraphs in the verified complaint*. Moreover, the only specified harm to associational rights provided by any of the Plaintiffs is Plaintiff Kim's reluctance to bracket with Congressman Pallone; a concern which has been rendered moot. The Plaintiffs have failed to meet the substantial burden of demonstrating irreparable, non-speculative harm or rebut the clear evidence of their undue delay. Cf. D-5.

### Plaintiffs Schoengood and Rush Have Not Shown the "County Line" Will Impact the Outcome of Their Respective Primaries

With Plaintiff Kim now the only Senate candidate to occupy any "county lines", and the record rendered insufficient as to Plaintiff's alleged associational harm, it is expected that the Plaintiffs will rely on the argument that Plaintiffs Schoengood and Rush are harmed by "county lines" in their races. However, the record is bare of any facts that show the county lines will impact the outcome of their race, unlike the argument made on behalf of Plaintiff Kim. Thus, Plaintiffs have failed to demonstrate irreparable harm, as federal courts have held that irreparable harm is not shown in election cases where the requested relief is not outcome determinative. See Trump v. Kemp, 511 F.Supp. 3d 1325, 1339 (N.D. Ga, 2021)(no irreparable harm where election result would not change even if relief granted); See also Trump v. Sec. of Pa., 830 Fed. Appx 377, 389-390(3d Cir. Nov. 27 2020)(no emergent relief when relief won't impact outcome).

The entire record of Plaintiffs Schoengood and Rush is limited to seven paragraphs (Schoengood) and five paragraphs (Rush) of the verified complaint. See P-1, paras. 151-163. Absent the evidence proffered in support of Plaintiff Kim's case, the record is insufficient to support the remaining Plaintiff's argument for injunctive relief. Along with providing two to three times the amount of information as any other Plaintiff in the verified complaint, Plaintiff Kim testified at length about his upcoming statewide election and the allegedly harmful impact the "county line" would have on his race, arguing it was "outcome determinative". See Tr. 179:13-20. The other Plaintiffs have not and cannot make that argument, nor does the record evidence support such an argument on their behalf.

Plaintiff Rush will share the "county line" in three of the five counties in her district and will run 'off the line' in two counties. She has provided no evidence that losing these "county lines" will be outcome determinative.[3] Likewise, Plaintiff Schoengood has offered no evidence about her campaign, or how failing to get the line will prevent her from defeating her four opponents. Plaintiff's purported experts have failed to offer opinions, let alone evidence, sufficient to draw conclusions regarding the impact of the "county line" regarding the down ballot races of Plaintiffs Schoengood and Rush.

The Court must decide if the rampant speculation required to infer that irreparable harm is the result of the primary ballot design meets the high threshold required for the granting of injunctive relief on a short timeline with impact to the voters of our State. On this evidentiary record, which they have the burden of producing, they cannot meet that standard.

### With No Sufficient Evidence of Alleging Harm to the Plaintiffs, The Balancing of the Harms Favors the Defendants

With a record devoid of any evidence of harm, the court must then consider the impact on other essential elements of Plaintiffs case. Specifically, under Purcell, the Plaintiffs have the burden of showing that the changes are feasible without significant cost, confusion, or hardship. See Merrill, 142 S. Ct at 880 (under Purcell, a plaintiff must show "the changes in question are at least feasible before the election without significant cost, confusion, or hardship"); See also Lake v. Hobbs, 623 F. Supp. 3d 1015, 1031 – 32 (D. Ariz. 2022)("Purcell also caution[s] federal courts to refrain from enjoining election law too close in time to an election if the changes will cause administrative burdens for elections officials.")  Additionally, under a traditional injunctive relief analysis, Plaintiffs must show that their request is absent of harm to the non-moving party, and in the public interest. See Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cty, 39 F.4th 95, 102-103 (3d Cir. 2022).

Here, despite the Plaintiffs carrying a very high burden of proof, they produced no witnesses with direct knowledge of election administration in New Jersey.[4] Instead, they offered paid academic experts who speculate on how New Jersey elections could / should function in theory. The Defendants have offered the only evidence from the parties responsible for administering these elections, and the record is clear: the changes requested by Plaintiffs could be done with enough time, but there is simply not enough time here with the number of Counties impacted in a Presidential election year. The unrefuted evidence in the record clearly states:

- Without all Elections Officials being named as a party in this suit, the record is absent how much time will be needed to run testing on new ballot designs. See Tr. 341:1-3)
- Defendants have no ability to change the voting machines, which is the responsibility of the Superintendent of Elections, who are indispensable parties. Id. at 341:1-3.

---

[3] Indeed, if Defendants were permitted to cross-exam Ms. Rush, the Court would have learned that she previously won more votes than opponents from an 'off the line' position in prior elections.
[4] In fact, and as briefed at length, Plaintiffs failed to even name necessary parties related to election administration in New Jersey.

- The County Clerks are completely reliant on their vendors working with the Superintendent of Elections and cannot make any voting machine changes themselves. In this case, they are forced to rely on affidavits from the voting machine companies. Id. at 356: -3-4; 362:4-8
- At least one of the two voting machine vendors in the state would need two extra weeks after the new ballot design to re-do accuracy testing to ensure machine compliance with a new style of ballot. See ECF #151, para. 9.
- It is still unknown whether the State would decide the voting machines need to be re-certified, which could take up to three months. See ECF #151, paras. 11 – 17.
- For a vendor that prints for half of the County Clerks, additional time will be needed to re-design ballots for which there are currently no templates. See Tr., 259:8-11.
- The printing of vote by mail ballots cannot be done until accuracy testing is complete, as no previous accuracy testing can be relied upon. See Tr. 261:7-19.

These conclusions come from direct testimony from individuals with firsthand knowledge who are responsible for administering elections in New Jersey. While the substantial changes to the record do not implicate this evidence directly, these facts are now better evidence when compared to the academic opinions proffered by Plaintiffs.

Indeed, the Court can no longer balance this direct evidence against all the evidence Plaintiff Kim provided in an attempt to prove he would be injured by the county lines he now occupies. Instead, the Court must view this direct evidence of actual election administrators against Plaintiffs' speculative and minimal evidence of harm from the utopian opinions of paid experts.  Put another way, this Court must decide if it will place a great burden on public entities, not all of whom are joined in this action, and risk the inefficient administration of these elections because of a ballot design that has not been proven to be outcome determinative and will allegedly cause negligible associational harm, and why Plaintiffs put the Court, the Defendants and citizens of the State of New Jersey in this position with their late filing.

## Conclusion

The public has a significant interest in an understandable, undisrupted, and properly administered Presidential election. This court should not imperil that interest due to the limited record of a thirty-day litigation, three weeks before mail voting begins, when the lead Plaintiff now occupies the ballot position this entire lawsuit was initiated to eliminate. With this drastic change, the speculative and specious arguments of harm made by the Plaintiffs should be outright denied by the court. If they are not, the court should rule heavily in favor of allowing the election to go on unimpeded and allowing these constitutional questions to get their due attention through full civil litigation.

Respectfully submitted,

/s/ Mark R. Natale, Esq.

Mark R. Natale, Esq.