# WEISSMAN & MINTZ LLC

### ATTORNEYS AT LAW

STEVEN P. WEISSMAN
ANNMARIE PINARSKI
WILLIAM G. SCHIMMEL
IRA W. MINTZ
FLAVIO L. KOMUVES
JASON L. JONES
JUSTIN SCHWAM
PATRICIA A. VILLANUEVA

Of Counsel
ROSEMARIE CIPPARULO
BRETT M. PUGACH
ADAM M. GORDON
YAEL BROMBERG

Counsel
DAVID A. MINTZ*

\* ADMITTED TO PRACTICE ONLY IN NEW YORK

220 DAVIDSON AVENUE
SUITE 410
SOMERSET, NEW JERSEY 08873
(732) 563-4565
FAX (732) 560-9779

www.weissmanmintz.com

90 BROAD STREET
SUITE 254
NEW YORK, NEW YORK 10004
(212) 509-0918

JOEL N. WEISSMAN (1957-1998)
MARK ROSENBAUM (1955-2002)



## BROMBERG LAW LLC

YAEL BROMBERG, ESQ., PRINCIPAL
T: (212) 859-5083 | F: (201) 586-0427
ybromberg@bromberglawllc.com

43 West 43rd Street, Suite 32
New York, NY 10036-7424

P.O. Box 1131
Glen Rock, NJ 07452-1131

March 27, 2024

VIA ELECTRONIC FILING
Hon. Zahid N. Quraishi, U.S.D.J.
United States District Court of the District of New Jersey
Clarkson S. Fisher Building
402 East State Street
Trenton, NJ 08608

> **Re:    Kim, et al. v. Hanlon, et al.**
> **Civil Action No.: 24-1098(ZNQ)(TJB)**

Dear Judge Quraishi,

There has been no material development in the factual record of this case that alters the relevant factual and legal analysis before the Court following multiple brief and letter submissions and the nine-hour evidentiary hearing held on March 18, 2024. All three of the plaintiffs in this matter – Congressman Andy Kim and congressional candidates Sarah Schoengood and Carolyn Rush – remain at risk of imminent and irreparable harm in this matter.

In their March 25, 2024 letter (DE 183), Plaintiffs set forth, and will not repeat at length here, the various ways in which the evidentiary record in this case has not changed, despite the

1

First Lady's withdrawal from the Senate race and resulting changes in certain county lines. We emphasize a few additional points. Defendants have never articulated a coherent position as to how New Jersey's primary election bracketing and ballot placement laws further any legitimate state interest, let alone one that is sufficiently weighty to justify the burden on Plaintiffs' rights.[1] In fact, New Jersey is the only state that uses this primary election ballot design and Defendants have not identified why any alleged state interest specific to New Jersey warrants this outlier, convoluted system. Neither the First Lady's departure from the Senate race, nor Congressman Kim's replacing her on some (but not all) county lines (*see* DE 188) has any bearing whatsoever on the factual record in this regard. From the onset of this case, all nineteen counties in the state relying on the "county line" ballot design were sued, even those where Congressman Kim had already secured the line. That the congressman has now secured more lines is inconsequential to the relief sought here, and has not materially changed the positions of the parties or the unconstitutionality of the ballot at issue. It certainly presents no "paradigm shift" as argued by defense counsel. (DE 174.)

It is also important to emphasize that the vast body of expert evidence provided by the Plaintiffs as to the impact and magnitude of the advantage of the county line (as well as of the various other features of New Jersey's bracketing and ballot placement system), remain unchanged, notwithstanding the fact that the First Lady dropped out of the race. Regardless of the manner in which candidates experience harm from the county line, these impacts are relevant, and they matter for, among others, three important reasons. First, for obvious reasons, they demonstrate the substantial harm that will be incurred when a candidates' opponent will be on the county line, such as is the case for the Ms. Schoengood and Ms. Rush in various counties, as discussed below.

