UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, *et al.*,<br><br>    Plaintiffs<br><br>    v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, *et al.*,<br><br>    Defendants | Civ. A. No.<br>3:24-1098-ZNQ-TJB |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
EMERGENCY MOTION FOR A STAY PENDING APPEAL**

Plaintiffs, through undersigned counsel, respectfully submit this memorandum of law in opposition to the motion by the Clerks of Atlantic, Bergen, Camden, Cape May, Cumberland, Essex, Gloucester, Hunterdon, Mercer, Monmouth, Morris, Passaic, Somerset and Union Counties[1] for a stay pending appeal. Notably, of the 19 defendants in this matter, the Clerks of Middlesex,[2] Ocean and Warren Counties never joined in the stay motion, and the Clerks of Burlington and Hudson Counties initially joined in the stay motion, but later withdrew and abandoned their participation in it. That leaves a total of five defendant clerks who are not pursuing a stay pending appeal (Burlington, Hudson, Middlesex, Ocean, Warren)[3] and are presumably on track to comply with the Court's Order enjoining certain ballot design practices

---

[1]   *See* DE198. Following the filing of this motion, the Clerk of Bergen County joined the stay motion (DE205), along with intervenor Camden County Democratic Committee (DE204). However, the County Clerks in Burlington and Hudson Counties abandoned their participation in the stay motion (DE208, 209).

[2]   The Middlesex clerk joined in the notice of appeal (DE200), but *not* in the stay motion.

[3]   Two other counties, Salem and Sussex, already use an office block ballot and thus were not named as Defendants in this case.

and directing the use of the only feasible alternative – an office block ballot. Collectively with the two counties who are named only as Interested Parties in this action (Salem and Sussex), *seven of the state's 21 counties* appear poised to offer office block ballots for the 2024 primary election based on prior practices (2 counties) or the Court's Order (5 counties).[4]

The emergency stay motion filed at DE198 offers but a single ground for granting the motion: "that implementing an entirely new style of ballot . . . presents an undue risk to the administration of this year's primary elections" and that these risks "do not outweigh the harm Plaintiffs would suffer under the current balloting systems."

The joinder in the motion at DE204 presents no further grounds or argument in support of a stay. The joinder at DE205 presents two additional grounds: the failure to name indispensable parties, and the uncertainty created by the Morris County Republican Committee's ("MCRC") clarification request (DE196), which no party responded to, but which was resolved by the grant of the clarification request (DE207) less than 24 hours after it was filed.

While the Defendants' *appeal* may argue additional points, the *stay application* is limited to those points expressly raised in their emergency motion, and those are the only contentions the moving Defendants are presenting to this Court and they will accordingly be limited to those points in any eventual stay-pending-appeal motion before the Circuit Court:

> For an argument to be preserved on appeal it must be presented "together with supporting arguments and citations." . . . "It is well settled that if an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals.

---

[4]     An eighth clerk, Essex County Clerk Chris Durkin, has yet to formally withdraw from the emergency stay application, but on information and belief, has confirmed his ability to draw office-block ballots, and has stated his intention to design ballots pursuant to the Court's order. https://twitter.com/ChrisJDurkin/status/1774612051970638150 ("I am in favor of block ballot voting. I am confident Essex County will conduct a fair and free election. Our ballots will be clear and concise to voters. The voting systems we have in Essex County are the best in New Jersey").

2

*Norman v. Elkin*, 860 F.3d 111, 129 (3d Cir. 2017) (citations omitted).

Put differently, an appeals court "need not address [a] conclusory, undeveloped accusation. . . . Generally, absent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal." *Guyton v. PECO Inc,* 770 Fed. Appx. 623, 626 (3d Cir. 2019) (cleaned up) (quoting *Ross v. Hotel Employees & Rest. Employees Int'l Union*, 266 F.3d 236, 242 (3d Cir. 2001)).

