UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br><br>        Defendants. | Case No.: 3:24-cv-1098-ZNQ-TJB |

**AMENDED BRIEF ON BEHALF OF PROPOSED INTERVENORS
IN SUPPORT OF MOTION TO INTERVENE**

Of Counsel and on Brief:

Peter J. King
Matthew C. Moench
**KING MOENCH & COLLINS, LLP**
51 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950
T: (973) 998-6860
pking@kingmoench.com
mmoench@kingmoench.com

Jose L. Linares
William J. Palatucci
**McCARTER & ENGLISH, LLP**
4 Gateway Center
100 Mulberry Street
Newark, NJ 07102
Tel: 973-622-4444
jlinares@mccarter.com
wpalatucci@mccarter.com

Jason Torchinsky (*pro hac vice* forthcoming)
Oliver Roberts (*pro hac vice* forthcoming)
**HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC**
2300 N Street, NW, Suite 643A
Washington, DC 20037
Phone: (202) 737-8808
jtorchinsky@holtzmanvogel.com
oroberts@holtzmanvogel.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. ii

INTRODUCTION..................................................................1

PROCEDURAL HISTORY.........................................................2

LEGAL ARGUMENT ..............................................................5

    I.     THE STANDARD FOR INTERVENTION .........................................5

    II.    THE COURT SHOULD GRANT INTERVENORS' REQUEST TO
           INTERVENE UNDER FED.R.CIV. P. 24(b)(1)(B) AS GRANTED
           TO CCDC IN THE COURT'S MARCH 14, 2024 ORDER [DKT.
           121].......................................................................5

    III.   INTERVERNORS' SHOULD BE PERMITTED TO
           INTERVENE AS A MATTER OF RIGHT PURUANT
           TO FED.R. CIV. P. 24(a)(2) .........................................9

    IV.   THIS COURT HAS JURISDICTION TO GRANT
           REPUBLICAN INTERVENORS' MOTION WHILE
           THE PRELIMINARY INJUNCTION IS ON APPEAL ...................14

CONCLUSION .....................................................................16

i

# TABLE OF AUTHORITIES

## Federal Cases

*Brody v. Spang*,
957 F.2d 1108 (3d Cir. 1992) ...................................................................5, 6

*Eu v. S.F. Cty. Democratic Cent. Comm.*,
489 U.S. 214 (1989). .................................................................................. 11

*Jamul Action Committee v. Chaudhuri,* No. 13-01920,
2015 U.S. Dist. LEXIS 150003 (E.D. Cal. Nov. 4. 2015)....................................... 15

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998) .........................................................................10

*Kusper v. Pontikes,*
414 U.S. 51 (1973) ......................................................................................11

*Liberty Mut. Ins. Co. v. Treesdale, Inc.,*
419 F.3d 216 (3d Cir. 2005) ..........................................................................9

*Manriquez v Devos,* No. 17-07210,
2018 WL 5316174 (N.D. Cal. Aug. 30, 2018) ....................................... 15

*Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc.,*
72 F.3d 361 (3d Cir. 1995).............................................................. *passim.*

*NLRB v. Frazier,*
144 F.R.D. 650 (D.N.J. 1992) ......................................................................11

*Plotkin v. Pac. Tel. & Tel. Co.,*
688 F.2d 1291 (9th Cir. 1982) .............................................................. 15

*Robinson v. Ardoin,*
605 F. Supp. 3d 759 (M.D. La. 2022)..................................................... 15

*Smith v. Twp. of Aleppo*, No. 05-0071,
2005 WL 4984381 (W.D. Pa. Aug. 24, 2005) .................................. 14, 15

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) ...........................................................................13

*Victory v. Berks Cty.*, 18-5170,
2019 U.S. Dist. LEXIS 92552 (E.D. Pa. Jan. 15, 2019) ................................. 14, 15

**State Cases**

*Quaremba v. Allan*
67 N.J. 1 (1975)...........................................................................12

*Schundler v. Donovan*,
377 N.J. Super. 339 (App. Div. 2005)...................................................12

