**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor, Camden County Democratic Committee*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al., <br><br> Defendants. | Case No.: 3:24-cv-01098-ZNQ-TJB |
| CHRISTINE CONFORTI, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al., <br><br> Defendants. | Case No.: 3:20-cv-08267-ZNQ-TJB |

---

## BRIEF ON BEHALF OF INTERVENOR, CAMDEN COUNTY DEMOCRATIC COMMITTEE, IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS

---

**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor,*
*Camden County Democratic*
*Committee*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

LEGAL ARGUMENT ................................................................. 3

    I.    CCDC IS NOT REQUIRED TO ESTABLISH
           ARTICLE III STANDING AS A PERMISSIVE
           INTERVENOR ................................................................... 3

    II.   EVEN IF THE COURT WERE TO FIND THAT A
           PERMISSIVE INTERVENOR MUST ESTABLISH
           STANDING, CCDC HAS ARTICLE III STANDING
           TO REMAIN AS AN INTERVENOR IN THE
           *CONFORTI* AND *KIM* MATTERS ......................................... 6

    III.  ENTRY OF THE AGREEMENT BY PLAINTIFFS
           AND THE CAMDEN COUNTY CLERK DOES
           NOT UNDERMINE THE BASIS FOR PERMISSIVE
           INTERVENTION.................................................................. 10

    IV.  THE LAW OF THE CASE DOCTRINE AND
           COLLATERAL ESTOPPEL BAR PLAINTIFFS
           FROM RELITIGATING THE ISSUE OF
           WHETHER CCDC IS A "STATE ACTOR"
           SUFFICIENT TO CONFER STANDING AND
           WHETHER CCDC SHOULD BE GRANTED
           PERMISSIVE INTERVENTION ............................................ 13

CONCLUSION ........................................................................ 18

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Adam v. Barone*,
41 F.4th 230 (3d Cir. 2022) ............................................................. 7

*Del. River Port Auth. v. Fraternal Order of Police*,
290 F.3d 567 (3d Cir. 2002).......................................................... 15

*Doe v. Kesketh*,
828 F.3d 159 (3d Cir. 2016).......................................................... 15

*Eu v. S.F. Cty. Democratic Cent. Comm.*,
489 U.S. 214 (1989)......................................................................... 7

*Hamilton v. Leavy*,
322 F.3d 776 (3d Cir. 2003).......................................................... 14

*In re Cont'l Airlines, Inc.*,
279 F.3d 226 (3d Cir. 2002).......................................................... 14

*Kim v. Hanlon*,
99 F.4th 140 (3d Cir. 2014) ...................................................... 1, 7

*King v. Governor of N.J.*,
767 F.3d 216 (3d Cir. 2014)............................................................ 5

*Mishewal Wapp Tribe of Alexander Valley v. Salazar*,
No. 5:09-cv-02502 EJD, 2012 U.S. Dist. LEXIS 142756
(N.D. Cal. Sept. 28, 2012) ............................................................ 11

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
585 U.S. 755 (2018)......................................................................... 5

*N.Y. State Bd. of Elections v. Lopez Torres*,
552 U.S. 196 (2008)...................................................................... 8, 9

*Seneca Res. Corp. v. Highland Twp.*,
No. 16-cv-289, 2017 WL 4168472
(W.D. Pa. Sept. 20, 2017) ........................................................................ 3, 4

*Tasby v. Wright*,
109 F.R.D. 296 (N.D. Tex. 1985) .............................................................. 10

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997) ................................................................................... 8

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
581 U.S. 433 (2017) ................................................................................... 3

*UA Theatre Circuit v. Twp. of Washington*,
16 F.3d 392 (3d Cir. 2003) ........................................................................ 15

*Wittman v. Personhuballah*,
578 U.S. 539 (2016) ................................................................................ 3, 4

## **RULES**

Fed.R.Civ.P 24(a)(2) .................................................................................. 3

Fed.R.Civ.P 24(b) ...................................................................................... 5

Fed.R.Civ.P. 60 ......................................................................................... 11

Rule 7.1(i) ................................................................................................. 13

# INTRODUCTION

The unfortunate irony in Plaintiffs' application is their abject failure to give serious attention to the cognizable harms to the associational rights of political party organizations.

