## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTINE CONFORTI,** *et al.*, | **Case No. 3:20-CV-08267-ZNQ-TJB** |
| **Plaintiffs,** | |
| **v.** | <u>**Civil Action**</u> |
| **CHRISTINE GIORDANO HANLON,** in her official capacity as Monmouth County Clerk, *et al.*, | |
| **Defendants.** | |
| **ANDY KIM,** *et al.*, | **Case No. 3:24-CV-1098-ZNQ-TJB** |
| **Plaintiffs,** | |
| **v.** | <u>**Civil Action**</u> |
| **CHRISTINE GIORDANO HANLON,** in her official capacity as Monmouth County Clerk, *et al.*, | |
| **Defendants.** | |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT AGAINST THE TWO REMAINING PUBLIC ACTOR DEFENDANTS IN THIS MATTER, JOANNE RAJOPPI THE UNION COUNTY CLERK, AND JOHN S. HOGAN THE BERGEN COUNTY CLERK

**WEISSMAN & MINTZ LLC**

220 Davidson Avenue, Suite 410

Somerset, New Jersey 08873

732.563.4565

bpugach@weissmanmintz.com

Co-counsel for Plaintiffs

Of Counsel and On The Brief:

Brett M. Pugach (No. 032572011)

Yael Bromberg (No. 036412011)

Flavio L. Komuves (No. 018891997)

**BROMBERG LAW LLC**

43 West 43rd Street, Suite 32

New York, New York 10036

212.859.5083

ybromberg@bromberglawllc.com

Co-counsel for Plaintiffs

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT .................................................................1

LEGAL ARGUMENT

  I.   THIS CASE IS NOT MOOT...........................................................3

  II.  PLAINTIFFS SHOULD NOT BE PREVENTED FROM APPLYING TO THE COURT FOR COUNSEL FEES ......................................7

  III. SUMMARY JUDGMENT AGAINST DEFENDANTS BERGEN AND UNION COUNTY CLERKS IS APPROPRIATE AT THIS TIME.......................................................................................10

CONCLUSION ........................................................................................15

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Black United Fund of New Jersey, Inc. v. Kean*,
    763 F.2d 156 (3d Cir. 1985) .............................................................................6

*DeJohn v. Temple Univ.*,
    537 F.3d 301 (3d Cir. 2008) .............................................................................4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*,
    528 U.S. 167 (2000).............................................................................4

*Hartnett v. Pa. State Educ. Ass'n*,
    963 F.3d 301 (3d Cir. 2020) .........................................................................3, 4

*Kremens v. Bartley*,
    431 U.S. 119 (1977).............................................................................6

*Lackey v. Stinnie*,
    No. 23-621, 604 U.S. __ (2025) ....................................................................8

*Loki Brands v. Platkin,* Civ. A. No. 24-9389-ZNQ-TJB,
    2024 WL 4457485 (D.N.J. Oct. 10, 2024) ...................................................14

*Massachusetts v. Oakes*,
    491 U.S. 576 (1989).............................................................................6

*Nextel W. Corp. v. Unity Twp.*,
    282 F.3d 257 (3d Cir. 2002) .............................................................................4

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    581 U.S. 433 (2017)...........................................................................12

*Yates Real Est. v. Plainfield Zon. Bd.*,
    435 F. Supp. 626 (D.N.J. 2020)....................................................................14

## Statutes & Constitutional Provisions

U.S. Const., amend. I ..................................................................................3, 15

U.S. Const., amend. XIV .............................................................................3, 15

U.S. Const., Elections Clause .......................................................................3, 15

Federal Civil Rights Act ............................................................................7, 8, 9

## Rules

Fed. R. Civ. P. 26 .........................................................................................2,

Fed. R. Civ. P. 56 ...........................................................................................15

## <u>PRELIMINARY STATEMENT</u>

Neither the evidence nor the applicable standard has changed since this Court granted the preliminary injunction and ordered office-block ballot design for the 2024 primary election along with other specific instructions to ensure ballot fairness. Having now abandoned any real legal defense in this matter, the Bergen and Union County Clerks still remain before the Court as extreme outliers, urging that the Court should nevertheless not issue judgment against them. Since the Third Circuit unanimous precedential decision and the related administration of that primary election, all other involved county clerks in these matters have entered settlement and consent decrees, totalling the entry of _twenty-three_ (23) as of today.[1] Not only do these two clerks, therefore, refuse to join the 90% of the state's county clerks, but more, they claim that they are no longer even defending the constitutionality of the Bracketing Structure central to these litigations. And, they have largely agreed with Plaintiffs' Statement of Undisputed Material Facts.

