UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al., <br><br> Defendants. | Case No.: 3:20-cv-08267-ZNQ-TJB <br><br> <u>CIVIL ACTION</u> |
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al., <br><br> Defendants. | Case No.: 3:24-cv-0198-ZNQ-TJB <br><br> <u>CIVIL ACTION</u> |

**PLAINTIFFS' BRIEF IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO CCDC'S CROSS-MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(b)(1)**

**WEISSMAN & MINTZ LLC**
220 Davidson Avenue, Suite 410
Somerset, NJ 08873
732.563.4565
bpugach@weissmanmintz.com
*Co-counsel for Plaintiffs*

**BROMBERG LAW LLC**
43 West 43rd Street, Suite 32
New York, NY 10036-7424
212.859.5083
ybromberg@bromberglawllc.com
*Co-counsel for Plaintiffs*

Of Counsel and On the Brief:

Brett M. Pugach, Esq. (032572011)
Flavio L. Komuves, Esq. (018891997)
Yael Bromberg, Esq. (036412011)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ...............................4

LEGAL ARGUMENT...........................................................................................7

    I.    THIS CASE IS NOT MOOT AND/OR FALLS UNDER AN EXCEPTION TO MOOTNESS............................................................7

    II.    PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION PROHIBITING THE CONDUCT PREVIOUSLY ENJOINED IN THE 2024 PRIMARY ELECTION. .......................................................................................14

CONCLUSION .....................................................................................................23

i

TABLE OF AUTHORITIES

Page(s)

Cases

*Conforti v. Hanlon*,
   2022 WL 1744774 (D.N.J. May 31, 2022) ...................................................... 9, 10

*Democratic-Republican Org. v. Guadagno*,
   900 F. Supp. 447 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012) ............ 15, 16

*Friends of the Earth v. Laidlaw Envtl. Svcs.*,
   528 U.S. 167 (2000) ........................................................................................ 5, 12

*Hartnett v. Pennsylvania State Educ. Ass'n*,
   963 F.3d 301 (3d Cir. 2020) ......................................................................... 5, 8, 12

*Kim v. Hanlon*,
   99 F. 4th 140 (3d Cir. 2024)........................................................................... *passim*

*Lackey v. Stinnie*,
   No. 23-621, 604 U.S. __, slip op. (2025) ............................................................ 15

*Logan v. Garland*,
   No. 24-00040 (D.N.J. Nov. 26, 2024), *aff'd,* 24-3265, 2025 WL 880016 (3d Cir.
   Mar. 21, 2025) .................................................................................................... 11

*Lutter v. JNESO*,
   86 F.4th 111 (3d Cir. 2023)................................................................................... 7

*Simpson v. Davenport,*
   3:20-CV-0024, 2023 WL 5308328 (W.D. Pa. Aug. 17, 2023).............................. 3

Rules

Fed. R. Civ. P. 16 .............................................................................................. 3, 19

Fed. R. Civ. P. 26 .................................................................................................. 19

Fed. R. Civ. P. 65 .................................................................................................. 15

Other Authorities

P.L. 2025, c.32 ("New Ballot Law") ............................................................... *passim*

Third Circuit Internal Operating Procedure 9.1 ...................................................... 16

## **PRELIMINARY STATEMENT**

A review of the papers of movant intervenor, Camden County Democrat Committee ("CCDC"), shows that its arguments are largely a tiresome rehash of existing arguments made by other parties, in particular, the Bergen and Union Clerks, in the current round of motions. Rather than rearticulate Plaintiffs' briefing already on record in support or in opposition to the various pending motions, this opposition brief will largely cite to the relevant sections of the other briefing without repeating it at length.

Another feature of CCDC's briefing is its efforts to relitigate issues *already decided* in this and the appeals courts' decisions denying the parties' motions to dismiss in the *Conforti* matter; granting the preliminary injunction in *Kim* matter (including its denial of seven *Daubert* motions), and the Third Circuit's unanimous and published affirmance of that decision. This brief will accordingly identify those arguments that Defendants already made and lost, and which are precluded not just because they are law of the case, but also because they are substantively wrong. Lastly, in response to the CCDC's statement of undisputed material facts, this submission also explains in detail: (1) the role of candidates who are members of, or endorsed by, plaintiff New Jersey Working Families Alliance ("NJWF"), and whose past and continuing harm as a result of New Jersey's primary ballot design laws may be properly vindicated by NJWF; (2) new evidence that shows that the

1

certain clerks' designs for the 2025 primary don't conform with the spirit and intent of this Court's prior rulings, and also violate new state laws on ballot design; and (3) new evidence showing that the Clerks' implementation of P.L. 2025, c.32 (the "New Ballot Law" or "NBL") that allows in-office bracketing does not conform to this Court's prior order prohibiting it.

