Paul Kaufman, Esq. (Id No. 003011974)
Jason S. Nunnermacker, Esq. (Id No. 034212003)
**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
61 South Paramus Rd., Suite 250
Paramus, New Jersey 07652
T: (201) 928-1100
jnunnermacker@decotiislaw.com
*Attorneys for Defendant John S. Hogan, Bergen County Clerk*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | | |
|---|---|---|
| ANDY KIM, et. al. | : | UNITED STATES DISTRICT COURT |
| | : | FOR THE DISTRICT OF NEW JERSEY |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO.: 3:24-cv-01098- |
| v. | : | ZNQ-TJB |
| | : | |
| CHRISTINE GIORDANO HANLON, et. al. | : | |
| | : | |
| Defendants, | : | |
| | : | |

**DEFENDANTS JOHN S. HOGAN AND JOANNE RAJOPPI MEMORANDUM OF FACT AND LAW IN SUPPORT OF THEIR JOINT MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 3, 2025, LETTER ORDER AND OPINION**

**GENOVA BURNS LLC**
*Attorneys for Defendant Joanne Rajoppi in her official capacity as Clerk of Union County*
By: */s/ Angelo J. Genova*
Angelo J. Genova, Esq. Daniel A. Lebersfeld, Esq. 494 Broad Street
Newark, New Jersey 07120 Tel: (973) 533-0777
agenova@genovaburns.com
dlebersfeld@genovaburns.com

**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
*Attorneys for Defendant John S. Hogan in his official capacity as Clerk of Bergen County*
By: */s/ Jason Nunnermacker*
Paul Kaufman, Esq.
Jason S. Nunnermacker, Esq.
61 South Paramus Road, Suite 250
Paramus, New Jersey 07652
Tel: (201) 928-1100
pkaufman@doctiislaw.com
jnunnermacker@decotiislaw.com

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

LEGAL ARGUMENT ....................................................................................................... 2

    I.    THE COURT SHOULD RECONSIDER ITS JUNE 3rd LETTER ORDER ............. 2

        A.    THE REVISED BALLOT DESIGN STATUTE ELIMINATED THE ................... 2

        "COUNTY LINE" AND "BALLOT SIBERIA" PHENOMENON WHICH WERE THE PREMISES OF PLAINTIFF'S INSTANT SUIT AND PRIOR PRELIMINARY INJUNCTION APPLICATION MAKING THIS CASE MOOT ..................................... 2

        B.    THESE PLAINTIFFS DO NOT HAVE STANDING TO NOW CHALLENGE .... 6

        THE REVISED BALLOT DESIGN STATUTE AS THEY HAVE NOT SUFFERED ANY ACTUAL HARM THEREUNDER AND NO HARM IS IMMINENT ................. 6

        C.    THE CLERK DEFENDANTS SHOULD NOT BE FORCED TO EXPEND ......... 8

        TAXPAYER DOLLARS DEFENDING THE CONSTITUTIONALITY OF REVISED BALLOT DESIGN STATUTE ....................................................................................... 8

        D.    PLAINITFFS WAIVED ANY RIGHT TO NOW COMPLAIN ABOUT THE ....... 9

        REVISED BALLOT DESIGN STATUTE AS THEY DID NOT CHALLENGE ANY BALLTO DESIGN FOR THE JUNE 10, 2025, PRIMARY ............................................. 9

        E.    THE SUPREME COURT'S RECENT DECISION IN LACKEY VS. STINNIE CONCLUSIVELY BARS PLAINTIFFS FROM RECOVERING COUNSEL FEES. 10

CONCLUSION ................................................................................................................ 11

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**<u>Cases</u>**

*Black United Fund of New Jersey, Inc. v. Kean,*
  763 F. 2d. 156 (3d Cir. 1985) ................................................................... 3

*Buffin v. California,*
  23 F.4th 951 (9th Cir. 2022) .................................................................... 8

*Echols v. Parker,*
  909 F.2d 795 (5th Cir. 1990) ................................................................... 9

*Herbst v. Ryan,*
  90 F.3d 1300 (7th Cir. 1996) ................................................................... 9

*Kremens v. Bartley,*
  431 U.S. 119 (1977) ................................................................................ 3

*Lackey v. Stinnie,*
  145 S. Ct. 659 (2025) .............................................................................. 4

