# BROMBERG LAW LLC

YAEL BROMBERG, ESQ., PRINCIPAL*  
T: (212) 859-5083 | F: (201) 586-0427

43 West 43rd Street, Suite 32  
New York, NY 10036-7424

P.O. Box 1131  
Glen Rock, NJ 07452-1131

# WEISSMAN & MINTZ LLC
### ATTORNEYS AT LAW

STEVEN P. WEISSMAN  
ANNMARIE PINARSKI  
WILLIAM G. SCHIMMEL  
IRA W. MINTZ  
FLAVIO L. KOMUVES  
JASON L. JONES  
JUSTIN SCHWAM  
PATRICIA A. VILLANUEVA  
DEREK J. DEMERI  

Of Counsel  
ROSEMARIE CIPPARULO  
BRETT M. PUGACH  
YAEL BROMBERG  

Counsel  
DAVID A. MINTZ*  

* ADMITTED TO PRACTICE ONLY IN NEW YORK

220 DAVIDSON AVENUE  
SUITE 410  
SOMERSET, NEW JERSEY 08873  
(732) 563-4565  
FAX (732) 560-9779  

www.weissmanmintz.com

90 BROAD STREET  
SUITE 254  
NEW YORK, NEW YORK 10004  
(212) 509-0918  

JOEL N. WEISSMAN (1957-1998)  
MARK ROSENBAUM (1955-2002)



July 7, 2025

Hon. Zahid N. Quraishi, U.S.D.J.  
United States District Court  
402 E. State Street  
Trenton, NJ 08608

    Re:    **Conforti v. Hanlon, Dkt. No. 20-cv-8267**  
           **Kim v. Hanlon, Dkt. No. 24-cv-1098**

Dear Judge Quraishi:

Plaintiffs in *Kim v. Hanlon* and *Conforti v. Hanlon*, through undersigned counsel, respectfully submit this opposition to the motions of Defendants John S. Hogan (Bergen Co.) and Joanne Rajoppi (Union Co.) for reconsideration (*Kim* ECF No. 324; *Conforti* ECF No. 256).

### STANDARD OF REVIEW

The purpose of a motion for reconsideration is strictly limited. It can *only* be used to correct manifest errors of law or fact or to present newly discovered evidence. *Solid Rock Baptist Church v. Murphy*, 555 F. Supp. 3d 53, 59 (D.N.J. 2021), *aff'd sub nom. Clark v. Governor of New Jersey*,

53 F.4th 769 (3d Cir. 2022) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (internal citation omitted)). Reconsideration is to be granted only sparingly. *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994). Such motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 515–16 (D.N.J. 1996).

Specifically, reconsideration must be necessary to correct a clear error of law or fact which in turn has caused manifest injustice; clear errors of law or fact alone, or manifest injustice alone, should not suffice for such a motion to be granted. *Max's Seafood Cafe v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).

Defendants' papers amply make clear their disagreement with the Court's June 3 letter opinion, if not with other decisions as well. However, their arguments fail to meet the high bar on motions for reconsideration that the law imposes. Their motion should therefore be denied.

## RELEVANT PROCEDURAL HISTORY AND FACTS

At this point, a recitation of the recent relevant motion practice is useful to understand what is at stake.

On June 3, 2025, the Court entered an order (*Kim* ECF No. 321) resolving various motions by the Plaintiffs and the Defendants in both *Kim* and *Conforti*: the Court denied both Defendants' summary judgment and dismissal motions, and denied Plaintiffs' summary judgment motion, while agreeing with the Plaintiffs that their claims are not moot. Both sides timely sought reconsideration of this order.

The main thrust of Defendants' argument on that motion was that when the State adopted P.L. 2025, c.32, that mooted the case because the provisions of this new law – the Revised Ballot

Design Statute ("RBDS")[1] addressed some important constitutional defects in the prior law of New Jersey about primary ballots.

Plaintiffs rebutted this position with three arguments.

First, Plaintiffs explained that whatever benefits the RBDS conferred on candidates and voters (e.g., elimination of bracketing across multiple offices), there remained features in the RBDS that remained constitutionally objectionable, not because they were "new constitutional infirmities" (*Kim*, ECF 324-1, p. 1), but rather existing infirmities as declared by this Court and by the Third Circuit on appeal. This in turn made Plaintiffs' claims in their Complaint still live and not moot. These infirmities were canvassed in *Kim* ECF No. 302, pp. 19-28 (Plaintiffs' Opposition to Defendants' Motions to Dismiss and for Summary Judgment) and summarized at p. 4 of *Kim* ECF No. 321 (Court's June 3, 2025 letter order), and describe ways in which the county clerks could continue to unfairly manipulate the ballot to favor candidates endorsed by county partisan organizations.[2] In addition, the RBDS maintained "in-office bracketing," that is, the practice of allowing candidates for the same office to not only have the same slogan, but also to be located adjacent to one another. N.J.S.A. 19:23-23.2(c)(2). Notably, in-office bracketing was challengeable as a violation of Section 3(b) of last Spring's preliminary injunction (*Kim* ECF No. 195), which directed the clerks to conduct "a separate drawing for every office and candidate, and where every candidate running for the same office has an equal chance at the first ballot position."

