**BROMBERG LAW LLC**

YAEL BROMBERG, ESQ., PRINCIPAL*
T: (212) 859-5083 | F: (201) 586-0427

43 West 43rd Street, Suite 32
New York, NY 10036-7424

P.O. Box 1131
Glen Rock, NJ 07452-1131

**WEISSMAN & MINTZ LLC**
ATTORNEYS AT LAW

STEVEN P. WEISSMAN
WILLIAM G. SCHIMMEL
IRA W. MINTZ
FLAVIO L. KOMUVES
JASON L. JONES
JUSTIN SCHWAM
PATRICIA A. VILLANUEVA
DEREK J. DEMERI

Senior Counsel
KEVIN P. MCGOVERN

Of Counsel
ROSEMARIE CIPPARULO
BRETT M. PUGACH
YAEL BROMBERG

220 DAVIDSON AVENUE
SUITE 410
SOMERSET, NEW JERSEY 08873
(732) 563-4565
FAX (732) 560-9779
www.weissmanmintz.com

90 BROAD STREET
SUITE 254
NEW YORK, NEW YORK 10004
(212) 509-0918

Counsel
DAVID A. MINTZ*

* ADMITTED TO PRACTICE ONLY IN NEW YORK

JOEL N. WEISSMAN (1957-1998)
MARK ROSENBAUM (1955-2002)



July 14, 2025

**Via ECF**
Hon. Zahid N. Quraishi
United States District Judge
Clarkson S. Fisher Federal Building &
United States Courthouse
402 East State Street
Trenton, NJ 08608

Re:   *Conforti v. Hanlon*, Civil Action No. 3:20-cv-08267-ZNQ-TJB
      *Kim v. Hanlon*, Civil Action No. 3:24-cv-01098-ZNQ-TJB

Dear Judge Quraishi:

The County Clerk Defendants' main point in opposition to Plaintiffs' motions for reconsideration is to reiterate its contention that they believe the case to be moot. This is the same argument they asserted in numerous rounds of briefing, including but not limited to their summary judgment motions, their motions to dismiss, and their own motions for reconsideration. They rely on the same exact cases[1] and make the same exact arguments previously asserted, and rejected by this Court. Plaintiffs will not repeat here all of their arguments, yet again, in response to such assertions, as they have already done so in other rounds of briefing and in opposition to the County Clerk Defendants' motion for reconsideration, and because this Court adequately

---

[1] As set forth in Plaintiffs' Brief in Opposition to the County Clerk Defendants' Motion for Reconsideration, the Defendants' *ad nauseum* reliance on the same three cases is peculiar, in light of the fact that all three pre-date the seminal *Friends of the Earth* case about the burdens Defendants face in proving mootness on the grounds of voluntary compliance, let alone *Hartnett*.

addressed and analyzed the relevant arguments and considerations in reaching its well-reasoned conclusion that the case is not moot.

Instead, this brief focuses on the precise questions raised in Plaintiffs' motions for reconsideration related to whether summary judgment in Plaintiffs' favor is warranted in light of this Court's correct holding that Plaintiffs' claims were not moot. As set forth in Plaintiffs' initial brief in support of reconsideration, the Court's June 3, 2025 Letter Order (*Kim*, ECF 321, *Conforti*, ECF 253) denying summary judgment to Plaintiffs did not explain the basis for denial. For the reasons set forth below, and in Plaintiffs' prior briefs, including the original motions in support of summary judgment (*Kim*, ECF 298; *Conforti*, ECF 324), Plaintiffs respectfully submit that summary judgment in their favor is appropriate under the circumstances of this case, warranting reconsideration.

