UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al.<br><br>            Plaintiffs,<br>    vs.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et. al.,<br><br>            Defendants.<br><br>        - and -<br><br>DALE A. CROSS, in his official capacity as Salem County Clerk, et al.,<br><br>            as Interested Parties. | Civil Action No.: 3:24-cv-1098 (ZNQ)(TJB) |

**BRIEF OF DEFENDANT JOANNE RAJOPPI
IN OPPOSITION TO PLAINTIFFS' SUBMISSION IN RESPONSE
TO ORDERS TO SHOW CAUSE**

**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07120
Tel: (973) 533-0777
*Attorneys for Defendant Joanne Rajoppi*

<u>Of counsel and on the brief:</u>
Angelo J. Genova, Esq.
Daniel A. Lebersfeld, Esq.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ...............................................................................................................2

    THE PLAINTIFFS' SUBMISSION CONFIRMS THAT THEY LACK STANDING ...................................................................................................2

        I. Only Senator Kim's alleged injuries are relevant to the standing analysis with respect to the claims asserted against the Union Clerk because he is the only plaintiff who might plausibly appear on a ballot in Union County    4

        II. None of the alleged flaws in the Revised Ballot Design Statue will cause Senator Kim an injury in fact sufficient to give him standing to continue his suit against the Union Clerk.    5

        III. The result sought by Senator Kim requires an impermissible advisory opinion on a future challenge to a different statute than the one he has challenged here.    11

CONCLUSION ...........................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Constitution Party of Pa. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) ...................................................................................3

*GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*,
  888 F.3d 29 (3d Cir. 2018) .....................................................................................4

*Hartnett v. Pennsylvania State Educ. Assoc.*,
  963 F.3d 301 (3d Cir. 2020) ...........................................................................10, 11

*Herb v. Pitcairn*,
  324 U.S. 117 (1945) .........................................................................................10, 12

*Lewis v. Continental Bank Corp.*,
  494 U.S. 472 (1990) ................................................................................................3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................3

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ..................................................................................................9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................................................6

**Statutes**

N.J.S.A. 19:23-23.2(c)(2) ..........................................................................................7

## **PRELIMINARY STATEMENT**

Defendant Joanne Rajoppi in her official capacity as Clerk of Union County ("Defendant" or the "Union Clerk") respectfully submits this brief in opposition to the submission of Plaintiffs Senator Andy Kim, Carolyn Rush and Sarah Schoengood (collectively, "Plaintiffs") in response to the Court's August 19, 2025 Text Order that Plaintiffs "show cause in writing why this matter should not be dismissed for lack of standing given that they have not alleged an intention to seek office by election in the future." (Dkt. 336).

While Senator Kim, the only plaintiff in this action who has or will appear on a ballot in Union County, has stated that he intends to seek reelection five years hence in 2030, he cannot articulate what injury he might even theoretically suffer at the hands of the Union Clerk sufficient to give rise to Article III standing. *First*, Senator Kim does not dispute that the so-called "county line," which he alleged forced him to associate with other candidates he otherwise would not, was replaced by an office block design pursuant to the Revised Ballot Design Statute. Instead, and as an obvious ploy to avoid recent binding Supreme Court precedent that holds that the preliminary injunction he obtained does not render him a prevailing party for purposes of awarding his attorneys their fees, Senator Kim points to perceived flaws in the Revised Ballot Design Statute and claims contradictorily that, on the one hand, he fears that the New Jersey Legislature and a future Governor will connive to reinstitute the "county line," and that, on the other, the Union Clerk will

ignore the Legislature's current command that all primary ballots employ an office block design. Even if the "flaws" Senator Kim articulates implicated constitutional concerns, which they do not, and even if his fears were plausible, which they assuredly are not, the inescapable fact remains that Senator Kim no longer faces the plausible prospect of an injury in fact that could be redressed by a legitimate order of this Court. Accordingly, it is absolutely clear that Senator Kim and his co-plaintiffs lack Article III standing to continue their lawsuit against the Union Clerk.

*Second*, the statute that Senator Kim alleged caused him injury in the first instance has been repealed. While he certainly has the legal right to challenge any statute in a new matter by setting forth the facts as to the injury caused by a different statute, alleging a perceived and purely hypothetical injury caused by a different statute does not provide any support to address why he or any of his co-plaintiffs have standing in ***this*** matter against ***this*** Defendant, the Union Clerk.

