UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al.,<br>Plaintiffs,<br><br>v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br>Defendants. | Case No.: 3:24-cv-1098-ZNQ-TJB<br><br>CIVIL ACTION |
| CHRISTINE CONFORTI, et al.,<br>Plaintiffs,<br><br>v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br>Defendants. | Case No.: 3:20-cv-08267-ZNQ-TJB<br><br>CIVIL ACTION |

**PLAINTIFFS' REPLY BRIEF IN FURTHER RESPONSE TO ORDERS TO SHOW CAUSE**

BROMBERG LAW, LLC
43 West 43rd Street, Suite 32
New York, NY 10036-7424
212-859-5083
ybromberg@bromberglawllc.com
Attorneys for Plaintiffs

WEISSMAN & MINTZ LLC
220 Davidson Avenue, Suite 410
Somerset, NJ 08873
732.563.4565
bpugach@weissmanmintz.com
Attorneys for Plaintiffs

Of Counsel and On the Brief:
Brett M. Pugach (032572011)
Yael Bromberg, Esq. (036412011)
Flavio L. Komuves, Esq. (018891997)

# Table of Contents


Table of Authorities ........................................................................................ ii

Introduction ........................................................................................ 1

Argument

I. Defendants' Mootness Arguments Should Again be Rejected .................... 1

II. *Conforti* Plaintiffs Kreibich, Spezakis, and NJWF have Standing ............. 4

III. Senator Kim has Standing ........................................................ 7

Conclusion ........................................................................................ 7

# Table of Authorities

## CASES

*Arlington Heights v. Metropolitan Housing Dev. Corp.*
429 U.S. 252 (1977)....................3

*Friends of the Earth v. Laidlaw*,
528 U.S. 167 (2000)....................2

*Hartnett v. Pa. State Educ. Ass'n*,
963 F.3d 301 (3d Cir. 2020) ....................2, 7

*Herb v. Pitcairn*,
342 U.S. 117 (1945)....................3

*Kim v. Hanlon*,
99 F.4th 140 (3d Cir. 2024) ....................5, 6

*Pennhurst State Sch. v. Halderman*,
465 U.S. 89 (1984)....................3

## STATUTES

*N.J.S.A.* 19:23-18 ....................4, 6

*N.J.S.A.* 19:23-23.2 ....................5, 6

*N.J.S.A.* 19:23-24 ....................6

## INTRODUCTION

This Court entered Text Orders on August 19, 2025 directing the Plaintiffs to show cause "why the matter should not be dismissed for lack of *standing* given that *they* have not alleged an intention to seek office by election in the future." (emphasis added). Put another way, "*Do you intend to run for office again?"* Plaintiffs scrupulously complied with this order, showing by declarations that five of the *Conforti* plaintiffs and two of the *Kim* plaintiffs intend to seek office again, and that the organizational plaintiff NJWFA will continue endorsing candidates, including its own members. The declarations included candidates running in both Bergen and Union Counties, and candidates running for 'vote-for-one' as well as 'vote-for-many' offices. Each is different; each remains harmed by the ballot design laws and practices in a different way.

Defendants' response is a rewriting of the order to show cause, arguing that some of the candidates that the Court ordered Plaintiffs to report on are now not relevant to the case. In a similar vein, Defendants advance arguments better characterized as mootness rather than the standing question the Court ordered.

## LEGAL ARGUMENT

### I. Defendants' Mootness Arguments Should Again be Rejected.

Even if entertained, Defendants' mootness arguments fail for the same reasons Plaintiffs asserted in prior briefings (hereby incorporated), and for the

reasons this Court already decided. Plaintiffs briefly highlight the following.

Defendants bear the "formidable burden of showing that it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur." *Friends of the Earth v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 190 (2000) (internal citations omitted); *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301 (3d Cir. 2020). It is under that backdrop that all arguments must be considered.