Second, the substantial advantage of the county line speaks to the size of the penalty or cost if a candidate does not forfeit their associational rights. In other words, if there was no advantage to getting the county line (or to bracketing), then candidates would be free to associate or not associate as they please. Yet, if there is an advantage – due to ballot position and the visual display of the weight of the line – to getting the county line (or bracketing), and the way for a candidate to prevent their opponent from getting that advantage or to mitigate against such advantage is for that candidate to themselves associate with other candidates running for other offices by seeking the county line (or otherwise bracketing), then it places a burden on that candidate's ability to exercise their right to not associate. This essentially becomes a penalty or cost to exercising such rights, and the greater the advantage (as demonstrated by Plaintiffs' experts), the greater the interference with the free exercise of the candidate's associational rights.

---

[1] While the Court has not yet issued a decision on whether it will consider the substance of the letter sent by the Attorney General (DE 149), at bare minimum the Court can take judicial notice of the fact that the Attorney General has not found the state interests to be worthy enough of intervening to defend the constitutionality of New Jersey's primary election laws and practices. (*See* DE 172, Plaintiffs response to AG Letter).

2

This associational harm continues to apply to Rep. Kim precisely *because* he has the county line in more counties than when this case began, not in spite of it.

Third, the substantial advantage, and corresponding and further disadvantage to candidates who are not on the county line (or otherwise not bracketed) demonstrates the extent to which New Jersey's bracketing and ballot placement laws violate the Elections Clause by dictating outcomes and otherwise favoring or disfavoring classes of candidates. This substantial advantage demonstrates that the ballot "is plainly designed to favor candidates" who are endorsed by the county party and/or who bracket with other candidates running for other offices. *See Cook v. Gralike*, 531 U.S. 510, 524-25 (2001) (ballot indicating candidates who did not support a term limit amendment was "plainly designed to favor candidates who are willing to support" the term limit amendment and thus violated the Elections Clause even if "the precise damage the labels may exact on candidates is disputed between the parties"). Additionally, as set forth above, the evidence of the disadvantage to candidates not on the county line, as well as the host of other harms to unbracketed candidates (as well as gaps, Ballot Siberia, stacking, etc.) establishes the existence of "a concrete consequence" on the ballot and implicate a "substantial political risk" to those not designated on the county line or who exercise their right to not associate. *See id.*

All of these harms were presented and argued from the very beginning of this case. All Plaintiffs will experience harm, and each of these different harms will be experienced by one or more of the Plaintiffs. Thus, the First Lady's departure from the Senate race or the change in the number of counties where Rep. Kim has the line, does not alter the factual record or arguments presented in any material way. Indeed, her departure reinforces Plaintiffs arguments, and the expert proofs, of the flexibility of the voting system and its allowance of changes to the ballot as a standard course of business; the departure from the race will cause the clerks or their vendors to adjust (easily) their templates to remove an extra row or column from the Senate race.

As set forth in the bracketing status update letter we filed last night (DE 186) and the updated letter we filed earlier today (DE 188), the other two Plaintiffs in this case, Sarah Schoengood and Carolyn Rush, filed petitions and are each individually harmed. Between the two of them, they will not be on the county line, and one of their opponents will be on the county line, in at least five counties.[2] In those counties, Ms. Schoengood/Ms. Rush will not be bracketing with any other candidate for United States Senate (or for any other office), and, as a result of exercising their right to not associate, will thus inevitably suffer the additional harm of not being included in the preferential ballot draw, allowing their opponents to obtain primacy effects over them. As explained in Plaintiffs' numerous prior submissions, they will be featured either in a column by

---

[2] Ms. Rush will additionally be featured in the same column with her opponents, even though it is "Vote for One," in two other counties, giving the appearance of association and risking disqualification of votes due to overvoting. In yet another county, Cumberland, it is unclear whether Ms. Rush, her opponents, or multiple candidates will be on the county line.

themselves or stacked in a column with candidates running for the same or different office with whom they did not request to bracket, and are subject to being separated on the ballot from their opponents by blank spaces and/or placed in Ballot Siberia. In essence, absolutely nothing related to First Lady Murphy withdrawing from a different race changes the factual record in any material way as to the irreparable harm that Ms. Schoengood and Ms. Rush will imminently suffer. Defendants cannot simply ignore them and pretend like they don't matter, since the Constitution affords protection to all candidates and voters.