Turning now to the substance of Defendants' stay application, Defendants do not dispute the high burdens they face. Stays pending appeal are "rarely granted," *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 2013 WL 1277419, *1 (3d Cir. Feb. 8, 2013). Before granting a stay pending appeal, this Court must determine: "(1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest." *In re Revel AC, Inc*., 802 F.3d 558, 565 (3d Cir. 2015). The "bar" thus "is set particularly high." *Conestoga*, 2013 WL 1277419, *1. The Defendants plainly fail to clear it here.

1. **Substantial evidence before the Court indicates that there is no undue risk to the administration of the 2024 primary.**

The record evidence before the Court was clear on many levels that the various clerks, using the hardware and software they now deploy, already have the capability to print mail ballots, and to prepare electronic ballot interfaces for voting machines, with races presented in office-block ballot displays. There was also evidence before the Court that not only *could* they print office block ballot displays, but they *had* printed office-block ballot displays in prior

3

elections. Taken together, the Court rightly rejected the Clerks' pleas that preparing mail and machine ballots by the relevant deadlines was infeasible. (DE194, pp. 42-46).

As to what exactly was the relevant deadline, there was evidence before the Court that the April 5 deadline for preparing printer's proofs of the ballot as it is going to appear is a fairly soft or flexible deadline. Plaintiffs submitted material showing that New Jersey state courts, applying state law, regularly relax that deadline when necessary to adjudicate claims of improper ballot design or to otherwise protect candidates' rights under N.J.S.A. 19:13-12.[5] *See* DE95, pp. 8-9 (describing and citing DE95-1, Exhs. I to L (providing several examples of Orders by New Jersey state courts interpreting state law and modifying election deadlines accordingly) and *New Jersey Democratic Party, Inc. v. Samson*, 175 N.J. 178 (2002)). This evidence, in sum, shows that state courts do not view the printer's proof deadline of April 5 as a firm or inflexible date that precludes granting judicial relief to candidates entitled to it. Rather, the April 20 deadline for mailing out ballots to military and overseas voters is a much firmer one, and even that is not completely fixed. *See id.* Finally, April 20 or thereabouts is not even the deadline for setting the display of in-person voting machines; as the Monmouth County Clerk testified, that deadline does not come until about a month later on May 22nd. (Tr. 367:1-4, "Typically we try to have the machines ready on or about May 22nd because there's testing that needs to be done, and they need to be -- you know, it takes time to get the machines out to the polling locations before May 29th, I believe, is the date of early voting. And there needs to be time for the public to inspect the numbers. There's statutory requirements about that.").

---

[5] Indeed, it is telling that the statutory deadline to file a challenge to protect candidates' rights with respect to their ballot position (12 days after petition filing deadline, here April 6, 2024) comes after the statutory deadline for preparing the printer's proof (60 days before the election, here April 5, 2024). See DE 161, Exh. D-4. Moreover, the statutory deadline to protect candidates' rights in court is tied merely to the filing of such action, not to its resolution. Thus, by statutory design, and consistent with common practice in every election cycle, challenges to ballot position and placement are routinely resolved after the printer's proof deadline.

4

The written expert reports from an experienced computer scientist and voting machine expert, Dr. Appel, made clear that all the software and hardware used in New Jersey could easily proceed with office-block ballot displays. (DE95, Exh. D (Appel Cert.)). He, along with Mr. Macias and Mr. Perez, both experienced voting technology experts, also made clear that for a clerk to transition from a county-line primary ballot to an office-block display, is a relatively easy task, taking a few hours, or a day at most, and may actually be easier to program and check in its totality. *See* DE95, Exh. C, para. 27 (Perez concludes that based on "15+ years of voting technology industry experience, including training, implementation, product management, certification, and competitive bidding processes" that "I would be surprised if the task of copying a previously finalized election definition in order to apply a new ballot layout would take more than a few hours at the most"); DE-115-1, para. 34 (Macias states that a ballot *not* using county-line format "should take less time to program in the voting system, and more importantly take less time and resources for an election official or their vendor to conduct ballot proofing, as well as logic and accuracy testing"). In this manner, the visual bias and confusion that the county-line ballot design forces on voters similarly impacts the time and effort expended by election administrators and vendors to proof them.