**Rules**

Fed. R. Civ. P. 24(a) .............................................. .......9

Fed. R. Civ. P. 24(a)(2) ........................................... .......9

Fed. R. Civ. P. 24(b) ............................................... .......6

Fed. R. Civ. P. 24(b)(1)(B) .......................................... ....5, 6

Fed. R. Civ. P. 24(b)(3)................................................. .......6

# INTRODUCTION

Proposed Intervenors, Morris County Republican Committee ("MCRC"), Laura Ali, in her capacity as Chair of the MCRC, the New Jersey Republican Chairs Association ("NJRCA"), and Jose Arango, in his capacity as Chair of the NJRCA, (collectively, "Republican Intervenors"), seek intervention on an emergent basis.[1]  This is necessary to address issues which may be raised by parties in the underlying litigation or any appellate proceedings regarding the scope of the Court's March 29, 2024 Preliminary Injunction granted in favor of three democratic candidates for federal office, which the Court confirmed by Letter Order on March 30, 2024, does not apply to the June 4, 2024, Republican Primary.  While this Order addressed MCRC's most immediate concerns, intervention on an expedited basis is still necessary to the extent that the Letter Order is appealed directly, or if this Court in future proceedings, or the Third Circuit on appeal, issue rulings that do impact future Republican primaries. No individual or entity which is currently a party to this case can adequately represent the Republican Intervenors' interests as to the scope of the Court's Order or on the impact on their First Amendment Associational rights. In addition, no entity currently in this case can address whether ballot design issues are nonjusticiable political questions. As such, intervention on an emergent basis is warranted.

---

[1] The original motion was filed solely by MCRC and Chairwoman Ali.  This Motion is Amended to add the New Jersey Republican Chairs Association and its Chairman Jose Arango.

## PROCEDURAL HISTORY

This case was brought by three democratic candidates: Andy Kim, Sarah Schoengood, and Carolyn Rush, as their official campaign entities, (collectively, "Plaintiffs"), to challenge New Jersey's primary election bracketing and ballot placement system. The Verified Complaint alleges that the federal Democratic candidates' Constitutional rights to Vote, Equal Protection, Freedom of Association, and rights under Elections Clause, will be violated by the imposition of the state's ballot bracketing and placement statutes in the upcoming "Primary Election," which is specifically defined as the June 4, 2024 Democratic Primary Election (Complaint, at 1).

Simultaneously with filing their Verified Complaint, Plaintiffs filed a motion for a preliminary injunction, arguing that without an injunction Plaintiffs' rights will be harmed by the Defendants' conduct "in the upcoming June 4, 2024 Democratic Primary Election ('Primary Election')…" (Plaintiffs' Brief in Support of Motion for Preliminary Injunction, Dkt. 5-1, at 2). Plaintiffs' brief concludes the same way it begins, by asking the Court to "grant Plaintiffs' motion for a preliminary injunction that stops Defendants' deeply unconstitutional actions regarding ballot design from being implemented or used **in the 2024 Democratic Primary Elections.**" (Plaintiff's Motion for a Preliminary Injunction, Dkt. 5-1, at 53) (emphasis added).

Additionally, Plaintiffs filed a motion for their preliminary injunction to be

heard on an emergent basis, once again arguing that it was necessary for the Court to act quickly based on the harm which could be incurred by *Plaintiffs,* in the *June 4, 2024, Democratic Primary*.  [Dkt. 6]

Pursuant to the Court's March 8, 2024 Text Order [Dkt. 74], the time to file answers in this case has been stayed for all parties.[2]  While the initial preliminary injunction has been granted on March 29, 2024, the case is still pre-answer, and the Court's decision to date is limited to granting emergent relief applicable to Plaintiffs in the June 4, 2024 Democratic Primary.