Plaintiffs in both the *Kim v. Hanlon* and *Conforti v. Hanlon* matters (collectively, "Plaintiffs") seek to dismiss Intervenor, Camden County Democratic Committee (hereinafter, "CCDC") from both of these actions. Plaintiffs assert that "subsequent critical events have transpired" which, according to Plaintiffs, warrant dismissal of CCDC from these matters for lack of Article III standing. However, none of these "subsequent critical events" have any bearing on CCDC's ability to remain as an intervenor in this case. Plaintiffs' Motion to Dismiss should be denied for four significant reasons.

***First***, Plaintiffs have not cited to any authority requiring CCDC to establish Article III standing as a permissive intervenor. All of the cases identified by Plaintiffs in support of their argument only concern whether an intervenor as of right must establish Article III standing to participate in an action, and whether an intervenor that steps into the shoes of a defendant to solely pursue an action must establish Article III standing. None of these circumstances are present herein as Plaintiffs do not dispute that CCDC was granted permissive intervention, and the

1

Third Circuit has specifically held that an intervenor is not required to possess Article III standing in order to participate in a litigation.

*Second*, even if this Court were to find that CCDC is required to establish Article III standing as a permissive intervenor, CCDC can demonstrate such standing.

*Third*, entry of the settlement agreement between Plaintiffs and the Camden County Clerk does not undermine the basis for granting permissive intervention. Plaintiffs have not cited to any precedential legal authority that would allow this Court to review the prior grant of permissive intervention. Even so, the constitutionality of the county line is still before this Court as Plaintiffs have only obtained temporary preliminary injunctive relief enjoining the use of the county line ballot in one primary against one political party. CCDC's constitutional harms can still be redressed by an order from this Court denying Plaintiffs permanent relief.

*Fourth*, the law of the case doctrine and collateral estoppel bar Plaintiffs from relitigating the issues of whether CCDC qualifies as a "state actor" sufficient to confer standing and whether CCDC should be granted permissive intervention in these matters. Both of these issues were fully and fairly litigated by the same parties in this action. Plaintiffs efforts to relitigate these issues now should be rejected.

For these reasons, and as set forth more fully below, Plaintiffs' Motion to Dismiss should be denied.

2

## LEGAL ARGUMENT

### I.    CCDC IS NOT REQUIRED TO ESTABLISH ARTICLE III STANDING AS A PERMISSIVE INTERVENOR.

The primary basis for Plaintiffs' Motion to Dismiss is that CCDC lacks Article III standing and, therefore, "this matter is not justiciable as to CCDC for want of 'case' or 'controversy.'"  *See* ECF No. 287-1, at 4.  In support of their argument, Plaintiffs cite *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433 (2017), *Wittman v. Personhuballah*, 578 U.S. 539 (2016), and *Seneca Res. Corp. v. Highland Twp.*, No. 16-cv-289, 2017 WL 4168472 (W.D. Pa. Sept. 20, 2017).  However, none of these cases address whether a permissive intervenor, such as CCDC, is required to establish Article III standing.

In *Town of Chester, N.Y. v. Laroe Estates, Inc.*, the U.S. Supreme Court addressed whether a litigant must possess Article III standing in order to ***intervene of right*** under Federal Rule of Civil Procedure 24(a)(2).  *Laroe Estates, Inc.*, 581 U.S. at 435 (emphasis added).  Ultimately, the Court held that "an ***intervenor of right*** must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."  *Id.* at 440 (emphasis added).  Here, this Court found that CCDC satisfied the elements of permissive intervention.  *See* ECF No. 121, at 1. Accordingly, it granted CCDC permissive intervention and specifically "d[id] not consider alternative arguments regarding intervention of

right." *Id.* at 2.  Plaintiffs do not dispute that this Court granted CCDC permissive intervention.  *See* ECF No. 287-1, at 1, 4, 10, 12.