For these reasons alone, this Court may approve Plaintiffs' motions for summary judgment, finding that the facts are so one-sided in Plaintiffs' favor that

---

[1] On March 14, 2025, Plaintiffs filed the present motion for summary judgment in the _Kim_ and _Conforti_ Litigations against the three remaining county clerk defendants in this action, the county clerks of Bergen, Union, and Cape May Counties. On March 31, 2025, the date the reply brief is due, Rita Rothberg, signed a consent decree settling the case, which was signed by Judge Quraishi later that day. (Kim, ECF 311). Accordingly, Plaintiffs withdraw their pending motion for summary judgment as to Cape May County.

no reasonable trier of fact could find otherwise. The only defense being raised now is as to mootness, and this Circuit's case law directs that these matters are not mooted by new legislation which fails to reform in full the issues before the Court. Nor is there any need for further discovery, as Bergen has engaged in discovery in *Conforti*, and both Bergen and Union have engaged in discovery in *Kim*, at least until the entry of this Court's preliminary injunction on March 29, 2024. Neither requested a Rule 26 conference to commence discovery in the year that has passed since. They appear to have done nothing on their own behalf in identifying competent fact or expert evidence. They don't even come before the Court today requesting further discovery on behalf of themselves. Nor have they so much as have produced any certification or argument specifying the need for further discovery as to the unconstitutionality of the Bracketing Structure central to these cases. This makes sense since they no longer defend the constitutionality of the Bracketing Structure.

Nevertheless, they come before the Court seeking yet again to evade responsibility or accountability, and to avoid having to pay Plaintiffs' attorney fees and expenses including the vast expert evidence submitted in support of overturning a 70-year corrupt and corrupting ballot design which they vigorously defended until now. And while their official position now recognizes that they are unable to defend the constitutionality of the Bracketing Structure, they can't help

but continue to assert procedural arguments on behalf of a different party in a desperate plea to avoid a judgment against them and evade paying fees to which Plaintiffs are rightfully entitled.

The Court should grant Plaintiffs' motions, enter declaratory judgment that specified features of the Bracketing Law and practices are unconstitutional and violative of the First and Fourteenth Amendments and the Elections Clause, permanently enjoin the remaining clerks in these matters from continuing such specified practices, and retain jurisdiction for the purpose of ensuring compliance.

## **LEGAL ARGUMENT**

### **I.    THIS CASE IS NOT MOOT**

The last two remaining county clerk defendants claim that the passage of the New Ballot Legislation ("NBL") renders these litigations moot. They rely on the same exact arguments set forth in their motion to dismiss for lack of jurisdiction. Accordingly, and with respect for the Court's time, Plaintiffs will rely on and hereby incorporate the arguments set forth in their Omnibus Brief in Opposition to the Bergen and Union County Clerk's Motion to Dismiss ("Omnibus Brief").

In brief summary, the burden is on the Bergen and Union County Clerks to show that there is no reasonable likelihood that the unconstitutional practices will continue to occur, and they simply cannot meet that formidable burden. *Hartnett v.*

3

*Pa. State Educ. Ass'n*, 963 F.3d 301, 305-07 (3d Cir. 2020).[2] The case is also not moot because the NBL does not eliminate all of the unconstitutional features of the Bracketing Structure. *Nextel W. Corp. v. Unity Twp.*, 282 F.3d 257, 262 (3d Cir. 2002). Contrary to the Union and Bergen County Clerks' assertion, merely changing to an office block ballot design alone, does not render the case moot. As Plaintiffs explained in their Omnibus Brief, not only did the NBL not (adequately) address all of the attendant unconstitutional features of the Bracketing Structure, but it also opened the door for potential recreation of even some of the features that the NBL ostensibly intended to eliminate. Authority over the ballot design remains with the County Clerks, and their past history of manipulation, circumventing the spirit, intent, and letter of the law, and exercising their ballot design discretion to favor county party-endorsed candidates pursuant to their own vested interest, in part as elected officials who benefit from party endorsement, is a major strike