In a nutshell, Plaintiffs' case, and their motion for summary judgment granting a permanent injunction, are <u>not moot</u> for three reasons: first, there remain live disputes between the parties about the legality of New Jersey ballot design laws and practices of the county clerks; second, even if the case were moot, it is settled that this falls within the capable-of-repetition-while-evading review exception to mootness; third, defendants cannot meet the "formidable burden" assigned to them "of showing that it is absolutely clear the allegedly wrongful behavior [by the clerks] could not reasonably be expected to recur" despite their allegations that they have ceased their illegal conduct.

Similarly, on the merits, nothing in CCDC's papers defeats Plaintiffs' arguments in support of a permanent injunction. Defendants offer no expert evidence that contradicts the mountain of evidence that supported Plaintiffs' successful preliminary injunction application (which initially applied to both Republican and Democratic primaries), nor on the facts pleaded in the *Verified*

Complaint.[1] While their brief speculates about what other matter they would have liked to have seen in Plaintiffs' expert reports, it remains entirely in the realm of evidence-free suppositions. Further, there is no prohibition on an application for a permanent injunction relying on the same evidence in support of a preliminary one. To the extent CCDC complains that they never deposed Plaintiffs' experts, the answer is simple: they never asked to, even after months passed without requesting a Rule 16 conference or the ability to take discovery, and certainly not since the Court's notice in December 2024 that dispositive motions were due in three months' time; nor did they seek to offer their own witness. Finally, to the extent CCDC complains that the Court's preliminary injunction applied only to Democrats and not Republicans, the answer is also simple: Plaintiffs basically agree. Plaintiffs' summary judgment motion seeks to make it applicable to both parties; the new ballot law makes it applicable to both parties; and the consent decrees governing 17 other defendant clerks' behavior requires that it be applicable to both parties.

---

[1] On a motion for summary judgment, a movant's reliance on a *Verified* Complaint to adduce undisputed facts is entirely proper. *E.g., Simpson v. Davenport,* 3:20-CV-0024, 2023 WL 5308328, at *2 (W.D. Pa. Aug. 17, 2023). While that rule does not extend to unverified Complaints, the *Kim* complaint, ECF No. 1, was in fact verified by Senator Kim and his two co-plaintiffs.

Accordingly, CCDC's cross-motion for summary judgment should be denied, and Plaintiffs' motions for summary judgment in *Kim* and *Conforti* should be granted.

## **PROCEDURAL HISTORY AND STATEMENT OF FACTS**

In the interest of avoiding repetition, Plaintiffs refer the Court to the following materials already on file for the procedural history applicable to this motion: Plaintiffs' Brief in Support of Motion for Summary Judgment (*Kim* ECF No. 298-2; *Conforti* ECF No. 234-2). For the relevant facts, Plaintiffs rely on the foregoing as well as on Plaintiffs' Statement of Undisputed Facts (*Kim* ECF No. 298-1; *Conforti* ECF No. 234-1); Plaintiffs' Response to the Bergen County Clerk's Statement of Undisputed Material Facts (*Kim* ECF No. 304-1); Plaintiffs' Response to the Union County Clerk's Statement of Additional Material Facts (*Kim* ECF No. 312-1); and Plaintiffs' Response to the Bergen County Clerk's Statement of Additional Material Facts (*Kim* ECF No. 312-2 and *Conforti* ECF No. 245-1). These materials are incorporated by reference.

Further, Plaintiffs rely on the Statement of Additional Facts in opposition to CCDC's motion, filed on even date, and these materials are likewise incorporated by reference. By way of brief summary, this new materials shows the following:

First, new developments have arisen that are relevant to Defendants' contentions that the matter is moot. The provisions of the NBL do not capture all

the substantive provisions of this Court's prior injunction and thus, a live dispute remains. There is now actual evidence that, apart from the NBL's terms, the county clerks are actually engaged in a form of ballot design that allows in-office bracketing, namely, listing candidates who filed petitions together and requested the same slogan and a common ballot draw, the right to appear adjacent to one another. This regresses from the law as it stood in 2024, as modified by the Court's injunction, in that there is no longer a requirement of a separate draw for each candidate and an equal opportunity for each candidate to appear first (or in any given position).