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ............................................................................. 7, 8

*Massachusetts v. Oakes,*
  491 U.S. 576 (1989) ................................................................................ 2

*Max's Seafood Café v. Quinteros,*
  176 F.3d 669 (3d Cir. 1999) ................................................................... 2

*Miller v. Caudill,*
  936 F.3d 442 (6th Cir. 2019) ................................................................... 8

*Nye v. Ingersoll Rand Co.*,
   783 F.Supp.2d 751 (D.N.J. 2011)..................................................................................... 9

*Sold Rock Baptist Church v. Murphy*,
   555 F. Supp. 3d 53 (D. N.J. 2021) ................................................................................... 2

*Technologies, Inc. v. United States*,
   579 U.S. 162 (2016)......................................................................................................... 3

*West Jersey Title & Guar. Co. v. Indus. Tr. Co.*,
   27 N.J. 144  (1958) ........................................................................................................ 9

**Statutes**

42 U.S.C. § 1988(b) ............................................................................................................. 10

*N.J.S.A.* 19:23-24 ................................................................................................................. 1

<u>N.J.S.A</u>. 19:23-24(b) ........................................................................................................... 5

<u>N.J.S.A</u> 19:23-24(a) and (b) ............................................................................................... 3

## PRELIMINARY STATEMENT[1]

On March 13, 2025, Defendants John S. Hogan (Bergen County Clerk) and Joanne Rajoppi (Union County Clerk) (collectively, the "Clerk Defendants") filed a joint motion to dismiss Plaintiffs' Complaint (ECF 1) for a lack of jurisdiction on the grounds that the enactment of the Revised Ballot Design Statute (*N.J.S.A.* 19:23-24 effective March 6, 2025) rendered Plaintiffs' claims moot. (ECF 296). Specifically, because the Revised Ballot Design Statute indisputably eliminated the "county line" and the "ballot Siberia" phenomenon – the supposed sources of Plaintiffs' alleged constitutional injuries – for all New Jersey primary elections on a going forward basis, there was no longer a live controversy for the Court to adjudicate.

Nevertheless, on June 3, 2025, the Court entered a Letter Order and Opinion ("June 3rd Letter Order"), denying the Motion to Dismiss finding that the Revised Ballot Design Statute might present new constitutional infirmities relating to its provisions for the usage of slogans on the ballot and endorsements, and that it supposedly gives the Clerk Defendants (and other County Clerks across the State) discretion to format future Democratic primary ballots, all of "which leaves a very real likelihood of future harm to Plaintiffs" (June 3rd Letter Order, pp. 4-5). The Clerk Defendants file this Motion for Reconsideration pursuant to Local Rule 7.1(i) as they respectfully submit that the June 3rd Letter Order is based upon several clear errors of law and fact and presents an advisory opinion on matters that are not before the Court.

---

[1] The Clerk Defendants rely and incorporate all facts set forth in the Motion to Dismiss filed on March 13, 2025 (ECF 296).

## LEGAL ARGUMENT

### I.    THE COURT SHOULD RECONSIDER ITS JUNE 3rd LETTER ORDER

Motions for reconsideration are governed by Local Rule 7.1(i). *Sold Rock Baptist Church v. Murphy*, 555 F. Supp. 3d 53, 59 (D. N.J. 2021). Such a motion must be filed within 14 days after entry of the order being challenged. The motion should be granted if: "(1) there has been an intervening change in the controlling law; (2) evidence not available when the Court issued the subject order has become available; or (3) it is necessary to correct a clear error of law or fact to prevent manifest injustice." *Id.* (citing *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

Here, the Clerk Defendants move under third prong of the *Murphy* standard in that they respectfully submit that the Court made a "clear error of law or fact" which has resulted in a "manifest injustice." Specifically, the Clerk Defendants respectfully submit that the Court erred by (i) finding that the Revised Ballot Design Statute did not render moot Plaintiffs' instant suit; (ii) effectively finding that Plaintiffs have standing to pursue claims under the Revised Ballot Design Statute, (iii) concluding that the Clerks have discretion in formatting a Democratic primary ballot under the Revised Ballot Design Statute, and (iv) forcing the Clerk Defendants to defend the constitutionality of the Revised Ballot Design Statute.