---

[1] This has also been referred to as the New Ballot Law or NBL in other filings. In this motion, Plaintiffs follow the acronym adopted by the Court in *Kim* ECF No. 321.

[2] *See also Kim*, ECF No. 302, pp. 12-19 (discussing ways in which county clerks can recreate the county line through ballot order and ballot placement manipulation even under the RBDS).

Hon. Zahid N. Quraishi, U.S.D.J.
July 7, 2025
Page 4

Second, Plaintiffs demonstrated that even if the Clerks had voluntarily ceased their prior unconstitutional conduct (which they hadn't) because of some implicit promise that they would faithfully follow the RBDS and the Court's injunction, that fact, standing alone, did not moot the case. Under *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167 (2000) and *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301 (3d Cir. 2020), a defendant claiming mootness on the grounds of voluntary cessation has the formidable burden of showing, under the totality of the circumstances, that it is "'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (citations omitted).[3] This argument was canvassed in *Kim* ECF No. 302, pp. 5-18. The Court took notice of the gamesmanship by the Legislature, which ignored primary ballot design issues for years if not decades, alternating with precipitous action that did not fully cure the legal defect with the primary ballot design law. *Kim* ECF No. 321 p. 5 n.3. Neither were the Clerks innocent in this matter. Most recently, as has been previously briefed to the Court, one Clerk defied the mandate of N.J.S.A. 19:23-23.2(a)(1) by allowing voters to vote for multiple candidates – a slate of candidates – by checking a single box. The Clerks' oppositional defiance is also not new. For example, they aggressively litigated this matter in the trial court, defending the rights of political parties, while at the same time portraying themselves as umpires who simply want a speedy resolution of the case, and then presenting this case to the Court of Appeals to again defend the partisans' rights after the adverse decision in this Court.

---

[3] *Friends of the Earth* was decided in 2000. Defendants devote space (*Kim* ECF No. 324-1, p. 2-3) to discussing pre-*Friends* cases suggesting that the repeal of an unconstitutional statute always moots constitutional challenges to that statute. Whether those citations are accurate or not, *Friends* replaced that principle with one stating that to prove mootness after voluntary cessation (such as a statutory repeal), it was defendants' burden to prove it was absolutely clear that the unconstitutional behavior was not likely to recur.

Third, Plaintiffs demonstrated that even if the case were moot – because the first two arguments failed – this was the kind of case that falls within the "capable of repetition while evading review" exception to mootness. As this Court described in *Conforti v. Hanlon*, 2022 WL 1744774, at *10-11 (D.N.J. May 31, 2022), both successful and unsuccessful candidates are generally presumed to be pursuing office in the future, meaning the likelihood of a claim recurring is high. A candidate's claim that is allegedly mooted because an election has passed does mean that the candidate won't be subjected to the same harms if they run again (or seek re-election). Further, with New Jersey elections occurring every year, there is no guarantee that a case could be fully litigated, appealed, and resolved within the time necessary to give candidates relief. *See generally Kim* ECF No. 317, pp. 8-11 (Supplemental Brief of Plaintiffs in Response to CCDC cross-motion).

\* \* \*

Any one of these three arguments is sufficient to reject Defendants' mootness claims. Here, all three apply. There is no clear error of law or fact, which in turn has caused manifest injustice, sufficient for Defendants' motion to be granted.

## LEGAL ARGUMENT

### A. The Court has not made any findings about the constitutionality of the RBDS and has not issued any advisory opinions on it.

Defendants complain that this Court has issued "findings" that new provisions in the RBDS are unconstitutional and that this is tantamount to an advisory opinion. *Kim,* ECF No. 324-1, pp. 1, 8. This is simply not true: in denying all summary judgment motions, the court expressed that the RBDS was an "earnest" although perhaps an incomplete response to the Court's prior orders in this case. *Kim*, ECF No. 321 p. 4. The ways in which a new statute potentially violates a *pre-*

*existing* court order is highly relevant to the mootness questions that the Defendants themselves raised, and there is no error in discussing these potentialities to determine whether the RBDS fully resolved all of Plaintiffs' complaints, or only some. Obviously, discussion of an issue is not the same as a ruling on it. The Court committed no error warranting reconsideration in highlighting, but not adjudicating, potential issues with the RBDS.