1. **The Court correctly found that the underlying claims and issues are not moot.**

This Court correctly found that the RBDS "does not address all of the issues raised by Plaintiffs," and "continues to vest the county clerks with discretion to organize the ballot in a way that favors certain candidates." (*Kim*, ECF 321, p. 4.) In addition to continued clerk discretion, within certain limits, on ballot design and ballot order, the Court aptly recognized that the RBDS continues to allow for in-office bracketing, along with letter/number combinations, "which could result in associational and other First Amendment harms to unfavored candidates." (*Id.*) Thus, the Court found that Plaintiffs' claims were not moot despite the new legislation, as "the amendments likely do not remove the unconstitutional practices alleged." (*Id.*) Separately, the Court was deservedly skeptical of the Legislature's timing and actions, which "demonstrated a reluctance to act to change past ballot practices followed by a willingness to act to protect those same practices," which "suggests to the Court that further Legislative action can reasonably be expected." (*Id.* at 5 n.3.) At the end of the day, since the Court could not be reasonably assured that similar harms to Plaintiff would not continue to occur, the Court was well-reasoned under *Friends of the Earth* and *Hartnett* in rejecting the County Clerk Defendants' mootness argument, and in denying their dispositive motions.

Ballot manipulation is likely to continue notwithstanding the RBDS, as evident by the continuation of in-office bracketing, discretion by the county clerks in their continued roles in drawing for ballot order which sometimes evades statistical probability and evidences bias, as submitted by the unrebutted expert reports in this matter, and in the continued role of the clerks in overall ballot design. A "defendant arguing mootness must show that there is no reasonable likelihood that a declaratory judgment would affect the parties' future conduct." *Hartnett v. Pa.*

*State Educ. Ass'n*, 963 F.3d 301, 306-07 (3d Cir. 2020). The burden is on the Defendants, and they have failed to satisfy it.[2]

While a final judgment is often critical to obtaining fees under the Federal Civil Rights Act, and while Plaintiffs maintain that the County Clerk Defendants should not be permitted to escape liability for fees consistent with the purposes of that Act, it is important to emphasize that a final judgment on the existing claims itself is of the utmost importance for completely separate reasons – the most important of which is to prevent these types of harms from resurfacing and recurring in the future.

After a century of ballot manipulation and differing and changing practices and interpretation of law that vary among the various counties, it is time to have finality as to the constitutionality of fundamental features of ballot design to avoid further gamesmanship, be it by the clerks or by the Legislature. (*Kim*, ECF 321, p. 5 n. 3.) Such relief is separate and apart from a challenge – whether in this case or in another – to the constitutionality of the RBDS. Nonetheless, the present parties and the public interest require review of, and finality with respect to, the existing claims, which this Court has already found are not moot.

2. **The Court should reconsider and grant the Plaintiffs' motions for summary judgment.**

Once the mootness argument was rejected, and Plaintiffs' claims were permitted to move forward, the Court should have taken the next step to grant summary judgment to Plaintiffs, since Plaintiffs are entitled to relief on their existing claims (separate and apart from any potential to amend the complaint, for which the Court granted leave). Surviving a mootness attack necessarily means that a plaintiff is *not* precluded from obtaining final relief on those claims. Thus, the Court can review the record before it for summary judgment on those claims.

---

[2] As a last ditch effort, the Defendants continue to argue that the Plaintiffs cannot assert claims in connection with the RBDS because they lack standing to do so. The assertion is problematic for several non-exhaustive reasons, including that the matter is capable of repetition yet evading review, and that it ignores the participation of New Jersey Working Families in this matter, which consists of members across the state, and which endorses representatives. It also ignores, for example, that Plaintiff Carolyn Rush ran again, this time for NJ Assembly in June 2025, and won, despite that she was effectively stacked with multiple candidates due to a common slogan/endorsement, such that more candidates appeared on the ballot with the same slogan than existed open positions for such office. Arguments attacking standing such as these last ditch lobbies by the Defendants have already been tried and briefed in the seven motions to dismiss filed in *Conforti*, which the Court properly denied.

As set forth at length in Plaintiffs' briefs in support of summary judgment, there was ample evidence before the Court from the preliminary injunction stage, including, *inter alia*, various unrebutted expert reports, which supports Plaintiffs' claims. This evidence not only led to this Court's issuance of a preliminary injunction, but was also upheld by the Third Circuit Court of Appeals in a unanimous, published opinion.