## ARGUMENT

### THE PLAINTIFFS' SUBMISSION CONFIRMS THAT THEY LACK STANDING

The Supreme Court has held that in order to establish "the irreducible constitutional minimum of standing," the plaintiff bears the burden of proof as to three elements:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct

2

> complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). Because standing goes to the Court's subject matter jurisdiction, the plaintiff has the burden at all stages of litigation to demonstrate that he has suffered an injury in fact that can be redressed by an appropriate court order, *i.e.* that events following the filing of the suit have not rendered the plaintiff's claims moot. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (the "case-or-controversy requirements subsists through all stages of federal juridical proceedings, trial and appellate. To sustain our jurisdiction … it is not enough that a dispute was very much alive when suit was filed…."). A court's subject matter jurisdiction, and hence the plaintiff's standing (or lack thereof) is subject to a "factual attack," which is "an argument that there is no subject matter jurisdiction because the facts of the case … do not support the asserted jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). To resolve a factual challenge, the "court may look beyond the pleadings to ascertain certain facts." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018).

I. **Only Senator Kim's alleged injuries are relevant to the standing analysis with respect to the claims asserted against the Union Clerk because he is the only plaintiff who might plausibly appear on a ballot in Union County.**

While several plaintiffs in the *Kim* and *Conforti* actions submitted declarations expressing their intention to run for office in the future and the supposed harm the Revised Ballot Design Statute will impose on them in connection therewith, only Senator Kim's alleged injuries (or lack thereof) are relevant for purposes of determining whether the Union Clerk is still a proper defendant to these proceedings.[1] This is so because Senator Kim is the only plaintiff to the *Kim* Action – the only action to which the Union Clerk is a party – that has expressed a credible intention to appear on a ballot in Union County, as he is the only plaintiff that currently holds a state-wide elective office. (Kim Dec. (Dkt. 341-1 at pp. 1-5) ¶ 1). By contrast, Carolyn Rush has stated she might seek re-election for her assembly

---

[1] Specifically, in addition to Senator Kim, Plaintiffs have submitted declarations from: (i) Arati Kreibich, a plaintiff in the *Conforti* Action, who claims to intend to seek elective offices in Bergen County (Kreibich Dec. (Dkt. 341-1 at pp. 6-11) ¶¶ 1-6), (ii) Mico Lucide, a plaintiff in the *Conforti* Action who intends to seek reelection to the Atlantic County Democratic Committee representing Hamilton Township (Lucide Dec. (Dkt. 341-1 at pp. 12-17) ¶ 1) (iii) Joseph Marchica, a plaintiff in the *Conforti* Action who intends to seek reelection to the Mercer County Democratic Committee representing Hamilton Township (Marchica Dec. (Dkt. 341-1 at pp. 18-23) ¶¶ 1-7), (iv) Kevin McMillan, a plaintiff in the *Conforti* Action who intends to seek reelection to the Neptune Township Committee and the Democratic County Committee representing Neptune Township (McMillan Dec. (Dkt 341-1 at pp. 24-29) ¶¶ 1-2), (v) Antoinette Miles, the Executive Director the New Jersey Working Families Alliance ("NJWFA") which is a plaintiff in the *Conforti* Action (Miles Dec. (Dkt 341-1 at pp. 30-55) at ¶¶ 1-2), (vi) Carolyn Rush, a plaintiff in the *Kim* Action who claims she might run for one a General Assembly seat from Legislative District 1, which covers Cape May and Atlantic counties (Rush Dec. (Dkt. 341-1 at pp. 56-61) at ¶ 2), and (vii) Zina Spezakis, who intends to seek reelection to offices in Bergen County (Dkt. 341-1 at pp. 62-80) ¶¶ 1-11).

seat in Legislative District 1, which only covers Cape May County and parts of Atlantic County. (Rush Dec. ¶ 2). Sarah Schoengood, the other plaintiff to the *Kim* Action, has not submitted a declaration stating her intention to seek office in the future, but even if she did, she has only previously sought the Democratic Party nomination for the Third Congressional District, which covers areas of Monmouth, Mercer and Burlington counties. (*See Kim* Complaint (Dkt 1) ¶¶ 28-29). Accordingly, any order the Court might direct to the Union Clerk could only theoretically redress Senator Kim's alleged injuries, each of which are addressed below.[2]

**II.     None of the alleged flaws in the Revised Ballot Design Statue will cause Senator Kim an injury in fact sufficient to give him standing to continue his suit against the Union Clerk.**

    1.   <u>The Union Clerk's supposed "discretion"</u>

Senator Kim purportedly fears that the Revised Ballot Design Statute "fails to cabin the county clerks' extensive discretion over ballot design." (Kim Dec. ¶ 6). Not only does Senator Kim (or, for that matter, any of the other declarants) fail to describe what "discretion" the new statutory scheme provides the Union Clerk in designing primary election ballots, he likewise fails to explain how any such "discretion" will harm him in his expected reelection campaign in 2030. Indeed,

---

[2] Plaintiffs assert that the NJWFA's claims have a "nexus" to Union County because, in the past, it has endorsed Democratic Party primary candidates in Union County. (Pls Brief (Dkt. 341) at p. 10). Because the NJWFA is not a plaintiff in the *Kim* Action, the only action to which the Union Clerk is a party, the supposed "nexus" it has to Union County is irrelevant to the claims asserted against the Union Clerk.