This Court already found that despite passage of legislation eliminating some features of the county line system, the NBL retains Clerks' discretion to design a ballot to favor certain candidates, *Conforti* ECF 253 at 4, which this Court has recognized "leaves a very real likelihood of future harm to Plaintiffs," *id.* at 5. The Court appropriately recognized that the NBL "does not moot the *Kim* and *Conforti* Plaintiffs' claims because the amendments likely do not remove the unconstitutional practices alleged." *Id.* Those harmful practices to unfavored candidates include: in-office bracketing and a letter and number system impacted by candidate endorsements and slogans. *Id.* And while Clerk discretion is not absolute, it is the very generalized discretion in overall ballot design that led to the abuses under the old county line system.[1] The Court's skepticism that Defendants

[1] Plaintiffs provided examples of clerks using overall ballot design discretion to manipulate candidate placement even within an office block design following the 2024 injunction. *Conforti* ECF 239 at 11-19. And contrary to the Bergen Clerk's assertions, Plaintiffs provided evidence, including an audio recording which is emblematic of the Bergen Clerk's extreme evasiveness and hostility toward

could meet their "formidable" burden of demonstrating that it is "absolutely clear" that harm will not recur is further supported by the fact that the county clerks still continue to conduct ballot draws by hand, and by the Court's acknowledgement that the specific timing and manner through which the NBL was passed led to the conclusion that "further Legislative action can reasonably be expected." *See Conforti* ECF 253 at 5 n.3.[2]

Additionally, Plaintiffs in *Kim* and *Conforti* were subjected to stacking of candidates where more candidates than the number of seats available for any office were listed in the same column and/or with the same slogan. While this practice

---

unfavored candidates or even basic inquiry of ballot design. *Conforti* ECF 239-3, ¶¶2-4 (link to audio recording); ECF 239 at 18 n.8.

[2] This would not open courts to an influx of litigation just because any piece of legislation could be subject to repeal. Defendants ignore several features that make the NBL unique, and which further eliminate concerns about the issuance of an advisory opinion: (1) the extensive history of NJ's outlier status for primary election ballot design; (2) members of the Legislature who passed the NBL were almost always beneficiaries of the county line; (3) specific findings of this Court regarding the suspicious timing and method by which this particular piece of legislation was passed; and (4) that the public overwhelmingly rejected in-office bracketing in public testimony on the NBL. These are factors courts readily apply in evaluating 14th Amendment violations. *See Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977) (listing factors present here).

Nor would it constitute an 11th Amendment problem under *Pennhurst State Sch. v. Halderman*, 465 U.S. 89 (1984) or an Article III problem under *Herb v. Pitcairn*, 342 U.S. 117 (1945) as Defendants suggest. Plaintiffs' case is precisely about whether the pre-NBL iterations of ballot design law - and the remaining pernicious features still seen today - violate the U.S. Constitution. Plaintiffs do not ask this Court to direct the State nor state officials as to how to conform their conduct to state law as in *Pennhurst*, nor does this matter concern federal judicial review of a state court's judgment as in *Pitcairn*.

was permitted under the old county line system, it remains despite passage of the NBL. *See N.J.S.A.* 19:23-18(c). As previously argued, concerns of potential voter confusion and forced association remain. *See Conforti* ECF 239 at 23-25 & n.12.[3]

## II. *Conforti* Plaintiffs Kreibich, Spezakis, and NJWF have Standing.

*Conforti* Plaintiffs have *already* suffered an injury-in-fact in their 2020 Democratic Primary Elections. These injuries are traceable to and redressable by their respective county clerks, who designed those ballots and maintain control over ballot design in future elections. Kreibich and Spezakis ran for office in 2020 in Bergen County and intend to do so again in 2026 and future elections. Thus, Kreibich and Spezakis have standing vis-a-vis the Bergen Clerk since the injury-in-fact *already* occurred as a result of his actions, and since this Court can, among other relief, enjoin him from engaging in certain unconstitutional practices.

Kreibich and Spezakis further asserted that they (1) intend to run for office; (2) in 2026 (and in future elections); (3) for offices located within Bergen County; and (4) that are multiple open seat offices[4]. They already suffered an injury in fact

[3] This applies to all candidates including those like Senator Kim who are running for a vote-for-one office, statewide, including in Bergen and Union Counties.

[4] Tellingly, the Bergen Clerk claims that Kreibich does not have standing to sue because she intends to run for Bergen County Clerk, which "is not a 'multiple open seat' office." *Conforti* ECF 276 at 7. Yet, the Bergen Clerk neglected to mention that, in the very same certification signed by Kreibich, she *also* asserted an intention to run for a seat on the Democratic county committee in Bergen County in 2026, which is a multiple open seat office. *See Conforti* ECF 273-1, Declaration of Arati Kreibich, at 2, ¶6. Similarly, Spezakis also plans to run for Democratic

in 2020 and will now also be subjected to in-office bracketing in Bergen County since they seek multiple open seat offices. Their standing could not be more clear.