Plaintiffs have maintained that the very fact that candidates have to participate in this unconstitutional system and engage in gamesmanship that implicates their associational, equal protection, and the right to vote, is itself a constitutional harm. Thus, even if we were to momentarily close our eyes and exclude the two other congressional candidate plaintiffs in this matter altogether, and momentarily ignore the ongoing and imminent harm that Congressman Kim suffers by way of his forced associational rights and intertwining Fourteenth Amendment rights (*see e.g.*, DE 183), the relevant inquiry of the imposed harm is the *process* – the gamesmanship required – not just the outcome of the process.[3] It is noteworthy that the relief sought from this Court is not simply an order to place the plaintiffs on the "county line," but for a fair and equal ballot design, i.e., the office block display as used to some extent in New Jersey, and as used uniformly in the 49 other states in the nation.

Whether Congressman Kim wins or loses the Senatorial race, and whether he secures the Line or not, the ongoing and imminent harm imposed on him (and the other plaintiffs) is not being presented on the ballot in an equal and fair manner, along with the accompanying intertwining constitutional rights violations such as those related to forced association and the violation of the Elections Clause.

The focus is on the burden imposed, not the savviness of a challenger to find a way to overcome it, or the savviness of the state to endeavor to dilute the impact.  It is a well settled rule that a defendant's voluntary cessation of a challenged practice, such as the passage of a less offensive law, does not deprive a federal court of its power to determine the legality of the practice. If this were the case, then defendants could easily avoid judicial accountability by constantly changing their positions.

Here, there is no material change in facts relevant to the motion for preliminary injunction presently before the Court. All three Plaintiffs are harmed and are imminently harmed, and any subsequent facts are immaterial to the question currently before us.

---

[3] *See e.g., Northeastern Florida Chapter of Associated Gen. Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("The 'injury in fact' in an equal protection case is the denial of equal treatment resulting from the imposition of the barrier.") (relying on decades of Supreme Court jurisprudence, including in the context of candidate accessibility).

Whether it be Congressman Kim, or Ms. Schoengood, or Ms. Rush, Plaintiffs need to avail themselves of the judicial process for injunctive relief in order to obtain a remedy that pertains to this election cycle. This is their one shot at a fair election. Defendants have proffered arguments which, if taken to their logical conclusion, would render the Court unavailable to candidates who seek a fair election without unconstitutional government interference vis-a-vis the ballot. Plaintiffs have come to this Court with surveys, expert reports, constitutional arguments, etc., which demonstrate the substantial number of applications in which this ballot system is unconstitutional. *See Conforti v. Hanlon*, No. 20-08267, 2022 WL 1744774, at *14 (May 31, 2022) (citing *United States v. Stevens*, 559 U.S. 460, 473 (2010)). They have spent hundreds of thousands of dollars on legal and expert fees. They have presented the Court with multiple candidates running for different offices that have been harmed in various ways.

If these Plaintiffs cannot get relief for the upcoming Primary Election, then it begs the question of whether, under any circumstances, a Court can be available to prevent an unfair and unconstitutional election, rather than having to wait until after the election is over when their rights have already been violated.[4] Defendants' positions throughout this case would turn the availability of injunctive relief on its head. The Defendants continue to plead with this Court that there is not enough time to implement the office ballot design sought, while simultaneously requesting more time to present further arguments. The Court should not delay the justice sought, and should direct the clerks to begin implementing the steps needed to ensure office block ballots for the 2024 primary election.

Respectfully submitted,


/s/ Brett Pugach, Esq.                                    /s/ Yael Bromberg, Esq.
/s/ Flavio Komuves, Esq.                                 Bromberg Law LLC
Weissman & Mintz LLC


*Counsel for Plaintiffs*

---

[4] "[O]nce the election occurs, there can be no do-over and no redress" for citizens whose voting rights were violated. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247-48 (4th Cir. 2014). Accordingly, "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury." *Id*. (*citing Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986)).