Similarly, it was demonstrated that the New Jersey voting systems *in use today* are actually presenting electoral contests to voters in office block format with their existing equipment. Among other things:

- Monmouth County uses ES&S Electionware for general election management, ballot definition files, and ballot design. Specifically, it uses ExpressVote XL for in-person voting and the ES&S products in the DSx50 line for mail-in voting tabulation. Monmouth is demonstrably able to prepare an all-office-block ballot

5

with this equipment. (DE95-1, Exh. B, Monmouth Ballot). The same software, and make of machine and mail-in vote tabulator is also used in 12 other counties (13 including Monmouth). These are Atlantic, Cape May, Gloucester, Hudson, Hunterdon, Middlesex, Morris, Ocean, Passaic, Somerset, Union, and Warren Counties.

- Further, the Court has before it ballots from Atlantic, Hudson, and Morris Counties – using the same software and equipment – demonstrably showing they too have been able to prepare ballots presented in all-office-block or partial-office-block formats. (DE95-1, Exh. A, Morris Ballot, Exh. C, Hudson Ballot; DE95 (Appel Cert., Exh. A, Atlantic Ballot)). Notably, Hudson, Middlesex, Ocean, and Warren Counties either never joined or withdrew from the stay motion, effectively conceding that they will be implementing the Court's order concerning ballot design in the 2024 primary elections.

- It logically follows that *every* county using ES&S equipment – including the ExpressVote XL for in-person voting and DSx50 series tabulator for mail-in voting – is able to present ballots in office-block display using existing equipment and is able to present the ballots ordered by the Court for the 2024 primary elections.[6]

- Mercer County, in 2022, used Dominion software (DE 63-2, Cert. of Nicole Nollette of Dominion Voting Systems, Inc.) for general election management, ballot definition files, and ballot design. It used the ImageCast series of equipment

---

[6] The ExpressVote XL voting device used in New Jersey is used in four other states, Louisiana, New York, Delaware, and Pennsylvania. However, none of these other states use the New Jersey county-line style ballot layout, and use a grid-based template to offer an office-block display. (*See* Ryan Macias Expert Report, 115-1 at 12-13, 23-25; *See also* Tr. 97:15 -98:7.)

for in-person and mail voting. It was demonstrated that Mercer County was able to prepare ballots presented in all-office-block or partial-office-block formats. (DE95-1, Exhs. G, H). The Dominion voting system is currently also used in at least 5 other counties (6 including Mercer). These are Bergen, Burlington, Cumberland, Essex, and Salem Counties.

- Further, the Court had before it ballots from Burlington and Cumberland Counties – using the same software and equipment – demonstrably showing they too were able to prepare ballots presented in all-office-block or partial-office-block formats. (DE95-1, Exh. F, Cumberland Ballot; DE95 (Appel Cert., Exh. C, Burlington Ballot)). Additionally, Salem County already uses office-block format for all its races. And finally, Burlington County withdrew from the stay motion, effectively conceding its ability to implement the Court's order concerning ballot design in the 2024 primary elections. *See also supra* n.4 (Essex County).

- It logically follows that *every* county using the Dominion ImageCast series of equipment is able to present ballots in office-block display using existing equipment and is able to present the ballots ordered by the Court for the 2024 primary elections.

The two counties not mentioned here are Camden and Sussex. Sussex, a nondefendant who is listed as an Interested Party, already uses office-block format for all its races. Camden uses an ES&S precinct-based ballot marking device and tabulator (rather than the ExpressVote XL), which based on the evidence before the Court, is now and has been able to present ballots in office-block format. (DE95-1, Exhs. D, E, Camden Ballots).

7

From all of the foregoing, the proofs are clear: every county in the State is now able to present races in office-block format, and many have demonstrably done so in the past, using the same equipment.[7] There is absolutely no credible evidence of an "undue risk to the administration of this year's primary elections."