To date, only one political party – the Camden County Democratic Committee ("CCDC") – has sought Intervenor status, which this Court granted on March 14, 2024 [Dkt. 121].  Similar to CCDC, the Republican Intervenors move to intervene in this case as it moves forward to make sure that unique interests as to their constitutional rights to association under the First Amendment are advocated and advanced before the Court as currently set forth in the Legislative scheme established by the Legislature. Furthermore, Republican Intervenors have significant concerns that if the Court ultimately upholds its preliminary injunction ruling as a final decision in this case, that the same arguments raised by Plaintiffs could be adopted and expanded to also prohibit

---

[2] Pursuant to that Order, and the footnote contained in the Court's Order March 14, 2024 Order [Dkt. 121] granting Intervenor Status to the Camden County Democratic Committee, Republican Intervenors are not filing a proposed responsive pleading at this time, as would normally be required pursuant to Court Rules.  However, Intervenors will file a responsive pleading in the time period directed by the Court when and if the Court's March 8, 2024 Stay on responsive pleadings is lifted.

"party lines" in a general election and could have far reaching consequences on elections throughout this country.

Republican Intervenors also move to intervene on an emergent basis on the issue of the scope of the Court's Preliminary Injunction.  MCRC raised this issue by letter on March 29, 2024, [Dkt. 196], and the Court confirmed MCRC's understanding that based on the specific legal issues raised by Plaintiffs and the procedural posture of the case, "The Court's Order is therefore limited to the 2024 Democratic Primary Election only, and this Court declines to extend the scope of its decision beyond the limitations of the present litigation." (Letter Order, dated March 30, 2024).

On March 30, 2024, proposed Intervenors, Morris County Republican Committee and its Chair Laura Ali, moved to intervene on an emergent basis.  [Dkt. 210 and 211].  On April 1, 2024, the Court entered an Order directing that any party wishing to object to MCRC and Chair Ali's motion should do so by April 3, 2024, and further directing that the parties should address issues of this Court's jurisdiction to determine the motion to Intervene given that notice of appeal have been filed in the Third Circuit. [Dkt. 212].  The Court also issued an Order denying various Defendants' motions for a stay pending appeal. [Dkt. 219].

This Amended Motion and Brief is submitted to add proposed Intervenors The New Jersey Republican Chairs Association, and its Chairman Jose Arango (collectively with MCRC and Chair Ali referred to as "Republican Intervenors").  The

4

Brief will also address the issues of jurisdiction raised by the Court's April 1, 2024 Order. While the Court's Order addressed MCRC's most immediate concerns, Republican Intervenors now seek to intervene in this case pursuant to Federal Rule of Civil Procedure Rule 24 (a) and (b) to protect their legal interests to the extent the scope of the Court's Preliminary Injunction is challenged on appeal, and to the extent that any further legal proceedings in this case could impact their rights and interests.

## LEGAL ARGUMENT

### I.    THE STANDARD FOR INTERVENTION

Federal Rule of Civil Procedure Rule 24(a) governs intervention as of right and provides, in relevant part:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Rule 24 also provides for permissive intervention, which is available upon timely application when a non-party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Whether to grant permissive intervention under Rule 24(b), as the doctrine's name suggests, is within the discretion of the district court." *Brody v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992). "In exercising its discretion, the court must consider

5

whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## II. THE COURT SHOULD GRANT REPUBLICAN INTERVENORS' REQUEST TO INTERVENE UNDER FED. R. CIV. P. 24 (b)(1)(B) AS GRANTED TO CCDC IN THE COURT'S MARCH 14, 2024 ORDER [DKT. 121]

On March 14, 2024, this Court granted the request of the Camden County Democratic Committee to Intervene under the "permissive intervention" standard of Rule 24(b). The Court's Order granting CCDC permissive intervention held as follows:

> Permissive intervention under Rule 24(b), as the name suggests, affords a court with some discretion as to whether to join the would-be party: "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24 (b)(3). The decision of whether to grant or deny intervention under Rule 24(b)(1)(B) is discretionary. *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992).

Court's Order, March 14, 2024 [Dtk 121].