Equally misplaced is Plaintiffs' reliance on *Wittman v. Personhuballah*.  The relevant parties in that action were the intervenor Members of Congress and, since the Commonwealth of Virginia had not pursued an appeal, only the intervenors attacked the district court's decision.  *Witmann*, 578 U.S. at 543.  Because the intervenor Members of Congress sought to step into the shoes of the Commonwealth, they were required to independently fulfill the requirements of Article III standing.  *Id.* at 543-44.  Such circumstances are not present herein.  Indeed, as set forth below in Section IV, the Third Circuit rejected on appeal Plaintiffs' argument that CCDC was stepping into the shoes of state actors to defend the constitutionality of the challenged ballot design statutes.

Plaintiffs can similarly find no support in *Seneca Res. Corp. v. Highland Twp.* for their claim that a permissive intervenor is required to establish Article III standing.  First, a case from the Western District of Pennsylvania is not binding on this Court.  Second, the court in *Seneca Res. Corp.* acknowledged that the Circuit Courts of Appeals were "divided on whether a prospective intervenor of right must meet the requirements of Article III standing."  *Seneca Res. Corp.*, No. 16-cv-289, 2017 WL 4168472, at *7.  The court there specifically found that the proposed intervenors "failed to meet their burden to demonstrate standing for purposes of

4

*intervention as of right*." *Id.* at \*16 (emphasis added). Here, it is undisputed that this Court granted CCDC permissive intervention. *See* ECF No. 287-1, at 1, 4, 10, 12. Because the Court did not grant CCDC intervention of right and in fact did not even address such claim, the cases cited by Plaintiffs are inapplicable to this matter.

Indeed, the Third Circuit has held that an intervenor is not required to establish Article III standing to participate as an intervening party. The Third Circuit addressed this specific issue in *King v. Governor of N.J.*, acknowledging that this was an open question within the Third Circuit. *King v. Governor of N.J.*, 767 F.3d 216, 222-23 (3d Cir. 2014), *cert. denied sub nom. King v. Christie*, 575 U.S. 996 (2015), *abrogated on other grounds by Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018). The district court adopted the view held by a majority of the sister circuits, finding that an intervenor did not need to establish Article III standing to participate. *Id.* at 233. It then granted Garden State permissive intervention under Federal Rule of Civil Procedure 24(b). *Id.*

On appeal, the Third Circuit found that the district court's finding that Garden State was not required to possess Article III standing was not erroneous and that the district court did not abuse its discretion by granting Garden State permissive intervention. *Id.* at 244. In finding that an intervenor did not need to possess Article III standing, the Third Circuit stated:

> Whether prospective intervenors must establish Article III
> standing, however, is an open question in the Third Circuit

5

> . . . As the District Court acknowledged, our sister circuits are divided on this question. The majority have held that an intervenor is not required to possess Article III standing to participate[.]
>
> …
>
> We find the majority's view more persuasive. If the plaintiff that initiated the lawsuit in question has Article III standing, a 'case' or 'controversy' exists regardless of whether a subsequent intervenor has such standing[.]

*Id.* at 245 (internal citations omitted).

Here, CCDC, as a permissive intervenor, is not required to demonstrate Article III standing to participate in this action. As can be seen, all of the cases cited by Plaintiffs are factually and legal distinguishable from this matter. Plaintiffs have not cited to a single case establishing that a permissive intervenor is required to establish Article III standing to participate in an action. For this reason alone, Plaintiffs' Motion to Dismiss should be denied.

## II. EVEN IF THE COURT WERE TO FIND THAT A PERMISSIVE INTERVENOR MUST ESTABLISH STANDING, CCDC HAS ARTICLE III STANDING TO REMAIN AS AN INTERVENOR IN THE *CONFORTI* AND *KIM* MATTERS.