---

[2] Procedurally, this case varies from the typical *Friends of the Earth v. Laidlaw* defense where a defendant itself voluntarily ceases illegal conduct, fully conceding the error of its ways well before the court is about to issue judgment against them, and asserts the case is moot. *E.g. DeJohn v. Temple Univ.*, 537 F.3d 301, 309-10 (3d Cir. 2008). Here, it was not the Clerks who purportedly acted to cease their illegal conduct; if anything, it was the State Legislature. Moreover, the court set a dispositive motion deadline for March 14, 2025 in these matters on December 10, 2024. (*Conforti*, ECF 227). Eight days before that deadline, the state approved the NBL on March 6, 2025. This suspect timing is basically on all fours with *DeJohn*, where the University professed that its last minute change of heart, on the eve of motion practice, about its own unconstitutional policy was genuine and entitled them to a mootness dismissal. The Court rejected the argument there, and should do so here as well.

against meeting their burden.

Unlike all of the other county clerk defendants, the Bergen and Union County Clerks have not entered into consent orders, and need to be dragged across the finish line kicking and screaming. Even after finally declaring that they will not defend the constitutionality of the Bracketing Structure, the Bergen and Union County Clerks still refuse to admit that they did anything wrong, ignore the role of their own discretion, and disclaim responsibility. Worse, their counsel still continue to backhandedly oppose a finding of unconstitutionality by offering arguments not on behalf of their own clients, but, shockingly, on behalf of a private Democratic county party committee whose own clerk has already entered into a consent decree in these litigations, the Camden County Democrat Committee ("CCDC"). (Bergen/Union Joint Brief in Opposition to Plaintiff's Motion for Summary Judgment ("Joint Brief"), pp. 9-10 (claiming summary judgment should not be granted because _CCDC_ may have wanted more discovery and to get an expert and because _CCDC_ might have pointed to potential evidence from the last primary election where two different styles of ballots were used)). This continued procedural resistance even after relinquishing their official defense of the constitutionality of the Bracketing Structure even further demonstrates the need for

declaratory and permanent injunctive relief.[3]

As Plaintiffs explained in their Omnibus Brief, this case is distinguishable from *Oakes*, *Kremens*, and *Black United Fund*, on which the remaining County Clerk Defendants rely, which involved straightforward repeals of statutes or amendments of statutes that *entirely removed* the unconstitutional features and had no substantial risk of the constitutional harm recurring. Those cases also did not evidence concerns that the applicable state actors might attempt to circumvent the spirit and intent of the new laws. Simply put, the same cannot be said here. While the Bergen and Union County Clerks deceivingly refer to the unconstitutional harms of the Bracketing Structure as if it were a single statute, in practice the Bracketing Structure emanated from *a combination of various laws and practices* developed by the County Clerks over time, and the amendments under the NBL

---

[3] The posture of these arguments truly encapsulates everything Plaintiffs have been trying to explain about the relationship between the county clerks and the party organizations in these litigations, who have always been the true beneficiaries of this unjust system. Unable to defend their own unconstitutional practices, the Bergen and Union County Clerks continue to waste taxpayer money on the Government dime to run interference on behalf of a private county party organization. The Bergen and Union Clerks have vehemently independently litigated these matters, while also hiding behind private entities to privatize public defense of the Bracketing Structure. Now, with a pending motion to dismiss CCDC for lack of standing due to its own clerk's entry of a consent decree, the public actors endeavor to take hold of CCDC's arguments on their own behalf and to open the door for further litigation as to the constitutionality of office block ballot design, all while asking the court to believe that they have truly abandoned the defense of the county line system. The claim is ridiculous, and insults the Court, the litigants, and the public simultaneously.

did not address all of the unconstitutional harm, nor did it create a system where the remaining County Clerk Defendants can demonstrate that none of the unconstitutional harm has any reasonable chance of recurring. Moreover, here the past behavior of the county clerks in exercising discretion and even their current posture of disclaiming responsibility and backhandedly trying to make arguments on behalf of a political party actor to prevent a judgment holding them accountable, detracts from the kind of assurances the Court would want to ensure that unconstitutional harm will not continue to recur.