Second, a case is not moot when a defendant purports to voluntarily cease illegal conduct on the eve of judgment in a case, *unless* the defendant meets its formidable burden of proving it is "absolutely clear" that the clerks' "wrongful behavior could not reasonably be expected to recur." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305-06 (3d Cir. 2020).[2] There is ample prior evidence of the clerks' massive resistance to Plaintiffs' litigation on the merits, and not just because of transient feasibility issues. (*Kim* ECF No. 302, pp. 5-18). The new evidence described in today's SAMF shows at least certain clerks cannot even

---

[2] *Hartnett* goes on to explain that "[t]hough voluntary or volitional cessation is often described as an exception to mootness, that is not quite right. The burden always lies on the party claiming mootness, whether the case involves voluntary cessation or not." *Hartnett*, 963 F.3d at 307 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

follow new state law on the matter, and that they are not hewing to the underpinnings of the Court's preliminary injunctive relief mandating separate ballot draws for each candidate in last year's Democratic primary election. Past resistance alone is strong evidence that the forbidden conduct is clearly likely to recur. *Ongoing* intransigence is conclusive that it is likely to recur, and that is what Plaintiffs show here.

Third, even if the case were deemed moot, despite the evidence of subsequent candidacies of several individual plaintiffs and NJWF members and endorsees, the matter at a minimum falls under the exception to mootness on the grounds of being capable of repetition, yet evading review. Each of these candidates and NJWF members remain subject to the risk of adverse treatment under the State's ballot design laws and practices. CCDC's assertion about subsequent candidacies of the *Conforti* and *Kim* individual plaintiffs (*Kim* ECF No. 314-1, pp. 11-12) is woefully mistaken. At least three of the plaintiffs - Kevin McMillan, Joseph Marchica, and Carolyn Rush – have pursued public or party office since the respective complaints were filed. (Plaintiffs' Statement of Additional Material Facts ("SAMF"), ¶¶ 1-3). In addition, numerous members and endorsees of the New Jersey Working Families Alliance ("NJWF") have pursued party and public office. *Id.*, ¶4. Disputes about ballot designs are likely to continue before a final resolution can be decreed and are considered capable of repetition

6

while evading review as a matter of law. Even if these candidates had not actually pursued office or announced an intent to do so, in the decision on motion to dismiss the *Conforti* case (*Conforti* ECF No. 111), this Court already determined that when a candidate challenges an election law, it is presumed the candidate will seek office in the future and the dispute will recur, the applicable standard prescribed by case law is not narrow. *Id.*, pp. 20-21.[3]

## ARGUMENT

## I.    THIS CASE IS NOT MOOT AND/OR FALLS UNDER AN EXCEPTION TO MOOTNESS

After several pages of verbal throat clearing (CCDC Brf. at 8-10), CCDC eventually gets around to presenting its argument that this case is moot. However, none of CCDC's arguments holds up under scrutiny. Mootness, broadly stated, occurs when subsequent events alter the justiciability of a case that was justiciable at its outset. *Lutter v. JNESO*, 86 F.4th 111, 130 (3d Cir. 2023). While mootness might require dismissal of the case, that result does not apply in at least two circumstances relevant here. One is an exception to mootness when the dispute is capable of repetition yet can evade review in the time necessary to litigate it. *Id.* at 131 (citing *County of Butler v. Governor of Pa.*, 8 F.4th 226, 231 (3d Cir. 2021)).

---

[3] This ruling was supported by Plaintiffs' briefing in opposition to the *Conforti* motions to dismiss, and need not be repeated in full here. The argument can be found at *Conforti*, ECF No. 69, pp. 37-52, which among other things, described how an unconstitutional ballot design law would harm candidates in future election cycles, and cited supporting case law.

Further, a case is not moot (it's not just an 'exception to mootness') when the defendant voluntarily ceased their illegal or unconstitutional conduct but fails to meet its formidable burden that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Hartnett*, 963 F.3d at 306 (citing *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019)).

This case is not moot because a live dispute remains[4], the voluntary cessation of conduct doctrine precludes a finding of mootness, and because this case is capable of repetition while evading review.

**First,** and contrary to CCDC's assertions, several of the plaintiffs in this matter have pursued elective office after the events in the operative complaint were pleaded. These candidates – like all candidates – are entitled to compete on a fair ballot, free of design aspects that tilt the ballot in favor of their opponents for the reasons cited in the two Verified Complaints, and in this Court's and the Third Circuit's opinion, including 'weight of the line' effects, forced association, primacy, stacking, unequal treatment of candidates running for the same office

---

[4] It should be further noted that the NBL does not remove all of the attendant unconstitutional features of the Bracketing Structure, which constitutes even further grounds for this Court to reject CCDC's mootness argument. This argument was set forth in further detail in Point I.B of Plaintiff's opposition to the dispositive motions filed by the Bergen and Union County Clerks, and is not repeated at length, but is incorporated by reference. *See Kim* ECF No. 304, pp. 19-28; *Conforti* ECF No. 239, pp. 19-28.

when drawing for ballot position, and the placement of their names on remote areas of the ballot. *See generally Kim v. Hanlon*, ECF No. 194, pp. 29-34.