### A.    THE REVISED BALLOT DESIGN STATUTE ELIMINATED THE "COUNTY LINE" AND "BALLOT SIBERIA" PHENOMENON WHICH WERE THE PREMISES OF PLAINTIFF'S INSTANT SUIT AND PRIOR PRELIMINARY INJUNCTION APPLICATION MAKING THIS CASE MOOT

Both the United States Supreme Court and the Third Circuit have determined that a case becomes moot when the case centers upon the constitutionality of a state statute that is either repealed or amended during the pendency of the matter. See *Massachusetts v. Oakes*, 491 U.S.

576, 582 (1989) (holding that the amendment of a law prohibiting nude photography of minors mooted First Amendment overbreadth challenge to a law); *Kremens v. Bartley*, 431 U.S. 119, 132 (1977) (holding that the repeal of a statute permitting involuntary commitment of juveniles mooted challenge to statute); and *Black United Fund of New Jersey, Inc. v. Kean*, 763 F. 2d. 156, 160 (3d Cir. 1985) (holding that a challenge based upon discrimination to a New Jersey statute permitting voluntarily payroll deductions for charitable constitutions to the United Way but not other charitable organizations became moot when New Jersey amended the statute to permit contributions to other organizations).

Here, the Court determined, without any factual basis in the record, that an exception to mootness exists here finding that Plaintiffs' claims are "capable of repetition, yet evading review" (June 3rd Order at 3 citing *Kingdome Technologies, Inc. v. United States*, 579 U.S. 162, 170 (2016)). While the Court recognized that the Revised Ballot Design Statute abolishes the "county line" and the "ballot Siberia" phenomenon, which was the primary objective of the Complaint, the Court nevertheless opined that Clerks are "still permitted to choose the order of a candidate on the ballot subject to (1) placing them in an office structure, (2) candidate petitions, (3) candidate slogans, and (4) associations/endorsements." (June 3rd Letter Order, p. 4 citing N.J.S.A 19:23-24(a) and (b)). Respectfully, the Court's reasoning is flawed as it overlooks Plaintiffs' own allegations and the text of the Revised Ballot Design Statute.

First, denying Clerk Defendants' Motion and requiring this case to continue does not, and cannot, resolve the Court's above concerns with the Revised Ballot Design Statute. This is because the Clerk Defendants did not write the Revised Ballot Design Statute. They have no ability to amend it or abolish it. The Clerk Defendants are now faced with the Hobson's Choice of either expending taxpayer dollars defending a statute that they had no role in formulating or to sit idly

3

by while Plaintiffs proceed unopposed to a final judgment on the merits and risk county taxpayer funds to pay Plaintiffs' counsel fees.   The Supreme Court's unambiguous holding in *Lackey v. Stinnie*, 145 S. Ct. 659 (2025) specifically forbids litigants from litigating moot civil rights claims in the hopes of achieving prevailing party status to recover counsel fees.

Second, Plaintiffs' Complaint expressly concedes they are not challenging the ability of candidates to associate themselves with one another on the ballot with "candidate slogans" and/or endorsements.  Indeed, Paragraph 180 of Plaintiffs' Complaint makes clear that Plaintiffs expressly disavowed the notion that they were challenging the "constitutionality of a ballot slogan" or "associational" rights of those candidates who do wish to be associated if running for same office (for example, the State Assembly has two positions that appear on the primary ballot):

> 180.   No state interest in New Jersey's bracketing and ballot placement system can justify the burdens it places on Plaintiffs' rights.  **This is especially true given that this case does <u>not</u> seek to challenge the constitutionality of a ballot slogan, which would remain readily available to offer <u>associational signals</u> on the New Jersey ballot in an office block format, nor does it seek to disrupt general endorsement rights that extend beyond the ballot design by the county party committees,** but instead challenges other primary ballot design practices that are radically different and affect candidates like Plaintiffs in a way that is above and beyond what the other states allow on their ballots.
>
> **[ECF 1, Page 64 (emphasis added), see also Paragraphs 61 and 114 where Plaintiffs make clear they do not challenge candidate rights who choose to be associated together on a ballot)]**

Indeed, the Court itself, in its March 29, 2024 Opinion in granting Plaintiffs' motion for preliminary injunction, recognized that:

> Plaintiffs do not seek to disrupt the conduct of parties in their right to endorse the standard-bearer of their choice, or their right to contribute and pool resources to support that candidate in the primary or general election.  **Nor do Plaintiffs seek to disrupt the ability of parties to signify their endorsements or slogans on the ballot alongside the candidates of their choice.**

4

**[March 29, 2024, Opinion, ECF 194, pp. 13-14 (quoting Complaint ¶ 14) (emphasis added)].**

In fact, the Court recognized the constitutionality of political candidates' rights to associate on the ballot by slogan/endorsement:

> Absent the Bracketing Structure [county line and ballot Siberia practices], political parties and political organizations would still maintain the freedom to endorse their preferred candidates. **Merely presenting the information in a different format, the Office Box Structure, <u>will not</u> detract from the political parties' and political organizations' freedom of speech and association.**

> **[<u>Id.</u>, p. 13(emphasis added)].**

In denying the Clerk Defendants' Motion to Dismiss because the Revised Ballot Design Statute preserved candidates' rights to associate themselves by slogan/endorsement runs directly counter to Plaintiffs' Complaint and the Court's March 29, 2024 Opinion. Accordingly, the June 3rd Letter Order, by definition, rested on clear error of both law and fact.

Third, the Revised Ballot Design Statute makes clear that the Clerk Defendants do **not** have the discretion as to ballot placement. To the contrary, the order of candidates on all primary ballots are drawn at random by placing the name of each candidate in a box which is then to "be well shaken and turned over to thoroughly mix the cards and the cards shall then be withdrawn one at a time." <u>N.J.S.A.</u> 19:23-24(b). Indeed, one searches Plaintiffs' opposition to Defendants' Motion in vain for any specific instances of "discretion" the Revised Ballot Design Statute leaves to the Clerk Defendants that renders it unconstitutional.

Fourth, the Court's finding that the Revised Ballot Design Statute "leaves candidate placement on the ballot to the discretion of the county clerks, which leaves a very real likelihood of future harm to Plaintiffs" (June 3rd Letter Order at 4-5), is erroneous, speculative, advisory and not supported by anything in the record before this Court. Initially, as stated above, the Clerk Defendants (and all other County Clerks, for that matter) have no discretion as to "candidate

placement." Rather, it is done by random draw. Next, it is speculative as to whether these Plaintiffs will ever appear again on a primary ballot. Indeed, now-Senator Kim's term is not up until the year 2030. If Senator Kim or any other person seeking elective office believes the Revised Ballot Statute presents themselves with real non-speculative harm, they are free to file a new lawsuit against parties with a real interest in the outcome.

Fifth, the Court itself found that the original Ballot Design was unconstitutional for the 2024 Democratic Primary but not for the Republican primary. The Clerks do not understand how a ballot design can be unconstitutional for one political party but not the other. This has never been explained by the Court. To now jump to the conclusion that the Revised Ballot Design Statute may be unconstitutional is insupportable.

In sum, the Revised Ballot Design Statute clearly renders the Plaintiffs' claims in this matter moot, as their own verified allegations, and the Court's prior decision granting Plaintiffs' motion for preliminary injunctive relief reveal. To the extent the Revised Ballot Design Statute leaves Plaintiffs or anyone else with a "very real likelihood of future harm," that is for another lawsuit that involves parties with a real stake in the outcome. At the present time, however, continuing to litigate the constitutionality of a statute and ballot design that no longer exists would undoubtedly be an academic exercise with no benefit to the taxpayers of Bergen and Union County.

**B.    THESE PLAINTIFFS DO NOT HAVE STANDING TO NOW CHALLENGE THE REVISED BALLOT DESIGN STATUTE AS THEY HAVE NOT SUFFERED ANY ACTUAL HARM THEREUNDER AND NO HARM IS IMMINENT**

The Supreme Court's well-known standing test sets forth an "irreducible constitutional minimum" of three elements that a plaintiff must satisfy: (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection

6

between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court[,]" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