**B. The RBDS violates the Court's injunction and the Constitution.**

Not only was the Court free to discuss the *potential* ways in which the RBDS violated the Court's prior order and the Constitution, there is substantial evidence that it is doing so already.

For example, the Court's prior order requires "a separate drawing for every office and candidate, and where every candidate running for the same office has an equal chance at the first ballot position." *Kim* ECF No. 195, sec. 3(b) (emphasis added). In-office bracketing simply does not comply with that mandate. In in-office bracketing, a slate of candidates files petitions, and affirmatively requests to be "associated" with one another on the ballot. The Clerk draws for that associated slate of candidates *once*, giving *all* candidates making up that slate a ballot placement next to one another with a single draw rather than a separate draw where each candidate has an equal first-position opportunity.[4]

Similarly, at least one county clerk decided to defy that mandate of the above-cited Court Order in a different way. That section requires "a separate drawing for every office and candidate." As discussed in recent litigations in Camden County, the Camden Clerk decided to put a slate of 74 candidates together, with a single check box, such that a vote for one was a vote for all. *South*

---

[4] This further implicates associational rights, and particularly, the right to not associate, of candidates running for such offices who may not want to associate with other candidates. *See Kim*, ECF No. 302, pp. 21-23.

Hon. Zahid N. Quraishi, U.S.D.J.
July 7, 2025
Page 7

*Jersey Progressive Democrats v. Lampitt*, CAM-L-1141-25 (Law Div. 2025) ("bubble ballot case" withdrawn without prejudice with the consent of all parties, pursuant to relief granted in Collingswood, and the Clerk's claim of the alleged inability of the voting machines to implement the relief sought in Cherry Hill in time for the then-impending 2025 primary ballot printing deadlines); *Camden County Democratic Committee, Inc. v. Druckenbrod et al.,* CAM-L-2089-25 (Law Div. 2025) (order to show cause filed by CCDC currently pending, resulting from the Clerk's 2025 primary ballot design).[5] This violated both the injunction's section 3(b) requirement that there be "a separate drawing for each . . . candidate" as well as N.J.S.A. 19:23-23.2(a)(1)'s requirement that "the oval or space for the voter to mark a vote shall be to the left or to the right of the name of *each* candidate." (emphasis added).

The Legislature chose to eliminate *some* of the especially pernicious features of the former ballot design law, such as bracketing across offices, and Ballot Siberia stemming from the county line. However, just because the Legislature implemented some of the relief sought by Plaintiffs and ordered by the Court does not mean it can evade review of the other provisions. Added to this is the Clerks' choices to violate the prior order of the Court and the current RBDS as described above, i.e., in-office bracketing and related ordering concerns which experts in this litigation evidenced result in statistical anomalies. In every sense these are ongoing and justiciable matters

---

[5] Alfred Librano, *Norcross machine Democrats file suit against Cherry Hill progressives over their election loss*, MSN (June 24, 2025), https://www.msn.com/en-us/news/politics/norcross-machine-democrats-file-suit-against-cherry-hill-progressives-over-their-election-loss/ar-AA1HjBjM (last accessed July 7, 2025); David Wildstein, *Platkin files breif in support of anti-Norcross county committee candidates in Cherry Hill*, NJ Globe (July 7, 2025), https://newjerseyglobe.com/local/platkin-files-brief-in-support-of-anti-norcross-county-committee-candidates-in-cherry-hill/ (last accessed July 7, 2025).

and preclude the Court from finding this matter moot simply because an RBDS allowing partial fixes has been signed into law since this Court entered its injunction.

### C. Plaintiffs did not renounce or waive their claims against in-office bracketing

Defendants' contentions that Plaintiffs somehow renounced or waived their claims against in-office bracketing represents a serious misunderstanding or misreading of Plaintiffs' complaints in *Kim* and *Conforti*. Defendants point to language that said Plaintiffs do not contest the ability of a candidate to have a slogan, which would convey a message from or about the candidate (and his or her endorsers) to the voters. That is literally the extent of Plaintiffs' 'concession,' should it be called that. Plaintiffs did not question candidates' rights to have a slogan next to their name. In fact, Plaintiffs do not challenge multiple candidates' rights to have the *same* slogan next to their name absent other exigencies[6]. What Plaintiffs challenged, and what the Court invalidated, was the visual alignment of preferred candidates, whether across multiple offices (i.e. the former county line ballot) or the same office (as the RBDS allows despite the Court's prohibition).[7] This