Despite the passage of over five years since *Conforti* was filed, and over a year since the preliminary injunction was issued in *Kim*, the County Clerk Defendants *offer no evidence to rebut Plaintiff's evidence and expert reports. And importantly, nor do they plan to.* Indeed, the County Clerk Defendants previously asserted and continue to maintain that they are not defending the constitutionality of the bracketing and ballot placement system. In their briefs in opposition to Plaintiffs' motion for summary judgment, the Defendants asserted that summary judgment should not be issued because, another party then in the action, the Camden County Democrat Committee ("CCDC"), might hypothetically try to further develop the record or attack and contest Plaintiffs' case. Subsequently, upon application by Plaintiffs, this Court dismissed CCDC based on lack of standing. Thus, CCDC is no longer a party in this case.

While the remaining Defendants will no longer defend the constitutionality of ballot design, their counsel assert hypothetical, purely speculative arguments as to the evidentiary proofs and related conclusions of constitutional law, which they admit their clients are not even in a position to assert. In this regard, the County Clerk Defendants state the following in opposition to the Plaintiffs' request for reconsideration:

> While (by Plaintiffs' design) *there may not be a defendant left in these proceedings to affirmatively challenge whatever conclusions Plaintiffs' experts might reach* in that regard, *those experts should still be required to address* and consider real world data that might impact their prior conclusions, especially if Plaintiffs seek final judgment on the merits.
>
> (*Kim*, ECF No. 328, p. 7 (emphases added).)

Clearly, the County Clerk Defendants are grasping at straws. They won't defend the case, they have not sought discovery, they won't themselves attack or put in an expert report to attack Plaintiffs' experts. And they even admit there is no one left in the case to do this. Under these unique circumstances, there is no reason to wait for further factual development which is not coming; the existing record, which all points in favor of Plaintiffs, is ripe and sufficient for summary judgment.

Where, as here, "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and the Court must grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The County Clerk Defendants want to have their cake and eat it too. They do not want to defend the constitutionality because in their minds it bolsters their argument against an inevitable fee petition, but nevertheless they remain obstinate in objecting to a final judgment by claiming that further proofs should be offered. They point to purely speculative arguments that could be used to undermine Plaintiffs' experts, but refuse to bring in an expert of their own, have not independently pursued discovery or depositions of Plaintiffs' experts, and will not formally make such arguments themselves. They repeatedly seek to hide behind other private parties to make assertions they won't make themselves, hide behind the Legislature, blame the Attorney General, and still want this Court to deny summary judgment to Plaintiffs even as they admit that no party remains to make such assertions. The Bergen County Clerk even argues that it has never defended the constitutionality of the matter (*Conforti*, ECF 260 at 7, "the Clerk never defended the constitutionality of the original legislation"), although it has been defending the litigations, at least until the preliminary injunction was issued. Regardless, even if this was true, it only further supports the issuance of summary judgment. By comparison, 90% of the county clerks involved in these matters have entered court-approved consent decrees. The Defendants admit they have nothing left to offer, but beg the Court not to issue a judgment. They doth protest too much.

In sum, the County Clerk Defendants have no case, and do not plan on putting on a case. Thus, final judgment in Plaintiffs' favor under these circumstances is appropriate.

Based on the foregoing, Plaintiffs respectfully submit that the appropriate course of action is to grant Plaintiffs' application for reconsideration, and to issue summary judgment in their favor pursuant to the clear mandate of Fed. R. Civ. P. 56(a): "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Respectfully submitted,

| WEISSMAN & MINTZ LLC | BROMBERG LAW LLC |
|---|---|
| */s/ Brett M. Pugach* | */s/ Yael Bromberg* |
| Brett M. Pugach | Yael Bromberg |

*/s/ Flavio L. Komuves*
Flavio L. Komuves

cc: All Counsel (via ECF)