5

even the Court has expressed doubt as to its prior ruling that the Revised Ballot Design Statue *might* impart some type of discretion to the county clerks that could result in an injury of constitutional significance, recognizing that its original conclusion that "'the Revised Ballot Design Statute continues to vest the county clerks with discretion to organize the ballot in a way that favors certain candidates'" was at least debatable. (*See* Dkt. 335 at 3 n.2). Senator Kim's continued inability to describe how the Union Clerk's alleged "discretion" harms him, much less what that discretion entails, is fatal to his claim of Article III standing as he sets forth no facts even suggesting that he has suffered a harm that is "particularized," which means a harm that affects him "in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation omitted).

2. "In-office bracketing"

Senator Kim attacks what he characterizes as the "detrimental practice of in-office bracketing," which he describes as the Revised Ballot Design Statute's permitting "candidates running for an office with two or more persons to be elected [to] choose to file a joint petition, be drawn for ballot position as a single unit, and be listed adjacent to one another on the ballot." (Kim Dec. ¶ 7). The statutory source of what Senator Kim refers to as "in-office bracketing" is *N.J.S.A.* 19:23-23.2(c)(2), which instructs county clerks to "allow candidates for the same office with multiple open seats to associate in the same office block, using a common slogan or endorsement, next to or below the associated candidate names…." Thus, both

6

Senator Kim and the statute's plain language refer to county and municipal elections where there are multiple open seats in the same election (*e.g.*, two council seats in the Borough form of government) and which are, going forward, displayed within the same "office block." This practice, even if somehow constitutionally infirm, cannot possibly cause an injury in fact (or even an injury in theory) to Senator Kim because the Senate seat for which he intends to seek reelection in 2030 is assuredly not an "office with multiple open seats" that multiple candidates could seek to associate with another. Indeed, Senator Kim later admits that "I am pursuing a vote-for-one office in my 2030 re-election campaign." (Kim Dec. ¶ 8). Accordingly, "in-office bracketing" does not present an injury in fact to Senator Kim that could be redressed by an appropriate order of this Court in this action.

3. <u>Supposedly "faulty ballot draw procedures"</u>

Attempting to find something wrong with the Revised Ballot Design Statute that might impact him, even in the abstract, Senator Kim claims that the statute does not "modernize the ballot draw rules in New Jersey" because it "leav[es] in place a system where county clerks use their hands to grab at 'cards' or capsules' containing a candidate or candidates' names." (Kim Dec. ¶ 9). Absent from Senator's Kim's Complaint, however, is any reference to those "ballot draw rules," much less any assertion that he seeks an order from the Court that would alter the ability of county clerks to "use their hands to grab at 'cards' or 'capsules.'" And, of course, Dr. Pasek's report had nothing to do with the Revised Ballot Design Statute's

7

methodology for determining candidate positioning within a single office block (*i.e.*, random draw). Rather, the portion of Dr. Pasek's report to which Senator Kim cites addresses supposed flaws in the selection of the so-called "pivot point" in the now non-existent bracketing system. (*See* Dkt. 1-1 at pp. 21-24).

In sum, the "ballot draw rules" of the Revised Ballot Design Statute have nothing to do with Senator Kim's allegations, and, in any event, do not threaten him with an injury-in-fact for which he purports to seek redress. Accordingly, his generalized complaints about those "ballot draw rules" are not properly the subject of a lawsuit that should ultimately be financed by the taxpayers of Union County.

    4. <u>Alleged fear that the Union Clerk will disobey the Revised Ballot Design Statute</u>

Contradicting his claim that the Revised Ballot Design Statute confers the Union Clerk with "discretion" to design primary ballots in an unconstitutional fashion, Senator Kim asserts that his fear that the Union Clerk might disobey the legislative mandate requires the continuation of his lawsuit over the now-defunct "county line." (Kim Dec. ¶ 8). The only evidence Senator Kim cites to support this theory of standing are supposed acts of the Camden County Clerk with whom he and the other *Kim* plaintiffs entered into a settlement. (*Id.*) The fact that neither Senator Kim nor any of his other co-plaintiffs sued the Camden County Clerk for violating their settlement agreement or the Revised Ballot Design Statute for supposedly "design[ing] ballots with a single oval to support *en bloc* an entire slate of

8

candidates" (*id.*) reveals those fears to be an invention of their attorneys in the hopes of being awarded their fees.