The Bergen Clerk also raises arguments rejected by this Court and the Third Circuit, claiming no candidate seeking a multiple open seat office under the NBL is physically *compelled* to associate via in-office bracketing. *Conforti* ECF 276 at 7. And he contends, "Plaintiffs' argument gives rise to significant First Amendment issues, including free speech and right of association that their opponents may have." *Id.* Yet, under the old Bracketing Structure, it was also true that no candidate was *forced* to bracket. The problem was that bracketed candidates were featured together as a unit, and the order of candidates was determined in part by whether a candidate was bracketed. Thus, the Court found harm in that candidates were forced to either bracket with candidates with whom they may not have wanted to associate, or risk less favorable ballot display and order. *See Conforti* ECF 111 at 14-17; *Kim* ECF 194 at 30-33; *Kim v. Hanlon*, 99 F. 4th 140, 155-59 (3d Cir. 2024). The same is true for in-office bracketing. The issue is not that a candidate for a multiple open seat office is compelled to bracket, but that the bracketed candidates are featured together as a unit (next to or below one another), *N.J.S.A.* 19:23-23.2(c)(2), and drawn together for ballot position,

---

county committee in Bergen County, which, as Defendants must concede, is a multiple open seat office.

*N.J.S.A.* 19:23-18(d); *N.J.S.A.* 19:23-24(c), impacting ballot display and candidate order.[5]

Furthermore, under the old Bracketing Structure, Defendants claimed that if candidates could not bracket together it would implicate their own First Amendment association rights. This Court rejected this claim, as candidates could express association directly on the ballot using a common slogan. *Kim* ECF 194 at 33; *Kim*, 99 F.4th at 158 (specifically rejecting this exact argument). This argument should be rejected for the same reasons with respect to in-office bracketing, and especially since candidates running for the same office can still associate on the ballot itself via a common slogan. *See N.J.S.A.* 19:23-23(c)(2) and (c)(3).

As to NJWF, this Court already found NJWF has standing to sue on behalf of its members who otherwise have standing themselves. *Conforti* ECF 111 at 19. Kreibich has been a NJWF member since September 25, 2021, *see* Supp. Decl. of A. Miles, ¶¶2-5.[6]

---

[5] This Court's injunction in *Kim* appreciated the significance of these concerns, as Defendants were "enjoined from conducting draws for ballot positions that do not include a separate drawing for every office and candidate . . . ." *See Kim* ECF 195.

[6] Since, as set forth above, Kreibich has standing, so too does NJWF have membership-based standing to sue on at least her behalf. Further, as a mission-based organization, NJWF also has resource-based standing. It has already established that it supports and endorses candidates for office, that it engages in extensive education and training for both candidates and voters, and it must repeatedly contend with the realities of unfair ballot design and its consequences, *statewide*, *including* both Union and Bergen Counties, which remain in this litigation. *Kim* ECF 341-1, ¶¶ 2-5, 11-12.

## III. <u>Senator Kim has Standing.</u>

Senator Kim was previously subjected to forced association on the ballot in prior primary elections whereby he was forced to associate with candidates with whom he did not want to associate, including, among others, those with whom he did not know and those who were actively campaigning against him. *Kim* ECF 298-1, ¶¶37-39. But for this Court's preliminary injunction, he was slated to suffer the same harm in connection with his statewide run for United States Senate in the 2024 Democratic Primary Election in various counties, *including* Bergen and Union Counties, and risks similar harms (with the exception of in-office bracketing), including with respect to forced association such as in the context of stacking, when he runs for re-election, *statewide*, in 2030. *See supra* at 4-5 & n.3. This matter is thus distinguishable from *Harnett*, which Defendants focus on, because there the issue was mootness (not standing), and the compliance by the defendant-unions therein resolved the underlying harms. Here, harms persist, and Defendants simultaneously refuse to comply or even recognize them, while they ostensibly refuse to defend.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs have standing, and the order to show cause should be discharged. Since standing was the only potential obstacle identified by the Court, summary judgment should now be entered for Plaintiffs.

Respectfully submitted,

WEISSMAN & MINTZ
Attorneys for Plaintiffs

By: *__/s/ Brett M. Pugach__*

*__/s/ Flavio L. Komuves__*

BROMBERG LAW LLC
Attorneys for Plaintiffs

By: *__/s/ Yael Bromberg__*

Dated: October 30, 2025