### 2. There was no failure to join indispensable parties.

During briefing before this Court, defendants advanced a hodge-podge of arguments about indispensable parties, arguing that one or more of these parties should be joined as defendants: (1) all county Republican and Democratic County Committees and all candidates benefited by the primary ballot design law (DE60, p. 10); (2) "direct opponents" of plaintiffs (DE61, p. 19); (3) county boards of election and superintendents of election (DE63, p. 39); or (4) "all local and state-wide political organizations" (DE50, p. 2.)

In their joinder to the stay motion (DE205), Defendant Bergen County Clerk does not tell the Court exactly which unnamed parties who received either actual or constructive notice of this litigation,[8] and chose not to appear, are still "indispensable," or *why* they are indispensable. A total of three lines of text is spent on the issue. In any event, the Court's opinion thoroughly

---

[7] *See* Ryan Macias Expert Report, DE 115-1, Conclusions at 27-29; Macias Supplemental Report, DE 171; Andrew Appel Supplemental Report, DE 95, Exh. D.

[8] See DE8 and 12 for a list of the parties who were actually furnished with copies of Plaintiffs' initial papers. Because of the attention given to this matter in media and political circles, Plaintiffs' position is that all of these putative unjoined parties had at least constructive, and probably actual, notice of the pendency of matter.

Indeed, one party committee (the CCDC) (DE41) successfully participated in this action as intervenor. Moreover, five candidates for federal and local office (DE90-4, -5, -6, -7, -8, DE 118) also participated in this action as amici. Several other amici parties participated as well, such as the Election Law Clinic of Harvard Law School, ACLU-NJ, the NJ Institute for Social Justice, the League of Women Voters of NJ, several Asian American organizations including the Asian American Legal Defense and Education Fund, and various law professors. A total of six briefs were filed on behalf of a range of amici voices.

canvassed each of the parties that the defendants claimed to be indispensable, carefully reviewed various grounds for mandatory joinder that might be asserted, and found all of them wanting. (DE194, pp. 8-14). Consequently, there have simply been no grounds asserted, much less proven, to show that this Court erred in its Rule 19 analysis or that there is any prospect it will be reversed on appeal.

### 3. Any uncertainty created by the request for clarification of the Court's decision has been resolved.

Another grounds raised for a stay pending appeal was that the MCRC's request for clarification engendered "confusion throughout the State." With this request pending, the clerks said they needed to know whether there are "now two separate and distinct ballot designs for the June 4th primary." The Court's letter order providing clarification (DE207) has now alleviated any supposed confusion or questions the Clerks may have had.[9] Thus, this grounds for a stay pending appeal has been eliminated by events occurring after its filing, and even if it could ever have stood as grounds for a stay, it no longer can.

---

[9] It is worth noting that, just as the County Clerks have designed ballots using all-office block ballot layouts and hybrid ballots that include both a county-line ballot design and office block designs, at least one county has designed primary ballots for each major party in different layouts. For example, until recently, prior to 2021, the Morris Clerk designed office block displays for Republican primary ballots while designing county-line displays for Democratic primary ballots. (DE1, at ¶ 55; DE1-3, p. 21.) Plaintiffs submitted proofs illustrating the 2020 primary ballot in Morris County, which displays the use of county-line ballots for the Democratic Party primary ballot, and the use of office-block ballots for the Republican Party primary ballot. (DE 1-1, Exh. A at 46, 47.)

## CONCLUSION

The Court should deny the motion for stay pending appeal.

Respectfully submitted,

| | |
|---|---|
| WEISSMAN & MINTZ<br>Co-counsel for Plaintiffs | BROMBERG LAW, LLC<br>Co-counsel for Plaintiffs |
| By: /s/ Brett M. Pugach<br>By: /s/ Flavio L. Komuves | By: /s/ Yael Bromberg |

Date: April 1, 2024