As the Court found with CCDC, Republican Intervenors have "defenses that share common questions of law and fact regarding the constitutionality of New Jersey's primary election system, as well as its administration and application of New Jersey's election laws." [Dkt. 121]  Republican Intervenors have their own First Amendment Constitutional Rights at issue, including their right to associate with a group of

6

candidates and to communicate with voters about that association by appearing together in a line on the ballot.  Republican Intervenors will also argue to the Court at the appropriate time that the alleged effects of "the line" do not take into account numerous other factors, including name recognition, experience, incumbency, fundraising, public record, and community involvement. Additionally, Republican Intervenors as political party organizations have concerns that the same arguments advanced by Plaintiffs in this case could be extrapolated and applied to a general election and impact the rights of Republican candidates to affiliate and appear together on a general election ballot.  Republican Intervenors' concerns on these issues are significant and share defenses and common questions of law and fact with other parties and defendants in this case.

On the issue of timeliness, there are two separate, but related issues. First, the matter has currently only been heard on a preliminary injunction, and the Court's Order is currently limited to the June 4, 2024 Democratic Primary Election.  No answers have yet been filed in this case, which is only a month old, and Republican Intervenors should be granted intervenor status to participate in all further proceedings in this case.

Second, and on a more emergent basis, Republican Intervenors seek intervenor status in the event that the Court's March 30, 2024 Letter Order is challenged or that the scope of the Court's current Opinion as to the 2024 June Democratic Primary is potentially applied to the 2024 June Republican Primary on appeal.  No other parties

currently in this case are in a position to address those issues to adequately protect the interests of Republican Intervenors.

Republican Intervenors anticipate that some party may object to the Intervention motion following the Court's decision. However, such objections should not overcome Republican Intervenors' interests in immediate intervention. The Third Circuit has noted that to determine timeliness the courts are to look at what proceedings of substance on the merits have occurred, and to what extent would the intervention prejudice the parties who have already been involved. *Mt. Top. Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d at 369-70. The Third Circuit also recognized that "intervention has been allowed even after the entry of a judgment." *Id.* at 370 (citations omitted).

Here, the immediate question regarding the scope of the injunction did not clearly arise until the Court's March 29, 2024 Preliminary Injunction Opinion and Order, and then clarified by the Court's March 30, 2024 Letter Order. The issue of the scope of the Preliminary Injunction is an issue which was not previously raised nor articulated until this time.

While that discreet issue has resolved in Republican Intervenors' favor at the moment, it is possible that some party will challenge the Court's March 30, 2024 Letter Order or that subsequent decisions by this Court or the Third Circuit could impact the future Republican primary elections and/or the scope of the Court's Preliminary

Injunction. Even the Court's Letter Order of March 30, 2024 suggests that in a different procedural setting the Court may be inclined to apply the same rationale set forth in its current Preliminary Injunction to a future Republican primary.   As such, to protect the rights of Republican Intervenors in this specific litigation or the potential collateral future impacts of decisions made in the course of this litigation on future claims, Republican Intervenors seek the ability to intervene immediately on an expedited basis. Republican Intervenors' involvement would not impact any party's rights or delay any proceedings.

### III.   REPUBLICAN INTERVENORS SHOULD BE PERMITTED TO INTERVENE AS A MATTER OF RIGHT PURSUANT TO FED. R. CIV. P. 24(a)(2).

Republican Intervenors recognize that the Court granted CCDC permissive intervenor status, and therefore, did not reach the issue of whether CCDC would have the ability to intervene as of right.  However, in addition to permissive intervention, Republican Intervenors should also be permitted to intervene as of right.

The Third Circuit has held that a non-party seeking intervention as of right under Rule 24(a)(2) must establish (1) a timely application for leave to intervene; (2) a sufficient interest in the underlying litigation; (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent the prospective intervenor's interests. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005); *see*

*also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). "Each of these requirements must be met to intervene as of right." *Id.* (citing *Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d at 366). Here, Republican Intervenors satisfy all of these requirements in this case.