Even if the Court were to find that CCDC, as a permissive intervenor, is required to establish standing—which CCDC disputes—CCDC has Article III standing to remain as an intervenor in this matter. "To establish Article III standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

6

favorable judicial decision." *Adam v. Barone*, 41 F.4th 230, 233-34 (3d Cir. 2022) (internal quotations and citations omitted).

Here, CCDC has suffered an injury in fact resulting from the district court's preliminary injunction. Specifically, CCDC has an identifiable, significantly protectable legal interest in its freedom to associate with Democratic candidates for office as afforded by the First Amendment. As acknowledged by the Third Circuit on appeal, this includes the right to not only endorse and identify candidates that share CCDC's ideologies and preferences, but to group the candidates in a manner that informs voters of the individuals who constitute the association to advance their shared interests. *See Kim v. Hanlon*, 99 F.4th 140, 154 (3d Cir. 2014); *See also Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214 (1989).

This harm is fairly traceable to the County Clerks as N.J.S.A. 19:23-24 authorizes the County Clerks to conduct a drawing to determine the order of the ballot. Plaintiffs assert that "it is clear that . . . the issue of the constitutionality of the county line is no longer at issue with respect to Camden County[.]" *See* ECF No. 287-1, at 6. However, Plaintiffs fail to comprehend that this Court entered a preliminary injunction that applied to one primary for one political party. Plaintiffs have not yet obtained a permanent injunction enjoining use of the county-line ballot across all counties in New Jersey.

Plaintiffs' alleged harms pale in comparison to CCDC's constitutional harms to its freedom to associate when considered in light of *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008). Despite Plaintiffs' misguided beliefs, there is no constitutional right to appear in first position on a primary ballot. And any alleged advantage conferred to a candidate who obtains first position on the primary ballot because of the "luck of the draw" is not a constitutional injury that can be redressed through the First Amendment. The U.S. Supreme Court recognized this notion in *Lopez Torres*, stating "[n]one of our cases establishes an individual's constitutional right to have a 'fair shot' at winning the party's nomination." *Lopez Torres*, 552 U.S. at 205. But, what constitutes a 'fair shot' is a reasonable question for legislative judgment, not a constitutional question:

> What constitutes a 'fair shot' is a reasonable enough question for legislative judgment, which we will accept so long as it does not too much infringe upon the party's associational rights. But it is hardly a manageable constitutional question for judges—especially judges in our legal system, where traditional electoral practice gives no hint of even the existence, must less the content, of a constitutional requirement for a 'fair shot' at party nomination.

*Id.* at 205-06.

States can enact regulations to ensure orderly elections. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and

campaign-related disorder."). The U.S. Supreme Court in *Lopez Torres* acknowledged that States should be free to do so without unnecessary government interference:

> The States can, within limits (that is, short of violating the parties' freedom of association), discourage party monopoly—for example, by refusing to show party endorsement on the election ballot. But the Constitution provides no authority for federal courts to prescribe such a course.

*Lopez Torres*, 552 U.S. at 208. Here, unlike Plaintiffs, CCDC has an identifiable, constitutionally-protected interest in its freedom to endorse and associate with candidates that share its ideologies and preferences. A favorable ruling by this Court denying Plaintiffs permanent relief can redress CCDC's constitutional harms.

The fact that the Camden County Clerk entered into a settlement agreement is of no consequence, and CCDC's interests remain unchanged. As stated, Plaintiffs have only obtained temporary preliminary injunctive relief. Two counties remain in this action. A favorable ruling by this Court denying Plaintiffs a permanent injunction would redress CCDC's constitutional harms. Furthermore, if this Court were to deny Plaintiffs permanent relief, nothing precludes the Camden County Clerk from seeking relief from the Order requiring use of an office-block ballot as a result of the preliminary injunction.