## II.    PLAINTIFFS SHOULD NOT BE PREVENTED FROM APPLYING TO THE COURT FOR COUNSEL FEES

Similar to the mootness argument above, here the last two remaining county clerk defendants rely on the same arguments set forth in their Joint Brief in support of their motion to dismiss to try to prevent Plaintiffs from even having the ability to seek counsel fees under the Civil Rights Act, despite the fact that the case is still ongoing. Their reasoning there falls short for the same reasons it does here. Accordingly, and with further respect for the Court's time, Plaintiffs will rely on and hereby incorporate the arguments set forth in their Omnibus Brief opposing the motion to dismiss.

In short, even under the County Clerks' definition of a prevailing party, the case is not over yet, and so it is unclear whether or not Plaintiffs will ultimately

prevail on the merits. For this reason alone, Defendants' motion is clearly and obviously premature, and must be denied. In addition, in their Omnibus Brief, Plaintiffs set forth all the reasons that, even if this Court were to deny permanent relief, an exception to the recent *Stinnie* decision would be appropriate to allow for counsel fees based on the preliminary injunction. Since this issue was already briefed in the Omnibus Brief, the Plaintiffs incorporate them by reference, and do not repeat those arguments at length here.

Plaintiffs also do not repeat at length the arguments set forth in their Omnibus Brief regarding why the county clerks are the appropriate government actors to be held responsible for counsel fees, and how avoiding liability in that regard would circumvent the fee-shifting purposes of the Civil Rights Act. The Third Circuit view is that the county clerks would be responsible for counsel fees even if they were only performing ministerial duties, and nevertheless, here they were actually exercising considerable discretion with respect to the ballot draw and order of candidates, as well as the ballot design and physical arrangement of candidates on the ballot.

Moreover, even now, even after saying that they will no longer defend the constitutionality of the Bracketing Structure, the last two remaining county clerk defendants continue to assert arguments to avoid a judgment finding them constitutionally liable. They do so through a tortured posture of using the CCDC as

a conduit through which to assert arguments, all clearly contrived as a mechanism to avoid having to pay the counsel fees that they know they should be responsible for paying. Ironically, in their preliminary statement in the Joint Brief, the Bergen and Union County Clerks call Plaintiffs' rightful attempt to recover their counsel fees "cynical." Of course, this is not only not cynical, but consistent with the very purpose behind the Civil Rights Act.[4]

Notably, these remaining county clerks continue to use the Bergen and Union taxpayers to fund their continued defense, expenses which are publicly available.[5] At the same time, they argue against Plaintiffs' entitlement to shifting

---

[4] Rather, the only thing "cynical" here is the last two remaining county clerk defendants pretending they did not vigorously defend the constitutionality of the Bracketing Structure in these litigations to support a half-hearted argument that they should not have to pay fees while everyone else in the litigations have done so via negotiated, proportional amounts, and then hiding behind and making arguments on behalf of the CCDC to try to avoid a situation where Plaintiffs are deemed prevailing parties.

[5] Publicly available record responses to a batch August 2024 public records request related to Ballot Design Case Expenses are available for both the Bergen Clerk (invoices from 2020 thru April 2024), and for the Union Clerk (2024 invoices thru May 2024): https://opramachine.com/request/ballot_design_case_expenses_2 (Bergen Clerk); https://opramachine.com/request/ballot_design_case_expenses_18 (Union Clerk). These records responses appear to show that Union County Clerk paid nearly $85,000 in legal expenses in the first half of 2024, and that Bergen County Clerk paid approximately $94,000 in legal expenses in both litigations thru April 2024. It is noteworthy that this sum total between the defense of the two counties is not so dissimilar from the amount that Plaintiffs sought in settlement from them, which encompassed substantial deductions, plus the costs of multiple expert witness reports including a study of voters' impressions of the ballot, expert time including preparation for testimony and appearances at the nine-hour

fees in connection with both attorney hours and costs including expert reports, such as expert responses to seven *in limine* motions filed by the Union Clerk in the midst of the nine-hour evidentiary trial for preliminary relief. The expenses they contest now are a result of their vigorous legal defense of the Bracketing Structure, led statewide by the Union County Clerk.[6] Of note, the Union and Bergen Clerks both received high-level summaries of counsels' hours and rates, expert fees, and the concessions offered in an effort to settle the case, so their feigned surprise at the value of Plaintiffs' claim is only gamesmanship.