One of the *Kim* candidates pursuing office is Carolyn Rush, who this very year is running in a contested Democratic primary for General Assembly in the First Legislative District. Declaration of Antoinette Miles ("Miles Decl."), ¶¶ 1, 6). Two of the *Conforti* plaintiffs – Joseph Marchica and Kevin McMillan, ran in primary elections in 2022 and 2024, well after the complaint was filed. (*Id.*, ¶¶ 4-6). Finally, at least 34 endorsees of *Conforti* plaintiff New Jersey Working Families Alliance ("NJWF"), including 22 NJWF members, have run for election between 2022 and 2025 (*i.e.,* after the *Conforti* complaint was filed), including 15 endorsees and members who are running right now in the 2025 Democratic primary. (*Id.* at ¶ 6). This Court has already determined that NJWF is a proper plaintiff with standing based on allegations that "it is asserting claims on behalf of its members and those individual members have standing to bring those claims themselves." *Conforti v. Hanlon*, No. 20-08267, 2022 WL 1744774, at *8 (D.N.J. May 31, 2022) (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279 (3d Cir. 2014)). In addition to this prior unreversed decision being law of the case, the substantive law on representational standing remains as it was in 2022. Therefore, as to NJWF alone in the immediately upcoming primary, there are at least 15 direct and organizationally-represented candidates who, as 2025 candidates, have a live

9

dispute right now about New Jersey primary ballot design and in particular, how the law causes injuries to them. (*See generally Kim* ECF No. 302, pp. 19-28). Of those 15, six of those candidates are running in either Bergen or Camden Counties. (Miles Decl., ¶ 6). Given that there are at least some plaintiffs in both *Conforti* and *Kim* with ongoing live disputes about primary ballot design, the case is not moot.

**Second**, even if one overlooked this abundance of candidates, this Court has also noted – and again, it is law of the case – that a candidate bringing an election lawsuit will be presumed to be running again in subsequent elections absent express evidence to the contrary. In response to mootness arguments that surfaced during the motions to dismiss the *Conforti* case, this Court explained the point that a candidate plaintiff is generally presumed to be running for office again for purposes of mootness analysis:

> Given that "it is reasonable to expect political candidates to seek office again in the future," the Third Circuit has affirmed that the second prong of "capable of repetition yet evading review" doctrine is generally satisfied absent express statements that a plaintiff would not seek election. *Merle v. United States*, 351 F.3d 92, 94 (3d Cir. 2003) (holding that it was "reasonable to expect that Merle will wish to run for election either in 2004 or at some future date" without allegations of intent to do so). The Court holds that the second prong is satisfied because there is a demonstrated probability that the same parties will again be involved in the same dispute.
>
> [*Conforti v. Hanlon*, No. 20-08267, 2022 WL 1744774, at *11 (D.N.J. May 31, 2022)].

This case, in sum, falls within the capable of repetition while evading review exception.

*Logan v. Garland*, No. 24-00040 (D.N.J. Nov. 26, 2024), *aff'd,* 24-3265, 2025 WL 880016 (3d Cir. Mar. 21, 2025), does not mandate a different result. In Logan, a *pro se* plaintiff filed a voluminous complaint and amended complaint which this Court understood to be strictly related to the November 2024 general election. *Id.* at *5 ("Plaintiff's Election Injunctions and the majority of the [evidence] relate to the November 5, 2024 election, which has already occurred. . . . As the election has already passed, the Court finds the Election Injunctions are moot, as the Court cannot offer any relief."). Both *Conforti* and *Kim*, in contrast, stand on a different footing. Both cases' prayers for relief make clear that the plaintiffs seek *permanent* and lasting relief, not just an injunction of the kind issued in *Kim* for the June 2024 Democratic primary. In addition, while the next applicable election in *Logan* was at least two years away, New Jersey holds primary and general elections annually, with federal candidates on the ballot in even numbered years, and state legislative candidates on the ballot in odd-numbered years. Given the age of the *Conforti* case, that alone casts doubt that the matter could be litigated to final judgment, resolved, and appealed within a one-year time frame. With repeating elections annually, Plaintiffs amply satisfy the capable of repetition while evading review exception to mootness.