The June 3rd Letter Order effectively morphs this case into a challenge of the Revised Ballot Design Statute. However, none of these Plaintiffs are currently harmed by it. Certainly, none of these Plaintiffs have been harmed or are in imminent danger of being harmed by any interpretation of the Revised Ballot Design Statute by the Clerk Defendants or even claimed to have suffered any harm. None of the Plaintiffs are currently in a primary in Bergen County or Union County, and two of them *cannot* run in a Bergen or Union County primary unless they relocate from Southern New Jersey to Northern New Jersey. Otherwise, the earliest Senator Kim will be on a primary ballot is 2030, and that even assumes he will seek re-election. If Senator Kim decides to seek reelection and believes he has a valid challenge to the Revised Ballot Design Statute, then he, at that time, can seek whatever judicial relief he determines appropriate. The other Plaintiffs were not on the 2024 primary ballot in Bergen and Union Counties, but if they once again seek to enter a primary, they can file whatever they like at that time naming any appropriate defendant. But more to the point, no person on the ballot in either the June 10, 2025 Democratic Party Primary or Republican Party Primary of which the Clerk Defendants are aware has claimed to have been constitutionally harmed by the Revised Ballot Design Statute. In other words, the Revised Ballot Design Statute was implemented on June 10, 2025 **with no** challenge.

In addition, there is no "causal connection" between Plaintiffs' now complained of conduct that is "traceable" to the Clerk Defendants. The Clerk Defendants did not write the Revised Ballot

7

Design Statute. They cannot amend it. They cannot supersede it. They have no discretion under it, notwithstanding the Court's initial misconception. Plaintiffs have presented no complaint with the Revised Ballot Design Statute, and if there were complaints, such complaints would be "th[e] result [of] the independent action of some third party not before the court[,]"- the New Jersey Legislature. *Lujan*, 504 U.S at 561. Simply put, these Plaintiffs have no current live claim against the Clerk Defendants.

In sum, Plaintiffs simply do not have the required standing to continue this suit as none of them have suffered any actual harm under the Revised Ballot Design Statute and none face, or even claim to face, any imminent harm from it. Accordingly, even if there were some constitutional infirmities with the Revised Ballot Design Statute, the Plaintiffs herein clearly lack standing to bring suit to challenge it.

C.    **THE CLERK DEFENDANTS SHOULD NOT BE FORCED TO EXPEND TAXPAYER DOLLARS DEFENDING THE CONSTITUTIONALITY OF REVISED BALLOT DESIGN STATUTE**

For the reasons identified above, the Court's June 3rd Letter Order, essentially, moved the proverbial goal posts as to what these Clerks are now being compelled to defend. Plaintiffs' Complaint was premised upon the unconstitutionality of the county line and ballot Siberia phenomenon, which, as the Court itself recognized, no longer exist. However, the issues that now Plaintiffs and the Court cite for continuing of this suit (the right for candidates to associate based upon logo/endorsements) were previously recognized by the Plaintiffs and Court to be acceptable. It would be inherently unfair to now saddle the Clerk Defendants with the responsibility to defend legislation that they had no role in crafting, certainly have no ability to amend/rescind and are not before the Court. *Buffin v. California*, 23 F.4th 951, 961 (9th Cir. 2022); *Miller v. Caudill*, 936

F.3d 442, 450-51 (6th Cir. 2019); *Herbst v. Ryan*, 90 F.3d 1300, 1306 (7th Cir. 1996); *Echols v. Parker*, 909 F.2d 795, 800-01 (5th Cir. 1990).

**D.    PLAINITFFS WAIVED ANY RIGHT TO NOW COMPLAIN ABOUT THE REVISED BALLOT DESIGN STATUTE AS THEY DID NOT CHALLENGE ANY BALLTO DESIGN FOR THE JUNE 10, 2025, PRIMARY**

Waiver is an "intentional relinquishment of a known right." *Nye v. Ingersoll Rand Co.*, 783 F.Supp.2d 751, 762 (D.N.J. 2011) (quoting *West Jersey Title & Guar. Co. v. Indus. Tr. Co.*, 27 N.J. 144 (1958) ). To be effective, a waiver "must be voluntary and there must be a clear showing the intent to waive the right." *Id.* (citing *West Jersey*, 141 A.2d at 786).