---

[6] In both *Kim* and *Conforti*, Plaintiffs raised the issue of "stacking"/forced appearance of association of candidates together who do not wish to be associated with one another, including situations where candidates were featured together as if associated with one another even though voters could only, for example, vote for one, which, among other associational harms, can lead to voter confusion manifested in the form of over-votes or otherwise. *See Kim*, ECF No. 302, pp. 23-25. Here, the RBDS expressly permits the listing of more candidates using the same slogan than are available positions, thereby failing to eliminate the same and similar harms existing under the county line system. *See id.*

[7] That the remaining county clerk defendants still do not know or fail to appreciate the difference between associating with one another via a common slogan versus bestowing ballot placement and visual design advantages upon certain candidates who choose to associate is concerning in light of this Court's opinion granting a preliminary injunction and the Third Circuit published opinion affirming same. It also further bolsters Plaintiff's legitimate concerns, that the Court should not be convinced that similar harms will not recur absent a permanent injunction.

Court enjoined ballot design procedures "that do not include a separate drawing for every office and candidate, and where every candidate running for the same office has an equal chance at the first ballot position." In-office bracketing violates both of those principles: there is no separate drawing for every *office*, only every *slate*, and it deprives at least one person on that slate of an equal chance at first position.

The RBDS preserves candidates' rights to associate via a common slogan of their choice (subject to certain length and content regulations). Plaintiffs do not object to this. Plaintiffs' attack on *in-office bracketing*, a separate feature, in no way contradicts Plaintiffs' position on slogans.

**D. Defendants' complaints about the cost of defense or liability for counsel fees are not being made to the correct forum.**

The law on counsel fees in a civil rights case is clear: when a government defendant loses a constitutional case, it is obligated to pay counsel fees to the plaintiff, as the prevailing party. In its motion for reconsideration, Defendants complain that because they only enforce the unconstitutional statute but didn't write it, they should not be liable for either the costs of defense (*Kim*, ECF 324-1, p. 3) or the compensation owed to Plaintiffs' counsel.

This is nonsensical. It might be argued that *at this moment*, Plaintiffs are not yet prevailing parties for purposes of counsel fees analysis. There can be no doubt, however, that they would become prevailing parties if and when the Court enters final judgment on the merits in Plaintiffs' favor, as they requested in their summary judgment motion and in their pending motion for reconsideration. If these Defendants seek relief from their primary obligation under federal law to pay counsel fees, they have multiple opportunities to challenge this: for example, they could seek leave to bring a third party claim against the state, seek a special appropriation, or mount a

challenge before the Council on Local Mandates. What they cannot do is avoid liability to Plaintiffs. Regardless, these arguments are currently premature.

### E. Plaintiffs did not "waive any right" to contest the RBDS.

Defendants argue that simply because the RBDS passed a few months ago, and simply because a primary election cycle has run, that Plaintiffs have waived the right to contest the RBDS absent prior litigation. Defendants only offer a few lines in support of this radical notion, as will Plaintiffs. The repugnant county line law and practices were on the books for a century, worsening over time. Under Defendants' logic, no plaintiff could contest the status quo even where there are blatant and ongoing violations of constitutional law. That is clearly not the law – harms are well recognized as redressable when they are ongoing and a part of a continuous pattern. This is known as the continuing harm doctrine, which is studied by first year law students.

Plaintiffs have any variety of reasons to choose to attack the constitutionality of a law via a preliminary injunction prior to its implementation, or in the ordinary course of litigation. Indeed, five of the six candidate plaintiffs in *Conforti* brought suit *after* the 2020 primary election had occurred, and they all survived motions to dismiss without having been deemed to have somehow waived their claims. As Defendants themselves readily acknowledge, a waiver must not only be voluntary, but the intent to waive must be based on a clear showing. *See, e.g.*, *Kim*, ECF No. 324-1, p. 9 (citing *Nye v. Ingersoll Rand Co.*, 783 F. Supp. 2d 751, 762 (D.N.J. 2011)). Here, the mere act of not filing an additional lawsuit seeking preliminary injunctive relief of the RBDS, on short notice, falls well-short of the type of clear showing that is required to obtain the extraordinary relief of barring plaintiffs from bringing future claims regarding the constitutionality of a statute.