But even if Senator Kim's fear of the Union Clerk's disobedience with State law had some basis in reality, which it assuredly does not, it is not for a Federal court to order compliance with a State statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). Rather, the obvious mechanism to seek such compliance is a lawsuit in State court, where a State judge can order a State or local official to comply with a statute passed by the State legislature. Of course, given that neither Senator Kim nor any of the other parties his lawyers represent have brought any such suits, makes clear that such fears are an entirely improper basis upon which to allow Senator Kim's suit against the Union Clerk to continue.

5. <u>Risk of repeal of the Revised Ballot Design Statute</u>

Senator Kim claims his fear that the New Jersey Legislature and future Governor might conspire to repeal the Revised Ballot Design Statue requires, so far as the Union Clerk can tell, the Court to order those two governmental branches not to reinstitute the repealed "county line" in future Democratic Party primary

9

elections. (*See* Kim Dec. ¶¶ 10-12). The flaws in Senator Kim's novel theory of standing are obvious. For starters, because ***every*** piece of legislation is subject to amendment or repeal by the Legislature, Senator Kim's theory, if accepted, would open up the federal courts to litigation over laws that do not exist, which would turn the Constitution's longstanding prohibition on advisory opinions from Article III courts on its head. *Herb v. Pitcairn*, 324 U.S. 117, 126 (1945) ("We are not permitted to render an advisory opinion, and if the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion.").

The New Jersey's Legislature's supposed "gamesmanship," (Kim Dec. ¶ 11) whether real or imagined, does not alter the outcome, for reasons the Third Circuit articulated in *Hartnett v. Pennsylvania State Educ. Assoc.*, 963 F.3d 301 (3d Cir. 2020). There, the court agreed that a Supreme Court ruling that involuntary deductions from public employee paychecks to fund union political activities was unconstitutional rendered moot a challenge to a functionally equivalent Pennsylvania statute. The court rejected the plaintiffs' argument that the union's cessation of involuntary deductions was a case of a voluntary and unilateral cessation of illegal activity to which it might return at a later date. *Id.* at 306. As the court explained, the inquiry focuses on why the defendant ceased the challenged activity, contrasting a change of behavior "in the face of a court order," of which courts should be skeptical, with compliance with "a new statute or a ruling in a completely

10

different case," which makes the "argument for mootness much stronger." *Id.* 306-07. Nowhere in *Hartnett* or any other caselaw of which the Union Clerk is aware or which Senator Kim cites is it even suggested that courts can take into account future legislative action when determining standing much less how courts could conceivably conduct that inquiry.

### III. The result sought by Senator Kim requires an impermissible advisory opinion on a future challenge to a different statute than the one he has challenged here.

Senator Kim offers only suppositions to support the hypothetical impact the application of a different statute at some distant point in the future and how that could possibly injure him. To indulge Senator Kim's challenge would require this Court to adjudicate the constitutionality of a statute which is not the subject of Senator Kim's pleading and would be based on Senator Kim's assertions and assumptions as to what *might* happen in 2030. This would require the Court to go well beyond the prohibition against issuing advisory opinions. *See Herb v. Pitcairn*, *supra*, 324 U.S. at 126.

### CONCLUSION

Senator Kim's lawsuit is based on the premise that the "county line" unconstitutionally forced him and his co-plaintiffs to associate with other political candidates they otherwise would not in order not to impact their electoral prospects. Now that the Legislature replaced the "county line" with an office block format, Plaintiffs do not face the possibility of an injury to their associational rights for the

11

offices they intend to run for in the future. The lack of any such injury still holds even with the Revised Ballot Design Statue's allowance for "in-office bracketing," since Senator Kim does not claim he has an intention to run for a multi-seat election in the future, and none of his co-plaintiffs otherwise have any intention to appear on a Union County ballot. Accordingly, all claims against the Union Clerk must be dismissed for lack of subject matter jurisdiction.

Dated: October 17, 2025

                    **GENOVA BURNS LLC**
                    *Attorneys for Defendant Joanne Rajoppi*

                    By: */s/ Angelo J. Genova*
                    Angelo J. Genova, Esq.
                    Daniel A. Lebersfeld, Esq.
                    494 Broad Street
                    Newark, New Jersey 07120
                    Tel: (973) 533-0777
                    agenova@genovaburns.com
                    dlebersfeld@genovaburns.com