As already discussed, Republican Intervenors' intervention is timely. The scope of the Preliminary Injunction Opinion and Order and the related March 30, 2024 Letter Order are only a few days old. The current litigation, whether on appeal in the Third Circuit or before this Court for further proceedings, could challenge the Court's scope of the Preliminary Injunction or result in a board ruling that collaterally impacts the constitutional rights asserted by Republican Intervenors. Despite the entry of a preliminary injunction of significant importance, this case is still at a pre-answer phase and the ultimate merits are still to be determined. Additionally, while it is unclear what issues may be raised on appeal or the timing and procedure for those motions (some of which are already pending), Republican Intervenors' rights may be impacted by those future proceedings, including but not limited to challenges to the Court's March 30, 2024 Letter Order or arguments that decisions regarding the constitutionality of the Democratic primary have an impact on the Republican primary now or in the future. Hence, the need for immediate intervention.

Republican Intervenors have a sufficient interest in the underlying litigation. A party seeking intervention as of right "must demonstrate that there is a tangible threat

10

to a legally cognizable interest to have the right to intervene." *Mountain Top*, 72 F.3d at 366. Our courts liberally construed Rule 24(a) "in favor of intervention." *NLRB v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992).

As articulated by CCDC in its motion, Republican Intervenors also have an interest in protecting their right to freedom of association and to communicate that right to voters. Their candidates have a right to appear together on the ballot so that voters are aware of the relationship and shared values. Republican Intervenors do not believe that simply permitting the same slogan is sufficient to protect their freedom of association, and also believe that the Legislature, not the judiciary, is properly empowered with making decisions regarding bracketing, ballot design, and ballot placement.

Further, the issue of ballot design is a political matter, which is further underscored by the fact that primaries are internal party processes and that the county clerks who make discretionary decisions are elected under the New Jersey Constitution. Finally, there may also be a difference in the analysis between federal candidates, state candidates, and county and local candidates. All of these issues relate to the rights of candidates and political parties to the freedom of association and the rights of the legislature to enact laws governing ballot access.

We believe that those rights have been articulated in *Kusper v. Pontikes*, 414 U.S. 51 (1973), and *Eu v. San Franscisco County Democratic Central Committee*, 489

11

U.S. 214 (1989), and while this Court may disagree on the extent that those cases extend to bracketing or ballot placement, if the Court's current decision is subsequently applied to future Republican primaries, it will impact and burden the rights of Republican Intervenors.

Republican Intervenors have an interest in determining how they wish to select their county and local candidates and how those candidates wish to be bracketed.  This is especially true in light of New Jersey Supreme Court cases that have upheld the bracketing system in cases unrelated to federal candidates, such as *Quaremba v. Allan*, 67 N.J. 1 (1975), and *Schundler v. Donovan*, 377 N.J. Super. 339 (App. Div. 2005).

Finally, MCRC, as a statutory county political party, and Chairwoman Laura Ali as the elected head of the county party, have an interest to the extent that the Court's decision in this case could ultimately be extended to prohibiting candidates in a general election from appearing together as a party.

Undoubtedly, if the Court upholds its current preliminary finding as a final disposition the impact of that decision could be applied in the future to the Republican primary in a subsequent case, even if not directly applied in this one.   As such, there is no question that Republican Intervenors' interests in having their candidates appear together on the ballot will be significantly impaired or affected by the disposition of the underlying action.

No current party represents the interests of Republican Intervenors on these

12

issues. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Mountain Top*, 72 F.3d at 323 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). While MCRC may also be a county organization similar to CCDC, it is noted that CCDC did not file its own brief opposing the motion for a preliminary injunction or raising issues about the First Amendment rights of its organization. (Opinion at 1, n1). Further, they are differently situated as organizations representing different parties and different county organizations.

It is also noted that while traditionally the Attorney General would defend the statutes as passed by the Legislature, here, the Attorney General has decided not only not to defend those statutes, but to take a position affirmatively opposed to advocating the State's interests as set forth by the Legislature when the Legislature passed the ballot bracketing and placement statutes. Therefore, there is no entity currently in this case to provide counter-balancing constitutional arguments or state policy interests on behalf of the political party organizations who wish to associate through "the line" on the ballot or on behalf of candidates who wish to so affiliate with those organizations.