CCDC does not seek different relief in this matter. CCDC maintains that it has a legal interest in its freedom to associate with Democratic candidates for office

as provided by the First Amendment, and that a disposition by this Court regarding Plaintiffs' entitlement to permanent injunctive relief could impact and potentially impair CCDC's associational rights. These interests and requested relief can be directly addressed by a favorable ruling by this Court denying a permanent injunction. Thus, CCDC has Article III standing to remain in this action and, therefore, Plaintiffs' motion should be denied.

### III. ENTRY OF THE AGREEMENT BY PLAINTIFFS AND THE CAMDEN COUNTY CLERK DOES NOT UNDERMINE THE BASIS FOR PERMISSIVE INTERVENTION.[1]

Plaintiffs have not cited to any precedential authority that stands for the proposition that this Court can review an intervenor's status, after it has already granted intervention, and revoke it. Plaintiffs cite *Tasby v. Wright* in support of their contention that intervention does not carry an entitlement to remain as a party until termination of the suit. *See* ECF No. 287-1, at 10. However, the intervenor in *Tasby*, the NAACP, filed an application to reactivate its dormant intervention after it had not participated in the case in three (3) years. *Tasby v. Wright*, 109 F.R.D. 296, 297, 299 (N.D. Tex. 1985). This is not factually analogous to these matters, where CCDC has remained an active intervenor since its inception. Plaintiffs' reliance on

---

[1] CCDC does not address Plaintiffs' arguments regarding whether intervention as of right was permissible as this Court declined to address this issue as it granted CCDC permissive intervention. Plaintiffs do not dispute that this Court granted CCDC permissive intervention. *See* ECF No. 287-1, at 1, 4, 10, 12. Thus, this Court should decline to entertain Plaintiffs' argument on this issue in its entirety.

*Mishewal Wapp Tribe of Alexander Valley v. Salazar*, No. 5:09-cv-02502 EJD, 2012 U.S. Dist. LEXIS 142756, at *17-18 (N.D. Cal. Sept. 28, 2012) is erroneous because, while the court did review the intervenor's status, it declined to permit the intervenor to remain in the action because their prior "fruitful settlement negotiations" turned into litigation such that intervention unduly delayed and prejudiced the parties. This is wholly distinguishable from this instant action.

Plaintiffs' assertion that the question of law regarding whether the county line ballot is unconstitutional is no longer before the Court with respect to the Camden County Clerk is clearly wrong. As stated, Plaintiffs have only obtained preliminary injunctive relief as to one political party in one primary. Plaintiffs have not yet obtained a permanent injunction. Thus, the constitutionality of the county line ballot is still before this Court. And, if this Court were to find that Plaintiffs are not entitled to a permanent injunction, the Camden County Clerk could seek appropriate relief from the Order enjoining use of the county line ballot and instead requiring an office block ballot. *See* Fed.R.Civ.P. 60

Plaintiffs argue—without any definitive factual or legal basis—that CCDC is injecting a separate question of law in this action as to the constitutionality of office block ballots. In Plaintiffs' view, this is "inappropriate, and would subject Plaintiffs to prejudice, especially in the absence of the Camden Clerk, and unduly delay this matter by redirecting the entire focus of this case." *See* ECF No. 297-1, at 12. But,

11

CCDC is not "injecting" any "new issue" in this action. This action concerns the constitutionality of New Jersey's primary election bracketing and ballot placement system. CCDC has asserted that it has associational rights, as afforded by the First Amendment, that will be impacted by any disposition by this Court regarding the constitutionality of these challenged statutes. These are the exact issues raised in this case. Thus, it is difficult to accept Plaintiffs' assertion that CCDC will prejudice and delay Plaintiffs when the interest it asserts has been consistent throughout this action.