### III.   SUMMARY JUDGMENT AGAINST DEFENDANTS BERGEN AND UNION COUNTY CLERKS IS APPROPRIATE AT THIS TIME

Contrary to the assertions of the last two remaining county clerk defendants, no further discovery is needed for judgment to be entered against the Bergen and Union County Clerks. To begin with, neither of these Defendants are challenging the constitutionality of the Bracketing Structure, and Plaintiffs' motions for summary judgment are solely as to the remaining county clerks. Therefore, as to

---

evidentiary hearing, and an accounting of attorney time and costs only until the state's clerks withdrew from the appeal to the Third Circuit.

[6] This included requests for detailed attorney logs in the days leading up to the evidentiary hearing in the midst of court deadlines, an opposition to the participation of amici parties (*See Kim*, ECF 119), serving a subpoena on Seton Hall Law School in connection with an academic law symposium on fair ballot design, sending a harassing note to the amicus parties (*Kim*, ECF 129-30), a request for Plaintiffs to post a bond to the Union County Clerk in excess of $1 million pending appeal (*See Kim*, ECF 166-1, Certification of Union County Clerk, and ECF 166, related letter by counsel), and much more.

each of these County Clerks, Plaintiffs' motions are not premature, and Plaintiffs should be entitled to summary judgment. In fact, the County Clerk Defendants do not claim that *they* need discovery, that *they* intend to take depositions, that *they* want to get their own expert, etc.[7] Indeed, a year ago, on March 17, 2024, counsel for Union County Clerk acknowledged a search for a rebuttal expert to support the defense of the Union County Clerk, but has not produced one or so much as mentioned the need for one since. (*See Kim*, ECF 150.)  The only defense on the merits offered by the County Clerk Defendants is that they believe the case is moot. For the reasons set forth above and stated at greater length in Plaintiffs' Omnibus Brief, this argument should be rejected, and upon doing so, summary judgment against the Bergen and Union County Clerks should be granted.[8]

Having already abandoned a constitutional defense, the Bergen and Union County Clerks try to hold CCDC up as a shield in a desperate attempt to avoid summary judgment being entered against them. However, as to the County Clerk Defendants' arguments asserted on behalf of CCDC, Plaintiffs' summary judgment

---

[7] Arguments by counsel for the Bergen and Union County Clerks on behalf of the intervenor, CCDC should be rejected. Counsel should not be permitted to argue on behalf of another party, and especially a private entity whose standing in this matter is pending consideration by the Court.

[8] It should be noted that the remaining county clerks admitted to many of the items set forth in Plaintiffs' Statement of Undisputed Material ("SUMF") in support of their motions for summary judgment. In fact, the Bergen County Clerk admitted to all of them, and the Union County Clerk does not materially contest critical facts.

11

motion is not directed at CCDC. The two remaining county clerk defendants cannot, through arguments they assert on CCDC's behalf, undermine their own admission of unconstitutionality, or minimize their admissions in Response to Plaintiffs' SUMF.

In another pending motion, Plaintiffs argue that CCDC lacks standing and therefore should be dismissed and/or the Court should exercise its discretionary power to revoke CCDC's permissive intervenor status because of the dissonance between the CCDC's legal position as to the relief sought and that of the two remaining clerks. Recent developments now show that disconnect has only widened, further compromising CCDC's standing in these litigations. The Bergen and Union County Clerks have now expressly abandoned their defense of the constitutionality of the Bracketing Structure, further bolstering Plaintiffs' argument regarding CCDC's lack of standing, because it is clear now that they are seeking different relief.[9] If Plaintiffs prevail on that motion, it even further detracts from

---

[9] In other words, at absolute bare minimum, CCDC is seeking that the features comprising the Bracketing Structure are not struck down as unconstitutional, whereas the Bergen and Union County Clerks have abandoned that defense. Moreover, as set out by Plaintiffs in their papers in support of their motion to dismiss CCDC, in order to obtain the relief it truly seeks, CCDC would not only need to show the county line is constitutional and therefore permissible, but also would need to demonstrate that office block ballots are unconstitutional and therefore prohibited, which constitutes different relief and precludes their standing under *Laroe*, and would take this case in directions that the government actor defendants are not willing to go, and which this Court should not allow for a permissive intervenor.

the Defendant County Clerks' groundless claim of prematurity of Plaintiff's summary judgment motion asserted on behalf of another party who clearly lacks standing.