**Third**, Defendants fail to meet their "formidable" burden under the *Friends of the Earth/Hartnett* line of cases of showing that, despite the alleged voluntary cessation of illegal conduct, it is "absolutely clear" that the clerks' "wrongful behavior could not reasonably be expected to recur." While Plaintiffs stand on the arguments on this point made at *Kim* ECF No. 302, pp. 5-18, additional facts have also come to light.

Specifically, in the aforementioned briefing (*id.* at pp. 21-22), Plaintiffs pointed out that the NBL authorized in-office bracketing and a common draw for associated candidates, which is inconsistent with the spirit and intent of this Court's ruling that every candidate had to be drawn separately with an equal chance of obtaining first position (*Kim* ECF No. 195, Section 3(b)). At the time, it was unknown whether the Clerks would follow the disapproved practice of in-office bracketing and individual draws. The question has now been adequately answered. The Declaration of Yael Bromberg ("Bromberg Decl."), ¶7), demonstrates that county clerks (such as the Bergen County Clerk) are allowing in-office bracketing, which enables associated candidates to be featured adjacent to one another, without separate ballot draws for each. On information and belief, most other counties are also engaged in the same practice.[5] This is evidence that

---

[5] *See, e.g.*, Union County Votes, Primary Election, Ballot Drawing, *available at* https://www.youtube.com/watch?v=ImohFEeUCBc (last accessed Apr. 23, 2025) (at 3:50 of video of 2025 primary election ballot draw, the Union County Clerk's

the prior wrongful behavior, although purportedly disavowed by the clerks, is now recurring, and that is inconsistent with the necessary proofs that wrongful behavior is not likely to recur in one form or another.

Indeed, at least one Clerk is unable to follow the requirements of the NBL itself. One of the features of the NBL that was actually consistent with this Court's ruling was an express mandate that every candidate have an oval or box next to their own name, so that voters at their discretion could vote for that candidate or not, rather than being constrained to vote for a slate. Nevertheless, the Camden Clerk fashioned the 2025 ballots there in a way where an entire slate of county committee candidates – in one instance, 74 candidates, had a single oval. A vote for one was a vote for 74, contrary to the express mandates of the NBL, Section 2(a)(4). (*See* Bromberg Decl., ¶ 5, Exh. B, Cherry Hill Ballot.)[6] Clerks' failure to

---

staff states that there are two slates of two candidates for Assembly in the 20th Legislative District, and so each slate will each be drawn as a single unit); *see also* accompanying ballot image at https://unioncountyvotes.com/wp-content/uploads/2025/04/IMG_1317.png (last accessed Apr. 23, 2025). These items are judicially noticeable since they are from a public website maintained by a government official.

[6] The Cherry Hill ballot example – also found in the foregoing Exhibit B – demonstrates how this single-oval impedes on analysis related to the constitutionality of the "weight of the line" as presented in this litigation. Therein, *three* (3) candidates affiliated with South Jersey Progressive Democrats are to be selected with a single oval in furtherance of municipal-wide representation, as compared with the *seventy-four* (74) CCDC-endorsed candidates vying for their own single oval for the same total breadth of representation. (Bromberg Decl., ¶ 5, Exh. B, Cherry Hill Ballot.)

abide by the new ballot design laws as written, however flawed those laws may be, is also inconsistent with a finding that there is no reasonable chance that the allegedly abandoned prior illegal conduct, will not recur.[7]

For all these reasons, the matter is not moot and/or falls within a clearly recognized exception to mootness.

## II. PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION PROHIBITING THE CONDUCT PREVIOUSLY ENJOINED IN THE 2024 PRIMARY ELECTION.

CCDC argues that Plaintiffs are not entitled to a permanent injunction against the Bergen and Union Clerks, the only two governmental defendants in this case. The peculiarity of a private party arguing that a governmental party should not be subject to an injunction is itself notable at this stage of this matter, because (1) Plaintiffs' prior briefing has demonstrated that CCDC lacks standing to continue its role in this case as an intervenor (*Kim* ECF No. 287-1; *Conforti* ECF No. 229-1); and (2) all of the remaining governmental defendants have abandoned their defense of the constitutionality of the Bracketing Structure. (*Kim* ECF No. 295-2, ¶¶ 7-8 (Declaration of Joanne Rajoppi) and 295-3, ¶ 11 (Declaration of John

---

[7] In fact, among NJWF's members/endorsees is Tyann La'Shae Harris, who is running for Camden City Council and Camden County Democratic Committee at large. Given her candidacy for county committee, she will suffer the same harm whereby a voter cannot vote for her individually, and she will not have an individual oval next to her name. Moreover, Harris is competing against a full slate of CCDC-endorsed candidates for the same position, who, unsurprisingly, are the beneficiaries of this illegal ballot design. (Bromberg Decl., ¶ 5, Exh. B, City of Camden Ballot.)