Here, the June 10, 2025 Primary has come and gone. At no time since the passage of the Revised Ballot Design Statute through June 10th, did these Plaintiffs, who still allege harm under same, file any application with the Court to challenge it. Clearly, Plaintiffs and their counsel were aware of the June 10, 2025 Primary. Equally obvious is that they were aware that ballot design format was created under the Revised Ballot Design Statute. In their opposition to Defendants' motion, while criticizing the Revised Ballot Design Statute, Plaintiffs did not allege that they were harmed by the Revised Ballot Design Statute, nor did they seek to amend their complaint to challenge the Revised Ballot Design Statute. Instead, Plaintiffs permitted the June 10, 2025 Primary to proceed utilizing ballots created under the Revised Ballot Design Statute. As no application was made to this Court to enforce this Court's March 29, 2024, Preliminary Injunction Order, Plaintiffs effectively conceded that the June 10, 2025 Primary ballots complied with this Court's March 29, 2024, Preliminary Injunction Order. The Court should therefore reconsider and reverse the June 3rd Letter Order on this additional basis.

**E. THE SUPREME COURT'S RECENT DECISION IN LACKEY VS. STINNIE CONCLUSIVELY BARS PLAINTIFFS FROM RECOVERING COUNSEL FEES**

By Text Order dated February 11, 2025, the Magistrate Judge ordered the parties to brief, along with any motions to dismiss, "whether Plaintiffs are entitled to an attorney fee award." By Text Order dated February 25, 2025, the Court again reaffirmed that the Union County Clerk would file a "motion[] as to liability of attorneys' fees…." (ECF 291). In its June 3rd Letter Order, the Court did an about face determining that adjudicating the attorneys' fee issue would amount to an advisory opinion, given that Plaintiffs had yet to submit a formal application for fees (June 3rd Letter Order at 5-6). While the Court's deferral of the issue rested on its conclusion that this case was not moot, as the Clerk Defendants respectfully submit they have demonstrated above, that conclusion was clearly erroneous on the both the facts and the law, and should be reconsidered and vacated. Accordingly, under the Supreme Court's decision in *Lackey v. Stinnie*, *supra*, Plaintiffs can never be "prevailing part[ies]" for purposes of recovering their fees under 42 U.S.C. § 1988(b).

The Clerk Defendants otherwise feel compelled to point out that Plaintiffs' vigorous, but ultimately unavailing, argument in the underlying briefing that the preliminary injunction entitled them to their fees despite *Lackey*'s unambiguous holding to the contrary, *see* ECF 304, reveals that this litigation is no longer about redressing any past or future constitutionally based concrete harm Plaintiffs may have suffered or might in the future suffer. Rather, this suit is now nothing more than Plaintiffs' attempt to get something they can characterize as a final judgment on the merits from which they can claim prevailing party status, regardless of whether any such final judgment redresses any real injury they have or even might suffer in the future. Or, put another way, should the Court not reconsider and vacate the June 3rd Letter Order, this case will ironically become nothing more than Plaintiffs' pursuit of counsel fees by means of obtaining an advisory opinion

over the constitutionality of yet to be identified aspects of the Revised Ballot Design Statute. For this additional reason, the Court should recognize the untenability of the June 3rd Letter Order.

## CONCLUSION

Plaintiffs' alleged constitutional injuries that are described in their Verified Complaint have now been redressed by the Revised Ballot Design Statute. Their claims are therefore moot. Neither Plaintiffs' current objections to the Revised Ballot Design Statute nor this Court's concerns as outlined in the June 3rd Letter Order have anything to do with the Clerk Defendants and would not address any real injury the Plaintiffs may have suffered or might suffer in the future. Accordingly, the Clerk Defendants respectfully submit that the Court should reconsider and vacate the June 3rd Letter Order.

Dated: June 16, 2025

Respectfully submitted,

**GENOVA BURNS LLC**
*Attorneys for Defendant*
*Joanne Rajoppi in her*
*official capacity as Clerk*
*of Union County*
By: */s/ Angelo J. Genova*
Angelo J. Genova, Esq. Daniel A.
Lebersfeld, Esq. 494 Broad Street
Newark, New Jersey 07120 Tel:
(973) 533-0777
agenova@genovaburns.com
dlebersfeld@genovaburns.com

**DECOTIIS, FITZPATRICK, COLE &
GIBLIN, LLP**
*Attorneys for Defendant John S. Hogan in his*
*official capacity as Clerk of Bergen County*
By: */s/ Jason Nunnermacker*
Paul Kaufman, Esq.
Jason S. Nunnermacker, Esq.
61 South Paramus Road, Suite 250 Paramus,
New Jersey 07652
Tel: (201) 928-1100
pkaufman@decotiislaw.com
jnunnermacker@decotiislaw.com