Hon. Zahid N. Quraishi, U.S.D.J.
July 7, 2025
Page 11

**F. The need for a final, permanent injunction and its interplay with counsel fees.**

To state the obvious, the issue of whether a permanent injunction is necessary in this matter is not being driven by the counsel fee issue. Yes, it will *affect* the counsel fee question, but the insinuation that counsel fees are driving this matter is erroneous and insulting.

The reason that Plaintiffs believe they need a final injunction is because of the risk of further legislative gamesmanship, as well as the risk of gamesmanship by the county clerks who continue to have responsibility for the ballot draw and overall display of the ballot. The Court has already recognized as much, noting that the Legislature ignored the matter for years after *Conforti* was filed, years after several motions to dismiss were denied in this matter, and for at least six months after the Third Circuit affirmed the injunction in *Kim*. (*Kim* ECF 321, p. 5 n.3). Then, the Legislature moved at breakneck speed, passing the RBDS, even though it did not fully address the concerns of this Court in *Kim* or other matters like the systematic defects in the Clerks' purportedly random draws (*see* Report of Dr. Josk Pasek, *Kim* ECF No. 1-2, p. 2, ¶ 68 & n.9), and even though copious public testimony was submitted as to improper ballot ordering, and none was offered to support the notion of in-office bracketing. Without a permanent injunction, there is nothing stopping the Legislature – as is customary in budget and lame-duck seasons – to roll back even the meager protections of the RBDS. Those periods of the legislative calendar have been described as outrages against public transparency and participation:

> It's a timeframe when some of the most consequential — and controversial — legislation in a session is voted on, partly because some lawmakers are on their way out and others aren't as worried about possible blowback in an upcoming election. Many bills are often rushed through in the final days, with little chance for public comment.
>
> [Johnson, *N.J. lawmakers gave themselves a raise but failed to pass big bills in lame duck session. A recap* (N.J. Advance Media Jan. 10, 2024), https://tinyurl.com/transparency-lame-duck]

Obtaining a permanent injunction is not some vanity project for Plaintiffs but rather done with the objective of achieving enduring judicial relief between the parties. A statute that can be undermined at will, whether by the Legislature, or by the Clerks responsible for implementing it, is no solution at all. This is the reason Plaintiffs have sought summary judgment granting them such a permanent injunction, which would, once and for all, prevent unconstitutional features of the county line system from resurfacing.

The granting (or refusal to grant) permanent injunctive relief is likely to be a key driver in the counsel fees question. Under *Lackey v. Stinnie*, 604 U.S. \_\_\_\_ (Feb. 25, 2025), "[a] party 'prevails' [for purposes of counsel fee analysis] when a court conclusively resolves his [sic] claim by granting enduring relief on the merits that alters the legal relationship between the parties. Critically, both the change in relationship and its permanence must result from a judicial order." Thus, it would not ordinarily be the case that something short of a final permanent injunction (or similar court-approved consent order(s), such as occurred here with respect to 17 of the 19 *Kim* defendants and 5 of the 6 *Conforti* defendants) would suffice for an award of counsel fees.[8]

---

[8] Defendants' statement in *Kim* ECF No. 324-1, p. 4, that "*Lackey* . . . forbids litigants from litigating moot civil rights claims in the hopes of achieving prevailing party status" rings hollow. Nothing like that is found in the case. What the court *did* say was basically the opposite. The Court was responding to the dissent's concern that "government defendants who have lost at the preliminary injunction stage [may] strategically moot litigation rather than risk a fee award." 604 U.S. at \_\_\_\_. Implicit in this statement is that Plaintiffs are not forbidden at all from continuing to litigate when the government does not "strategically moot litigation." Moreover, the *Stinnie* Court also cited the *Friends of the Earth* line of cases favorably for the proposition that mootness requires a court determination that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." 604 U.S. at \_\_\_ (citation omitted). As noted above, that is exactly the case here.

Hon. Zahid N. Quraishi, U.S.D.J.
July 7, 2025
Page 13

Whether or not Plaintiffs have yet achieved a permanent injunction does not answer the question of whether they will in the future. In every respect, the question of counsel fees remains live and Plaintiff's attempt to foreclose that opportunity at this stage is premature pending resolution of the merits. Plaintiffs' intention is to present a fee petition after the Court grants final judgment in their favor.

## CONCLUSION

For the foregoing reasons, the *Defendants'* motion for reconsideration should be denied.

Respectfully submitted,

| WEISSMAN & MINTZ | BROMBERG LAW LLC |
|---|---|
| Attorneys for Plaintiffs | Attorneys for Plaintiffs |
| By:   /s/ Flavio L. Komuves | /s/ Yael Bromberg |
| /s/ Brett M. Pugach | |

Dated: July 7, 2025