13

## IV.  THIS COURT HAS JURISDICTION TO GRANT REPUBLICAN INTERVENORS' MOTION WHILE THE PRELIMINARY INJUNCTION IS ON APPEAL

In the Court's Order of April 1, 2024, the Court directed that any opposition to the Intervenors' motion should be submitted by April 3, 2024.  That same Order also directed the parties to address the question as to whether this Court has jurisdiction to consider the motion given the pending appeals of the Court's Preliminary Injunction.

In accordance with that Order, the Court has jurisdiction to decide this Motion. *Victory v. Berks Cty.*, 18-5170, 2019 U.S. Dist. LEXIS 92552, *8 (E.D. Pa. Jan. 15, 2019) ("There is no complete divestiture of jurisdiction where 'the judgment appealed from does not determine the entire action, in which case the district court may proceed with those matters not involved in the appeal.'") (citation omitted). Here, the Court has issued a preliminary injunction in favor of the Plaintiffs, but this judgment, now on appeal, does not "determine the entire action." The Court has not yet decided whether to grant the Motion to Intervene, and thus, the Court retains jurisdiction to decide the Motion.

District courts retain jurisdiction to continue proceedings while other aspects of the case are on appeal. *See e.g.*, *Victory*, 2019 U.S. Dist. LEXIS 92552, *8 (district court denying a motion to stay and proceeding with aspects of the case that were not related to order appealed and that did not determine the entire action); *Smith v. Twp. of Aleppo*, No. 05-0071, 2005 U.S. Dist. LEXIS 47789, 2005 WL 4984381, at *2 (W.D.

14

Pa. Aug. 24, 2005) (district court holding a contempt hearing while its preliminary injunction order was on appeal); *Jamul Action Committee v. Chaudhuri*, No.13-01920, 2015 U.S. Dist. LEXIS 150003, 2015 WL 6744531 (E.D. Cal. Nov. 4, 2015) (district court explaining that an appeal from the district court's order denying a preliminary injunction "does not divest the district court of jurisdiction to proceed with the action on the merits."); *Manriquez v. Devos*, No. 17-07210, 2018 U.S. Dist. LEXIS 221729, 2018 WL 5316174, at *1 (N.D. Cal. Aug. 30, 2018) (district court refusing to stay proceedings as to possible motions for class certification while the district court's preliminary injunction order was on appeal); *see also Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) (holding that "an appeal from an interlocutory order does not stay the proceedings, as it is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case."). The election law context is no different. For example, in ongoing redistricting litigation in the State of Louisiana, the Middle District of Louisiana issued a preliminary injunction order enjoining Louisiana's electoral map. *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 766 (M.D. La. 2022). While the order was on appeal in the Fifth Circuit and U.S. Supreme Court, the district court continued proceedings and discovery. *Id.*

In sum, the Court retains jurisdiction to decide the Motion because it is not a matter involved in the appeal.

## CONCLUSION

Based on the foregoing, Intervenors Morris County Republican Committee and Laura Ali, in her capacity as Chair of the Morris County Republican Committee, the New Jersey Republican Chairs Association, and Jose Arango, in his capacity as Chair of the New Jersey Republican Chairs Association, respectfully submit that they should be permitted to intervene as a matter of right in this litigation, or alternatively be granted permissive intervention, and on an emergent basis so as to protect their interests on the scope of the Court's Preliminary Injunction as clarified on March 30, 2024, and to the extent that any future proceedings before this Court or on appeal could have the effect of impacting the conduct of future Republican primaries.

**Respectfully submitted,**

**KING MOENCH & COLLINS LLP**

*/s/ Peter J. King*
Peter J. King, Esq.

*/s/ Matthew C. Moench*
Matthew C. Moench, Esq.

cc:  All counsel (via ECF)

16