It is worth noting that Plaintiffs specifically seek as relief in their Verified Complaint the use of an office block ballot design. *See* ECF No. 1, at ¶¶ 180, 196, 209. Thus, it is Plaintiffs themselves who have "injected" this issue before the Court. Indeed, Plaintiffs filed this action challenging New Jersey's primary election and ballot placement system. *See* ECF No. 1. Accordingly, the constitutionality of an office block ballot design—or any design for that matter—and whether such design can safeguard the rights of all parties to this action is inextricably intertwined with the constitutionality of the county line ballot and Plaintiffs' Verified Complaint before this Court.

Lastly, Plaintiffs claim that CCDC did not oppose the entry of the consent decree between Plaintiffs and the Camden County Clerk. *See* ECF No. 287-1, at 2. However, CCDC was not a party to the consent decree and, as such, could not have

challenged the entry of the order.  Plaintiffs cite to no authority conferring on a nonparty the standing to challenge a consent decree of which it is not a signatory.  Furthermore, Local Rule 7.1(i) does not accord CCDC any such relief.  Local Rule 7.1(i) governs motions for reconsideration; it does not provide any relief for a nonparty to challenge a consent decree.

In sum, entry of the agreement between Plaintiffs and CCDC does not undermine the basis for granting permissive intervention.  Plaintiffs' motion should be denied.

## IV.  THE LAW OF THE CASE DOCTRINE AND COLLATERAL ESTOPPEL BAR PLAINTIFFS FROM RELITIGATING THE ISSUE OF WHETHER CCDC IS A "STATE ACTOR" SUFFICIENT TO CONFER STANDING AND WHETHER CCDC SHOULD BE GRANTED PERMISSIVE INTERVENTION.

Plaintiffs ask this Court to reconsider its decision granting CCDC permissive intervention.  *See* ECF No. 287-1, at 13.  It is Plaintiffs' belief that CCDC's intervention in this matter unduly delays and prejudices the adjudication of Plaintiffs' rights.  *Id.*  Specifically, Plaintiffs argue that "CCDC continues to endeavor to reframe the focus of this litigation away from the lack of constitutionality of the county line, and to pivot to the lack of constitutionality of the office block ballot."  *Id.* at 14.  In support of this contention, Plaintiffs rely on the argument before the Third Circuit regarding whether CCDC was asserting the

State's interests as its own. *Id.* at 13-14. However, Plaintiffs' reliance is misplaced for several reasons.

First, the argument cited by Plaintiffs concerned an issue of justiciability and whether CCDC was asserting its own rights in this action sufficient to confer standing to pursue the appeal. *See Kim*, 99 F.4th at 154. The argument identified by Plaintiffs had nothing to do with whether CCDC was, as Plaintiffs suggest, "refram[ing] the focus of this litigation" such that permissive intervention should be denied. *See* ECF No. 287-1, at 14. Second, Plaintiffs fail to comprehend, or are merely indifferent to, the fact that the Third Circuit rejected Plaintiffs' argument that CCDC was standing in the shoes of the state actors. *See Kim*, 99 F.4th at 154. In fact, the Third Circuit specifically found that CCDC was asserting its own rights and, thus, had standing to pursue the appeal. *Id.* Any reliance by Plaintiffs to the contrary is insignificant, and the law of the case doctrine and collateral estoppel bar Plaintiffs from relitigating the issue of whether CCDC was a "state actor" sufficient to confer standing.

"The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786-87 (3d Cir. 2003) (quoting *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)). The purpose of the doctrine is to promote finality, consistency, and judicial economy." *Id.* at 787. It applies when a court's "prior decisions in an ongoing case

14

either expressly resolved an issue or necessarily resolved it by implication." *UA Theatre Circuit v. Twp. of Washington*, 316 F.3d 392, 398 (3d Cir. 2003).

"Collateral estoppel prevents the relitigation of a factual or legal issue that was litigated in an earlier proceeding." *Doe v. Kesketh*, 828 F.3d 159, 171 (3d Cir. 2016). Collateral estoppel applies where: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Id.* (quoting *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 n.10 (3d Cir. 2002)).