That the public actor entities are propping up this legal strategy by advocating on behalf of CCDC is troubling for multiple reasons, including the impermissible endeavor to privatize the defense of public entities. The Court should put an end to these incessant efforts to dodge accountability, and grant Plaintiffs' motions for summary judgment against the clerk defendants and to dismiss CCDC, and to deny the corresponding motions filed by the clerks.

Moreover, it should be noted, CCDC *has* been provided a more than adequate amount of time for discovery. In particular, CCDC has been involved in county line litigation since it intervened in *Conforti* back in 2022, and exchanged discovery with Plaintiffs in that matter in July 2024, even months after the issuance of this Court's preliminary injunction in *Kim*. CCDC never produced an expert in *Kim* at the PI hearing, and never noticed depositions of Plaintiffs' experts or of the Plaintiffs since that time. To this day, they still have not identified an expert in either matter. It should be noted that CCDC was aware since at least December of last year that Judge Quraishi was expecting dispositive motions to be filed on March 14, 2025 (*Conforti*, D.E. 227), and did not take any steps to find an expert or to seek to depose that of Plaintiffs. CCDC should not be permitted to sit on its

13

rights, do nothing to advance its own case, and then cry foul when it arrives at summary judgment briefing empty-handed. And certainly, CCDC dropping the ball should, under no circumstances, inure to the benefit of the Bergen and Union County Clerks.

Moreover, that Plaintiffs have not significantly further developed the record since the Court issued the preliminary injunction in *Kim* is of no matter. In *Conforti*, Plaintiffs timely responded to typical discovery requests when they were propounded[10] and also timely responded to accelerated discovery in *Kim* (see *Kim* ECF 146, 177). They have an adequate record to prevail on summary judgment, which includes largely the same items relied on by the Court in issuing the preliminary injunction, and upheld by the Third Circuit. Indeed, converting a preliminary injunction hearing into one for summary judgment or other final disposition, using little if any more evidence than what was presented in the preliminary injunction hearing, and granting final relief to plaintiffs, is commonplace. *E.g, Yates Real Est. v. Plainfield Zon. Bd.*, 435 F. Supp. 626, 632-35 (D.N.J. 2020); *Loki Brands v. Platkin*, Civ. A. No. 24-9389-ZNQ-TJB, 2024 WL 4457485 (D.N.J. Oct. 10, 2024). The evidence from the summary judgment

---

[10] *See* Y. Bromberg Certification, ¶2 and accompanying Exhibit A, *Kim*, ECF 302-1, *Conforti*, ECF 239-2. (Plaintiffs produced discovery upon request, including over 900 pages of document production. The Bergen County Clerk confirmed receipt of Plaintiffs' discovery, and averred that he would provide responses to Plaintiffs' discovery demands on or before July 19, 2024).

hearing remains unrebutted, with Defendants having had a full year to contest these facts. Moreover, Plaintiffs rely on their SUMF which, at least as it pertains to the Bergen County Clerk, was deemed admitted in its entirety (and also largely admitted by the Union County Clerk). Thus, Plaintiffs' motion is not premature, and this Court can and should grant summary judgment.

Rule 56 provides that the Court need only consider the cited materials, but contemplates that it may consider other materials in the record beyond those cited. That the cited materials were put on the record in support of a motion for preliminary injunction are of no matter, and do not discredit them now, particularly as the last two remaining Defendant County Clerks no longer contest the constitutionality of the Bracketing Structure at issue here, and have made no efforts to pursue discovery beyond what is already in the record evidence.

## CONCLUSION

Plaintiffs respectfully request a finding that no genuine issue of material fact remains here, and that summary judgment as a matter of law be granted because the facts are so one-sided in Plaintiffs' favor, such that no reasonable trier of fact could find otherwise. The Court should therefore grant a declaratory judgment and a permanent injunction enjoining use of the county line ballot-design and its attendant features due to its unconstitutionality pursuant to the First and Fourteenth Amendments and the Elections Clause.

Respectfully submitted,

WEISSMAN & MINTZ                    BROMBERG LAW LLC
Attorneys for Plaintiffs                Attorneys for Plaintiffs

By: ___/s/ Flavio L. Komuves___          _____/s/ Yael Bromberg_____
    ___/s/ Brett M. Pugach___


Dated:        March 31, 2025

16