S. Hogan)). Considering that no one is seeking a permanent injunction against CCDC, the Court is at liberty to disregard these arguments in their entirety as they are made by a party without a stake in the outcome.

Plaintiffs have previously presented extensive briefing on the propriety of them being awarded a permanent injunction. (*See Kim* ECF No. 298-2, pp. 25-28 (moving brief); *Kim* ECF No. 312, pp. 10-15 (reply brief)). Nevertheless, Plaintiffs respond briefly to the points made by CCDC.

CCDC initially cites to *Lackey v. Stinnie*, No. 23-621, 604 U.S. ___, slip op. at 6 (2025) as describing the potential differences between a preliminary injunction and a final, permanent injunction. However, what CCDC overlooks is that *Stinnie* – a case about counsel fees – in no way alters the provisions of Fed. R. Civ. P. 65(a)(2), which authorizes a court to consolidate a preliminary injunction hearing with a hearing to determine final relief on the merits. Nor does *Stinnie* alter the rule that the evidence used to determine final injunctive relief can be the same as that relied upon to grant preliminary injunctive relief. This issue, with supporting case law, was canvassed at *Kim* ECF No. 312, pp. 14-15, and need not be repeated.

CCDC's reliance on *Democratic-Republican Org. v. Guadagno*, 900 F. Supp. 447 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012) is baffling. The Third Circuit, in affirming this Court's injunction in *Kim*, distinguished *Guadagno* by pointing out that the law there was facially neutral and nondiscriminatory, whereas

15

the county line ballot laws and practices challenged here were "discriminatory" because they "pick[ ] winners and punishes those who are not endorsed or, because of their political views, want to disassociate from certain endorsed candidates." *Kim v. Hanlon*, 99 F. 4th 140, 157 (3d Cir. 2024). The challenge to *general election* ballots that was turned away in *Guadagno* in no way resembles the heavy thumb on the electoral scale supporting favored candidates that was successfully challenged here relating to *primary election* ballots. It is simply inapposite, and the entire argument based on *Guadagno* cannot be squared with the opinion of this court and the published, precedential decision of the Third Circuit in *Kim.* Under Third Circuit Internal Operating Procedure 9.1, the *Kim* ruling is binding not just on this court, but on subsequent Third Circuit panels, as "no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so." *Id.* (Policy of Avoiding Intra-Circuit Conflict of Precedent.)

The Third Circuit's opinion in *Kim* has already rejected each of the arguments that CCDC has put forth in its brief. The Court clearly characterized this case as not just a "ballot placement" case but focused instead on "whether the challenged restriction unfairly or unnecessarily burdens 'the availability of political opportunity.'" *Kim*, 99 F.4th at 157 (quoting *Mazo v. Way*, 54 F.4th 124, 146 (3d. Cir. 2022)). Thus, the Third Circuit found strict scrutiny appropriate due to the

"severe" burden on plaintiffs' rights, despite the fact that no candidate was denied "ballot access" and all "candidate[s'] name[s] physically appear[] on the ballot." The Third Circuit also rejected CCDC's primacy arguments repeated here in this brief. *Id.* at 157-58. The Third Circuit noted that certain candidates who were not running for pivot point offices could *never* receive first ballot position. This was just one of the elements that made the county line ballot system unconstitutional, and contributed to the Court's observation that "there is a very substantial likelihood that the Plaintiffs will succeed on the merits of their First Amendment claims under the *Anderson-Burdick* framework," and also found a likelihood of success on the merits of Plaintiffs' Election Clause challenge. *Id.* at 158-59.

CCDC's arguments that Plaintiffs have not shown irreparable injury also falter in light of the Third Circuit's opinion. On this point, the appeals court explained:

> "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). More so here, as the status quo deprives the Plaintiffs – especially Schoengood and Rush – of a fair chance to win the election, a harm "where monetary damages" are "inadequate." *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989). Finally, the Plaintiffs' rights not to associate with objectionable candidates, *see Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000), are burdened when they must choose between that and an unwelcome ballot position.
>
> [99 F.4th at 159].

17

This issue is settled and closed, and CCDC never sought further review of this precedential determination by way of a motion for panel reconsideration, a motion for en banc hearing, and/or seeking review in the United States Supreme Court. Yet, it comes before the Court today, having sat on its rights, seeking to further litigation on behest of public actors who no longer contest the constitutionality of the issue.