The law of the case doctrine bars Plaintiffs from relitigating the issue of whether CCDC can be regarded as a state actor. The issue of whether CCDC was a "state actor" or standing in the shoes of public actors in advancing the appeal has already been decided by the Third Circuit in this action. *See Kim*, 99 F.4th at 154. The Third Circuit wholeheartedly rejected Plaintiffs' argument that CCDC was standing in the shoes of state actors to assert state and government interests and, instead, found that CCDC was asserting its own interests sufficient to confer standing. *Id.* Specifically, the Third Circuit concluded that "in bringing this appeal, the CCDC does not simply rely on harms to New Jersey; it frankly asserts that it has 'different interests' than the county clerks." *Id.* The Court continued in stating:

15

> The CCDC instead is appealing to address alleged infringements of its own constitutional rights that result from the District Court's injunction, including what it claims are 'the right to not only endorse and identify candidates that share [political parties'] ideologies and preferences, but [also] to group the candidates in a manner that informs voters of the individuals who constitute the association to advance their shared interests[.]" (Opening Br. at 19).  Accordingly, the CCDC is not simply relying on the State's interests to gain relief.
>
> Because all of the county clerks are no longer involved in this appeal, the CCDC necessarily stands alone to defend the constitutionality of the county-line ballot practice in New Jersey, and it does so in order to vindicate its own rights."

*Id.* (alterations in original).  As such, the law of the case doctrine prevents Plaintiffs from litigating in the district court an issue that has already been decided by the Third Circuit on appeal in this matter.

Similarly, collateral estoppel bars Plaintiffs from relitigating the issue of whether CCDC is a "state actor" to confer standing.  The issue and portion of the argument that Plaintiffs now rely on in this instant motion regarding whether CCDC can be considered a "state actor" was previously decided by the Third Circuit on appeal.  *Id.*   The Third Circuit entered its certified judgment on May 9, 2024.  *See* ECF No. 233.  The parties are identical in this action and in the action before the Third Circuit.  Finally, Plaintiffs had a full and fair opportunity to litigate the issue of whether CCDC can be regarded as a "state actor," which was rejected by the Third Circuit in its entirety.  *See Kim*, 99 F.4th at 154.  Thus, collateral estoppel precludes

16

Plaintiffs from relitigating this same issue before this Court that was previously decided by the Third Circuit on appeal.

Plaintiffs' reliance on *Hollingsworth v. Perry* for the proposition that this Court should decline to uphold the standing of CCDC is futile. The Third Circuit specifically distinguished CCDC's appeal from *Hollingsworth* finding that, unlike *Hollingsworth*, CCDC has alleged its own injury and, therefore, has standing to appeal an adverse judgment. *See Kim*, 99 F.4th at 154 n.8. There is no basis to disturb that finding, nor can Plaintiffs relitigate the issue that has already been determined by the Third Circuit.

The law of the case doctrine and collateral estoppel likewise bar Plaintiffs from relitigating the issue of whether CCDC should be granted permissive intervention in these matters. As set forth above in Section III, Plaintiffs cite to no binding authority for the proposition that this Court can review its prior grant of permissive intervention. This issue was previously decided by this Court, and this Court found that CCDC satisfied the elements for permissive intervention. *See* ECF No. 121, at 1. This same issue that Plaintiffs raise now challenging CCDC's intervention was fully and fairly litigated by the same parties, Plaintiffs in fact opposed CCDC's motions to intervene, and this Court granted CCDC permissive intervention. *Id.* at 1-2. Both the law of the case doctrine and collateral estoppel bar Plaintiffs from relitigating this issue now.

## CONCLUSION

For these reasons, Intervenor CCDC respectfully requests that Plaintiffs' Motion to Dismiss CCDC from both the *Conforti* and *Kim* matters be denied.

Respectfully submitted,

**BROWN & CONNERY, LLP**

Dated:  March 3, 2025          /s/ William M. Tambussi

William M. Tambussi, Esq.
Alyssa I. Lott, Esq.
*Attorneys for Intervenor, Camden*
*County Democratic Committee*

18