CCDC's attacks on Plaintiffs' experts are also unavailing. In connection with the hearing before the District Court, counsel for the Union County Clerk lobbed seven motions *in limine* trying to disqualify Plaintiffs' experts. After a review of those experts' initial reports and replies, briefs, and certifications submitted in reply or in rebuttal,[8] the Court soundly rejected this effort on *Daubert* grounds, recognizing that while the motions were connected to a preliminary injunction, and not a trial, every last expert report had indicia of reliability, were prepared by highly qualified professors and experts, and that methodological quibbles about the reports were insufficient to disqualify them:

> Plaintiffs' expert reports and their testimony contain the indicia of reliability sought under Rule 702 and Daubert. The reports and testimony seek to explain, inter alia, the "feasibility of using New Jersey's existing equipment and software to present office-block ballots to primary voters," the impact the county line had on candidates who were awarded it, and how ballot design affects voter behavior. (See generally MIL Opp'n Br.) Notably, the experts rely

---

[8] These thorough materials can be found at *Kim* ECF Nos. 1, Exhs. B-D; 95, Exhs. A & B, 168, 169, 170, and 175-1).

upon their professional and educational experience when providing the various quantitative and statistical analysis within their respective reports. Further, the Court finds that the various challenges raised in the Second through Fifth Motions in Limine attacking the reliability, relevance, and methodological flaws of the reports and testimony more properly go to the weight the Court affords the testimony and not the admissibility.

[*Kim* ECF No. 194, p. 19].

CCDC's efforts to relitigate the expert reports' admissibility should be rejected. CCDC's brief is rife with speculation about supposed problems or omissions within the expert reports. *Kim* ECF No. 314-1, pp. 21-22. However, the argument of counsel that experts should have considered or given weight to other factors, or that a study of the 2024 primaries was in order to show "any consistent benefit or detriment" from candidates opting to bracket or not, is just that: an argument of counsel. CCDC's papers are bereft of any expert report showing that these alleged shortcomings are in fact shortcomings at all.

It also bears repeating that after proceedings in the *Kim* matter concluded in the Third Circuit Court of Appeals, *no* defendant or intervenor, including intervenor CCDC or the remaining defendants, the Bergen and Union County Clerks either (a) sought an Initial Conference pursuant to Fed. R. Civ. P. 16; or (b) sought a waiver from Plaintiffs' counsel or the Court from the provisions of Fed. R. Civ. P. 26(d)(1) that would otherwise bar Defendants and CCDC from taking discovery, including discovery of experts. Further, it appears no defendant or

intervenor has identified and engaged a qualified expert whose report might have been relied upon in the present round of motion practice. *If such an expert existed, where is the competing expert report filed on behalf of any of the remaining parties to the matter in the aforesaid present motion practice?* The silence answers the question. CCDC cannot be heard to complain now that they could have interviewed or deposed Plaintiffs' experts, or hired one of their own, when they never lifted a finger to do so in the full year since the appeals court resolved this case. Indeed, CCDC has been litigating this issue since it intervened in *Conforti* in 2022, and has never once indicated that it has even retained an expert in that case, where paper discovery was exchanged with respect to all parties, or in *Kim*.

CCDC's arguments that its First Amendment rights would be impinged by a ruling in Plaintiffs' favor were also rejected by this Court and the Third Circuit. *See Kim*, 99 F.4th at 158 ("As the CCDC's First Amendment rights are not meaningfully harmed by the injunction, the burdens on the Plaintiff's competing first Amendment rights outweigh any of them."). The Plaintiffs never asked for a ruling, and no court ever held, that CCDC could not endorse candidates or communicate its endorsements. Indeed, they retained the right to do so right there on the ballot, with their slogan rights never having been put in issue or quashed by a court. *See id.* No such rights are or have been violated by any order made by this Court or sought by Plaintiffs in these proceedings. (*See also* Bromberg Decl., Exh.

20

B, 2025 Camden County ballots prominently displaying CCDC's name in multitude – the affiliation is littered at least thirteen times across the City of Camden ballot, and at least twelve times across the Cherry Hill ballot.)

Lastly, CCDC's arguments on the applicability of this case to both the Republican and Democratic parties warrant a brief concluding thought. Ever since the initial and amended complaints in *Conforti*, and the Verified Complaint in *Kim* was filed, Plaintiffs pursued relief for both parties, on a permanent basis. When the Prayers for Relief in these complaints state that Plaintiffs demand judgment "Preliminarily *and permanently* enjoining the Defendants . . ." from certain specified acts, it should come as no surprise that Plaintiffs meant what they said. Contrary to CCDC's insinuations, the Prayers for Relief never state that it is limited to Democrats only or Republicans only. No limitation to a single party can be divined from those words. The county line ballot system is toxic to voters and candidates in both political parties, a fact Plaintiffs recognized when this series of litigations began. Indeed, the Court's decision to limit the 2024 injunction to the Democratic Party alone was swiftly questioned by a faction of Republican voters. (*Kim* ECF No. 226). At all times, anyone reading the Complaint was on notice that when the litigation was done, Plaintiffs's goal was to bar the use of the county line (and all its attendant features) for both parties, and in perpetuity. CCDC's feigned surprise to the contrary convinces no one.

21

Apart from these facts, Plaintiffs also have pointed out that each and every consent decree reached in this case with the settling defendants, and approved by this Court, does not differentiate between Democratic and Republican primaries.[9] Nor, for that matter, does the NBL. Whatever flaws exist in that law, there was never even a thought that they would not apply equally to both parties. As such, CCDC's claims about differential treatment between the parties are thoroughly unfounded and should be rejected. Moreover, issuing permanent relief would eliminate any concerns of the CCDC (founded or unfounded) that the parties must be treated equally.

---

[9] The Verified Complaint in this matter was served on all state and county party committees. *Kim* ECF 298-1 and *Conforti* ECF, 234-1, ¶ 10. Moreover, seven county parties participated in this litigation (including four Republican county committees, one of which was the Union County Republicans) and six of them even entered into consent orders approved by this Court (including all four of the Republican county committee intervenors). *Id.,* ¶ 23.

## **CONCLUSION**

For the foregoing reasons, and for the reasons stated in Plaintiffs' prior briefs and submissions in these matters,

1. Intervenor CCDC's motion for partial summary judgment dismissing Plaintiffs' counsel fee claims should be denied (*Kim*, ECF 286);

2. Plaintiffs' motions to dismiss Intervenor CCDC should be granted (*Kim*, ECF 287; *Conforti*, ECF 229);

3. Defendants Bergen and Union's Clerks' motions to dismiss Plaintiffs' Complaint should be denied (*Kim*, ECF 295, filed by Union; *Kim*, ECF 296, filed by Bergen);

4. Defendant Bergen Clerk's motion for summary judgment should be denied (*Conforti*, ECF 232);

5. Plaintiffs' motion for summary judgment against the Bergen and Union County Clerks should be granted (*Kim*, ECF 298; *Conforti*, ECF 234); and

6. Intervenor CCDC's cross-motion to dismiss should be denied (*Kim*, ECF 314; *Conforti*, ECF 247).

After having litigated these matters for nearly five years, the Plaintiffs in both litigations have accomplished something that no one thought was possible in New Jersey – securing equal access to ballot placement in primary elections across the state and restoring fair ballot design to the voters and independent candidates' voices seeking nothing more than a fair and equal opportunity to represent the electorate. Written discovery was produced, and there has been ample opportunity for additional discovery in both cases. Plaintiffs' claims were tested in the crucible of a marathon evidentiary hearing, and the matter was resolved by the circuit court's published and precedential opinion for the 2024 Primary election, of which

no appeals or reconsideration efforts were pursued. The New Jersey Attorney General has refused to defend the laws comprising the Bracketing Structure on the grounds that he believes them to be unconstitutional. Ninety-percent of the county clerks engaged in these matters have signed judicially-enforceable consent decrees, and the remaining county clerk defendants in these matters – the Bergen and Union Clerks – have now also claimed to have abandoned defense of the constitutionality of the Bracketing Structure, even if their prior and current conduct does not appear to fully live up to that claim. Plaintiff's expert reports still remain unrebutted by CCDC or any other party.

In light of the foregoing circumstances, the Plaintiffs now come before this Court seeking finality as to the constitutional questions that have long plagued New Jersey's ballots for at least seventy-five years. The public deserves finality on these questions of precedential importance, for the elections that come before us this year, next year, and in the years to come. No private actor should be super-empowered to privatize the public defense and undo these good efforts. New Jersey history has taught us that legislative ballot reform may come at once, such as in the Wilsonian era, and then unravel over time through a combination of judicial, legislative, and administrative practices. The question is now properly presented to this Court for full and final relief so that a new page in New Jersey's democracy and voting rights jurisprudence may be turned.

24

Respectfully submitted,

WEISSMAN & MINTZ                 BROMBERG LAW LLC
Attorneys for Plaintiffs              Attorneys for Plaintiffs

By:  _/s/ Flavio L. Komuves_          _____/s/ Yael Bromberg_____
     _/s/ Brett M. Pugach_

Dated: April 23, 2025